UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

JASON FREY, BRIANNA FREY,                          Case No. 21 Civ. 5334
JACK CHENG, and WILLIAM SAPPE,

                              Plaintiffs,

        -against-                                  COMPLAINT

KEVIN P. BRUEN, Acting Superintendent
of the New York State Police, in his official
capacity, NEW YORK CITY, New York,
and DERMOT SHEA, in his official capacity
as NYPD Police Commissioner,

                              Defendants.
-------------------------------------------------------------x

Plaintiffs, by and through their attorneys, as and for their complaint state as follows:

## NATURE OF THE ACTION

1.      This is an action for declaratory and injunctive relief, compensatory damages to include presumed monetary damages in at least a nominal amount, costs, disbursements, and reasonable statutory attorney's fees pursuant to 42 U.S.C. § 1983, for continuing harm to plaintiffs and all similarly situated individuals proximately caused by certain provisions of New York State Penal Law § 265.00, *et seq.*, Penal Law § 400.00, *et seq.*, and 38 RCNY 5.

2.      This action seeks a declaration that Penal Law §§ 265.01(1), 265.01-b, 265.03(2), 265.03(3), and § 400.00(15) violate the Second Amendment by criminalizing the "mere possession" of handguns, in public or private, and subjecting individuals who are not prohibited by state or federal law from possessing or purchasing firearms to incarceration, forfeiture of their right to possess firearms in the future, and other unconstitutionally punitive consequences.[1]

---

[1] The term "firearms" as used herein refers to all types of guns in common use for self-defense and includes handguns, rifles, and shotguns.

1

3.      Unlike the possession of rifles and shotguns, the mere possession of a handgun by a non-prohibited person anywhere in New York State is a crime punishable by incarceration, fines, and the termination of the Second Amendment right to possess any type of arms, including rifles and shotguns. The mere possession of a loaded handgun by a non-prohibited person in New York State is a "Class C violent felony offense", where the term of incarceration "must be at least three and one-half years and must not exceed fifteen years."  See, Penal Law § 70.02.

3(a).    This action seeks a declaration that Penal Law §§ 265.01(1), 265.01-b, 265.03(2), 265.03(3), and § 400.00(15) violate the Second Amendment by criminalizing the "mere possession" of a handgun in public by individuals who hold a valid handgun license issued by a statutory licensing officer as defined by Penal Law 265.00(10).

4.      This action further seeks a declaration that New York State's ban on the open carriage of a handgun violates the Second Amendment.

5.      This action further seeks to permanently enjoin the enforcement of Penal Law §§ 265.01(1), 265.01-b, 265.03(2), 265.03(3), and § 400.00(15) by Defendants and anyone having notice thereof against individuals who are not prohibited by state or federal law from possessing or purchasing firearms for the open carriage of a handgun in public.

6.      This action further seeks a declaration that New York State's discretionary handgun licensing scheme under Penal Law § 400.00(1)(b) and (n) violate the Second Amendment by reducing the Second Amendment "right" to a mere "privilege".

7.       This action further seeks a declaration that New York City's discretionary handgun regulations under 38 RCNY 5-10(a), (h), and (n) violate the Second Amendment.

8.      This action further seeks a declaration that the intrastate geographical restrictions on the carriage and possession of handguns as provided for under Penal Law § 400.00(6) are unconstitutional and violate the Second Amendment.

9.      This action further seeks the issuance of temporary order enjoining during the pendency of this matter defendants Bruen and Shea, their agents, and all individuals and agencies having actual notice of the same from (i) enforcing Penal Law §§ 265.01(1), 265.01-b, 265.03(3), and § 400.00(15) against all individuals who possess a New York State handgun license who carry a handgun [registered on such permit] open and exposed in public throughout the State of New York; and (ii) from enforcing Penal Law §§ 265.01(1), 265.01-b, 265.03(2), 265.03(3), and 400.00(15) against individuals who possess an unrestricted concealed carry license issued by a licensing officer outside of New York City and carry a handgun [registered on such permit] concealed within the five boroughs of New York City.

10.     New York State's handgun licensing scheme under Penal Law § 400.00, *et seq.* unconstitutionally infringes upon the preexisting individual right of Plaintiffs and all other individuals who have been issued a valid New York State pistol license under § 400.00 to "bear arms" for self-protection by, *inter alia*, (i) banning the unrestricted open carriage of a handgun; (ii) criminalizing the open carriage of a handgun; and (iii) restricting the validity of an unrestricted carry license based on the county of issuance.

11.     Under § 400.00(3) applications for a New York State handgun license shall be approved as to form by the superintendent of state police. The uniform New York State application for handgun licensing issued for use by the statutory licensing officers by the State Police contains no option, process, or procedure for applying for an unrestricted open carry license.

12.     Plaintiffs are being prevented from exercising their right to self-defense outside of their homes by the criminalization of the "mere possession" of a handgun, and the preclusive and discretionary language of Penal Law § 400.00, *et seq.*

13.     Plaintiffs are not prohibited from the possession or purchase of firearms under state or federal law yet are prevented by criminal statutes from exercising the preexisting rights protected by the Second Amendment.

14.     If Plaintiffs Jay Frey, Brie Frey, Jack Cheng, and William Sappe were to exercise their right to possess and/or carry arms in public by the "open carriage" of handguns in New York State and/or New York City, they would be subject to criminal prosecution, including incarceration, under Penal Law §§ 265.01(1), 265.01-b, 265.03(2), 265.03(3), and/or § 400.00(15).

15.     If Plaintiffs Jay Frey and Brie Frey were to exercise their right to possess a handgun in public, other than traveling to and from the target shooting range or engaging in outdoor sporting activities, they would be subject to criminal prosecution, including incarceration, under Penal Law §§ 265.01(1), 265.01-b, 265.03(3), and/or § 400.00(15).

16.     If Plaintiff Jack Cheng were to exercise his right to possess a handgun in public, other than traveling to and from the target shooting range, he would be subject to criminal prosecution, including incarceration, under Penal Law §§ 265.01(1), 265.01-b, 265.03(3), and/or § 400.00(15).

17.     If Plaintiff William Sappe were to carry his registered handgun, for which he holds a valid "full carry" New York State concealed carry handgun license, in the 5 boroughs of New York City, he would be subject to criminal prosecution, including incarceration, under Penal Law §§ 265.01(1), 265.01-b, 265.03(2), 265.03(3), and/or § 400.00(15).

18.     Plaintiffs cannot exercise their preexisting rights, which are protected by the Second Amendment, because they are under the threat of criminal prosecution, incarceration, revocation of their handgun license, forfeiture of the right to possess firearms, and concomitant loss of property with the seizure of their firearms.

19.     Without the requested declaratory and injunctive relief, Plaintiffs will continue to suffer irreparable harm.

## JURISDICTION

20.     Jurisdiction in this court is proper pursuant to 28 U.S.C. § 1331 in that this action arises under the Constitution and laws of the United States, and under 28 U.S.C. § 1343(a)(3) in that this action seeks to redress the deprivation, under of color of the laws, statutes, ordinances, regulations, customs, and usages of the State of New York, of rights, privileges or immunities secured by the United States Constitution.

21.     This action seeks relief pursuant to 28 U.S.C. §§ 2201, 2202, and 42 U.S.C. § 1983.

22.     Venue in this district is proper pursuant to 28 U.S.C. § 1391.

## THE PARTIES

23.     Plaintiff Jason Frey is a United States citizen and a resident of Westchester County, New York.

24.     Plaintiff Brianna Frey is a United States citizen and a resident of Westchester County, New York.

25.     Plaintiff Jack Cheng is a United States citizen and a resident of Nassau County, New York.

26.     Plaintiff William Sappe is a United States citizen and a resident of Orange County, New York.

27.     Defendant Kevin P. Bruen is the Acting Superintendent of the New York State Police whose principal place of business is in Albany (Albany County), New York.

28.     As the Acting Superintendent of the New York State Police, Bruen has the authority to file charges to prosecute criminal and/or non-criminal offenses taking place throughout New York State.

29.     As the Acting Superintendent of the New York State Police, Bruen also publishes advisory memoranda related to the State's position on various firearm-related issues, which is then passed down to, and adhered to by, the county and local law enforcement agencies statewide.

30.     Defendant New York City is a governmental subdivision of New York State.

31.     Defendant Dermot Shea is the Police Commissioner for the New York City Police Department ("NYPD") and a statutory handgun licensing officer under Penal Law § 400.00.

32.     As the NYPD Police Commissioner, Commissioner Shea is the chief law enforcement officer in New York City. In his official position, Commissioner Shea has the authority to file charges to prosecute criminal and/or non-criminal offenses taking place in the five boroughs of New York City, to wit, New York County (Manhattan), Kings County (Brooklyn), Queens County, Richmond County (Staten Island), and Bronx County.

33.     All individually named defendants are sued in their official capacities.

## MATERIAL FACTS

### I. The Second Amendment

<u>The Second Amendment Protects All Arms in "Common Use" for Lawful Purposes</u>

34.     The Second Amendment to the United States Constitution provides: "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

35.     The Second Amendment guarantees individuals a fundamental right to keep and carry arms for self-defense and defense of others in the event of a violent confrontation. *District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. Chicago*, 561 U.S. 742 (2010); *Caetano v. Massachusetts,* 577 U.S. __ (2016).

36.     Arms are "'weapons of offence, or armour of defence.' 1 Dictionary of the English Language 107 (4th ed.)" They are anything that a man [or woman] wears for his defense, or takes into his hands, or uses in wrath to cast at or strike another.' 1 A New and Complete Law Dictionary (1771)." *District of Columbia v. Heller*, 554 U.S. at 581.

37.     The "Arms" protected by the Second Amendment are any weapons in "common use" for lawful purposes. *District of Columbia v Heller*, 554 US 570, 627 (2008) citing, *United States v Miller*, 307 US 174, 179 (1939).

38.     The Second Amendment extends, *prima facie*, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding. *Heller,* 554 U.S. at 582; *Caetano*, slip op. at 1 (per curiam).

39.     Under the Second Amendment, the government may prohibit the carrying of arms that are not within the scope of Second Amendment's protection such as unusually dangerous

arms, and disqualify specific, particularly dangerous individuals from carrying arms. *See Heller,* 554 U.S. at 627.

40.     Nothing in the text of the Second Amendment suggests its exercise is limited to the home. *Heller*, 554 U.S. at 592 (holding that the Second Amendment protects "the right to possess and carry weapons in case of confrontation.")

41.     Over the course of 8 pages, the Supreme Court analyzed the term "bear" when used in connection with the term "arms", concluding that the right to "bear arms" is the right to carry weapons in case of confrontation.

> "At the time of the founding, as now, to 'bear' meant to 'carry.' When used with 'arms,' however, the term has a meaning that refers to carrying for a particular purpose-confrontation ... Although the phrase implies that the carrying of the weapon is for the purpose of 'offensive or defensive action,' it in no way connotes participation in a structured military organization."

*Heller*, 554 US at 584.

42.     "To confine the right to be armed to the home is to divorce the Second Amendment from the right of self-defense described in *Heller* and *McDonald*." *Moore v Madigan*, 702 F.3d 933, 937 (7th Cir. 2012).

43.     As even the Second Circuit recognized, "The plain text of the Second Amendment does not limit the right to bear arms to the home." *Kachalsky v County of Westchester*, 701 F3d 81, 89, n 10 (2d Cir 2012).

**II. Handguns**

44.     "The [United States Supreme] Court has held that the Second Amendment extends, *prima facie*, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding [ ]  and that this Second Amendment right is fully applicable to the States," *Caetano v Massachusetts*, 577 U.S. 411, 136 S.Ct. 1027, 194 L.Ed.2d

99 (2016) quoting *District of Columbia v. Heller*, 554 U.S. 570, 582, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008) and *McDonald v. Chicago*,  561 U.S. 742, 750, 130 S.Ct. 3020, 177 L. Ed. 2d 894 (2010).

45.     In a *per curiam* opinion, the Supreme Court in *Caetano* held that the Second Amendment extends to all weapons that constitute "bearable arms."

> "As Heller explained, the term includes any weapon of offence or thing that a man wears for his defence, or takes into his hands, that is carried for the purpose of offensive or defensive action."

*Caetano*, 577 US 411, n 3 citing, *Heller*, 554 US at 584 (internal quotation marks omitted).

46.     It is beyond cavil that handguns are "bearable arms" and are "commonly used" for self-defense.  Indeed, handguns constitute an entire class of "arms" that are overwhelmingly chosen by American society for the lawful purpose of self-defense. *Heller*, 554 US at 628.

47.     Thus, handguns are protected by the Second Amendment, as they are weapons in "common use" for self-defense. See, *Heller*, 554 US at 629 ("handguns are the most popular weapon chosen by Americans for self-defense").

### III. New York State Law Bans Handgun Possession

48.     New York Penal Laws §§ 265.01(1), 265.01-b, 265.03(2) and 265.03(3) ban the "mere possession" of handguns  - all without the intent to commit a criminal act and in the absence of a victim.

49.     A conviction under:

- 265.01(1) is a misdemeanor to possess a handgun, the violation of which authorizes up to one year of incarceration;

- 265.01-b is a violent felony to possess a handgun, the violation of which mandates incarceration in state prison;

- 265.03(2) is a violent felony to possess five or more handguns, the violation of which mandates incarceration in state prison;

- 265.03(3) is a violent felony to possess a loaded handgun, the violation of which mandates incarceration in state prison.

50.    Given the decision in *Heller* and *Caetano*, Defendants (i) may not completely ban the keeping and bearing of arms for self-defense that are not unusually dangerous, like handguns; (ii) may not deny individuals the right to carry arms in non-sensitive places; and (iii) may not infringe on the right to keep and carry the type of arms that are protected by the Second Amendment. *See Caetano v. Massachusetts*, 577 U.S. 411 (2016); *Heller v. District of Columbia,* 801 F.3d 264 (D.C. Cir. 2015); *Palmer v. District of Columbia,* 59 F.Supp.3d 173 (2014).

51.    Possession of a handgun anywhere in New York State, whether in public or on private property is a crime.

52.    A conviction for a weapons-related offense under § 265.00, *et seq.* constitutes a "*per se* prohibitor" to the future possession of *any type* of firearm and terminates the rights protected by the Second Amendment. Penal Law § 265.00(17); § 400.00(1)(c).

**IV. "Discretionary" Handgun Licensing in New York State**

53.    Unlike the free and unencumbered possession and carriage of rifles and shotguns, which New York State does not require to be licensed[2], individuals with no state or federal disqualifiers are subjected to severe criminal and civil penalties if found in "mere possession" of a handgun.

54.    Nowhere in New York State can a non-prohibited individual exercise the right to possess a handgun without first seeking and obtaining permission from the government.

---

[2] Not addressed herein is New York City's blanket criminalization of the unlicensed possession of rifles and shotguns.

55.     In New York State, the government has "broad discretion" to deny a request for a handgun license.

56.     Penal Law § 400.00, *et seq.* contains the procedure for the licensing of handguns in New York State.

57.     A pistol license is merely a "defense" to a criminal prosecution for handgun possession.

58.     The fact that a license to possess handguns *may be applied for* does not guarantee that a license will be issued, even to applicants with no state or federal prohibitors to firearm possession.

59.     New York's licensing scheme under § 400.00, *et seq.* does not extinguish the blanket criminalization of the "mere possession" of handguns.

60.     The criminalization of handgun possession under Penal Law 265.00, *et seq.* **applies to the entire public in the first instance**.

61.     Unlike a bright-line registration process, the State's handgun licensing scheme is discretionary and permissive, imbuing the licensing officers with "broad discretion" to grant or deny a handgun license, irrespective of whether the license is for home premises or public carry. See, *Kachalsky*, 701 F3d at 87 citing, *Vale v. Eidens*, 290 A.D.2d 612, 613, 735 N.Y.S.2d 650 (3d Dep't 2002); *Kaplan v. Bratton*, 249 A.D.2d 199, 201, 673 N.Y.S.2d 66 (1st Dep't 1998); *Unger v. Rozzi*, 206 A.D.2d 974, 974-75, 615 N.Y.S.2d 147 (4th Dep't 1994); *Fromson v. Nelson*, 178 A.D.2d 479, 479, 577 N.Y.S.2d 417 (2d Dep't 1991).

62.     This "broad discretion" also applies to the suspension and revocation of handgun licenses [*Thomas v O'Neill*, 2019 NY Slip Op 31017[U], *3 (Sup Ct, NY County 2019); *Biganini*

*v. Gallagher*, 293 A.D.2d 603, 742 N.Y.S.2d 7 (2d Dep't 2002)] and determinations of "proper cause" for the issuance of a concealed carry license.

63.     Under New York and Second Circuit case law, the possession of a handgun is deemed to be a privilege, not a right, which is subject to the broad discretion of the licensing officer. See, *Boss v. Kelly*, 306 F. App'x 649, 650 (2d Cir. 2009) (quoting *Papaioannou v. Kelly*, 14 A.D.3d 459, 460, 788 N.Y.S.2d 378 (1st Dep't 2005)).

64.     While certain "eligibility" requirements for the issuance of a handgun license are *per se* disqualifiers to the possession of *any type* of firearm under state and federal law, section 400.00(1)(b) and (n) imbue licensing officers with "broad discretion" to deny an application and suspend/revoke handgun licenses based on an applicant's "moral character" and "for any good cause".

65.     Similarly, under 38 RCNY 5-10 (a), (h), and (n), New York City employs discretionary licensing based on factors having no longstanding, historically recognized disqualifiers to firearm possession.

66.     There are two types of handgun licenses available to New York residents: (1) premises (residence or business) and (2) concealed carry. See, § 400.00(2).

67.     The licensing officers have the discretion to issue a concealed carry license and restrict it to "target shooting", "hunting", or "sportsman" where the applicant demonstrates a "sincere desire to participate" in such activities. *Kachalsky v County of Westchester*, 701 F3d 81, 86 (2d Cir 2012) citing, *In re O'Connor*, 154 Misc. 2d 694, 585 N.Y.S.2d 1000, 1003 (Westchester Cty. Ct. 1992); *Davis v. Clyne*, 58 A.D.2d 947, 947, 397 N.Y.S.2d 186 (3d Dep't 1977).

68.     The above restricted concealed carry licenses ***do not*** permit the licensee to carry a handgun in public for the purpose of "self-defense". *NY State Rifle & Pistol Assn. v Beach*, 354 F Supp 3d 143, 145-146 (NDNY 2018).

69.     Carrying a handgun outside of the restrictions imposed by a licensing officer, i.e., a licensee with a "target shooting" restriction possesses his/her handgun while at the grocery store, subjects the licensee to subjects the licensee to criminal prosecution, the revocation of his/her handgun license under the discretionary "good cause" and "moral character" factors of § 400.00(1) and the corresponding loss of all handguns.

70.     Carrying a handgun outside of the restrictions imposed by a licensing officer subjects the licensee to a misdemeanor conviction and up to 1 year incarceration under Penal Law § 400.00(15).

71.     Any violation of any of the provisions of Penal Law § 400.00, *et seq.* subjects the licensee to a misdemeanor conviction and up to 1 year of incarceration. See, § 400.00(15).

72.     Should Plaintiffs carry outside of their restrictions and/or within the 5 boroughs of New York City as described herein, which they intend to do, in addition to being charged with a criminal offense and facing incarceration, their handgun licenses will be revoked and their property (handguns) will be seized, which will eliminate their right to possess handguns for self-defense.

73.     A discretionary licensing scheme empowering the government with "broad discretion" to grant or take away a right protected by the Second Amendment violates the Second Amendment, both facially and as applied to Plaintiffs.

74.     Penal Law §400.00(1)(b) and (n) and 38 RCNY 5-10 (a), (h) and (n) violate the Second Amendment.

**V. New York State Bans the "Open Carriage" of Handguns**

75.    The only 2 types of handgun license for which there is an application, process, and procedure to obtain such a license are: (i) premises (residence or business) and (ii) concealed carry.  See, Penal Law § 400.00(2).

76.    New York and the Second Circuit deem "concealed carry" of a handgun to be a "privilege", not falling within the scope of the Second Amendment.

77.    The issuance of a concealed carry handgun license requires establishing "proper cause" to the satisfaction of a particular licensing officer. § 400.00(2)(f).

78.    To be issued a concealed carry license, an applicant must "demonstrate a special need for self-protection distinguishable from that of the general community or of persons engaged in the same profession." *Kachalsky*, 701 F3d at 86-87 citing, *Klenosky v. N.Y City Police Dep't*, 75 A.D.2d 793, 793, 428 N.Y.S.2d 256 (1st Dep't 1980), aff'd on op. below, 53 N.Y.2d 685, 421 N.E.2d 503, 439 N.Y.S.2d 108 (1981).

79.    The general population of non-prohibited persons cannot establish "proper cause".

80.    A "generalized desire to carry a concealed weapon to protect one's person and property does not constitute 'proper cause' nor does living or being employed in a 'high crime area'". *Kachalsky*, 701 F3d at 86-87 citing, *In re O'Connor*, 585 N.Y.S.2d 1000, 1003 (1992); *Bernstein v. Police Dep't of City of New York*, 85 A.D.2d 574, 574, 445 N.Y.S.2d 716 (1st Dep't 1981), *Martinek v. Kerik*, 294 A.D.2d 221, 221-22, 743 N.Y.S.2d 80 (1st Dep't 2002); *Theurer v. Safir*, 254 A.D.2d 89, 90, 680 N.Y.S.2d 87 (1st Dep't 1998); *Sable v. McGuire*, 92 A.D.2d 805, 805, 460 N.Y.S.2d 52 (1st Dep't 1983).

81.    The State's handgun licensing scheme provides no means for applying for an open carry license.

82.     The uniform "New York State Pistol/Revolver License Application", required to be used by every licensing officer, does not provide an option or procedure to apply for an open carry license.

83.     The open carriage of a handgun is banned in New York State.

84.     By banning open carry and reducing concealed carry to a privilege, requiring permission before it is exercised, subjecting the exercise of concealed carry to the discretion of the government, and requiring "proper cause" for the issuance thereof, which excludes the right to self-defense, New York State has banned *any* "right" to carry a handgun outside of one's home in any fashion - open or concealed.

85.     The State's public carry restrictions violate the Second Amendment.

**VI. Intrastate Geographical Restrictions on Public Carry Violate the Second Amendment**

86.     The right to bear arms is a preexisting right that attaches to the individual, not a particular place.

87.     Under Penal Law § 400.00(6), "A license to carry or possess a pistol or revolver, not otherwise limited as to place or time of possession, shall be effective throughout the state, except that the same shall not be valid within the city of New York unless a special permit granting validity is issued by the police commissioner of that city."

88.     Intrastate geographical restrictions on the validity of a handgun license issued by a statutory licensing officer as defined by § 265.00(10) violate the Second Amendment.

89.     Intrastate geographical restrictions on the public possession of a handgun by an individual who holds a valid handgun license violates the Second Amendment.

90.     Carrying a handgun in violation of New York State's intrastate geographical restrictions subjects the licensee to criminal prosecution, the revocation of the handgun license, and the corresponding loss of all handguns.

**Plaintiff Jason Frey: Westchester County**

91.     Jason Frey is not prohibited under state or federal law from possessing, receiving, owning, or purchasing firearms.

92.     Mr. Frey was issued a New York State pistol license ("handgun license") by a Westchester County licensing officer under Penal Law § 400.00(1).

93.     Mr. Frey's handgun license is restricted to "sportsman".

94.     Mr. Frey's handgun license restricts the possession of the handguns registered to his license to inside of his home, to and from target shooting, and during sporting activities.

95.     In 2019, Mr. Frey filed an amendment to remove the restrictions on his New York State pistol license to allow for unrestricted concealed carry.

96.     Mr. Frey's application for a concealed carry license was based on a physical and verbal attack in June 2018.

97.     Mr. Frey's application was denied by the licensing officer.

98.     The licensing officer [Westchester County Court judge] determined that Mr. Frey did not meet the "proper cause" standard because he "has not demonstrated the necessary proper cause for the issuance of a full carry firearm license…[in that he] has not demonstrated a need for self-protection distinguishable from that of the general public."

99.     The licensing officer found that Mr. Frey did not demonstrate that he faces any danger warranting the need to carry a weapon in order to protect himself or his family.

100.    The licensing officer found that Mr. Frey's concern about being a potential target of violence is "entirely speculative" because he did not identify any incidents *since* June of 2018.

101.    As with the vast majority of crime victims, Mr. Frey had no advance warning that he would be a "target of violence" in June 2018 or that the June 2018 attack would take place.

102.    Mr. Frey did not file an Article 78 proceeding challenging the denial of his application for a concealed carry license because it would have been futile; licensing officers have unfettered "broad discretion" in deciding what constitutes "proper cause" and state appellate courts routinely "rubber stamp" the decisions of the licensing officers.

103.    Decisions denying applications for full carry handgun licenses are affirmed as a matter of course by the Appellate Divisions in the State of New York.

104.    Filing an Article 78 proceeding would also have been futile because the standard for an Article 78 proceeding is an even lower standard than a federal court "rational basis" inquiry.

105.    Mr. Frey desires to exercise his right under the Second Amendment to bear arms in public or otherwise for self-protection without the requirement that he demonstrate "cause" or "need" to exercise that right.

106.    Mr. Frey seeks to, and intends to, carry his handgun on his person in public for all lawful purposes, whether concealed or open carry, without regard for any intrastate geographical restrictions.

107.    Mr. Frey seeks to carry a firearm for self-protection outside of his home and in public without the government dictating the manner in which he can carry his firearm.

108.    Mr. Frey cannot apply for an open carry license because the open carriage of a registered handgun is banned in New York State, and there is no application, process, or procedure for applying for an open carry license under the Penal Law § 400.00, *et seq.*

109.    Even with a valid NYS handgun license, carrying a registered handgun outside of one's license restrictions is a Class A misdemeanor under Penal Law § 400.00(15) and subjects the individual to criminal prosecution, including incarceration and the revocation of their handgun license under § 400.00(1)(b) and (n).

110.    Even with a valid NYS handgun license, the concealed carriage of a registered handgun within the 5 boroughs of New York City without applying for and obtaining a handgun license issued by the NYPD License Division, which is discretionary and based on "proper cause", is a felony offense and would subject Mr. Frey to incarceration, revocation of his pistol license, and the forfeiture of his Second Amendment rights. Penal Law § 265.00, *et seq.*; § 265.00(17); § 400.00(1)(c); § 400.00(15).

111.    Applying for a concealed carry license in New York City would be futile because "self-defense" is not a recognized basis to establish "proper cause" for the issuance of a concealed carry license.

112.    Mr. Frey is aware of the limitations of carrying a gun in certain buildings that are considered sensitive places under various state and federal statutes and does not intend to carry a firearm therein.

113.    Mr. Frey travels to New York City and intends to travel there in the future.

114.    Mr. Frey fears for his personal safety while traveling to and from New York City.

115.    Mr. Frey's fears for his personal safety have increased in light of the defunding of the New York Police Department, the reduction in the police force, the rise in violent crime, the

rise in roving, armed gangs in New York City, the rise in violent attacks (even in broad daylight) in New York City, the significant decrease in the issuance of handgun licenses by Commissioner Shea's License Division, and the significant decrease in the approval of handgun license recertifications by the License Division.

116.    Mr. Frey does not carry his handgun open and exposed on his person in public throughout New York State, including New York City, out of fear of criminal prosecution, the revocation of his NYS handgun license by the Westchester County licensing officer, the seizure of his firearms, and forfeiture of the right to possess firearms at all in the future if convicted of a weapons-related crime.

117.    Mr. Frey cannot apply to have his NYS handgun license 'endorsed' by Commissioner Shea because his NYS handgun license is not an "unrestricted concealed carry license"; only a NYS concealed carry license can be endorsed by the NYC licensing officer to allow carry in New York City. See, Penal Law § 400.00(6).

118.    Carrying his handgun outside of his home, unless transporting it to and from the target shooting range or while engaged in sporting activities, subjects Mr. Frey to criminal prosecution, including incarceration, for carrying his handgun outside of his restriction, a Class A misdemeanor under § 400.00(15).

119.    Carrying his registered handgun outside of his home in any respect, unless transporting it to and from the target shooting range or while engaged in sporting activities subjects Mr. Frey to the revocation of his pistol license under the discretionary "good cause" and "moral character" clauses of § 400.00.

120.    The geographical restrictions of § 400.00(6) subject Mr. Frey to felony prosecution and incarceration should he carry his registered handgun in any of the five boroughs

19

of New York City, even if transporting to and from a target shooting range in New York City, because a handgun license issued by a licensing officer outside of New York City is invalid within the five (5) boroughs of New York City. See, Penal Laws §§ 265.01-b, 265.03(2), 265.03(3) and 400.00(6).

121.    A conviction of a misdemeanor or felony offense under Penal Law § 265.00, *et seq.* constitutes a statutory *per se* prohibitor to the future possession of handguns, rifles, and shotguns.

122.    An arrest for carrying a registered handgun outside of a licensee's restriction not only subjects Mr. Frey to the revocation of his license, it also impedes the issuance of a new handgun license under § 400.00(1)(b) and (n) for "good cause" and "lack of moral character".

***Plaintiff Brianna Frey: Westchester County***

123.    Brianna Frey is a resident of Westchester County, New York.

124.    Ms. Frey has is not prohibited under state or federal law from possessing, receiving, owning, or purchasing firearms.

125.    Ms. Frey was duly issued a New York State handgun license by a Westchester County licensing officer pursuant to Penal Law § 400.00.

126.    Ms. Frey's handgun license restricts the possession of her handguns to inside of her home, to and from target shooting, and during sporting activities.

127.    In 2019, Ms. Frey applied to the designated licensing officer in Westchester County to remove the public carry restrictions on her New York State pistol license to allow for unrestricted concealed carry of her handguns ("full carry").

128.    The licensing officer [Westchester County Court judge] to whom Ms. Frey's application was assigned denied her application for a full carry concealed handgun license.

129.    The licensing officer determined that Ms. Frey did not meet the "proper cause"

standard because she "has not demonstrated the necessary proper cause for the issuance of a full

carry firearm license…[in that she] has not demonstrated a need for self-protection

distinguishable from that of the general public."

130.    The licensing officer found that Ms. Frey did not demonstrate that she faces any

danger warranting the need to carry a weapon in order to protect herself or her family.

131.    Ms. Frey's application for a concealed carry license was based on a physical and

verbal attack in June 2018.

132.    The licensing officer found that Ms. Frey's concern about being a potential target

of violence is "entirely speculative" because she did not identify any incidents *since* June of

2018.

133.    As with the vast majority of crime victims, Ms. Frey had no advance warning that

she would be a "target of violence" in June 2018 or that the June 2018 attack would take place.

134.    The general population of non-prohibited persons cannot satisfy the "proper

cause" standard set by the State or New York City; a desire to carry a handgun concealed for

"self-defense" does not satisfy the "proper cause" requirement.

135.    Ms. Frey did not file an Article 78 proceeding challenging the denial of her

application for a concealed carry license.

136.    Filing an Article 78 proceeding would have been futile, as licensing officers have

unfettered broad discretion in deciding what constitutes "proper cause".

137.    Filing an Article 78 proceeding would have been futile because decisions denying

applications for full carry handgun licenses are affirmed as a matter of course by the Appellate

Divisions in the State of New York.

138.    Filing an Article 78 proceeding would have been futile because (i) the standard for an Article 78 proceeding is an even lower standard than the "rational basis" inquiry for constitutional challenges; and (ii) handgun possession is viewed as a "privilege" in New York State and the Second Circuit, to be granted or taken away by the government at will.

139.    Ms. Frey desires to exercise her right under the Second Amendment to bear arms in public for self-protection without the requirement that she demonstrate "cause" or "need" to exercise that right.

140.    Ms. Frey seeks to, and intends to, carry her handgun open and exposed on her person in public for all lawful purposes.

141.    Ms. Frey also seeks to determine for herself the manner in which she carries and/or wears her firearm without having to establish "cause" or seek permission from the government.

142.    Ms. Frey seeks to carry a firearm for self-protection outside of her home and in public without the government dictating the manner in which she carries her firearm - loaded and exposed, concealed, and/or unloaded and exposed.

143.    Ms. Frey cannot apply for an open carry license because the open carriage of a registered handgun is banned in New York State, and New York State provides no application, process, or procedure for applying for an open carry license under the Penal Law § 400.00, *et seq.*

144.    Ms. Frey seeks to, and intends to, carry her handgun open and exposed on her person in public throughout the State of New York, including New York City, without geographical restriction and fear of criminal prosecution.

145.    The open carriage of a handgun is a crime and subjects the individual to criminal prosecution, including incarceration.

146.    Ms. Frey is aware of the limitations of carrying a gun in certain buildings that are considered sensitive places under various state and federal statutes and does not intend to carry a gun therein.

147.    Ms. Frey does not carry her handgun open and exposed on her person in public throughout New York State out of the fear of criminal prosecution, including incarceration, the revocation of her handgun license by the Westchester County licensing officer, the seizure of her firearms and the forfeiture of her right to possess firearms at all in the future if convicted of a weapons related charge. See, Penal Law § 265.00, *et seq.*; § 400.00(15).

148.    Ms. Frey intends to travel to New York City and desires to carry a handgun while traveling there.

149.    Ms. Frey fears for her personal safety while traveling to and from New York City.

150.    Ms. Frey's fears for her personal safety have increased in light of the defunding of the New York Police Department, the rise in violent crime, the rise in roving, armed gangs in New York City, the rise in violent attacks and murders in broad daylight in New York City, the significant decrease in the issuance of handgun licenses by Commissioner Shea's License Division, and the significant decrease in the approval of handgun license recertifications by the License Division.

151.    The only reason Ms. Frey does not carry her handgun open and exposed on her person in public in the five boroughs of New York City is the fear of criminal prosecution, incarceration, the revocation of her handgun license, and the forfeiture of her Second Amendment rights.

152.    Ms. Frey cannot apply to have her NYS handgun license 'endorsed' by the NYC licensing officer because her NYS handgun license is not a concealed carry license; only a NYS concealed carry license can be endorsed by the NYC licensing officer to allow for concealed carry in New York City. See, Penal Law § 400.00(6).

153.    Applying for a concealed carry license in New York City would be futile.

154.    Ms. Frey does not carry her handgun open and exposed on her person in public throughout New York State, including New York City, out of fear of criminal prosecution, the revocation of her NYS handgun license by the Westchester County licensing officer, the seizure of her firearms, and forfeiture of her right to possess firearms at all in the future if convicted of a weapons-related crime.

155.    Carrying her handgun outside of her home, unless transporting it to and from the target shooting range or engaging in sporting activities, subjects Ms. Frey to criminal prosecution, including incarceration, the revocation of her handgun license, and the forfeiture of her Second Amendment rights. See, Penal Law § 265.00, *et seq.*; § 265.00(17); § 400.00(1)(c); § 400.00(15).

156.    The geographical restrictions of § 400.00(6) subject Ms. Frey to felony prosecution and incarceration should she carry her registered handgun in any of the five boroughs of New York City, unless transporting it to and from the target shooting range or while engaged in sporting activities, because a handgun license issued by a licensing officer outside of New York City is invalid inside of the five (5) boroughs of New York City. See, Penal Laws §§ 265.01-b, 265.03(2), 265.03(3) and 400.00(6).

157.    A conviction of a misdemeanor or felony offense under Penal Law § 265.00, *et seq.* constitutes a statutory *per se* prohibitor to the future possession of handguns, rifles, and shotguns.

158.    Carrying her registered handgun outside of her home in any respect, unless transporting it to and from the target shooting range or during sporting activities subjects Ms. Frey to the revocation of her pistol license under the discretionary "good cause" and "moral character" clauses of § 400.00(1)(b), (n).

159.    An arrest for carrying a registered handgun outside of a licensee's restriction not only subjects Ms. Frey to the revocation of her license, it also impedes the issuance of a new handgun license under § 400.00(1)(b) and (n) for "good cause" and "lack of moral character".

***Plaintiff Jack Cheng: Nassau County***

160.    Jack Cheng is a resident of Nassau County, New York.

161.    Mr. Cheng has is not prohibited under state or federal law from possessing, receiving, owning, or purchasing firearms.

162.    Mr. Cheng is a veteran of the United States Army; he received an Honorable Discharge in 1994 and remained on individual ready reserve duty until 2001.

163.    Mr. Cheng received the Army Service Ribbon, National Defense Service Medal, and the M16 Sharpshooter Badge.

164.    Mr. Cheng was duly issued a New York State handgun license by a Nassau County licensing officer pursuant to Penal Law § 400.00, to wit, the Nassau County Police Commissioner.

165.    Mr. Cheng's handgun license restricts the possession of his handguns to inside of his home, to and from target shooting activities, and while engaged in hunting during hunting season.

166.    Mr. Cheng's New York State pistol license is not valid in New York City.

167.    Mr. Cheng cannot apply to have his NYS handgun license 'endorsed' by the NYC licensing officer because his NYS handgun license is not a concealed carry license; only a NYS concealed carry license can be endorsed to allow carry in New York City by the NYC licensing officer. See, Penal Law § 400.00(6).

168.    Mr. Cheng owns several businesses in New York City, including a restaurant, hotels, commercial office spaces, residential apartment buildings, store fronts.

169.    Mr. Cheng first applied for and was issued a concealed carry license related to his businesses by the NYPD License Division over 15 years ago.

170.    Mr. Cheng's NYC concealed carry license was due to be recertified / expired on October 6, 2019.

171.    With every renewal of a concealed carry license, New York City requires the licensee to again demonstrate "proper cause".

172.    Mr. Cheng submitted documentation that demonstrated "proper cause" for the renewal of his concealed carry license, as he had with each of his past license renewals – all of which were approved.

173.    Mr. Cheng's recertification application was denied by the NYPD License Division.

174.    Mr. Cheng seeks to carry his registered firearm for self-protection outside of his home and in public without the government dictating how he wears or carries his registered firearm.

175.    Mr. Cheng desires to carry a handgun open and exposed throughout the State of New York, including New York City, without the need to demonstrate "proper cause" or any other reason for exercising his right to carry a handgun for personal protection.

176.    Mr. Cheng seeks to, and intends to, carry his handgun open and exposed on his person in public for all lawful purposes.

177.    Mr. Cheng cannot apply for an open carry license because the open carriage of a registered handgun is banned in New York State, and defendant Bruen provides no application, process, or procedure for applying for an open carry license under the Penal Law § 400.00, *et seq.* or 38 RCNY 5, *et seq.*

178.    Mr. Cheng seeks to, and intends to, carry his handgun open and exposed on his person in public throughout the State of New York, including New York City, without geographical restriction and/or fear of criminal prosecution.

179.    Mr. Cheng is aware of the limitations of possessing firearms in certain buildings that are considered sensitive places under various state and federal statutes and does not intend to carry a firearm therein.

180.    Mr. Cheng travels to New York City on a daily basis to, *inter alia*, manage his businesses, collect rents, make bank deposits, and he intends to continue traveling to New York City in the future.

181.    Mr. Cheng fears for his personal safety while traveling to and from New York City, which fears have increased due to the defunding of the New York Police Department, the

rise in violent crime, the rise in roving, armed gangs in New York City, the rise in violent attacks on unsuspecting citizens in broad daylight in New York City, the significant decrease in the issuance of handgun licenses by Commissioner Shea's License Division, and the significant decrease in the approval of handgun license recertifications by the License Division.

182.    Carrying his handgun outside of his home, unless transporting it to and from the target shooting range or while engaged in hunting during hunting season, subjects Mr. Cheng to criminal prosecution, including incarceration, the revocation of his handgun license, and the forfeiture of his Second Amendment rights. See, Penal Law § 265.00, *et seq.*; § 265.00(17); § 400.00(1)(c); § 400.00(15).

183.    The geographical restrictions of § 400.00(6) subject Mr. Cheng to felony prosecution and incarceration should he carry his registered handgun in any of the five boroughs of New York City, even if transporting it to and from a target shooting range, because a handgun license issued by a licensing officer outside of New York City is invalid inside of the five (5) boroughs of New York City. See, Penal Laws §§ 265.01-b, 265.03(2), 265.03(3) and 400.00(6).

184.    A conviction of a misdemeanor or felony offense under Penal Law § 265.00, *et seq.* constitutes a statutory *per se* prohibitor to the future possession of handguns, rifles, and shotguns.

185.    Carrying his registered handgun outside of his home in any respect, unless transporting it to and from the target shooting range or while engaged in hunting during hunting season, subjects Mr. Cheng to the revocation of his pistol license under the discretionary "good cause" and "moral character" clauses of § 400.00(1)(b), (n).

186.     An arrest for carrying a registered handgun outside of a licensee's restriction not only subjects Mr. Cheng to the revocation of his license, it also impedes the issuance of a new handgun license under § 400.00(1)(b) and (n) for "good cause" and "lack of moral character".

187.     Mr. Cheng does not carry his handgun open and exposed on his person in public throughout New York State, including New York City, out of fear of criminal prosecution, the revocation of his NYS handgun license by the Nassau County licensing officer, the seizure of his firearms, and forfeiture of his right to possess firearms at all in the future if convicted of a weapons-related crime.  See, Penal Law § 265.00, *et seq.*

***Plaintiff William Sappe: Orange County***

188.     William Sappe is a resident of Orange County, New York

189.     Mr. Sappe is not prohibited by state or federal law from possessing, receiving, owning, or purchasing firearms.

190.     Mr. Sappe is self-employed. In his profession, Mr. Sappe transports substantial amounts of cash, diamonds, and jewelry for high-end jewelers in the Diamond District of New York City.

191.     Mr. Sappe transports substantial amounts of cash, diamonds, and jewelry between the Diamond District and other states, including California, and Las Vegas, Nevada.

192.     Mr. Sappe also transports substantial amounts of cash, diamonds, and jewelry between the Diamond District and various locations within the five (5) boroughs of New York City and throughout New York State.

193.     Mr. Sappe holds an open carry firearms permit, issued by the State of California, which he has held since 2015.

194.     Mr. Sappe is licensed as an Armed Security guard by the State of California.

195.    Mr. Sappe is licensed as an Armed Security Guard by the State of New York.

196.    For seven years, Mr. Sappe has held a New York State unrestricted concealed carry (full carry) handgun license, which was issued by a County Court Judge/licensing officer in Orange County, New York.

197.    By its issuance, a New York State superior court judge made the formal determination that Mr. Sappe was "fit" to possess a handgun, that he possessed "good moral character", and that he established "proper cause" to carry a handgun concealed in the State of New York. See, Penal Law § 400.00(1), (2)(f).

198.    Under Penal Law § 400.00(6), Mr. Sappe's unrestricted concealed carry license is valid everywhere in New York State - except the five boroughs of New York City because of Penal Law § 400.00(6).

199.    Mr. Sappe is able to protect himself with his registered firearms from a violent physical attack in every county in New York State - except the 5 boroughs of New York City because of Penal Law § 400.00(6).

200.    Under Penal Law § 400.00(6), Mr. Sappe is required to obtain an endorsement of his New York State concealed carry license from the Police Commissioner's NYPD License Division.

201.    In October 2018, Mr. Sappe applied to the NYPD License Division for an endorsement of his NYS concealed carry license.

202.    Mr. Sappe's application for the endorsement of his NYS concealed carry license was wrongfully denied by the NYPD License Division.

203.    Mr. Sappe filed an internal appeal of the denial of his application for an endorsement of his NYS concealed carry license with the Appeals Unit of the License Division, which was also wrongfully denied.

204.    The NYPD License Division and Appeals Unit wrongfully denied Mr. Sappe's application finding that he (i) did not establish "proper cause" for the issuance of an unrestricted concealed carry license (Penal Law § 400.00(2)); and (ii) did not have the "moral character" for the issuance of a handgun license in the first instance. (Penal Law § 400.00(1)(b)).

205.    The NYPD License Division denied Mr. Sappe's improper "lack of moral character" finding was based on Mr. Sappe's driving history and dismissed criminal charges. See, 38 RCNY 5-10(a), (h), and (n).

206.    The NYPD License Division deemed Mr. Sappe "ineligible" to possess handguns in the first instance – despite the fact that he possessed and possesses a valid New York State handgun license issued by a County Court Judge/licensing officer in Orange County, New York.

207.    An individual's history of driving infractions is not an event or condition that serves as a longstanding, historically recognized or acceptable prohibitor to the exercise of the Second Amendment.

208.    Mr. Sappe has had no moving violations since 2006, notwithstanding that traffic infractions are not a longstanding, historically recognized prohibitor to firearm possession.

209.    Criminal charges dismissed on the merits are not events or conditions that serve as longstanding, historically recognized or acceptable prohibitors to the exercise of the Second Amendment, or any other constitutional or statutory right.

210.    The NYPD License Division and Appeals Unit improperly found that Mr. Sappe's driving record demonstrated his lack of "good moral character".

211.     The NYPD License Division and Appeals Unit improperly found that Mr. Sappe's

dismissed criminal charges demonstrated that he lacked "good moral character".

212.     Mr. Sappe filed an Article 78 in New York County Supreme Court to challenge

the NYPD License Division's denial of his application for an unrestricted concealed carry

license, which was improperly dismissed in N.Y. State Supreme Court.

213.     Mr. Sappe's Article 78 was dismissed because the state court improperly believed

that "Title 38 of the Rules and Regulations of the City of New York, which codifies the

regulations concerning the issuance of handgun licenses, provides that proper grounds for denial

of a handgun license may include '[o]ther information [that] demonstrates an unwillingness to

abide by the law, a lack of candor towards lawful authorities, a lack of concern for the safety of

oneself and/or other persons and/or for public safety, and/or other good cause for the denial of

the license.'  38 RCNY § 5-10(n)."

214.     Mr. Sappe desires to carry a handgun in public for personal protection throughout

every county in New York State, including the 5 boroughs of New York City, without being

subjected to a discretionary licensing scheme.

215.     Mr. Sappe seeks to carry a firearm for self-protection outside of his home and in

public without the government dictating the manner in which he carries his firearm – concealed

or open carry.

216.     Mr. Sappe desires to carry a handgun, whether concealed or exposed, throughout

the State of New York, including New York City, without the need to demonstrate "proper

cause" or any other reason for exercising his right to bear arms for personal protection.

217.     Mr. Sappe intends to carry his handgun on his person in public for all lawful

purposes.

218.   Mr. Sappe cannot apply for an open carry license because the open carriage of a registered handgun is banned in New York State, and defendant Bruen provides no application, process, or procedure for applying for an open carry license under the Penal Law § 400.00, *et seq.* or 38 RCNY 5, *et seq.*

219.   Mr. Sappe seeks to carry his registered handgun in public, whether concealed or open and exposed, throughout the State of New York without geographical restrictions and/or the fear of criminal prosecution.

220.   Mr. Sappe is aware of the limitations of carrying a firearm in certain buildings that are considered sensitive places under various state and federal statutes and does not intend to carry a firearm therein.

221.   Mr. Sappe travels to New York City between 5 and 7 days per week to and between the Diamond District where he carries and possesses large and substantial amounts of cash, jewels, and jewelry within New York City, to other states where he is licensed to carry a handgun on his person, including California, and within New York State.

222.   Mr. Sappe intends to continue traveling to New York City in the future.

223.   Mr. Sappe fears for his personal safety while traveling to and from New York City, and within New York City.

224.   Mr. Sappe's fears for his personal safety have increased in light of the defunding of the New York Police Department, the rise in violent crime, the rise in roving, armed gangs in New York City, the rise in violent attacks on unsuspecting citizens in broad daylight in New York City, the significant and substantial decrease in the issuance of handgun licenses by Commissioner Shea's License Division, and the significant decrease in the approval of handgun license recertifications by the License Division.

225.    Mr. Sappe does not carry his registered handgun concealed on his person in New York City because of geographical restrictions of § 400.00(6).

226.    Mr. Sappe does not carry his registered handgun concealed into New York City because a concealed carry license issued by a licensing officer outside of New York City is invalid in the 5 boroughs of New York City and he fears criminal prosecution, the revocation of his handgun license, and the forfeiture of his preexisting Second Amendment rights.

227.    The geographical restrictions of § 400.00(6) subject Mr. Sappe to criminal prosecution, including incarceration, the revocation of his NYS handgun license, the seizure of his registered handguns, and the forfeiture of the right to possess any type of firearms in the future. See, §§ 265.01; 265.01-b; 265.03(2), 265.03(3); 400.00(1)(c); 400.00(6); 400.00(15).

228.    Mr. Sappe does not carry his registered handgun concealed into New York City because a concealed carry license issued by a licensing officer outside of New York City is invalid in the 5 boroughs of New York City and he fears criminal prosecution, the revocation of his handgun license, and the forfeiture of his preexisting Second Amendment rights.

229.    Mr. Sappe does not carry his registered handgun open and exposed on his person in public anywhere in New York State, including New York City, for fear of criminal prosecution, including incarceration, the revocation of his NYS handgun license, the seizure of his registered handguns, and the forfeiture of the right to possess any type of firearms in the future. See, §§ 265.01; 265.01-b; 265.03(2), 265.03(3); 400.00(1)(c); 400.00(6); 400.00(15).

230.    Mr. Sappe also risks arrest and prosecution under Penal Law § 265.01(1) for a misdemeanor, or felony charges under § 265.01-b, 265.03(2), and § 265.03(3).

231.    A conviction of a felony or misdemeanor offense under Penal Law § 265.00, *et seq.* constitutes a statutory *per se* prohibitor to the future possession of handguns, rifles, and shotguns. Penal Law §265.00(17).

232.    An arrest for carrying outside of a licensee's restriction would also prevent the issuance of a handgun license under § 400.00(1)(b), (n) because the statute allows the denial of an application for "good cause" and "lack of moral character", which a licensing officer would attribute to carrying outside of one's license restriction.

### COUNT I
### U.S. CONST., AMEND. II, 42 U.S.C. § 1983
### [Criminalization of Mere Possession of Handguns]

233.    Plaintiffs repeat and reallege paragraphs 1 to 232 as if set forth fully herein.

234.    Threatening prosecution, incarceration, and the forfeiture of the right to possess firearms, Defendants ban the "mere possession" of a handgun, whether in public or in private, by anyone in New York State, which violates the Second Amendment.

235.    Plaintiffs and all other non-prohibited individuals have a preexisting right to possess handguns without the threat of criminal punishment, incarceration, and the forfeiture of their right to possess firearms.

236.    Plaintiffs are entitled to preliminary and permanent injunctive relief enjoining Penal Law §§ 265.01(1), 265.01-b, 265.03(2), 265.03(3), and 400.00(15), which violate the Second Amendment facially and as applied to Plaintiffs and all non-prohibited individuals.

## COUNT II
### U.S. CONST., AMEND. II, 42 U.S.C. § 1983
### [Discretionary, Permissive Licensing Scheme]

237.    Plaintiffs repeat and reallege paragraphs 1 to 236 as if set forth fully herein.

238.    Threatening prosecution, incarceration, and the forfeiture of the right to possess firearms, Defendants require permission before exercising a preexisting right; Defendants condition that permission on discretionary factors that are not disqualifiers to firearm possession under any state or federal law.

239.    Plaintiffs and all other non-prohibited individuals have a preexisting right to possess handguns without the threat of criminal punishment, incarceration, and the forfeiture of their right to possess firearms.

240.    Plaintiffs are entitled to preliminary and permanent injunctive relief enjoining § 400.00(1)(b) and (n), 38 RCNY 5-10 (a), (h), and (n), which violate the Second Amendment facially and as applied to Plaintiffs and all non-prohibited individuals.

## COUNT III
### U.S. CONST., AMEND. II, 42 U.S.C. § 1983
### [Geographical Ban under Penal Law § 400.00(6)]

241.    Plaintiffs repeat and reallege paragraphs 1 to 240 as if set forth fully herein.

242.    Defendants restrict the exercise of a preexisting right, "mere possession" of handguns, geographically within the state of New York, which violates the Second Amendment.

243.    Plaintiffs and all other non-prohibited individuals have a preexisting right to possess handguns throughout the State without the threat of criminal punishment, incarceration, and the forfeiture of their right to possess firearms.

244.    Plaintiffs are entitled to preliminary and permanent injunctive relief enjoining Penal Law §§ 265.01(1), 265.01-b, 265.03(2), 265.03(3), 400.00(6), and 400.00(15), which

36

violate the Second Amendment facially and as applied to Plaintiffs and all non-prohibited individuals.

## COUNT IV
## U.S. CONST., AMEND. II, 42 U.S.C. § 1983
## [Open Carry Ban]

245.     Plaintiffs repeat and reallege paragraphs 1 to 244 as if set forth fully herein.

246.     Defendants ban the exercise of the preexisting right to bear arms in public for self-defense against violent confrontation, which violates the Second Amendment.

247.     Plaintiffs and all other non-prohibited individuals have a preexisting right to the open carriage of a handgun in public.

248.     Plaintiffs are entitled to preliminary and permanent injunctive relief enjoining Penal Law §§ 265.01(1), 265.01-b, 265.03(2), 265.03(3), 400.00(6), and 400.00(15), which violate the Second Amendment facially and as applied to Plaintiffs and all non-prohibited individuals.

## COUNT IV
## *MONELL* CLAIM AGAINST NEW YORK CITY

249.     Plaintiffs repeat and reallege paragraphs 1 to 248 as if set forth fully herein.

250.     38 RCNY 5-10 (a), (h), and (n) constitute a regulation, policy, and practice of New York City to deny non-prohibited individuals the right to possess handguns for self-defense.

251.     The provisions of 38 RCNY 5-10 (a), (h), and (n) are subjective and discretionary and do not constitute longstanding, historically recognized disqualifiers to firearm possession.

252.     Plaintiff William Sappe is entitled to preliminary and permanent injunctive relief enjoining 38 RCNY 5-10 (a), (h), and (n), which violate the Second Amendment facially and as applied to Plaintiff and all non-prohibited individuals.

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against Defendants as follows:

1.      An order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert with or participation with them who receive actual notice of the injunction, from enforcing New York Penal Laws §§ 265.01(1), 265.01-b, 265.03(2), 265.03(3) for the "mere possession" of firearms – in public or in private - against individuals who are not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm;

2.      An order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert with or participation with them who receive actual notice of the injunction, from enforcing Penal Laws §§ 265.01(1), 265.01-b, 265.03(2), 265.03(3) for the open carriage of a handgun for self-protection outside of the home by individuals who are not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm;

3.      An order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert with or participation with them who receive actual notice of the injunction, from enforcing Penal Laws §§ 265.01(1), 265.01-b, 265.03(2), 265.03(3) for the open carriage of a handgun for self-protection outside of the home by individuals who hold a handgun license issued by a New York State statutory licensing officer;

4.      An order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert with or participation with them who receive actual notice of the injunction, from enforcing New York Penal Law § 400.00(15) to

38

criminalize violations of an administrative licensing scheme by individuals who carry a handgun openly in public outside of their carry restrictions;

5.     An order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert with or participation with them who receive actual notice of the injunction, from implementing and enforcing New York Penal Laws §§ 400.00(1)(b) and (n), 38 RCNY 5-10 (a), (h), and (n) allowing the discretionary denial, suspension, or revocation of handgun licenses on grounds not having any longstanding historical basis as prohibitors to firearm possession;

6.      An order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert with or participation with them who receive actual notice of the injunction, from enforcing New York Penal Laws § 400.00(6) to nullify the statewide validity of a New York State unrestricted concealed carry handgun license;

7.     An order declaring as unconstitutional and unenforceable, Penal Laws §§ 400.00(1)(b) and (n), 38 RCNY 5-10 (a), (h), and (n) as violating the Second Amendment;

8.     An order declaring as unconstitutional and/or unenforceable, Penal Law § 400.00(6) as violating the Second Amendment;

9.     An order declaring as unconstitutional and/or unenforceable, Penal Law § 400.00(15) as violating the Second Amendment;

10.     An order declaring as unconstitutional and/or unenforceable, Penal Laws §§ 265.01(1), 265.01-b, 265.03(2), 265.03(3) for the open carriage of a handgun for self-protection outside of the home by individuals who are not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm as violating the Second Amendment;

11.     An order declaring as unconstitutional and/or enforceable, Penal Laws §§ 265.01(1), 265.01-b, 265.03(2), 265.03(3) for the open carriage of a handgun for self-protection outside of the home by individuals holding a handgun license issued by a New York State statutory licensing officer as violating the Second Amendment;

12.     Reasonable statutory attorney's fees and costs pursuant to 42 U.S.C. § 1988;

13.     Monetary damages greater than $1 and/or nominal damages;

14.     Compensatory and economic damages in an amount to be determined;

14.     Such other further and different relief as to this Court seems just, proper, and equitable.

Dated: June 16, 2021

THE BELLANTONI LAW FIRM, PLLC
*Attorneys for Plaintiffs*

By:     _____/s_____
Amy L. Bellantoni (AB3061)
2 Overhill Road, Suite 400
Scarsdale, New York 10583
(914) 367-0090 (t)
(888) 763-9761 (f)
abell@bellantoni-law.com