UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
JASON FREY, BRIANNA FREY,
JACK CHENG, and WILLIAM SAPPE,                    **ORAL ARGUMENT REQUESTED**

                        Plaintiffs,

          -against-                               Case No. 21 Civ. 5334 (NSR)

KEVIN P. BRUEN, Acting Superintendent
of the New York State Police, in his official
capacity, NEW YORK CITY, New York,
and DERMOT SHEA, in his official capacity
as NYPD Police Commissioner,

                        Defendants.
-------------------------------------------------------------x

# PLAINTIFFS' MEMORANDUM OF LAW
# IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

**THE BELLANTONI LAW FIRM, PLLC**
*Attorneys for Plaintiffs*
**2 Overhill Road, Suite 400**
**Scarsdale, New York 10583**
**(914) 367-0090**
**abell@bellantoni-law.com**

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ....................................................................................... i

PRELIMINARY STATEMENT ............................................................................... 1

STATEMENT OF FACTS ....................................................................................... 3

LEGAL ARGUMENT .............................................................................................. 5

Preliminary Injunction Standard ............................................................................ 5

I. PLAINTIFFS HAVE A SUBSTANTIALLY HIGH LIKELIHOOD OF SUCCESS ............... 6

    A. THE SECOND AMENDMENT ....................................................................... 6

        i. The "Core" of the Amendment is the Individual Right to Self-Defense ................. 7

        ii. Applies to State Action ............................................................................ 7

        iii.  Protects All Weapons in "Common Use" for Self-Defense ................................. 7

        iv. Handguns are Bearable Arms in "Common Use" for Self-Defense ...................... 8

        v.  Protects the Right to Carry Handguns .................................................. 8

    B. THE COURT IS BOUND BY SUPREME COURT JURISPRUDENCE ..................... 10

    C. BANNING OPEN CARRY IS A *PER SE* VIOLATION OF
       THE SECOND AMENDMENT ....................................................................... 11

        i.  The Pre-Existing Right to Self-Defense is Attached to the Individual ................. 12

        ii. Carrying a Handgun is Inherent in the Core Right to Self-Defense ..................... 13

        iii. Penal Law §§ 265.01(1), 265.01-b, and 265.03(3) Violate the
           Second Amendment .................................................................... 14

        iv. In New York (and Historically), Concealed Carry Falls Outside of the
           Scope of the Second Amendment ...................................................... 15

        v. Banning Open Carry is a Per Se Violation of the Second Amendment –
           New York Has No Ample Alternative Channels for Bearing Arms ..................... 17

# TABLE OF CONTENTS (con't)

                                                                     **Page(s)**

     vi. Criminalizing "Mere Possession" of Handguns Absent
        Harmful Intent Has No Longstanding, Historical Support ................................ 18

II.  PLAINTIFFS WILL CONTINUE TO SUFFER IRREPARABLE HARM .......................... 22

III. THE EQUITIES TIP IN PLAINTIFFS' FAVOR AND
     THE REQUESTED RELIEF SERVES THE PUBLIC INTEREST ..................................... 23

CONCLUSION.................................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andrews v. State*,
  50 Tenn. 165 (1871) ................................................................................................ 17

*Arizona Dream Act Coalition v. Brewer*,
  757 F.3d 1053 (9th Cir. 2014) ............................................................................... 24

*Avitable v. Beach*,
  368 F. Supp. 3d 404 (N.D.N.Y. 2019)................................................................. 8, 15

*Bernstein v. Police Dep't of City of New York*,
  85 A.D.2d 574, 445 N.Y.S.2d 716 (1st Dep't 1981) ............................................. 16

*Bliss v. Commonwealth*,
  12 Ky. 90 (1822)...................................................................................................... 17

*Caetano v. Massachusetts*,
  577 U.S. 411 (2016) ................................................................................. 7, 12, 13, 15

*Cayuga Nation v. Tanner*,
  824 F.3d 321 (2d Cir. 2016) .................................................................................... 23

*Cockrum v. State*,
  24 Tex. 394 (1859) ................................................................................................... 17

*Connecticut Dep't of Envtl. Prot. v. O.S.H.A.*,
  356 F.3d 226 (2d Cir. 2004) .................................................................................... 23

*Connecticut State Police Union v. Rovella*,
  494 F. Supp. 3d 210 (D. Conn. 2020)....................................................................... 6

*District of Columbia v. Heller*,
  554 U.S. 570 (2008) .........................................................................................*Passim*

*Drake v. Filko*,
  724 F.3d 426 (C.A.3 2013)....................................................................................... 20

*Duncan v. Becerra*,
  265 F. Supp. 3d 1106 (S.D. Cal. 2017) ................................................................... 23

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
  559 F.3d 110 (2d Cir.2009) ..................................................................................... 23

*Gould v. Morgan*,
  907 F.3d 659 (C.A.1 2018)....................................................................................... 20

i

## TABLE OF AUTHORITIES (con't)

**Page(s)**

**Cases**

*Heller v. District of Columbia,*
  801 F.3d 264 (D.C. Cir. 2015) ................................................................ 15, 18

*Henry v. County of Nassau,*
  444 F.Supp.3d 437 (E.D.N.Y. 2020), *aff'd in part, rev'd in part and remanded*, No. 20-1027-
  CV, 2021 WL 3135979 (2d Cir. July 26, 2021) ........................................ 21

*Hobby Lobby Stores, Inc. v. Sebelius,*
  723 F.3d 1114 (10th Cir. 2013) ............................................................... 24

*Hutto v. Davis,*
  454 U.S. 370 (1984) ................................................................................ 10

*In re O'Connor,*
  154 Misc. 2d 694, 585 N.Y.S.2d 1000 (Co. Ct. 1992) ............................ 16

*J.S.R. by & through J.S.G. v. Sessions,*
  330 F. Supp. 3d 731 (D. Conn. 2018) ...................................................... 24

*Johnson v. Tompkins,*
  13 F. Cas. 840 (C.C. Pa. 1833) ............................................................... 16

*Jolly v. Coughlin,*
  76 F.3d 468 (2d Cir. 1996) ...................................................................... 23

*Kachalsky v. County of Westchester,*
  701 F3d 81 (2d Cir. 2012) ..............................................................*Passim*

*Kelly v. Honeywell Int'l, Inc.,*
  933 F.3d 173 (2d Cir. 2019) ...................................................................... 6

*Kuck v. Danaher,*
  600 F.3d 159 (2d Cir. 2010) .................................................................... 22

*Libertarian Party of Erie Cty. v. Cuomo,*
  970 F.3d 106 (2d Cir. 2020) cert. denied *sub nom. Libertarian Party v. Cuomo*, No. 20-1151,
  2021 WL 2519117 (U.S. June 21, 2021) .................................................. 12

*Martinek v. Kerik,*
  294 A.D.2d 221, 743 N.Y.S.2d 80 (1st Dep't 2002) ............................... 16

*McDonald v. Chicago,*
  561 U.S. 742 (2010) ............................................................... 7, 12, 13, 14

# TABLE OF AUTHORITIES (con't)

**Page(s)**

**Cases**

*Moore v. Madigan,*
   702 F.3d 933 (7th Cir. 2012) .......................................................................... 9, 18, 19

*Ms. L. v. U.S Immigr. & Customs Enf't ("ICE,*
   310 F. Supp. 3d 1133 (S.D. Cal. 2018) .................................................................. 24

*NY State Rifle & Pistol Assn. v. Beach,*
   354 F Supp 3d 143 (N.D.N.Y. 2018)...................................................................... 15

*New York State Rifle & Pistol Assn., Inc. v. New York,*
   883 F.3d 45 (2d Cir. 2018) ...................................................................................... 20

*Nunn v. State,*
   1 Ga. 243 (1846) ...................................................................................................... 16

*O'Brien v. Keegan,*
   87 N.Y.2d 436 (1996)............................................................................................... 16

*Palmer v. District of Columbia,*
   59 F.Supp.3d 173 (2014) ......................................................................................... 15

*Payton v. New York,*
   445 U.S. 573 (1980) ............................................................................................ 24, 25

*People ex rel. Darling v. Warden of City Prison,*
   154 A.D. 413, 139 N.Y.S. 277 (1st Dep't 1913) ................................................ 13, 21

*People v. Demorio,*
   123 A.D. 665 (2d Dep't 1908).................................................................................. 13

*People v. Persce,*
   204 N.Y. 397 (1912)................................................................................................. 13

*Perros v. Cty. of Nassau,*
   238 F. Supp. 3d 395 (E.D.N.Y. 2017) ..................................................................... 21

*Peruta v. Cty. of San Diego,*
   742 F.3d 1144 (9th Cir. 2014) ............................................................................ 17, 19

*Peterson v. Martinez,*
   707 F.3d 1197 (10th Cir. 2013) ............................................................................... 10

## TABLE OF AUTHORITIES (con't)

**Page(s)**

**Cases**

*Rogers v. Grewal*,
    140 S. Ct. 1865 (2020).................................................................................. 20

*Sable v. McGuire*,
    92 A.D.2d 805, 460 N.Y.S.2d 52 (1st Dep't 1983) ................................... 16

*State v. Chandler*,
    5 La.Ann. 489 (1850) ................................................................................. 16

*State v. Reid*,
    1 Ala. 612 (1840).......................................................................................... 16

*Statharos v. New York City Taxi & Limousine Comm'n*,
    198 F.3d 317 (2d Cir. 1999) ....................................................................... 23

*Stormans, Inc. v. Selecky*,
    586 F.3d 1109 (9th Cir. 2009) .................................................................... 24

*Theurer v. Safir*,
    254 A.D.2d 89, 680 N.Y.S.2d 87 (1st Dep't 1998) ................................... 16

*Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*,
    460 U.S. 533 (1983) .................................................................................... 10

*Toussaint v. City of New York*,
    2018 WL 4288637 (E.D.N.Y. Sept. 7, 2018) ............................................ 21

*Town of Castle Rock v. Gonzales*,
    545 U.S. 748 (2005) .................................................................................... 16

*Trump v. Deutsche Bank AG*,
    943 F.3d 627 (2d Cir. 2019) ......................................................................... 6

*U.S. S.E.C. v. Citigroup Global Mkts. Inc.*,
    673 F. 3d 158 (2d Cir. 2012) ...................................................................... 24

*United States v. Miller*,
    307 U.S. 174 (1939) ...................................................................................... 7

*Valenzuela Arias v. Decker*,
    2020 WL 1847986 (S.D.N.Y. Apr. 10, 2020) ........................................... 23

iv

## TABLE OF AUTHORITIES (con't)

**Page(s)**

**Cases**

*Weinstein v. Krumpter,*
   386 F Supp 3d 220 (E.D.N.Y. 2019) ....................................................................... 21

*Wrenn v. D.C.,*
   864 F.3d 650 (D.C. Cir. 2017) ........................................................................ Passim

*Yang v. Kosinski,*
   960 F.3d 119 (2d Cir. 2020) ................................................................................. 6

**Statutes**

18 U.S.C. § 922(g) ..................................................................................................... 19

N.Y. Penal Law § 265.01(1) ............................................................................... *Passim*

N.Y. Penal Law § 265.01-b. ............................................................................... *Passim*

N.Y. Penal Law § 265.03(3). .............................................................................. *Passim*

N.Y. Penal Law § 400.00(15). ............................................................................ *Passim*

## PRELIMINARY STATEMENT

Plaintiffs are residents of the Northern Counties who hold valid New York State pistol licenses and seek to exercise their right to carry a firearm throughout New York State.[1]

There are only two means of carrying a handgun for self-defense: concealed carry and open carry. New York's discretionary licensing scheme provides an avenue for individuals to apply for a concealed carry handgun license but requires a showing of "proper cause" to carry concealed for "self-defense".[2] "Proper cause" is a subjective standard requiring the applicant to prove that their need for self-defense is greater than the general population or those engaged in the same profession. Licensing officers are afforded "broad discretion" in determining whether the standard has been met.

New York's state and federal courts deem concealed carry (and the possession of a handgun at all) to be a 'privilege' that falls outside of the scope of the rights protected by the Second Amendment. Indeed, history in this country supports various regulations and bans on concealed carry because, historically, open carry was a widely available alternative means of carry.

Open carry is banned throughout New York State; thus, there are no alternative means of carry.

Where the only means of bearing arms for self-defense - the 'core' right protected by the Second Amendment - are open carry and concealed carry, and where concealed carry is deemed a privilege falling outside of the Second Amendment protections, then open carry – the only alternative manner of bearing arms – is a right subject to the full protections of the Second

---

[1] Plaintiffs are not seeking to carry in 'sensitive places' nor is a challenge to such places (i.e., public schools) being made herein.
[2] Penal Law § 400.00(2)(f).

Amendment. As such, a ban on open carry constitutes a *per se* violation of the Second Amendment.

In New York, if a non-prohibited person were to carry a lawfully owned handgun open and holstered on their person for self-defense, they would be subject to arrest, felony charges, mandatory state prison, fines, the permanent forfeiture of their Second Amendment rights, and loss of their property (all firearms). Penal Law §§ 265.01(1), 265.01-b, 265.03(3).

For a licensed handgun owner, like Plaintiffs, to "open carry" a lawfully possessed handgun, registered thereon, on their person for self-defense, they would be subject to arrest, felony charges, mandatory state prison, fines, the permanent forfeiture of their right to possess firearms in the future, and loss of property (all firearms). Penal Law §§ 265.01(1), 265.01-b, 265.03(3), 400.00(15).

Similarly, if an individual who holds an unrestricted "concealed carry" handgun license issued outside of New York City, like Plaintiff William Sappe, carries a handgun concealed in New York City, he will be subject to a felony conviction, mandatory state prison, fines, the permanent forfeiture of the right to possess firearms in the future, and loss of property (all firearms). Penal Law §§ 265.01(1), 265.01-b, 265.03(3), 400.00(15). This is so because a concealed carry handgun license issued outside of New York City is not valid in the City. See, § 400.00(6).

By this motion, Plaintiffs seek an order temporarily enjoining Defendants, their officers, agents, servants, and employees, all other persons who are in active concert or participation with Defendants receiving actual notice of such order by personal service or otherwise, from enforcing §§ 265.01(1), 265.01-b, 265.03(3), and 400.00(15) against (i) Plaintiffs and those similarly situated individuals who possess a valid NYS handgun license issued by a statutory

licensing officer in New York State, who carry a handgun, registered thereon, open and

exposed on their person in New York State, including the 5 boroughs of New York City; and

(ii) Plaintiff William Sappe and those similarly situated individuals who possess a valid

unrestricted NYS concealed carry handgun license issued by a licensing officer outside of New

York City who carry a handgun registered thereon concealed on their person within the 5

boroughs of New York City; and such further and different relief as this Court deems just and

proper.

   Without the requested relief, Plaintiffs will continue to suffer irreparable harm.

**STATEMENT OF FACTS**

   Plaintiffs' Complaint alleges various and separate grounds for violations of the Second

Amendment. The predominant constitutional violation challenged is New York's criminalization

of the "mere possession" of handguns by individuals who have no prohibitors to the purchase,

receipt, possession, or ownership of firearms under state or federal law.

   The relief sought herein[3]  will affect the population of individuals who, like Plaintiffs,

hold a valid handgun license issued by a New York State statutory licensing officer. Penal Law §

265.00(10).

   Each Plaintiff has submitted to New York State's statutory licensing scheme under Penal

Law § 400.00*, et seq.*, has passed the requisite background investigation, including a criminal

and mental health background check, and has been found fit to possess handguns. Plaintiffs

Jason Frey and Brianna Frey hold valid NYS concealed carry handgun licenses restricted to

carrying during "sportsman" issued by a County Court Judge in Westchester County; Jack Cheng

holds a valid NYS concealed carry handgun license restricted to "target shooting" issued by the

---

[3] For purposes of the instant Preliminary Injunction motion, Plaintiffs are seeking only some of the relief sought in
their Complaint.

3

Police Commissioner of Nassau County; and William Sappe holds a valid unrestricted NYS concealed carry handgun license issued by a County Court Judge in Orange County.  The Declarations of Jason Frey, Brianna Frey, Jack Cheng, and William Sappe, attached to the Declaration of Amy L. Bellantoni, are fully incorporated by reference herein. [See, Plaintiffs' Declarations annexed to the Declaration of Amy L. Bellantoni ("Bellantoni Dec.") as Exhibit 1].

First, all Plaintiffs seek to enjoin the enforcement of certain criminal statutes against them for the "mere possession" of their registered handguns in public, carried open and holstered on their person. §§ 265.01(1), 265.01-b, 265.03(3), and 400.00(15).

New York's handgun licensing scheme and the criminal Penal Law statutes work hand-in-hand. While the Second Amendment protects the individual right to keep and bear arms in common use for self-defense, the exercise of that right in New York State requires seeking, and then obtaining, permission from the government through a discretionary licensing scheme. The mere exercise of the individual right to keep and carry a handgun for self-defense - in the first instance - is punishable by arrest, incarceration, prosecution, civil and criminal penalties, the permanent loss of one's Second Amendment rights, and the loss of one's property (firearms).

No other constitutional right requires permission from the government before it can be exercised.  The application of §§ 265.01(1), 265.01-b, 265.03(3), and 400.00(15) to non-prohibited persons for the "mere possession" of a handgun open and holstered in public violates the Second Amendment.

Second, Plaintiff William Sappe, who holds an unrestricted NYS concealed carry license, seeks to enjoin the enforcement of criminal statutes against him and similarly situated individuals for carrying his registered handgun concealed on his person in New York City.

By virtue of the issuance of his unrestricted NYS concealed carry license, a County Court judge already found Mr. Sappe established "proper cause" to carry a handgun unrestricted and concealed. See, § 400.00(2)(f). Because § 400.00(6) deems an unrestricted concealed carry handgun license issued outside of New York City invalid in the 5 boroughs of New York City, any full carry licensee seeking to carry their registered handgun in New York City, like Mr. Sappe, is required to seek and obtain a special license from the NYPD License Division validating their full carry license. The NYPD, however, has no specific procedure for such validation and requires such licensees to apply from scratch -reestablish "proper cause" and "moral character" notwithstanding that a superior court judge previously found both to exist by virtue of the issuance of the unrestricted NYS handgun license in the first instance. [See, June 9, 2021 Decision and Order of the Hon. Eileen Rakower, J.S.C. and transcript of the underlying oral argument annexed to the Bellantoni Dec. as Exhibit 2, p. 8-19]. The intrastate geographical restrictions of § 400.00(6) violate the Second Amendment, facially and as applied to Mr. Sappe.

Plaintiffs have a substantial likelihood of succeeding on the merits of their claims, are suffering and will continue to suffer irreparable [and presumed] harm as a result of the constitutional violations alleged without the requested relief. As set forth below, the balance of the equities tips in Plaintiffs' and the benefits of enjoining the challenged statutes serves the public interest well, warranting granting the requested relief.

## LEGAL ARGUMENT

### Preliminary Injunction Standard

To obtain a preliminary injunction, a movant must show irreparable harm and meet either of two standards: (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of hardships tipping

decidedly in the movant's favor." *Connecticut State Police Union v. Rovella*, 494 F. Supp. 3d 210, 218 (D. Conn. 2020) quoting, *Trump v. Deutsche Bank AG*, 943 F.3d 627, 635 (2d Cir. 2019), rev'd on other grounds, ⸺ U.S. ⸺, 140 S.Ct. 2019, 207 L.Ed.2d 951 (2020); *Kelly v. Honeywell Int'l, Inc.*, 933 F.3d 173, 184 (2d Cir. 2019).

However, where a party seeks to enjoin "government action" taken pursuant to a statutory or regulatory scheme, an injunction should be granted only if the movant demonstrates a likelihood of success on the merits. *Ibid.* citing, *Deutsche Bank AG*, 943 F.3d at 635. This "exception" to the use of the serious-questions standard "reflects the idea that governmental policies implemented through legislation ... are entitled to a higher degree of deference and should not be enjoined lightly." *Id.* at 219. Rather, the likelihood-of-success standard is appropriate in a case "where the full play of the democratic process involving both the legislative and executive branches has produced a policy in the name of the public interest embodied in a statute and implementing regulations." *Ibid*.

In addition to demonstrating a likelihood of success on the merits, the movant must show that enjoining government action would serve the public interest and that the balance of equities tips in the movant's favor. *Ibid.* citing, *Yang v. Kosinski*, 960 F.3d 119, 127 (2d Cir. 2020).

# I. PLAINTIFFS HAVE A SUBSTANTIALLY HIGH LIKELIHOOD OF SUCCESS

## A. THE SECOND AMENDMENT

The Second Amendment to the United States Constitution provides: "A well regulated militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

### i. The "Core" of the Amendment is the Individual Right to Self-Defense[4]

At the 'core' of the Second Amendment is the individual right to self-defense. The Amendment protects the right to keep and carry weapons for self-defense in case of violent confrontation. *District of Columbia v. Heller*, 554 U.S. 570, 592, 676 (2008); *McDonald v. Chicago*, 561 U.S. 742 (2010) ("Two years ago, in *District of Columbia v. Heller*, 554 U.S. 570 [] (2008), this Court held that the Second Amendment protects the right to keep and bear arms for the purpose of self-defense."); *Caetano v. Massachusetts,* 577 U.S. 411 (2016); see also, *Wrenn v. D.C.*, 864 F.3d 650, 657, 664 (D.C. Cir. 2017) (under *Heller I*, the Second Amendment protects an individual right to self-defense).

> "Self-defense is not "merely a 'subsidiary interest' of the right to keep and bear arms…self-defense…was the central component of the right itself."

*Id.* at 599 (emphasis supplied).

### ii. Applies to State Action

The Second Amendment applies in full force and effect to the states. *McDonald v. Chicago*, 561 U.S. 742 (2010).

### iii.  Protects All Weapons in "Common Use" for Self-Defense

The "Arms" protected by the Second Amendment are all weapons in "common use" for lawful purposes, including self-defense. *Heller*, 554 U.S. at 627 (2008) citing, *United States v Miller*, 307 U.S. 174, 179 (1939). The Second Amendment extends, *prima facie*, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding. *Heller,* 554 U.S. at 582.

---

[4] The plain language of the Second Amendment, longstanding historical precedent, and the Supreme Court's confirmation of the same in *Heller, McDonald,* and *Caetano* confirm that the Amendment embodies the individual right to self-defense. As discussed below, the Supreme Court has never found, held, nor intimated that the protected right to self-defense was limited to "defending one's home." Self-defense means just that – defense of self, which necessarily exists wherever your 'self' is located, not simply inside of your house.

Under the Second Amendment, the government may only ban the carrying of arms that are not within the scope of Second Amendment's protection, such as unusually dangerous arms, and may disqualify specific, particularly dangerous individuals from carrying arms. *Heller,* 554 U.S. at 627.

In a *per curiam* opinion, the Supreme Court in *Caetano* held that the Second Amendment extends to all weapons that constitute "bearable arms."

> "As *Heller* explained, the term includes any weapon of offence or thing that a man wears for his defence, or takes into his hands, that is carried for the purpose of <u>offensive or defensive action</u>."

*Caetano*, 577 U.S. at n 3 (emphasis added) (holding that stun guns are protected by the Second Amendment; Massachusetts law criminalizing the possession of stun guns violates the Second Amendment) citing, *Heller*, 554 U.S. at 584 (internal quotation marks omitted); accord, *Avitable v. Beach*, 368 F. Supp. 3d 404 (N.D.N.Y. 2019) (holding stun guns and dart guns are in common use for self-defense; New York's ban on stun guns and dart guns violates the Second Amendment).

### iv. Handguns are Bearable Arms in "Common Use" for Self-Defense

It is beyond cavil that handguns are "bearable arms" and "commonly used" for self-defense.  Indeed, handguns constitute an entire class of "arms" that are overwhelmingly chosen by American society for the lawful purpose of self-defense. *Heller*, 554 U.S. at 628-629

("handguns are the most popular weapon chosen by Americans for self-defense").

### v.  Protects the Right to Carry Handguns

"Nothing in the text of the Second Amendment suggests its exercise is limited to the home." *Heller*, 554 U.S. at 592 (holding that the Second Amendment protects "the right to possess and carry weapons in case of confrontation.")

Over the course of 8 pages, the Supreme Court analyzed the term "bear" when used in connection with the term "arms", concluding that the right to "bear arms" is the right to carry weapons in case of confrontation.

> "At the time of the founding, as now, to 'bear' meant to 'carry.' When used with 'arms,' however, the term has a meaning that refers to carrying for a particular purpose-confrontation ... Although the phrase implies that the carrying of the weapon is for the purpose of 'offensive or defensive action,' it in no way connotes participation in a structured military organization."

*Heller*, 554 U.S. at 584.

As even the Second Circuit has recognized, "The plain text of the Second Amendment does not limit the right to bear arms to the home." *Kachalsky v. County of Westchester*, 701 F3d 81, 89, n 10 (2d Cir 2012).

"To confine the right to be armed to the home[5] is to divorce the Second Amendment from the right of self-defense described in *Heller* and *McDonald*." *Moore v. Madigan*, 702 F.3d 933, 937 (7th Cir. 2012).

Put another way, finding that the right to be armed is limited to your house is like trying to separate self-defense from the Second Amendment itself – it cannot be done. The Second Amendment is the constitutional embodiment of "self-defense", the core[6] - the essence - of the Amendment itself. An individual's inherent and pre-existing right to 'defense of self' cannot be divorced, or separated out, from the Second Amendment.

---

[5] See, further discussion at Point (C)(i) below.
[6] Core is defined as "the central, innermost, or most essential part of" something. Synonymous with essence, heart, linchpin, center. https://www.dictionary.com/browse/core

## B. THE COURT IS BOUND BY SUPREME COURT JURISPRUDENCE

*Heller* expressly recognized and confirmed the existence of the right to carry weapons in public for self-defense:

> "Putting all of these textual elements together, we find that they guarantee the individual right to possess and carry weapons in case of confrontation."

*Heller*, 554 U.S. at 592, 599 ("Self-defense is not "merely a 'subsidiary interest' of the right to keep and bear arms…self-defense…was the central component of the right itself.").

Federal district courts and circuit courts are bound to adhere to the controlling decisions of the Supreme Court. Justice Rehnquist emphasized the importance of precedent when he observed that "unless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be." *Hutto v. Davis*, 454 U.S. 370, 375 (1984); *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533 (1983) (the Supreme Court, in a per curiam decision, stated: "Needless to say, only this Court may overrule one of its precedents.").

To the extent that the argument is made that the Supreme Court's historical analysis of the Second Amendment right in *Heller*, *McDonald*, and *Caetano* is mere 'dicta,' the inferior federal courts "are bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements." *Peterson v. Martinez*, 707 F.3d 1197, 1210 (10th Cir. 2013).

The federal district and circuit courts are bound to adhere to Supreme Court precedent, which confirms that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *Heller*, 554 U.S. at 592.

10

### C. BANNING OPEN CARRY IS A *PER SE* VIOLATION OF
### THE SECOND AMENDMENT

"Under *Heller I*, "complete prohibition[s]" of Second Amendment rights are always invalid. It's appropriate to strike down such "total ban[s]" without bothering to apply tiers of scrutiny because no such analysis could ever sanction obliterations of an enumerated constitutional right. With this categorical approach to such bans, *Heller I* ensured that judicial tests for implementing gun rights would not be misused to swallow those rights whole. *Wrenn v. D.C.*, 864 F.3d 650, 665 (D.C. Cir. 2017) citing, *Heller*, 554 U.S. at 629.[7]

Circuit courts holding that burdens on carrying only trigger intermediate scrutiny have "dispensed with the historical digging that would have exposed that inference as faulty - digging that *Heller I* makes essential to locating the Amendment's edge, or at least its core." *Wrenn*, 864 F.3d at 661–62.[8]

"*Heller* reveals this much at least: the Second Amendment erects some absolute barriers that no gun law may breach. This lesson will prove crucial as we consider the challenges presented in these cases to the District of Columbia's limits on carrying guns in public." *Wrenn v. D.C.*, 864 F.3d 650, 655 (D.C. Cir. 2017).

---

[7] In support of the District of Columbia's position in *Wrenn*, Attorneys General from 9 states, including New York, filed a joint *amicus brief* which, *inter alia*, urged the position that the 'core' right was limited to "self-defense in the home". The Circuit Court's opinion in *Wrenn* bears out a tacit rejection of such a narrow view as inconsistent with Supreme Court jurisprudence and the longstanding historical precedent. [See, Brief *Amicus Curiae* of Maryland…New York, Oregon, and Washington annexed to the Bellantoni Dec. as Exhibit 3].

[8] "The hasty inference appears in a Second Circuit opinion on New York's good-reason law, where the court reasons that the right to bear must count for less than the right to keep arms since the former has been regulated more rigorously. *Kachalsky v. Cty. of Westchester*, 701 F.3d 81, 94-97 (2d Cir. 2012). The court cites, for example, *Heller I*'s approval of longstanding bans on carrying near sensitive sites. 701 F.3d at 94. But such traditional limits don't prove that the right to bear arms is weaker in our tradition since the right to keep arms has also been subject to longstanding regulations: *Heller I* itself cites bans on possession by felons. 554 U.S. at 626, 128 S.Ct. 2783." *Wrenn*, 864 F.3d at 662.

### i. The Pre-Existing Right to Self-Defense is Attached to the Individual

While New York state and federal courts attempt to confine the Second Amendment to the home[9], there is no Supreme Court decision limiting the right to self-defense to a building. To the contrary, the pre-existing right to self-defense - to possess and carry arms for self-defense - is attached to the individual, wherever he or she goes. See, *Wrenn*, 864 F.3d at 661 ("Reading the Amendment, applying *Heller I*'s reasoning, and crediting key early sources, we conclude: the individual right to carry common firearms beyond the home for self-defense - even in densely populated areas, even for those lacking special self-defense needs -falls within the core of the Second Amendment's protections.").

In *Caetano v. Massachusetts*, 577 U.S. 411 (2016), the plaintiff - a homeless woman – challenged her conviction under a Massachusetts law criminalizing the possession of stun guns.[10] The stun gun was found in Ms. Caetano's purse when she was detained in a store parking lot for suspicion of shoplifting.

Confirming that the Second Amendment protects all weapons in "common use for self-defense", including stun guns, there was no intimation by the Supreme Court that carrying a weapon for self-defense was limited to the home. Ms. Caetano did not have a home – she was homeless. *Everywhere* Ms. Caetano traveled, she was carrying a weapon in common use for self-defense. "Under Massachusetts law, however, Caetano's mere possession of the stun gun that may have saved her life made her a criminal." *Caetano*, 577 U.S. 413.

---

[9] *Kachalsky v. Cty. of Westchester*, 701 F.3d 81 (2d Cir. 2012) (the "core" protection of the Second Amendment is the "right of law-abiding, responsible citizens to use arms in defense of hearth and home"); *Libertarian Party of Erie Cty. v. Cuomo*, 970 F.3d 106, 127 (2d Cir. 2020), cert. denied sub nom. *Libertarian Party v. Cuomo*, No. 20-1151, 2021 WL 2519117 (U.S. June 21, 2021);

[10] Striking the Massachusetts criminal statute as violating the Second Amendment, the Court declared, "The Court has held that the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding…and that this Second Amendment right is fully applicable to the States." *Caetano*, 577 U.S. at 411 citing, *Heller*, 554 U.S. at 582 and *McDonald v. Chicago*, 561 U.S. 742, 750 (2010).

Jaime Caetano possessed an <u>illegal</u> stun gun; Plaintiffs possess <u>legally owned</u> handguns. Notwithstanding, Plaintiffs' mere possession of a legally owned handgun in public "for self-defense" makes them felons. As with the Massachusetts criminal statutes, §§ 265.01(1), 265.01-b, 265.03(2), 265.03(3) violate the Second Amendment[11] and must be enjoined and ultimately stricken.

### ii. Carrying a Handgun is Inherent in the Core Right to Self-Defense

In *McDonald*, the Supreme Court reaffirmed, in *Heller* "we concluded, citizens must be permitted "to use [handguns] for the core lawful purpose of self-defense." *McDonald*, 561 U.S. at 767 (internal citation omitted). "*Heller* makes it clear that this right is deeply rooted in this Nation's history and tradition. *Heller* explored the right's origins, noting that the 1689 English Bill of Rights explicitly protected a right to keep arms for self-defense and that by 1765, Blackstone was able to assert that the right to keep and bear arms was one of the fundamental rights of Englishmen. Blackstone's assessment was shared by the American colonists. As we noted in *Heller*, King George III's attempt to disarm the colonists in the 1760's and 1770's provoked polemical reactions by Americans invoking their rights as Englishmen to keep arms. The right to keep and bear arms was considered no less fundamental by those who drafted and ratified the Bill of Rights." *McDonald*, 561 U.S. at 767 (internal citations and quotations omitted).

---

[11] *People ex rel. Darling v. Warden of City Prison*, 154 A.D. 413, 425, 139 N.Y.S. 277 (1st Dep't 1913) (analyzing the constitutionality of a 1911 amendment to New York's Sullivan Law, "[a]s the former law prohibited the carrying concealed a revolver upon the person, even upon one's own premises, the present law is but a step further and prohibits the possession of a concealable revolver upon the premises without a permit."); see also, *People v. Demorio*, 123 A.D. 665 (2d Dep't 1908); *People v. Persce*, 204 N.Y. 397 (1912).

### iii. Penal Law §§ 265.01(1), 265.01-b, and 265.03(3) Violate the Second Amendment[12]

Statutes criminalizing the "mere possession" of handguns, generally and as applied to non-prohibited individuals like Plaintiffs, violate the Second Amendment.

"The [m]ere possession of an object that is commonplace and perfectly legal under federal law and in forty-four states will land you in prison, result in the loss of your rights including likely the right to vote, and …cause you irreparable monetary and reputational damages, as well as your personal liberty.  All of this despite the absence of even a single victim."[13]

This quote from Mark W. Smith referred to the assault weapons ban, but easily applies to the possession of handguns in New York State. See, e.g., *Heller*, 554 U.S. at 629 ("[A]s we have observed, [ ] the American people have considered the handgun to be the quintessential self-defense weapon.").

Given the decisions in *Heller*, *McDonald*, and *Caetano*, Defendants (i) may not ban the keeping and bearing of arms for self-defense that are not unusually dangerous, like handguns[14]; (ii) may not deny non-prohibited individuals the right to carry arms in non-sensitive places; and (iii) may not infringe on the right to keep and carry the type of arms that are protected by the Second Amendment. See, *Wrenn*, supra; *Caetano,* supra; *Heller v. District of Columbia,* 801 F.3d 264 (D.C. Cir. 2015); *Palmer v. District of Columbia,* 59 F.Supp.3d 173 (2014).

---

[12] In *Heller*, District of Columbia law banned handgun possession by making it a crime to carry an unregistered firearm and then prohibited the registration of handguns. *Heller*, 554 U.S. at 570. In New York, carrying a handgun without a license is a crime; concealed carry is a discretionary privilege, and open carry is forbidden.

[13] See, Mark W. Smith, Assault Weapon Bans: Unconstitutional Laws for Made-up Category of Firearms, 43 Harvard J. Law & Public Policy 357, 360 (2020). One could add to this list of consequences the forfeiture of the firearm itself.

[14] C f., *Avitable v Beach*, 368 F. Supp. 3d 404 (N.D.N.Y. 2019) (holding that stun guns and dart guns are in common use for self-defense, thus, New York's ban on stun guns and dart guns violates the Second Amendment).

### iv.  In New York (and Historically), Concealed Carry Falls Outside of the Scope of the Second Amendment

The right to carry firearms for self-defense can only be exercised in two ways: concealed or open carry.

Only 2 types of licenses may be issued under New York's licensing scheme: (i) on premises (residence or business) and (ii) concealed unrestricted carry.  See, § 400.00(2). There is no avenue to obtain a license for open carry, the exercise of which is punishable as a felony offense and subject to mandatory state prison.

The issuance of an unrestricted concealed carry license requires establishing "proper cause" to the satisfaction of a licensing officer, to wit, "demonstrating a special need for self-protection distinguishable from that of the general community or of persons engaged in the same profession." *Kachalsky*, 701 F3d at 86-87. Self-defense alone does not constitute "proper cause" for the issuance of an unrestricted concealed carry license in New York State. *NY State Rifle & Pistol Assn. v. Beach*, 354 F Supp 3d 143, 145-146 (NDNY 2018); see, *Kachalsky*, 701 F3d at 86-87 ("generalized desire to carry a concealed weapon to protect one's person and property does not constitute 'proper cause' nor does living in, or being employed in, a 'high crime area'") citing, *In re O'Connor*, 585 N.Y.S.2d 1000, 1003 (1992); *Bernstein v. Police Dep't of City of New York*, 85 A.D.2d 574, 574, 445 N.Y.S.2d 716 (1st Dep't 1981), *Martinek v. Kerik*, 294 A.D.2d 221, 221-22, 743 N.Y.S.2d 80 (1st Dep't 2002); *Theurer v. Safir*, 254 A.D.2d 89, 90, 680 N.Y.S.2d 87 (1st Dep't 1998); *Sable v. McGuire*, 92 A.D.2d 805, 805, 460 N.Y.S.2d 52 (1st Dep't 1983).

A benefit is not a protected right if government officials may grant or deny it in their discretion. *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (citation omitted).

In New York, concealed carry is not a protected right: (i) its exercise requires proving that your need for self-defense is *greater* than everyone else in society and/or in your profession; (ii) the state has the power to severely restrict the concealed carriage of your handgun depending on your hobbies (target, hunting, sportsman) or employment; and (iii) the licensing officer has "extraordinary power" and is "statutorily invested with the power to *sua sponte* revoke or cancel a license." *O'Brien v. Keegan*, 87 N.Y.2d 436 (1996).

Nineteenth-century case law bears out the recognized right to carry firearms:[15] *State v. Reid*, 1 Ala. 612, 616-17 (1840) (allowing restrictions on the "manner of bearing arms" but not limits on carrying so severe "as to render [arms] wholly useless for the purpose of defence"); *Nunn v. State*, 1 Ga. 243, 251 (1846) (invalidating a ban on carrying insofar as it prohibited "bearing arms openly"); *State v. Chandler*, 5 La.Ann. 489 (1850) (observing that the Amendment shields a right to open carry); *Johnson v. Tompkins*, 13 F. Cas. 840, 852 (C.C. Pa. 1833) (finding in the Second Amendment and a state analogue "a right to carry arms in defence of [one's] property or person, and to use them, if ... assailed with such force, numbers, or violence as made it necessary for [one's] protection or safety"); *Andrews v. State*, 50 Tenn. 165, 187 (1871) (invalidating a ban on carrying pistols "publicly or privately, without regard to time or place, or circumstances"); *Peruta v. Cty. of San Diego*, 742 F.3d 1144, 1174 (9th Cir. 2014), vacated, 781 F.3d 1155, 1156-63 (9th Cir. 2015) (citing *Bliss v. Commonwealth*, 12 Ky. 90, 93 1822 (striking down a prohibition on "wearing concealed arms"); *Cockrum v. State*, 24 Tex. 394, 403 (1859) (allowing bans on the carrying of "exceeding[ly] destructive weapon[s]," but not total bans).

---

[15] *Wrenn v. D.C.*, 864 F.3d 650, 658 (D.C. Cir. 2017).

> "Indeed, the few nineteenth-century cases that upheld onerous limits on carrying against challenges under the Second Amendment or close analogues are sapped of authority by *Heller I* because each of them assumed that the Amendment was only about militias and not personal self-defense. So *Heller I* rejects their crucial premise. "And with these cases off the table, the remaining cases speak with one voice" on the Amendment's coverage of carrying as well as keeping arms. *Peruta*, 742 F.3d at 1174. Under *Heller I*'s treatment of these and earlier cases and commentaries, history matters, and here it favors the plaintiffs."

*Wrenn*, 864 F.3d at 658.

### v. Banning Open Carry is a *Per Se* Violation of the Second Amendment – New York Has No Ample Alternative Channels for Bearing Arms

Historically, bans and/or regulations on concealed carry have been upheld because the ability to open carry was unabridged and provided an alternative means of carry.

As with the District of Columbia's ban on the right to 'keep' handguns in the home by criminalizing their possession (notwithstanding the existence of a handgun licensing scheme), New York has unconstitutionally banned the right of "the people" to bear arms.[16]

Traditional carrying restrictions have generally left ample opportunities for bearing arms. As an example, cited by the Second Circuit, bans on carrying only in small pockets of the outside world (e.g., near "sensitive" sites, *Heller I*, 554 U.S. at 626-27, 128 S.Ct. 2783) impose only lightly on most people's right to "bear arms" in public. As Judge Posner writes: "[W]hen a state bans guns merely in particular places, such as public schools, a person can preserve an undiminished right of self-defense by not entering those places...." *Moore v. Madigan*, 702 F.3d 933, 940 (7th Cir. 2012) ("A blanket prohibition on carrying gun in public prevents a person from defending himself anywhere except inside his home; and so substantial a curtailment of the

---

[16] "The idea that the government must leave ample channels for keeping and for carrying arms explains much of the analysis in *Heller I*. It explains why *Heller I* saw no need to bother with "any of the [familiar] standards of scrutiny" in reviewing a ban on ownership that left no means of defense by handguns at home. 554 U.S. at 628, 128 S.Ct. 2783. It explains why the Court favorably treated cases allowing bans on concealed carry only so long as open carry was allowed." *Wrenn v. D.C.*, 864 F.3d 650, 662–63 (D.C. Cir. 2017).

right of armed self-defense requires a greater showing of justification than merely that the public might benefit on balance from such a curtailment, though there is no proof it would. In contrast, when a state bans guns merely in particular places, such as public schools, a person can preserve an undiminished right of self-defense by not entering those places; since that's a lesser burden, the state doesn't need to prove so strong a need.").

New York's ban on open carry leaves no alternative channels for the general population of non-prohibited people to bear arms for self-defense. The idea that the government must leave ample channels for keeping and for carrying arms explains much of the analysis in *Heller I*. *Wrenn*, 864 F.3d at 662.[17]

### vi. Criminalizing "Mere Possession" of Handguns Absent Harmful Intent Has No Longstanding, Historical Support

There is no Founding Era support for criminalizing the possession or carrying firearms for self-defense. Even the federal government does not criminalize the "mere possession" of firearms by non-prohibited individuals. See, e.g., 18 U.S.C. § 922(g).

At best, the "surety laws" of England required individuals accused of posing a threat to post a surety bond – "and eve he could go on carrying without criminal penalty. He simply had to post money that would be forfeited if he breached the peace or injured others – a requirement from which from which he was exempt if *he* needed self-defense. *Wrenn*, 864 F.3d at 661 (emphasis supplied).

---

[17] "[T]he Second, Third, and Fourth Circuits ... declined to undertake a complete historical analysis of the scope and nature of the Second Amendment right outside the home.... As a result, they misapprehend both the nature of the Second Amendment right and the implications of state laws that prevent the vast majority of responsible, law-abiding citizens from carrying in public for lawful self-defense purposes.... [They] failed to comprehend that carrying weapons in public for the lawful purpose of self defense is a central component of the right to bear arms. *Peruta*, 742 F.3d at 1173-75. Indeed, that conclusion is shared by the only other circuit that has surveyed the relevant history through the lens of *Heller I*: the Seventh. See *Moore*, 702 F.3d at 935-37 (striking down a more widely applicable carrying ban)." *Wrenn*, 864 F.3d at 664.

> "Under surety laws, put simply, everyone started out with robust carrying rights.
> Those reasonably accused were then burdened. And only then did self-defense
> needs make a difference, by exempting even the accused from that burden. A
> showing of special need did not expand carrying for the responsible; it shrank
> burdens on carrying by the (allegedly) reckless."

*Ibid.*

Historically, everyone started out with "robust carrying rights"; those accused of

breaching the peace were only subject to civil penalties and could continue carrying if they

demonstrated a "special need". *Id.* In stark contrast, New Yorkers start out with no carrying

rights and must prove to a government official's satisfaction they are 'worthy' of exercising

some abridged version of them.

The New York Legislature and courts refuse to acknowledge the historical analyses and

holdings in *Heller*, *McDonald*, and *Caetano*, which invalidate the very premise upon which New

York's discretionary handgun licensing scheme and case law perpetuating over 100 years of

unsound Second Amendment jurisprudence rely. See, *Rogers v Grewal*, 140 S. Ct. 1865, 1867, n.

1 (2020) (Thomas, J. ruminating on the circuit's resistance to the decisions in *Heller* and

*McDonald*) ("we explicitly rejected the invitation to evaluate Second Amendment challenges

under an "interest-balancing inquiry, with the interests protected by the Second Amendment on

one side and the governmental public-safety concerns on the other' [*Heller*] at 689, 128 S.Ct.

2783 (BREYER, J., dissenting). But the application of the test adopted by the courts of appeals

has devolved into just that [and] its application has yielded analyses that are entirely inconsistent

with *Heller*.") citing to *Kachalsky v. County of Westchester*, 701 F.3d 81, 100 (C.A.2 2012)

(deferring to the legislature's conclusion that "public safety ... outweighs the need to have a

handgun for an unexpected confrontation"); *New York State Rifle & Pistol Assn., Inc. v. New

York*, 883 F.3d 45, 64 (C.A.2 2018) (stating that a "review of state and local gun control"

involves a "balancing of the individual's constitutional right to keep and bear arms against the

states' obligation to 'prevent armed mayhem' " (quoting *Kachalsky*, supra, at 96)), vacated and remanded, ante, p. ——; *Gould v. Morgan*, 907 F.3d 659, 676 (C.A.1 2018) (stating that "courts must defer to a legislature's choices among reasonable alternatives" when the legislature has "take[n] account of the heightened needs of some individuals to carry firearms for self-defense and balance[d] those needs against the demands of public safety"); *Drake v. Filko*, 724 F.3d 426, 440 (C.A.3 2013) ("refus[ing] ... to intrude upon the sound judgment and discretion of the State of New Jersey" that only "those citizens who can demonstrate a 'justifiable need' to do so" may carry handguns outside the home).

An aerial view of the Second Amendment landscape in New York reveals that the Legislature and courts have sheltered the people from exercising the freedoms confirmed in *Heller, McDonald,* and *Caetano*, which illuminated the vast and extensive right protected by the Second Amendment.

Federal and state courts post-*Heller* painstakingly avoid Supreme Court precedent by refusing to recognize any protected right to possess or keep handguns in the first instance – mere possession of a handgun (unlike rifles and shotguns) continues to be prosecuted criminally. The state's Penal Law and antiquated handgun licensing scheme - created in 1910 under the erroneous view that the Second Amendment applied to the collective rights of a militia, not an individual right, and that it did not apply to the states[18], have not been brought into constitutional compliance with *Heller* and *McDonald.* See, *Henry v County of Nassau*, 444 F.Supp.3d 437 (E.D.N.Y. 2020), *aff'd in part, rev'd in part and remanded*, No. 20-1027-CV, 2021 WL 3135979 (2d Cir. July 26, 2021) ("numerous courts in this Circuit have previously found that there is no constitutional right to a handgun license in New York State.") citing, *Weinstein v Krumpter*, 386

---

[18] *Ex rel. Darling*, 154 A.D. at 419 ("It is settled by a long line of authorities that the first ten amendments to the Constitution of the United States are not operative on the States.")

F Supp 3d 220, 232 (E.D.N.Y. 2019); *Toussaint v. City of New York*, No. 17-CV-5576, 2018 U.S. Dist. LEXIS 152985, 2018 WL 4288637, at *7 (E.D.N.Y. Sept. 7, 2018) (dismissing case because the plaintiff "cannot show that he has a protected liberty or property interest in a 'possible future [handgun] license' "; *Perros v. Cty. of Nassau*, 238 F. Supp. 3d 395, 401 (E.D.N.Y. 2017) ("Under New York law, it is well- settled that the possession of a handgun license is a privilege, not a right." (internal citations omitted)); c.f., *Kuck v. Danaher*, 600 F.3d 159, 165 (2d Cir. 2010) (suggesting that, while a Connecticut plaintiff has a liberty interest in a firearm permit, a New York plaintiff may not have one because New York licensing officers have broader discretion in issuing firearm licenses).

The few nineteenth-century cases that upheld onerous limits on carrying against challenges under the Second Amendment or close analogues are sapped of authority by *Heller I* because each of them assumed that the Amendment was only about militias and not personal self-defense. *Wrenn*, 864 F.3d at 658-59.

"[I]t was *Heller I*'s *central holding* that the reason for the Amendment's passage did not narrow the sweep of its protections. Whatever motivated the Amendment, at its core was the right to self-defense. Thus, the Amendment's core generally covers carrying in public for self-defense. We say "generally" because, as noted, the Supreme Court has taught in *Heller I* that legal regulations of possession or carrying that are "longstanding" i.e., bans on possession by felons or bans on carrying near sensitive sites, reflect limits to the preexisting right protected by the Amendment." *Wrenn*, 864 F.3d at 658-59 (rejecting government's argument that self-defense

in public and/or in densely populated areas falls outside of the Amendment's core protections) citing, *Heller*, 554 U.S. at 598-600, 630 (emphasis supplied) (internal citations omitted).[19]

## II.  PLAINTIFFS WILL CONTINUE TO SUFFER IRREPARABLE HARM

Irreparable harm is the single most important prerequisite to the Court's issuance of preliminary injunctive relief. *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir.2009). "In the Second Circuit, it is well-settled that an alleged constitutional violation constitutes irreparable harm." *Valenzuela Arias v. Decker*, No. 20 CIV. 2802 (AT), 2020 WL 1847986, at *5 (S.D.N.Y. Apr. 10, 2020) citing, *Connecticut Dep't of Envtl. Prot. v. O.S.H.A.*, 356 F.3d 226, 231 (2d Cir. 2004); *Statharos v. New York City Taxi & Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999) (no separate showing of irreparable harm is necessary); *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996) ("[I]t is the alleged violation of a constitutional right that triggers a finding of irreparable harm.") (emphasis supplied).

When a plaintiff alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016).

Without question, Plaintiffs will be prosecuted criminally for openly carrying a lawfully owned handgun in public in the absence of the requested relief. Likewise, if Plaintiff William

---

[19] The "right secured in 1689 ... was by the time of the founding understood to be an individual right protecting against both public and private violence so that the resulting Amendment guarantees the right to possess and carry weapons in case of confrontation… Early commentators seem to confirm that whatever Northampton banned on the shores of England or colonial America, the right to bear arms by the time of the Founding was thought to protect carrying for self-defense generally. Thus, *Heller I* cites the view of James Wilson—early commentator, virtual coauthor of the Constitution, and member of the Supreme Court's first cohort—that Founding-era Northampton laws banned only the carrying of 'dangerous and unusual weapons, in such a manner, as will naturally diffuse a terrour among the people.'" *Wrenn*, 864 F.3d at 660-661 (also rejecting government's surety argument attempting to justify 'special need to carry' requirement) (emphasis supplied) (internal citations omitted) citing, *Heller*, 554 U.S. at 592-594.

Sappe carries his lawfully owned handgun concealed within New York City - even if merely

traveling through the Bronx and Queens to Long Island – he is subject to criminal penalties.

## III. THE EQUITIES TIP IN PLAINTIFFS' FAVOR AND THE REQUESTED RELIEF SERVES THE PUBLIC INTEREST

"The public interest favors the exercise of Second Amendment rights by law-abiding

responsible citizens. And it is always in the public interest to prevent the violation of a person's

constitutional rights. *Duncan v. Becerra*, 265 F. Supp. 3d 1106, 1136 (S.D. Cal. 2017), aff'd, 742

F. App'x 218 (9th Cir. 2018) (granting preliminary injunction of California's magazine ban

statute) citing, *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013), *aff'd*

*sub nom.*, *Burwell v. Hobby Lobby Stores, Inc.*, ––– U.S. ––––, 134 S.Ct. 2751, 189 L.Ed.2d 675

(2014).

When the impact of an injunction reaches beyond the parties, carrying with it a potential

for public consequences, the public interest will be relevant to whether the district court grants

the preliminary injunction. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009)

(internal quotations omitted).

A preliminary injunction is "in the public interest" if the preliminary injunction would

not "cause harm to the public interest." *U.S. S.E.C. v. Citigroup Global Mkts. Inc.*, 673 F. 3d

158, 163 n.1 (2d Cir. 2012). "As with irreparable injury, when a plaintiff establishes 'a likelihood

that Defendants' policy violates the U.S. Constitution, Plaintiffs have also established that both

the public interest and the balance of the equities favor a preliminary injunction.'" *J.S.R. by &*

*through J.S.G. v. Sessions*, 330 F. Supp. 3d 731, 743 (D. Conn. 2018) citing, *Ms. L. v. U.S*

*Immigr. & Customs Enf't* ("ICE"), 310 F. Supp. 3d 1133, 1146 (S.D. Cal. 2018), modified, 330

F.R.D. 284 (S.D. Cal. 2019), and enforcement granted in part, denied in part *sub nom. Ms. L. v.*

*U.S. Immigr. & Customs Enf't*, 415 F. Supp. 3d 980 (S.D. Cal. 2020) quoting, *Arizona Dream Act Coalition*, 757 F.3d 1053, 1069 (9th Cir. 2014) (balance of equities favors preventing the violation of a party's constitutional rights).

> "A longstanding, widespread practice is not immune from constitutional scrutiny."

*Payton v. New York*, 445 U.S. 573, 600 (1980).

This is particularly true for restrictions, like New York's open carry ban, which eviscerate the plain meaning of the Second Amendment. New York's ban on the free exercise of the right to open carry a handgun cannot survive any level of scrutiny.

There is strong public interest in enjoining the state's open carry ban because New York fails to recognize or allow ***any right*** to bear arms in public for self-defense. Granting the requested relief will serve the public interest because the general population of non-prohibited New York residents have a vested interest in the free exercise of their civil rights. The right to open carry is a longstanding practice, supported by American history and the plain language of the Second Amendment, and is the only viable means of exercising the "right" to "bear arms" in New York. Enjoining New York's enforcement of criminal statutes against licensed handgun owners who open carry greatly serves the public interest because Plaintiffs have a substantial likelihood of success on the merits.

**CONCLUSION**

Plaintiffs' motion for a preliminary injunction should be granted in its entirety.

Dated: August 9, 2021
        Scarsdale, New York

                             THE BELLANTONI LAW FIRM, PLLC
                             *Attorneys for Plaintiffs*

           By:     /s/ *Amy L. Bellantoni*
                             Amy L. Bellantoni (AB3061)
                             2 Overhill Road, Suite 400
                             Scarsdale, New York 10583
                             (914) 367-0090 (t)
                             (888) 763-9761 (f)
                             abell@bellantoni-law.com