# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

JASON FREY, BRIANNA FREY,             Case No. 21 Civ.
JACK CHENG, and WILLIAM SAPPE,

                           Plaintiffs,

      -against-                               DECLARATION OF JASON
FREY

KEVIN P. BRUEN, Acting Superintendent
of the New York State Police, in his official
capacity, NEW YORK CITY, New York,
and DERMOT SHEA, in his official capacity
as NYPD Police Commissioner,

                         Defendants.
---------------------------------------------------------------x

       JASON FREY, declares the following pursuant to 28 U.S.C. § 1746:

       1.      I am a plaintiff in the above-captioned matter. I make this Declaration of my own personal knowledge and, if called as a witness, I could and would testify competently to the truth of the matters set forth herein.

       2.      I submit this declaration in support of Plaintiffs' Motion for a Preliminary Injunction to enjoin Defendants, their law enforcement officers, agents, servants, employees, and attorneys and those duly sworn county and local police and peace officers and federal law enforcement officers who gain knowledge of this injunction order or know of the existence of this injunction order, from enforcing Penal Law §§ 400.00(6), 400.00(15), Penal Law §§ 265.01(1), 265.01-b, 265.03(2), and/or 265.03(3) against any individual who possesses a valid New York State pistol license.

       3.      I am not prohibited under state or federal law from possessing, receiving, owning, or purchasing firearms.

       4.      I grew up around firearms, consistently practice firearm safety, practice at the target shooting range, and have been an avid hunter for the majority of my adult life.

       5.      I applied for and was granted a New York State pistol license ("handgun license") by a Westchester County Court Judge/pistol licensing officer under Penal Law § 400.00(1).

       6.      I have held a handgun license without incident since its issuance and I have never been accused of misusing or mishandling any firearm in my life.

       7.      My handgun license is a concealed carry license, restricted to "sportsman". Under the sportsman restricted license, I am restricted to carrying a handgun in public to and from target shooting activities and outdoor sporting activities such as camping, hiking, hunting, and the like.

       8.      In 2019, I filed an application to amend my handgun license to remove all restrictions and allow for unrestricted concealed carry. I filed the amendment application with the Westchester County licensing officer.

       9.      My application for an unrestricted concealed carry license was based on a physical and verbal attack on myself and my wife, Brianna Frey, by a former tenant of ours in June 2018.

       10.      My wife, Brianna Frey, also filed an amendment to remove the restrictions on

her concealed carry license based on the same circumstances.

11. Our applications were denied by the County Court Judge/pistol licensing officer who was assigned our amendment applications. The licensing officer believed that we did not sufficiently prove "proper cause" for an unrestricted concealed carry license because we did not demonstrate "a need for self-protection distinguishable from that of the general public." The licensing officer found that we did not prove that we face any danger warranting the need to carry a weapon in order to protect ourselves and/or our children.

12. The licensing officer felt that our concern about being a potential target of violence, a concern we had because we were already the targets of violence, was "entirely speculative" because we had not had any *other* physical confrontations or attacks since June of 2018.

13. As with the vast majority of crime victims, we had no advance warning that we would be a "target of violence" in June 2018. We were not provided with 'notice' that the June 2018 attack would take place before it happened.

14. Predators and violent criminals typically do not provide advance notice that they are going to attack their victims. Even if we had advance warning of a violent attack, by the time we filed an application for an amendment to allow us to be armed in the event we were forced to defend ourselves and/or our children, and the application was assigned to a judge, and the judge made a decision, the attack would have already happened. Perhaps the mentality behind denying our applications was: if we survived a violent attack, then we didn't really need the full carry license in the first place; if we died, the issue would be moot. The Second Amendment was created to protect a *preexisting* right, not a privilege to be granted and taken away by the government. Asking permission to exercise the right to self-protection violates the Second Amendment.

15. We did not file an Article 78 proceeding in state court to challenge the denial of our amendment applications; to do so would be futile. Licensing officers have unfettered "broad discretion" to decide what constitutes "proper cause" and state appellate courts routinely "rubber stamp" the decisions of the licensing officers. Appellate court decisions denying applications for full carry concealed handgun licenses are affirmed as a matter of course.

16. I seek to exercise my right to self-defense, as guaranteed by the Second Amendment – to keep and bear arms - without the requirement that I demonstrate "proper cause" or a "special need" to exercise that right.

17. I intend to carry my handgun on my person in public for all lawful purposes, including self-defense.

18. However, carrying my registered handgun concealed in New York State [outside of New York City] outside of its "sportsperson" restriction or to and from target shooting subjects me to criminal prosecution, including incarceration, for carrying a handgun outside of my restriction, a Class A misdemeanor under § 400.00(15), the revocation of my pistol license, the permanent loss of my handguns, and the precludes the issuance of a new pistol license in the future under the discretionary "good cause" and "moral character" clauses of § 400.00 (b) and (n).

19. If I carry my registered handgun concealed in the 5 boroughs of New York City, I will be subject to arrest, mandatory state prison time, prosecution, the revocation of my pistol license, the loss of my job and earning ability, the permanent loss of my firearms, and the forfeiture of my Second Amendment rights. See, Penal Law §§ 265.01(1), 265.01-b, 265.03(2), 265.03(3).

20. This is so, not because I would be carrying outside of my sportsman restriction, but because a New York State pistol license is not valid in New York City. See, Penal Law
§ 400.00(6).

21. I cannot apply to the NYPD License Division to have my NYS handgun license 'endorsed' by Commissioner Shea under Penal Law § 400.00(6) because my NYS handgun license is not an "unrestricted concealed carry license"; only a NYS unrestricted concealed carry license can be endorsed by the NYC licensing officer to allow carry in New York City.

22. I travel to New York City daily and will continue to do so in the future. I fear for my personal safety and my life while traveling to and from New York City. My fears have increased in light of the defunding of the New York Police Department, the reduction in the police force, the rise in violent crime, the rise in roving, armed gangs in New York City, the rise

in violent attacks and executions - in broad daylight - in New York City, the significant decrease in the issuance of handgun licenses by Commissioner Shea's License Division, and the significant decrease in the approval of handgun license recertifications by the License Division.

23. Applying for a New York City handgun license would be futile.

24. The issuance of a handgun license in New York City is discretionary, requires a residence or business/employment location and a carry license requires proof of a heightened "proper cause" standard, to wit, that you face "extraordinary personal danger", not just a need for self-defense greater than the general public. "Self-defense" is not a recognized basis to establish "proper cause" for the issuance of a concealed carry license in New York City.

25. I intend to carry my handgun open and exposed (open carry) for self-protection throughout the State of New York, including the 5 boroughs of New York City, for all lawful purposes, including self-protection.

26. I should not have to make any further application or take any further steps to exercise the right to carry my handgun open and exposed, nor should I have to provide any "proper cause" for doing so.

27. Even if making an application to a licensing officer to carry open and exposed were required, it would be impossible to do so because (i) Penal Law § 400.00(2) and 38 RCNY 5 only provide for 2 types of pistol licenses: premises and concealed carry; (ii) the uniform application published by Defendant Bruen and the New York State Police and provided to the licensing officers and the public only contains an option for applying for a premises license or a concealed carry license; and (iii) open carry is banned in New York State.

28. If I carry my registered handgun open and exposed anywhere in New York State - even if I am engaging in "sportsman activities" or coming to and from "target shooting" activities - I will be subject to arrest, mandatory state prison time, prosecution, the revocation of my pistol license under § 400.00(1)(b) and (n), the loss of my job and earning ability, the permanent loss of my firearms, and the forfeiture of my Second Amendment rights. See, Penal Law §§ 265.01(1), 265.01-b, 265.03(2), and 265.03(3).

29. I do not carry my handgun open and exposed on my person in public throughout New York State, including New York City, solely because I fear criminal arrest, incarceration, prosecution, the revocation of my NYS handgun license by the Westchester County licensing officer, the seizure of my firearms, the loss of my employment and earning ability, and the forfeiture of the right to possess firearms at all in the future if convicted of a weapons-related crime, even a misdemeanor offense. See, Penal Law §§ 265.00(17); 265.01(1).

30. I am aware of the limitations of carrying a gun in certain buildings that are considered sensitive places under various state and federal statutes and I do not intend to carry a firearm therein.

The foregoing statement is made subject to and under the penalty of perjury.

Dated: June 7, 2021

Jason Frey

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

| | |
|---|---|
| JASON FREY, BRIANNA FREY, JACK CHENG, and WILLIAM SAPPE, | Case No. 21 Civ. |
| Plaintiffs, | |
| -against- | DECLARATION OF BRIANNA FREY |
| KEVIN P. BRUEN, Acting Superintendent of the New York State Police, in his official capacity, NEW YORK CITY, New York, and DERMOT SHEA, in his official capacity as NYPD Police Commissioner, | |
| Defendants. | |

----------------------------------------------------------------x

BRIANNA FREY, declares the following pursuant to 28 U.S.C. § 1746:

1. I am a plaintiff in the above-captioned matter. I make this Declaration of my own personal knowledge and, if called as a witness, I could and would testify competently to the truth of the matters set forth herein.

2. I submit this declaration in support of Plaintiffs' Motion for a Preliminary Injunction to enjoin Defendants, their law enforcement officers, agents, servants, employees, and attorneys and those duly sworn county and local police and peace officers and federal law enforcement officers who gain knowledge of this injunction order or know of the existence of this injunction order, from enforcing Penal Law §§ 400.00(6), 400.00(15), Penal Law §§ 265.01(1), 265.01-b, 265.03(2), and/or 265.03(3) against any individual who possesses a valid New York State pistol license.

3. I am not prohibited under state or federal law from possessing, receiving, owning, or purchasing firearms.

4. I have been around firearms for over a decade, I consistently practice firearm safety and target acquisition at the target shooting range.

5. I applied for and was granted a New York State pistol license ("handgun license") by a Westchester County Court Judge/pistol licensing officer under Penal Law § 400.00(1).

6. I have held a handgun license without incident since its issuance and I have never been accused of misusing or mishandling any firearm in my life.

7. My handgun license is a concealed carry license, restricted to "sportsman". Under the sportsman restricted license, I am restricted to carrying a handgun in public to and from target shooting activities and outdoor sporting activities such as camping, hiking, hunting, and the like.

8. In 2019, I filed an application to amend my handgun license to remove all restrictions and allow for unrestricted concealed carry. I filed the amendment application with the Westchester County licensing officer.

9. My application for an unrestricted concealed carry license was based on a physical and verbal attack on myself and my husband, Jason Frey, by a former tenant of ours in June 2018.

10. My husband, Jason Frey, also filed an amendment to remove the restrictions on his concealed carry license based on the same circumstances.

11. Our applications were denied by the County Court Judge/pistol licensing

officer who was assigned our amendment applications. The licensing officer believed that we did not sufficiently prove "proper cause" for an unrestricted concealed carry license because we did not demonstrate "a need for self-protection distinguishable from that of the general public." The licensing officer found that we did not prove that we face any danger warranting the need to carry a weapon in order to protect ourselves and/or our children.

12. The licensing officer felt that our concern about being a potential target of violence, a concern we had because we were already the targets of violence, was "entirely speculative" because we had not had any *other* physical confrontations or attacks since June of 2018.

13. As with the vast majority of crime victims, we had no advance warning that we would be a "target of violence" in June 2018. We were not provided with 'notice' that the June 2018 attack would take place before it happened.

14. Predators and violent criminals typically do not provide advance notice that they are going to attack their victims. Even if we had advance warning of a violent attack, by the time we filed an application for an amendment to allow us to be armed in the event we were forced to defend ourselves and/or our children, and the application was assigned to a judge, and the judge made a decision, the attack would have already happened. Perhaps the mentality behind denying our applications was: if we survived a violent attack, then we didn't really need the full carry license in the first place; if we died, the issue would be moot. The Second Amendment was created to protect a *preexisting* right, not a privilege to be granted and taken away by the government. Asking permission to exercise the right to self-protection violates the Second Amendment.

15. We did not file an Article 78 proceeding in state court to challenge the denial of our amendment applications; to do so would be futile. Licensing officers have unfettered "broad discretion" to decide what constitutes "proper cause" and state appellate courts routinely "rubber stamp" the decisions of the licensing officers. Appellate court decisions denying applications for full carry concealed handgun licenses are affirmed as a matter of course.

16. I seek to exercise my right to self-defense, as guaranteed by the Second Amendment – to keep and bear arms - without the requirement that I demonstrate "proper cause" or a "special need" to exercise that right.

17. I intend to carry my handgun on my person in public for all lawful purposes, including self-defense.

18. However, carrying my registered handgun concealed in New York State [outside of New York City] outside of its "sportsperson" restriction or to and from target shooting subjects me to criminal prosecution, including incarceration, for carrying a handgun outside of my restriction, a Class A misdemeanor under § 400.00(15), the revocation of my pistol license, the permanent loss of my handguns, and the inability to obtain a pistol license in the future under the discretionary "good cause" and "moral character" clauses of § 400.00 (b) and (n).

19. If I carried my registered handgun while shopping, running errands, at work, and/or to any other non-prohibited locations outside of my home that did not constitute "traveling to and from target shooting activities" and/or "sportsperson activities", I would be subject to criminal prosecution, including incarceration, for carrying a handgun outside of my restriction, a Class A misdemeanor under § 400.00(15), the revocation of my pistol license, the permanent loss of my handguns, and the precludes the issuance of a new pistol license in the future.

20. I would carry a handgun for the protection of myself and my children but am unable to exercise my right to possess a handgun to defend myself and my children outside of my home because of the criminalization of the "mere possession" of a firearm.

21. I intend to carry my handgun open and exposed (open carry) for self-protection throughout the State of New York, including the 5 boroughs of New York City, for all lawful purposes, including self-protection.

22. I should not have to make any further application or take any further steps to exercise the right to carry my handgun open and exposed, nor should I have to provide any "proper cause" for doing so.

23. Even if making an application to a licensing officer to carry open and exposed were required, it would be impossible to do so because (i) Penal Law § 400.00(2) and 38 RCNY 5 only provide for 2 types of pistol licenses: premises and concealed carry; (ii) the uniform application published by Defendant Bruen and the New York State Police and provided to the licensing officers and the public only contains an option for applying for a premises license or a concealed carry license; and (iii) open carry is banned in New York State.

24. If I carry my registered handgun open and exposed anywhere in New York

State - even if I am engaging in "sportsman activities" or coming to and from "target shooting" activities - I will be subject to arrest, mandatory state prison time, prosecution, the revocation of my pistol license under § 400.00(1)(b) and (n), the loss of my job and earning ability, the permanent loss of my firearms, and the forfeiture of my Second Amendment rights. See, Penal Law §§ 265.01(1), 265.01-b, 265.03(2), and 265.03(3).

25. I do not carry my handgun open and exposed on my person in public throughout New York State, including New York City, solely because I fear criminal arrest, incarceration, prosecution, the revocation of my NYS handgun license by the Westchester County licensing officer, the seizure of my firearms, the loss of my employment and earning ability, and the forfeiture of the right to possess firearms at all in the future if convicted of a weapons-related crime, even a misdemeanor offense.   See, Penal Law §§ 265.00(17); 265.01(1).

26. I travel t New York City and intend to travel to New York City in the future.

27. If I carry my registered handgun concealed in the 5 boroughs of New York City, I will be subject to arrest, mandatory state prison time, prosecution, the revocation of my pistol license, the loss of my job and earning ability, the permanent loss of my firearms, and the forfeiture of my Second Amendment rights. See, Penal Law §§ 265.01(1), 265.01-b, 265.03(2), 265.03(3).

28. This is so, not because I would be carrying outside of my sportsman restriction, but because a New York State pistol license is not valid in New York City. See, Penal Law § 400.00(6).

29. I cannot apply to the NYPD License Division to have my NYS handgun license 'endorsed' by Commissioner Shea under Penal Law § 400.00(6) because my NYS handgun license is not an "unrestricted concealed carry license"; only a NYS unrestricted concealed carry license can be endorsed by the NYC licensing officer to allow carry in New York City.

30. I travel to New York City daily and will continue to do so in the future. I fear for my personal safety and my life while traveling to and from New York City. My fears have increased in light of the defunding of the New York Police Department, the reduction in the police force, the rise in violent crime, the rise in roving, armed gangs in New York City, the rise in violent attacks and executions - in broad daylight - in New York City, the significant decrease in the issuance of handgun licenses by Commissioner Shea's License Division, and the significant decrease in the approval of handgun license recertifications by the License Division.

31. Applying for a New York City handgun license would be futile.

32. The issuance of a handgun license in New York City is discretionary, requires a residence or business/employment location and a carry license requires proof of a heightened "proper cause" standard, to wit, that you face "extraordinary personal danger", not just a need for self-defense greater than the general public. "Self-defense" is not a recognized basis to establish "proper cause" for the issuance of a concealed carry license in New York City.

33. I am aware of the limitations of carrying a gun in certain buildings that are considered sensitive places under various state and federal statutes and I do not intend to carry a firearm therein.

The foregoing statement is made subject to and under the penalty of perjury.

Dated: June 24 2021

Brianna Frey

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
JASON FREY, BRIANNA FREY,                      Case No. 21 Civ. 5334 (NSR)
JACK CHENG, and WILLIAM SAPPE,

                                 Plaintiffs,

          -against-                            DECLARATION OF
                                                      WILLIAM SAPPE
KEVIN P. BRUEN, Acting Superintendent
of the New York State Police, in his official
capacity, NEW YORK CITY, New York,
and DERMOT SHEA, in his official capacity
as NYPD Police Commissioner,

                                 Defendants.
---------------------------------------------------------------x

       WILLIAM SAPPE, declares the following pursuant to 28 U.S.C. § 1746:

       1.      I am a plaintiff in the above-captioned matter. I make this Declaration of my own personal knowledge and, if called as a witness, I could and would testify competently to the truth of the matters set forth herein.

       2.      I submit this declaration in support of Plaintiffs' Motion for a Preliminary Injunction to enjoin Defendants, their law enforcement officers, agents, servants, employees, and attorneys and those duly sworn county and local police and peace officers and federal law enforcement officers who gain knowledge of this injunction order or know of the existence of this injunction order, from enforcing Penal Law §§ 400.00(6) and (15); and §§ 265.01(1), 265.01-b, 265.03(2), and/or 265.03(3) against any individual who holds a valid New York State pistol license issued by a statutory licensing officer for merely carrying a handgun that is registered thereon in an open and exposed manner.

       3.      I am a resident of Orange County, New York. I am not prohibited by state or federal law from possessing, receiving, owning, or purchasing firearms.

1

4. I have held a valid New York State pistol license for seven years without incident. My pistol license was issued by a County Court Judge in Orange County, New York. My NYS pistol license has no restrictions – it is a full carry concealed license that is valid and allows me to carry my handgun everywhere in New York State except the 5 boroughs of New York City. My NYS pistol license is not valid in the 5 boroughs of New York City because of the statutory restriction set forth in Penal Law § 400.00(6).

5. I am self-employed. In my profession, I transport substantial amounts of cash, diamonds, and jewelry for high-end jewelers in the Diamond District of New York City. The jewelry and precious jewels that I transport are designed for the rich and famous - singers, actors, sports figures, and the like. I regularly travel with and transport jewelry and/or cash in amounts from hundreds of thousands of dollars into the millions.

6. I travel to New York City 5-7 days per week and I fear for my personal safety and my life on a daily basis. I intend to continue traveling to New York City as frequently in the future.

7. I transport substantial amounts of cash, diamonds, and jewelry between the Diamond District and various locations within the five (5) boroughs of New York City and throughout New York State.

8. I also transport substantial amounts of cash, diamonds, and jewelry between the Diamond District and other states, including California and Las Vegas, Nevada.

9. Since 2015, I have held an open carry firearms permit issued by the State of California, without incident.

10. I am licensed as an Armed Security Guard by New York State and California.

11. I am able to protect myself with my registered firearm by carrying my handgun concealed on my person outside of my home everywhere in New York State except New York City.

12. Under Penal Law § 400.00(6), I am required to obtain an endorsement of my NYS concealed carry license from the NYPD Police Commissioner's License Division.

13. I cannot even carry my handgun into Nassau County and Suffolk County because, to get to those two counties, I must pass through Queens and/or the Bronx, which would subject me to being arrested and charged with a crime, incarcerated, prosecuted, would lead to the revocation of my NYS pistol license, the loss of my firearms, and the loss of my Second Amendment rights.

14. I did apply to the NYPD License Division for such an endorsement in October 2018. The NYPD License Division wrongfully denied my application under the "broad discretion" of the subjective and discretionary licensing regulations under Penal Law § 400.00(1)(b) and (n) and 38 RCNY 5-10(a), (h), and (n). I filed an internal appeal with the License Division, which was also wrongfully denied.

15. The License Division and Appeals Unit determined that I (i) did not establish "proper cause" for the issuance of an unrestricted concealed carry license, despite the fact that a New York State County Court Judge already determined that I established "proper cause"; and (ii) was ineligible for the issuance of a pistol license in the first instance because I do not have "good moral character" [Penal Law § 400.00(1)(b)], despite the fact that a County Court Judge already determined that I have good moral character.

16. The License Division's determination that I do not have "good moral character" was based on my driving history and criminal charges in the distant past that were dismissed on the merits. [38 RCNY 5-10(a), (h), and (n)].

17. Notwithstanding that traffic infractions are not a longstanding, historically recognized prohibitor to firearm possession, I have not had a moving violation since 2006, of which the License Division had full knowledge because I was required to provide them with a copy of my NYS lifetime driving abstract during the application process.

18. Notwithstanding that mere arrests and criminal charges that do not result in a prohibiting conviction are not longstanding, historically recognized disqualifiers to the possession of firearms, the charges against me were dismissed on the merits.

19. I filed an Article 78 in New York County Supreme Court to challenge the decision of the NYPD License Division. The State Court wrongfully upheld the determination, holding that "Title 38 of the Rules and Regulations of the City of New York, which codifies the regulations concerning the issuance of handgun licenses, provides that proper grounds for denial of a handgun license may include '[o]ther information [that] demonstrates an unwillingness to abide by the law, a lack of candor towards lawful authorities, a lack of concern for the safety of oneself and/or other persons and/or for public safety, and/or other good cause for the denial of the license.' 38 RCNY § 5-10(n)."

20. It is my desire to carry my handgun open and exposed for self-protection throughout the State of New York, including the 5 boroughs of New York City, for all lawful purposes, including self-protection consistent with my rights as protected by the Second Amendment.

21. I should not have to make any further application or take any further steps to carry my handgun open and exposed, nor should I have to provide any "cause" for doing so.

22. Even if applying to a licensing officer for the ability to carry open and exposed were required, it would be impossible to do so because (i) Penal Law § 400.00(2) and 38 RCNY 5 only provide for 2 types of pistol licenses: premises and concealed carry; (ii) the uniform application published by Defendant Bruen the New York State Police and provided to the licensing officers and the public only contains an option for applying for a premises license or a concealed carry license; and (iii) open carry is banned in New York State.

23. I would carry my handgun open and exposed in public throughout the State of New York but do not solely because, even with a valid NYS pistol license, I would be subjected to arrest, prosecution, mandatory state prison time, the seizure and permanent loss of my firearms, the revocation of my handgun license, and the loss of my Second Amendment rights because open carry is banned in New York State. See, Penal Law §§ 265.01(1), 265.01-b, 265.03(2), 265.03(3), and 400.00(15).

24. I seek to carry a firearm for self-protection outside of my home and in public without the government dictating the manner in which I carry my firearm – concealed or open carry – and without the need to demonstrate "proper cause" or any other reason for exercising my right to bear arms for personal protection.

25. I am aware of the limitations of carrying a firearm in certain buildings and areas that are considered "sensitive places" under various state and federal statutes and I do not intend to carry a firearm therein.

26. My fears for my personal safety have increased in light of the defunding of the New York Police Department, the rise in violent crime, the rise in roving, armed gangs in New

York City, the rise in violent attacks - and executions - on unsuspecting citizens in broad daylight in New York City, the significant and substantial decrease in the issuance of handgun licenses by Commissioner Shea's License Division, and the significant decrease in the approval of handgun license recertifications by the License Division.

The foregoing statement is made subject to and under the penalty of perjury.

Dated: June , 2021

_William Sappe_     June, 23, 2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
JASON FREY, BRIANNA FREY,                  Case No. 21 Civ.
JACK CHENG, and WILLIAM SAPPE,

                         Plaintiffs,

           -against-                               DECLARATION OF
                                                            JACK CHENG

KEVIN P. BRUEN, Acting Superintendent
of the New York State Police, in his official
capacity, NEW YORK CITY, New York,
and DERMOT SHEA, in his official capacity
as NYPD Police Commissioner,

                         Defendants.
-------------------------------------------------------------x

        JACK CHENG, declares the following pursuant to 28 U.S.C. § 1746:

        1.      I am a plaintiff in the above-captioned matter. I make this Declaration of my own personal knowledge and, if called as a witness, I could and would testify competently to the truth of the matters set forth herein.

        2.      I submit this declaration in support of Plaintiffs' Motion for a Preliminary Injunction to enjoin Defendants, their law enforcement officers, agents, servants, employees, and attorneys and those duly sworn county and local police and peace officers and federal law enforcement officers who gain knowledge of this injunction order or know of the existence of this injunction order, from enforcing Penal Law §§ 400.00(6), 400.00(15), Penal Law §§ 265.01(1), 265.01-b, 265.03(2), and/or 265.03(3) against any individual who possesses a valid New York State pistol license.

        3.      I am not prohibited under state or federal law from possessing, receiving, owning, or purchasing firearms.

        4.      I am a resident of Nassau County, New York.

1

5. I grew up around firearms and consistently practice firearm safety. I was trained in firearms during my service in the United States Army. I am a military veteran and received an Honorable Discharge in 1994. I remained on individual ready reserve duty until 2001. During my military service, I received the Army Service Ribbon, National Defense Service Medal, and the M16 Sharpshooter Badge.

6. Over 15 years ago, I applied for and was granted a New York State pistol license ("handgun license") by the Nassau County Police Commissioner /pistol licensing officer under Penal Law § 400.00(1). My NYS handgun license is a concealed carry license, restricted to "target shotting". Under the target shooting restricted license, I am restricted to carrying a handgun concealed in public to and from target shooting activities.

7. My NYS handgun license is not valid in New York City. See, Penal Law § 400.00(6).

8. I cannot apply to have my NYS handgun license 'endorsed' by the NYC licensing officer because my NYS handgun license is not a concealed carry license; only a NYS concealed carry license can be endorsed to allow carry in New York City by the NYC licensing officer. See, Penal Law § 400.00(6).

9. I own several businesses in New York City, including a restaurant, hotels, commercial office spaces, residential apartment buildings, store fronts, which have been subject to criminal activity over the years.

10. I first applied for and was issued a concealed carry license related to my businesses by the NYPD License Division over 15 years ago. I have held my NYS and NYC handgun licenses without incident since their respective issuance and I have never been accused of misusing or mishandling any firearm in my life.

11. My NYC concealed carry business license expired on October 6, 2019 and required recertification through the NYPD License Division.

12. New York City treats the renewal of a handgun license as a "new" application and requires the licensee to again demonstrate "proper cause".

13. With my application to renew my business carry license, I submitted documentation to the NYPD that demonstrated "proper cause" for the renewal of my license, as I had with my initial application and each prior license renewals – all of which were previously approved.

14. My recertification application was denied by the NYPD License Division because, though nothing had changed since the prior renewals of my business handgun license, the License Division felt that I failed to prove "proper cause" for the issuance of a concealed carry license for my businesses.

15. I seek to exercise my right to self-defense, as guaranteed by the Second Amendment – to keep and bear arms - without the requirement that I demonstrate "proper cause" or a "special need" to exercise that right. I seek to carry my registered handgun for self-defense outside of my home and in public – within the 5 boroughs of New York City and throughout New York State.

16. I desire to carry my handgun on my person in public for all lawful purposes, including self-defense.

17. Carrying my registered handgun concealed in New York State [outside of New York City] outside of its "target shooting" restriction or to and from target shooting activities subjects me to criminal prosecution, including incarceration, for carrying a handgun outside of

my restriction, a Class A misdemeanor under § 400.00(15), the revocation of my pistol license, the permanent loss of my handguns, and the precludes the issuance of a new pistol license in the future under the discretionary "good cause" and "moral character" clauses of § 400.00 (b) and (n).

18. If I carry my registered handgun concealed in the 5 boroughs of New York City, I will be subject to arrest, mandatory state prison time, prosecution, the revocation of my pistol license, the loss of my job and earning ability, the permanent loss of my firearms, and the forfeiture of my Second Amendment rights. See, Penal Law §§ 265.01(1), 265.01-b, 265.03(2), 265.03(3).

19. This is so, not because I would be carrying a handgun outside of my target shooting restriction, but because a New York State pistol license is not valid in New York City. See, Penal Law § 400.00(6).

20. I travel to New York City daily and will continue to do so in the future. I fear for my personal safety and my life while traveling to and from New York City. My fears have increased in light of the defunding of the New York Police Department, the reduction in the police force, the rise in violent crime, the rise in roving, armed gangs in New York City, the rise in violent attacks and executions - in broad daylight - in New York City, the significant decrease in the issuance of handgun licenses by Commissioner Shea's License Division, and the significant decrease in the approval of handgun license recertifications by the License Division.

21. I am particularly concerned for my safety as an Asian American because of the incidents of random, violent attacks on Asian Americans in New York City arising from the COVID pandemic.

22. I desire to carry my handgun open and exposed (open carry) for self-protection throughout the State of New York, including the 5 boroughs of New York City, for all lawful purposes, including self-protection.

23. I should not have to make any further application, seek permission, or take any further steps to exercise the right to carry my handgun open and exposed, nor should I have to provide any "proper cause" for doing so.

24. Even if making an application to the Nassau County licensing officer to carry open and exposed were required, it would be impossible to do so because (i) Penal Law § 400.00(2) and 38 RCNY 5 only provides for 2 types of pistol licenses: premises and concealed carry; (ii) the uniform application published by Defendant Bruen and the New York State Police and provided to the licensing officers and the public only contains an option for applying for a premises license or a concealed carry license; and (iii) open carry is banned in New York State.

25. If I carry my registered handgun open and exposed anywhere in New York State - even if I am engaging in "target shooting activities" or coming to and from "target shooting" activities - I will be subject to arrest, mandatory state prison time, prosecution, the revocation of my pistol license under § 400.00(1)(b) and (n), the loss of my job and earning ability, the permanent loss of my firearms, and the forfeiture of my Second Amendment rights. See, Penal Law §§ 265.01(1), 265.01-b, 265.03(2), and 265.03(3).

26. I do not carry my handgun open and exposed on my person in public throughout New York State, including New York City, solely because I fear criminal arrest, incarceration, prosecution, the revocation of my NYS handgun license by the Nassau County licensing officer, the seizure of my firearms, the loss of my earning ability, and the forfeiture of the right to

possess firearms at all in the future if convicted of a weapons-related crime, even a misdemeanor offense. See, Penal Law §§ 265.00(17); 265.01(1).

27. I am aware of the limitations of carrying a gun in certain buildings that are considered sensitive places under various state and federal statutes and I do not intend to carry a firearm therein.

The foregoing statement is made subject to and under the penalty of perjury.

Dated: June 23, 2021

Jack Cheng