# EXHIBIT 2

## SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: Hon.  **EILEEN A. RAKOWER**
                                        *Justice*

In the Matter of the Application of

**FRANK VICARI,**

                    **Petitioner,**

For an Order Judgment Pursuant to Article 78
of the Civil Practice Law and Rules,

            **-against-**

**DERMOT SHEA, in his official capacity as
Police Commissioner, and all successors therein,
JONATHAN DAVID, in his official capacity
as Director, NYPD License Division, and
MICHAEL BARRETO, in his official capacity
as Commanding Officer of the License Division,**

                **Respondents.**

**PART 6**

**INDEX NO. 161001/2020
MOTION DATE
MOTION SEQ. NO. 1
MOTION CAL. NO.**

**DECISION AND ORDER**

The following papers, numbered 1 to _____ were read on this motion for/to

| | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | ▌ |
| Answer — Affidavits — Exhibits _____ | ▌ - |
| Replying Affidavits | ▌ |

**Cross-Motion:   Yes   X No**

On June 9, 2021, the Court heard oral argument via TEAMS. For the reasons stated on the record,

Wherefore, it is hereby

ORDERED that the Petition is granted to the extent that the agency denial of Petitioner's right to carry a firearm within New York City was arbitrary and capricious and not based upon existing rules establishing criteria for validation. The case is remanded back to Respondent agency for further consideration of Petitioner's application for validation of his existing valid license to carry a firearm issued in his county of residence, Westchester County.

This constitutes the Decision and Order of the Court. All other relief requested is denied.

**Dated:       June 9, 2021**

1

**EILEEN A. RAKOWER, J.S.C.**

**Check one:** **X FINAL DISPOSITION** **NON-FINAL DISPOSITION**

2

```
 1   SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF NEW YORK - CIVIL TERM - PART 6
 2   - - - - - - - - - - - - - - - - - - - - -X
      In the Matter of the Application of     |
 3    FRANK VICARI,                           |
                                              |
 4                        Petitioner,         |
      For an Order and Judgment Pursuant to   |   INDEX NUMBER:
 5    Article 78 of the Civil Practice Law and|   3161001/2020
      Rules,                                  |
 6                                            |
              - against -                     |
 7                                            |
      DERMOT SHEA, in his official capacity as|
 8    Police Commissioner, and all successors |
      therein, JONATHAN DAVID, in his official|
 9    capacity as Director, NYPD License      |
      Division, and MICHAEL BARRETO, in his   |
10    official capacity as Commanding Officer |
      of the License Division,                |
11                                            |
                        Respondents.          |
12   - - - - - - - - - - - - - - - - - - - - -X
                            Microsoft Teams
13    PROCEEDINGS            New York, New York
                            June 9, 2021
14
     B E F O R E :
15
             HONORABLE EILEEN A. RAKOWER,
16
                     JUSTICE OF THE SUPREME COURT
17
     A P P E A R A N C E S :
18
             THE BELLANTONI LAW FIRM, PLLC
19           Attorneys for the Petitioner
             2 Overhill Road, Suite 400
20           Scarsdale, New York  10598
             BY: AMY L. BELLANTONI, ESQ.
21

22           NEW YORK CITY LAW DEPARTMENT
             Attorneys for the Respondents
23           100 Church Street
             New York, New York  10007
24           BY: ERIKA TANG, ESQ.
                            KAREN PERLMAN, RMR, CRR
25                          SENIOR COURT REPORTER
```

Proceedings

1          THE COURT:  Good morning, everyone.

2          MS. BELLANTONI:  Good morning, Your Honor.

3          MS. TANG:  Good morning.

4          THE COURT:  Please put your notices of appearance

5    on the record.

6          MS. BELLANTONI:  Good morning.  Amy Bellantoni for

7    the petitioner, Frank Vicari.

8          MS. TANG:  Erika Tang, Assistant Corporation

9    Counsel, for the respondents.

10          THE COURT:  All right.  Good morning.  I'm sorry.

11    There is an echo.  Let's see if that helps.

12          Okay.  I have a petition.  The petitioner is

13    licensed to carry a firearm.  He's licensed in a number of

14    places:  Florida, Virginia, Connecticut, but for the

15    purposes of our case, more importantly, in Westchester

16    County.

17          And applied to New York City for a renewal of what,

18    in essence, is a validation of that license so that he could

19    carry his firearm in New York City.  The renewal was denied.

20    And he appealed.  On appeal, the renewal was denied.  And

21    it's now before me.

22          So go ahead, on behalf of the petitioner.

23          MS. BELLANTONI:  Good morning, Your Honor.  Thank

24    you for this opportunity.  I appreciate this.

25          So as noted in the papers, Judge, Section 400 of

Proceedings

1    the Penal Law preempts the entire field of firearms

2    regulation.

3           There is nothing in Section 400.6, which is the

4    section that states that the New York State pistol licenses

5    that are issued by licensing officers outside of New York

6    City are not valid within New York City and require the

7    endorsement of the City in order to be valid.

8           There's nothing in that section that requires that

9    proper cause be re-established by the applicant.

10          And the renewal was denied based on the NYPD's

11   assertion that my client had failed to establish proper

12   cause.

13          THE COURT:  So let me just go back and say

14   something.  Because I --

15          MS. BELLANTONI:  Yes.

16          THE COURT:  -- found this all very interesting.

17          So New York City treated this application for

18   renewal of the validation of his license to carry in New

19   York City as if they were being asked to issue a license

20   anew to this individual to carry a firearm in New York City.

21          MS. BELLANTONI:  Correct.

22          THE COURT:  And the way I understood your argument

23   was that it's not for New York City to decide anew whether a

24   license should be issued, but, separately, whether the

25   license should be validated, the license that was already

Proceedings

1    issued in Westchester County.

2              MS. BELLANTONI:  Yes.

3              THE COURT:  I have that right; right?

4              MS. BELLANTONI:  Yes.

5              THE COURT:  So 400.6, subsection 6, of the penal

6    law does answer one question which is they said state law

7    applies and we want some uniformity in what's considered

8    under state law before we issue firearms.  But New York

9    City, we're going to give you a carveout.

10             In New York City, when you're asked to issue a

11   license to carry a firearm, you can impose more

12   restrictions.  You can have more criteria that you consider.

13   And so there was that carveout.

14             But here, the application for renewal has been

15   described as -- and it's contained in section -- you've got

16   to help me.  But there -- the carve -- the request is not

17   "Issue me a new license to carry a firearm in New York City.

18   I am a New York City resident and I want to carry a firearm

19   in New York City and I'm applying for that permission."

20   Instead, it's asking to validate a license that's already

21   been granted in Westchester County.

22             And I didn't see any -- I didn't see anybody cite

23   to any cases where, oh, New York City has an additional

24   criteria for the validation of licenses issued in other

25   counties in New York State.  Because this is not a New York

Proceedings

1    City resident who's asking for a license to carry a firearm

2    in New York City, and, therefore, coming to this

3    jurisdiction for that license.  Instead, he's asking to

4    validate the license he's already got pursuant to an

5    investigation and an examination of the different criteria

6    that are uniform throughout the state.  And now, New York

7    City, you can -- you can validate that license.

8             And I want to emphasize, again, that this is a

9    renewal.  This is not anew.  This is a renewal of

10   some -- of, in essence, a validation that's been previously

11   granted.

12            So I just wanted to make the record clear.

13            Go ahead.

14            MS. BELLANTONI:  Thank you, Judge.  And that is

15   absolutely the case.

16            There -- I have found no case law that specifically

17   addresses 400.00, subsection 6, which is the validation

18   section that we're referring to here.

19            This is a renewal.  There have been no changes in

20   circumstances articulated by the licensing department of the

21   NYPD to suggest that Mr. Vicari had done anything to lose

22   the opportunity or the ability to have that validation.

23            And, again, proper cause -- this is not an initial

24   application.  And that's the problem here is that New York

25   City treats these validations, you know, requests as -- as

Proceedings

1    applications in the first instance.  And they take it upon

2    themselves under the 38 RCNY 5 of subjecting residents

3    outside of New York City, who already have been issued

4    full-carry concealed handgun licenses by judges who have

5    made a judicial determination that proper cause exists, that

6    this person has good moral character, that they pass the

7    background check, and now the license division is subjecting

8    them to the rules of the City, which only apply -- if they

9    apply at all because I maintain that only 400.00 applies.

10    But if they apply at all, they only apply to the residents

11    of New York City.

12         So in that sense, the -- the decision was arbitrary

13    in that it treated the application as if it were a new

14    application, which is not allowed for under Penal Law

15    Section 400.

16         But even more so, this is a renewal.  And there

17    has -- there's no reason for the City to have denied the

18    application for renewal of a mere validation of a pistol

19    license when there's no reason to have -- you know, there

20    was no reason to revoke the validation, to suspend the

21    validation, to rescind the validation if proper -- nothing's

22    changed.

23         My client is still in the same business.  He

24    presented, to the extent that he was required to prove

25    proper cause again to the City, which I maintain he was not.

Proceedings

1    He established that to a judge in -- in Westchester County.

2    But to the extent that he was required to do that, he

3    presented bank statements.  Nothing changed.

4           And so the fact that nothing changed and based on

5    all of the other factors that I had -- you know, have

6    mentioned, the -- the decision to deny Mr. Vicari's renewal

7    of his validation was arbitrary and capricious.

8           THE COURT:  All right.  Thank you.

9           Ms. Tang?

10          MS. TANG:  Thank you, Your Honor.

11          It's the NYPD's position that this decision was not

12   arbitrary and capricious, and that it was supported by

13   evidence in the record.

14          For the purposes of the application to the NYPD,

15   the NYPD treats this as a new application.  This is not a

16   renewal application because the petitioner had not applied

17   to carry a firearm in New York City before.  So the NYPD has

18   to go through the entire analysis of whether proper cause

19   has been established, separate and apart from whether or not

20   another judge has issued the license in another --

21          THE COURT:  So where -- where is it that -- cite me

22   something, some other case or some other -- some other rule

23   or place where NYPD treats a non-resident who has a license

24   to carry a firearm as if they are a New York City resident

25   and subjects them to the same scrutiny as a New York City

Proceedings

1      resident in the application?

2            MS. TANG:  Well, Your Honor, the NYPD points to

3      Penal Law Section 400, subsection 6, as authority, as you

4      mentioned previously, to treat this as a new application.

5      Because --

6            THE COURT:  It doesn't say it's a new application.

7      It says it's validation of an existing license issued in a

8      different county within New York State where this individual

9      is a resident.

10           So, for example, if petitioner now resides in

11     New York City, then I absolutely agree that he should be

12     subjected, like every other New York City resident, to

13     the -- to the same criteria that New York City uses to issue

14     a license to carry a firearm in New York City to a New York

15     City resident.

16           This is not a New York City resident.  This is

17     someone who has an existing license in their county of

18     residence and is seeking validation to then carry it into

19     New York City, where he works.

20           He comes -- his work takes him many places, as a

21     plumber.  And some of those places are in the Bronx.  So

22     that is technically in New York City.  And so he wants to be

23     able to -- instead of not carrying the firearm that he

24     carries all the time, he wants to lawfully carry it within

25     New York City.  But he maintains his residence outside of

Proceedings

1    New York City.  He does have a valid license to carry the

2    permit -- to carry the firearm.  And he needs validation.

3              Where in 400, sub 6, does it say we get to treat it

4    like we treat New York City applicants who now are subjected

5    to our scrutiny, as opposed to a validation?

6              MS. TANG:  I understand, Your Honor.

7              Because 400, subsection 6, does have that carveout

8    that --

9              THE COURT:  No, No.  400, subsection 6, says, okay,

10   New York City, you get to add different criteria for your

11   people so that you're not in uniformity with the rest of the

12   state when they consider whether or not to issue a

13   firearm -- a license to carry a firearm.  That's what it

14   says.  It allows you to not be preempted by state law.

15             But we have a whole different situation here.

16   Where -- where, in our administrative code, in New York

17   City, did we set forth some kind of requirement that even

18   people who reside outside of New York City must apply as if

19   they were a New York City resident and be subjected to the

20   criteria that New York City is allowed to use when they

21   decide whether or not to issue a license to carry a firearm?

22             MS. TANG:  Your Honor, there is no permission in

23   the administrative code that says that specifically.  The

24   NYPD looks to the RCNY Title 38 to go through that entire

25   proper cause analysis, separate and apart from somebody

Proceedings

1    who's not a resident and -- and has a license issued outside

2    of the city.

3           THE COURT:  So, in other words, they have no

4    mechanism to validate as required under 400, sub 6?

5           MS. TANG:  I am not aware of an administrative code

6    provision that states that explicitly.

7           THE COURT:  Okay.  Go ahead.  I didn't mean to

8    interrupt you.  Was there more you wanted to say?

9           MS. TANG:  No, Your Honor.  I, you know -- our

10   position is that the -- our basic position is that the

11   decision was not arbitrary and capricious.  When the agency

12   went through the entire analysis as the reasons that are set

13   forth in the -- in the decision, there are a number of ways

14   that Mr. Vicari could have shown that he established proper

15   cause, and they outlined that he failed to do so and that

16   was the primary reason --

17          THE COURT:  So just to be clear, they want him to

18   show that he has proper cause to need a firearm and carry it

19   in New York City?

20          MS. TANG:  Yes.

21          THE COURT:  We already know that he met all of the

22   State criteria.  So this added criteria that New York City

23   is imposing is you have to show that you've either been

24   stalked, threatened, or harmed to establish proper cause to

25   request permission to carry it in New York City.

Proceedings

1        And what they did was they then looked at the

2    application.  And where petitioner said he has this plumbing

3    business, the plumbing business goes to the Bronx at night

4    and on weekends, and it's dangerous, on appeal they said,

5    "You didn't say you go to the Bronx.  You said the plumbing

6    business goes to the Bronx."  And that was the reason they

7    decided to deny this.

8        MS. TANG:  Well, Your Honor, the RCNY provision

9    does indicate that there needs to be some sort of specific

10   reoccurring threat that the petitioner can document.  And

11   that a sort of generalized concern about working on nights

12   and weekends isn't sufficient to establish a proper cause.

13       THE COURT:  Well, he also had that he carries cash;

14   that he makes deposits in cash.

15       MS. TANG:  Yeah.

16       THE COURT:  And somehow they found that the amount

17   of cash and the number of deposits during the pandemic, that

18   he established, were insufficient.  But they didn't say how

19   many deposits are required.  They didn't say how much cash

20   is required in each deposit.  And they also didn't say that

21   he did anything dangerous.

22       It's not like he had a domestic violence incident

23   since -- since his license was issued.  And in New York City

24   that would be a red flag, and we'd say, "No, no.  You can't

25   carry it."

Proceedings

1          They didn't say he was part of some demonstration
2     where there was violence and so, okay, "You shouldn't carry
3     it."
4          They didn't say there's been a road rage incident
5     and we don't want you carrying a gun in our city.
6          They didn't say anything that has happened.  They
7     just said:  "You said your business goes to the Bronx.  You
8     didn't say you go to the Bronx."  That's what they hung
9     their hat on here.
10          And here, where the additional criteria of you need
11     good cause to carry your weapon in New York City, as opposed
12     to the State criteria that's used, that's what they said was
13     good cause -- was not good cause, I should say, was the fact
14     that we didn't like how many deposits you showed, we didn't
15     like how much cash was in your deposit, and we -- we didn't
16     think you were clear that you personally are going to the
17     Bronx.
18          MS. TANG:  Well, Your Honor, with respect to the
19     cash transactions, I will just note that, yes, they did say
20     that -- the frequency with which he engaged in cash
21     transactions wasn't sufficient to establish proper cause for
22     this specific special carry business license, which would
23     allow him to carry the gun 24 hours a day with respect to
24     business purposes.
25          They did recommend a more limited -- a limited

Proceedings

1    license, which would be the limited carry business, which

2    has a few more timing restrictions on it and that was

3    declined by petitioner.  So they did offer some sort of

4    solution.

5         With respect to the other reasons why they denied

6    the petition, there was also -- there's this requirement

7    that you do need to show in some way that you are separate

8    and apart from your community and the rest of the people

9    that engage in the same profession, and that there's some

10   reason that you would need this method of self-protection.

11   And they felt, in their review of the record, that he also

12   didn't submit enough evidence to show that.

13        With respect to citing something specific as, you

14   know -- as Your Honor mentioned, road rage or some sort of

15   domestic violence, it's the NYPD's position that pursuant to

16   the administrative code, it's the applicant's burden to

17   establish that they're -- that they are entitled to this

18   license.

19        THE COURT:  And petitioner puts forth that they

20   meet that burden simply by having the license issued in

21   another jurisdiction.  In Westchester County.  That it's

22   already been scrutinized, the application's been

23   scrutinized, and they were issued the license.  You,

24   New York City, should validate, unless there's a reason to

25   invalidate.  And say, "No, New York City is a densely

Proceedings

1    populated area, we have this added restriction because we

2    can justify it as a densely populated urban center and these

3    are the additional criteria we need you to meet in order to

4    get validation.  And among them" -- but I have nothing.

5              No one has promulgated any kind of -- of consistent

6    approach to how New York City validates these licenses that

7    were issued pursuant to Penal Law 400 in other counties of

8    New York State.

9              And I do think that carveout allows New York City

10   to set forth additional criteria that they will consider in

11   validating your out-of-city-issued license.  But they

12   haven't done so.  They haven't promulgated any kind

13   of -- you know, the agency hasn't set forth -- I'm not

14   saying you have to go to the New York City Council.  The

15   agency hasn't set forth any additional criteria that they

16   will then look at in their -- their validating these

17   out-of-New York City-issued licenses.

18             And I do think petitioner does satisfy its burden

19   of showing that it's entitled by showing you "I have a

20   legitimate license to carry a firearm, as issued pursuant to

21   State criteria from another county in New York State."

22             You, New York City Police Department, have the

23   right, under 400, sub 6, to have additional criteria that

24   you will consider in validating those licenses.  They're not

25   issuing a new license.  But they have to have criteria

Proceedings

1      to -- to -- that they will use, some added criteria that

2      they feel they are entitled, as a New York City agency, to

3      add, which they're permitted to do under 400 sub 6, and then

4      apply those criteria consistently to all applications for

5      validation of out-of-New York City-resident-issued licenses.

6      And they have failed to do that.

7              And so I'm sending it back so -- the petition is

8      granted to the extent that the reasons for denying it were

9      arbitrary and capricious.  They have not promulgated any

10     criteria within the agency that they are using consistently

11     to validate these licenses issued under 400 in New York

12     State under a uniform way.  And they -- they simply have no

13     system to validate these -- these licenses.  And they're

14     going to have to create one.

15             And it's an agency thing.  And they're going to

16     have to create criteria that they consider.  And they're

17     going to have to consider those criteria consistently with

18     all applications and hope that they could sustain another

19     challenge.

20             But here, I'm going to send it back and say create

21     those criteria, apply them, apply them here, give petitioner

22     an opportunity to provide whatever he has to provide

23     and -- and consider it anew.

24             MS. BELLANTONI:  And, Your Honor, is that -- in

25     sending it back, just so that the record is clear for the

Proceedings

1  license division, you are excluding from that validation

2  criteria the consideration of validation applications as

3  applications anew; in other words, you're excluding the

4  whole going through the background and the proper cause

5  analysis?

6           THE COURT:  Yeah.  I -- I don't -- I think that the

7  agency has failed to do what they are supposed to do under

8  the -- under the law, which is create -- I mean, they are

9  permitted to have different criteria.  That's what 400, sub

10 6, says, that this uniform application that we have

11 throughout the state may be different for you in New York

12 City.  But New York City is not issuing this license.

13 They're being asked to validate this license.  And they

14 simply have no method of validation.

15           It shouldn't be the same as a New York City

16 resident who's asking for a license to carry a firearm in

17 New York City.  Because the question is not -- that's

18 already been done.

19           And I do think petitioner has met a certain burden

20 by having that license and having gone through that -- that

21 scrutiny.

22           If New York City has an additional criteria that

23 they can justify, they need to show that they have rules

24 within the agency that are being applied consistently where

25 they then visit those criteria and put it to the petitioner,

Proceedings

1    "Oh, please show us A, B, and C as those are our additional

2    criteria."

3              MS. BELLANTONI:  Thank you, Judge.

4              THE COURT:  I don't really know -- it was a

5    121-page application.  I didn't go through it to see all the

6    different things that were submitted.  But it shouldn't be

7    treated the same as a New York City application to carry a

8    firearm for a New York City resident.  They've already met

9    the criteria.  If you have additional criteria, then say

10   what those are, and then it's -- it's an application for

11   validation.

12             MS. BELLANTONI:  Thank you, Judge.

13             THE COURT:  But they shouldn't be able to conflict

14   with another jurisdiction that has already done the scrutiny

15   that's being done in a uniform way throughout the state.

16             MS. BELLANTONI:  Thank you, Judge.

17             Can I ask for some kind of time frame so that the

18   City is not now -- it's being returned to them and it's

19   going to languish and leave everyone in limbo, my client and

20   others seeking validation.

21             THE COURT:  So I was a little confused because the

22   language that I kept reading was that this was a renewal.

23   And apparently there has never been an application for

24   validation before; is that correct?

25             MS. TANG:  That is my understanding, Your Honor.

Proceedings

1   There isn't -- my understanding is that there's no record

2   that the petitioner has applied for a license in New York

3   City before or a validation.

4           MS. BELLANTONI:  That's correct, Your Honor.

5   That's my mistake as well.  This is an initial application

6   for validation to New York City.  Yes.

7           THE COURT:  So I think that -- I think that we're

8   going to maintain the status quo.  He has his license from

9   Westchester and it's a valid license.  And now New York City

10  needs to create a method of seeking validation of a license

11  that's been issued elsewhere.  They should not be treating

12  this as a New York City resident's application to carry a

13  firearm -- a license to carry a firearm in New York City

14  because the statute says you need to validate an already

15  existing license.  So there has to be a different method.

16          So the status quo is maintained.  He's never

17  applied for this before.  He's had this license since 1999,

18  I think, or something like that.

19          MS. BELLANTONI:  He's had his New York State pistol

20  license since 1999.  He's had a full-carry since 2010.  And

21  this application is still denied but based on arbitrary and

22  capricious reasons.  So I'm going to again ask the Court for

23  a time frame on the City -- because they could

24  just never -- theoretically, they could never promulgate a

25  validation criteria and they would continue to get away with

Proceedings

```
 1      doing what they're doing and preventing 400 -- you know --

 2      subsection 6 from ever having an effect.

 3              THE COURT:  So I think it would be fair to give

 4      them 90 days to promulgate some criteria within the agency

 5      to consider an application for validation.

 6              MS. BELLANTONI:  Thank you.

 7              THE COURT:  And then consider this application

 8      anew.  Based on those criteria, you're going to have to

 9      submit a new application.

10              MS. BELLANTONI:  Thank you, Judge.

11              THE COURT:  All right.  Thank you.

12              MS. BELLANTONI:  Thank you.

13              MS. TANG:  Thank you, Your Honor.

14                          *     *     *     *

15              The foregoing is hereby certified to be a true and

16      accurate transcript of the proceedings as transcribed from

17      the stenographic notes.

18                          *     *     *     *

19       **REPORTER'S SIGNATURE IS ONLY VALID WHEN IN BLUE INK**

20

21

22

23      _____
                KAREN PERLMAN, RMR, CRR
24              SENIOR COURT REPORTER

25
```