UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
JASON FREY, BRIANNA FREY,
JACK CHENG, and WILLIAM SAPPE,

                            Plaintiffs,

            -against-                            Case No. 21 Civ. 5334 (NSR)

KEVIN P. BRUEN, Acting Superintendent
of the New York State Police, in his official
capacity, NEW YORK CITY, New York,
and DERMOT SHEA, in his official capacity
as NYPD Police Commissioner,

                            Defendants.
------------------------------------------------------------------x

# PLAINTIFFS' REPLY TO STATE DEFENDANT IN FURTHER SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

**THE BELLANTONI LAW FIRM, PLLC**
*Attorneys for Plaintiffs*
**2 Overhill Road, Suite 400**
**Scarsdale, New York 10583**
**(914) 367-0090**
**abell@bellantoni-law.com**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ....................................................................................... i

I. PLAINTIFFS HAVE STANDING TO ASSERT THEIR CLAIMS ........................................ 1

   A. Plaintiffs Have Demonstrated A Concrete, Imminent Injury ................................ 1

   B. Plaintiffs' Injuries Are Not Speculative ................................................. 2

   C. Plaintiffs' Injuries are Traceable to Defendant Bruen .......................... 2

   D. The Injury is Redressable Through the Requested Injunctive Relief ................................. 3

   E. Defendant's *ex Parte Young* Argument Also Fails; Bruen is a Proper Part ......................... 4

II. PLAINTIFFS HAVE A HIGH LIKELIHOOD OF SUCCESS ................................................. 5

   A. The Right to 'Possess and Carry Weapons' is 'Guaranteed' ................................. 5

   B. The Supreme Court Affirmatively Rejected Interest Balancing, Public
      Safety Tests ...................................................................................... 5

   C. Any Level of Scrutiny in This Case Contravenes the Second Amendment and *Heller* ........ 6

   D. Intermediate Scrutiny Contravenes the Second Amendment and *Heller* ........................... 7

   E. If Any Level of Scrutiny Applies, Which it Does Not, it is Strict Scrutiny ......................... 7

   F. Deference to Unconstitutional State Statutes Contravenes *Heller* ........................................ 9

III. THE SECOND AMENDMENT IS CERTAINLY 'IMPLICATED' ....................................... 9

IV. THE STATES' HISTORY RESTRICTING, IF NOT BANNING, PISTOLS ..................... 10

V. CRIMINAL SANCTIONS ARE A 'SUBSTANTIAL BURDEN' ......................................... 11

VI. IRREPARABLE HARM AND LIKLIHOOD OF SUCCESS ON THE MERITS................ 13

VII. THE STATE REPRESENTS THAT PLAINTIFFS 'SUFFER NO HARM' AND
COULD NOT BE PROSECUTED UNDER PENAL LAW § 265 ............................................... 13

VIII. THE EQUITIES TIP IN PLAINTIFFS' FAVOR, SERVE PUBLIC INTEREST............. 14

CONCLUSION.................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Avitabile v. Beach*,
  277 F. Supp. 3d 326 (N.D.N.Y. 2017)....................................................................... 1, 4

*Avitabile v. Beach*,
  368 F. Supp. 3d 404 (N.D.N.Y. 2019)................................................................ 2, 13, 15

*Azzarmi v. Donnelly*,
  2021 WL 405491 (E.D.N.Y. Jan. 20, 2021) ............................................................... 12

*Bernstein v. Police Dep't of City of New York*,
  85 A.D.2d 574 (1st Dept 1981) ........................................................................... 13, 14

*Blank v. Adler*,
  74 A.D.3d 802 (2d Dept 2010) .................................................................................. 13

*Boss v. Kelly*,
  306 F. App'x 649 (2d Cir. 2009) ................................................................................. 9

*Caetano v. Massachusetts*,
  577 U.S. 411 (2016) ................................................................................................... 3

*Cayuga Nation v. Tanner*,
  824 F.3d 321 (2d Cir. 2016) ....................................................................................... 1

*Corbett v. City of New York*,
  160 A.D.3d 415 (1st Dep't 2018) .............................................................................. 14

*Curtis 1000, Inc. v. Suess*,
  24 F.3d 941 (7th Cir. 1994) ...................................................................................... 15

*D.C. v. Heller*,
  554 U.S. 570 (2008) .................................................................................. 5, 6, 10, 11

*Drake v. Filko*,
  724 F.3d 426 (3d Cir. 2013) ....................................................................................... 7

*Duncan v. Becerra*,
  742 F. App'x 218 (9th Cir. 2018) ................................................................................ 5

*Ex parte Young*,
  209 U.S. 123 (1908) ................................................................................................ 4, 7

# TABLE OF AUTHORITIES (con't)

**Page(s)**

**Cases**

*Gould v. Morgan*,
  907 F.3d 659 (C.A.1 2018) ........................................................................................... 7

*Gras v. Stevens*,
  415 F. Supp. 1148 (S.D.N.Y. 1976) ............................................................................. 5

*Heller v. D.C.*,
  670 F.3d 1244 (D.C. Cir. 2011) ................................................................................ 6, 7

*Kachalsky v. Cty. of Westchester*,
  701 F.3d 81 (2d Cir. 2012) ................................................................................... Passim

*Klein v. City of San Clemente*,
  584 F.3d 1196 (9th Cir. 2009) ................................................................................... 14

*Knife Rts., Inc. v. Vance*,
  802 F.3d 377 (2d Cir. 2015) .................................................................................... 1, 2

*Knight v. Bratton*,
  48 Misc. 3d 536 (N.Y. Sup. Ct. 2015) ......................................................................... 8

*Libertarian Party of Erie Cty. v. Cuomo*,
  970 F.3d 106 (2d Cir. 2020) ........................................................................................ 5

*Ligon v. City of New York*,
  925 F. Supp.2d 478 (S.D.N.Y. 2013) ......................................................................... 15

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ..................................................................................................... 1

*Mance v. Sessions*,
  896 F.3d 390 (5th Cir. 2018) ..................................................................................... 12

*McDonald v. City of Chicago, Ill.*,
  561 U.S. 742 (2010) ........................................................................................ 6, 10, 13

*Moore v. Madigan*,
  702 F.3d 933 (7th Cir. 2012) ..................................................................................... 12

*Morris v. District of Columbia*,
  38 F. Supp. 3d 57 (D.D.C. 2014) ............................................................................... 15

# TABLE OF AUTHORITIES (con't)

**Page(s)**

**Cases**

*N.Y.S. Motor Truck Ass'n v. Pataki,*
  2004 WL 2937803 (S.D.N.Y. Dec. 17, 2004) ........................................................... 3

*Navajo Nation v. U.S. Forest Serv.,*
  535 F.3d 1058 (9th Cir. 2008) (en banc) ................................................................. 12

*New York State Rifle & Pistol Ass'n, Inc. v. City of New York*
  883 F.3d 45 (2d Cir 2018) vacated and remanded sub nom. *New York State Rifle & Pistol
  Ass'n, Inc. v. City of New York, New York*, 140 S. Ct. 1525, 206 L. Ed. 2d 798 (2020) ............ 7

*Nolan v. Cuomo,*
  2013 WL 168674,& n.7 (E.D.N.Y. Jan. 16, 2013) ...................................................... 4

*Oquendo v City of NY,*
  2020 U.S. Dist. LEXIS 184859, at *8-9 ................................................................. 9

*People v. Parker,*
  52 N.Y.2d 935 (1981) ....................................................................................... 14

*Reed v. Town of Gilbert, Ariz.,*
  576 U.S. 155 (2015) ......................................................................................... 8

*Regal Knitwear Co. v. N.L.R.B.,*
  324 U.S. 9 (1945) ............................................................................................ 4

*Rogers v. Grewal,*
  140 S. Ct. 1865 (2020)............................................................................... 5, 6, 7, 9

*Sabin v. Nelson,*
  2014 WL 2945770 (N.D.N.Y. June 30, 2014) .......................................................... 5

*Taylor v. Stewart,*
  479 F. App'x 10 (7th Cir. 2012)......................................................................... 3

*United States v. Cruikshank,*
  92 U.S. 542 (1875) ......................................................................................... 10

*United States v. New York,*
  2007 WL 951576 (N.D.N.Y.)............................................................................. 2

# TABLE OF AUTHORITIES (con't)

**Page(s)**

**Cases**

*Wrenn v. D.C.*,
  864 F.3d 650 (D.C. Cir. 2017) ............................................................................ 6, 12

*Young v. Hawaii*,
  896 F.3d 1044 (9th Cir. 2018) on reh'g en banc, 992 F.3d 765 (9th Cir. 2021) .................. 9, 12

*Young v. Hawaii*,
  992 F.3d 765 (9th Cir. 2021) ............................................................................... 10

**Rules**

FED. R. CIV. P. 65(a)(2) ......................................................................................... 15

**Other Authorities**

Armed Resistance to Crime: The Prevalence and Nature of Self–Defense with a Gun,
  86 J. CRIM. L. & CRIMINOLOGY 150 (1995) ...................................................... 11

## I.  PLAINTIFFS HAVE STANDING TO ASSERT THEIR CLAIMS

To have standing under Article III, a plaintiff must demonstrate (1) he has suffered an

injury in fact that is concrete and particularized as well as actual or imminent; (2) fairly traceable

to the challenged conduct; and (3) it is likely, rather than speculative, the injury will be redressed

by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

A. Plaintiffs Have Demonstrated A Concrete, Imminent Injury

Plaintiffs seek an injunction from the enforcement of criminal statutes against them for

openly carrying a handgun for self-defense throughout the state.[1] In the context of pre-

enforcement challenges to criminal statutes, imminent injury can be established by plausible

allegations that a plaintiff intends to engage in a course of conduct arguably affected with a

constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution

thereunder.  *Knife Rts., Inc. v. Vance*, 802 F.3d 377, 384 (2d Cir. 2015).

By the complaint and their sworn declarations, Plaintiffs have demonstrated their

intention to carry a handgun for self-defense throughout New York State as evidenced by their

submission to the licensing scheme to allow for the same and assertion that they intend to open

carry, which will result criminal sanctions under § 265.00 and/or § 400.00(15).  It is hard to

imagine what, if any, additional conduct Plaintiffs might be required to engage in to trigger a

more credible threat of prosecution short of actually committing the proscribed act. See,

*Avitabile v. Beach*, 277 F. Supp. 3d 326, 332 (N.D.N.Y. 2017).

Defendant Bruen has not averred that the criminal statutes will not be enforced against

Plaintiffs. C.f., *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016) (reversing dismissal

---

[1] The State's misrepresent Plaintiffs' claims to the extent that Plaintiffs are not "injured by virtue of an absence of an option to apply for an open carry license." [Br. at p. 16]. The injury arises from the risk of criminal and civil sanctions under Penal Law § 265 and § 400.00(15) for carrying open and holstered.

for lack of standing where "there is reason to believe that the plaintiffs will be targets of criminal

prosecution, and there has been no disavowal of an intention to prosecute those individuals");

*Knife Rts., Inc. v. Vance*, 802 F.3d at 386–87 ("nowhere in the record of this litigation have

defendants disavowed that they would criminally charge [plaintiffs]").

    B. <u>Plaintiffs' Injuries Are Not Speculative</u>

    The State's representation that Plaintiffs "cannot be injured by those statutes"[2] because

they have a handgun license is an incredible misrepresentation of the law – open carry is not an

exemption to criminal sanctions under § 265.20(3) because it is not within the scope of § 400.

Even if read to exempt Plaintiffs irrespective of *manner* of carry,[3] by carrying outside of the

license restriction, Plaintiffs are subject to misdemeanor charges [§ 400.00(15)], which would

result in a license revocation for "good cause" [§400.00(11)], and loss of property (handguns).

    C. <u>Plaintiffs' Injuries are Traceable to Defendant Bruen</u>

    A state official may be restrained from the enforcement of an allegedly unconstitutional

statute if that official by virtue of his office has some connection with the enforcement of the act.

*United States v. New York*, 2007 WL 951576, at *3 (N.D.N.Y.).

    As the Superintendent of the New York State Police ("NYSP"), Bruen enforces the Penal

Laws through his officers, staff, agents, and those working in concert with them including local

law enforcement. As such, Plaintiffs' injuries – criminal sanctions under §§ 265.01(1), 265.01-b,

265.03(3), and § 400.00(15) for carrying a handgun open and holstered throughout New York –

are traceable to Bruen who enforces such criminal statutes. See, *Avitabile v. Beach*, 368 F. Supp.

3d 404 (N.D.N.Y. 2019) (holding § 265.01(1) violated the Second Amendment as applied to stun

---

[2] State's Br. at p. 16 referencing Penal Law §§ 265.01(1), 265.01-B, 265.03(2), and 265.03(3).
[3] No Plaintiff, including William Sappe, is exempt from criminal sanctions for carrying a handgun in New York City a NYS handgun license is <u>invalid</u> in the 5 boroughs. § 400.00(6).

guns,[4] and enjoined Superintendent of the NYSP, "his officers, agents, servants, employees, and all persons in active concert or participation with the New York State Police); *Taylor v. Stewart*, 479 F. App'x 10, 14 (7th Cir. 2012) (injury traceable to officers who enforced a statute challenged as unconstitutional; declaratory judgment would vindicate plaintiff's rights); c.f., *N.Y.S. Motor Truck Ass'n v. Pataki*, 2004 WL 2937803, at *12 (S.D.N.Y. Dec. 17, 2004) (dismissing claims against the governor who had no connection to enforcement of the statute). Plaintiffs' have no duty to demonstrate Bruen "caused their injury" [Br. at p. 18], only that their injury – being subject to criminal sanctions for open carry - is fairly traceable to Bruen.[5]

    D. The Injury is Redressable Through the Requested Injunctive Relief

An order enjoining Bruen in his official capacity, his officers, agents, servants, employees, and all persons in active concert or participation with the New York State Police from enforcing §§ 265.01(1), 265.01-b, 265.03(3), and § 400.00(15) against Plaintiffs and those similarly situated individuals who possess a valid NYS handgun license issued by a statutory licensing officer in New York State and who carry a handgun, registered thereon, open and exposed on their person throughout New York State will redress Plaintiffs' injuries.

Plaintiffs are not "challenging the denial of licensure". [Br. at p. 20]. Plaintiffs possess valid handgun licenses, meaning they have been deemed fit to possess and carry handguns as matter of law. Plaintiffs seek relief from criminal sanctions, which lead to the loss of constitutional rights, property, and license revocation. Mr. Sappe also seeks relief from criminal sanctions for carrying a handgun concealed in New York City.

---

[4] *See, Caetano v. Massachusetts*, 577 U.S. 411 (2016).
[5] The licensing scheme under § 400 and Penal Law § 265 work hand-in-hand to criminalize open carry. Handgun possession is illegal anywhere in New York; § 400 is merely an exemption to the enforcement of § 265, and open carry is not on the exemption list.

E. Defendant's *ex Parte Young* Argument Also Fails; Bruen is a Proper Party

In a suit brought to have a declaration of the unconstitutionality of a state statute or to enjoin the enforcement of the statute, an officer of a state is an appropriate defendant if he has some connection with the enforcement of the act. *Ex parte Young*, 209 U.S. 123, 157 (1908). The *Ex parte Young* exception to Eleventh Amendment sovereign immunity permits an official-capacity claim against state officials for prospective, injunctive relief to remedy an ongoing violation of federal constitutional law like the one alleged here. See, e.g, *Avitabile v. Beach*, 277 F. Supp. 3d 326, 332 (N.D.N.Y. 2017) (where NY stipulated to the dismissal of the governor and attorney general, leaving the NYSP Superintendent as proper defendant); *Nolan v. Cuomo*, 2013 WL 168674, at *11–12 & n.7 (E.D.N.Y. Jan. 16, 2013) (district attorney was proper party to plaintiff's official-capacity claims for injunctive relief).

The State concedes that the exception to abstention on sovereign immunity grounds "applies where the official sued has some connection with the enforcement of the [allegedly unconstitutional] act"[6]. As discussed above, Bruen "enforces the unconstitutional act". Under Federal Rule 65, an injunction would apply to Bruen, his servants, employees, and all those receiving actual notice of such injunction who are in active concert or participation with the NYSP, as well as those identified with them in interest. See, e.g., *Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 14 (1945). A preliminary injunction would apply to those government agencies charged with enforcing and prosecuting the challenged sections of the Penal Law. Adopting the State's rationale, Plaintiffs would be required to name every local law enforcement agency and district attorney's office in the state – an oppressive and overburdensome task frustrating the redressability of claims. No such requirement existed in

---

[6] Br. at p. 20.

*Avitabile*, nor has the State identified one.[7] See, e.g., *Duncan v. Becerra*, 742 F. App'x 218, 220 (9th Cir. 2018) (preliminary injunction of criminal statute issued where chief law enforcement officer named as sole defendant); *Dr. A, et al. v. Hochul*, (21-cv-1009 NDNY) (enjoining NY Dep't of Health vaccine mandate).

## II. PLAINTIFFS HAVE A HIGH LIKELIHOOD OF SUCCESS

### A. The Right to 'Possess and Carry Weapons' is 'Guaranteed'

The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *D.C. v. Heller*, 554 U.S. 570, 592 (2008); *Rogers v. Grewal*, 140 S. Ct. 1865, 1869 (2020) (Thomas, J. dissenting from denial of cert.) ("it would take serious linguistic gymnastics - and a repudiation of this Court's decision in *Heller* - to claim that the phrase "bear Arms" does not extend the Second Amendment beyond the home.").

Plaintiffs seek to exercise the guaranteed right to possess and carry weapons in case of confrontation; not 'to keep and carry any weapon whatsoever, in any manner whatsoever, and for whatever purpose'[8], but to open carry a registered handgun, in a holster, for self-defense.

### B. The Supreme Court Affirmatively Rejected Interest Balancing, Public Safety Tests

This Court is bound to "explicitly reject [as the Supreme Court did in *Heller*] the invitation to evaluate Second Amendment challenges under an 'interest-balancing inquiry, with the interests protected by the Second Amendment on one side and the governmental public-safety concerns on the other.'"[9] The State's empirical data and public safety arguments must be

---

[7] *Libertarian Party of Erie Cty. v. Cuomo,* 970 F.3d 106, 115 (2d Cir. 2020) is inapposite. Where the denial of a license is challenged, licensing judges were the proper parties, not the NYSP Superintendent. This case does not challenge the denial of a license, but the enforcement of criminal laws. The State's other cases are inapplicable: *Sabin v. Nelson*, 2014 WL 2945770, at *4 (N.D.N.Y. June 30, 2014) involving a *pro se* plaintiff, was dismissed for failure to state any cognizable claim; *Gras v. Stevens*, 415 F. Supp. 1148, 1150 (S.D.N.Y. 1976) in challenging the Domestic Relations Law, plaintiff sued New York State, judges, the governor, and attorney general.
[8] Br. at p. 22.
[9] *Rogers*, 140 S.Ct. at 186-67, quoting *Heller*, 554 U.S. at 634-35 citing Justice Breyer's dissent.

rejected as improper considerations. The rejection of interest balancing tests in *Heller* [554 U.S. at 634-35] was confirmed by Justice Thomas in *Rogers v. Grewal*, 140 S.Ct. at 1865; *Wrenn v. D.C.*, 864 F.3d 650, 667-68 (D.C. Cir. 2017) (striking D.C.'s 'good cause' requirement for concealed carry as unconstitutional, noting that gun violence cannot obfuscate "the boundaries laid in 1791 and flagged in *Heller*: the right to bear common arms enables the typical citizen to carry a gun.").

C. <u>Any Level of Scrutiny in This Case Contravenes the Second Amendment and *Heller*</u>

The Supreme Court did not adopt a strict or intermediate scrutiny test for Second Amendment challenges; *Heller* **rejected** a "judge-empowering 'interest-balancing inquiry' that asks whether the statute burdens a protected interest in a way or to an extent that is out of proportion to the statute's salutary effects upon other important governmental interests." *Heller*, 554 U.S. at 634. The Court ruled that because handguns are weapons in common use for self-defense, banning their use for self-defense violates the Second Amendment.[10]

The right to possess and carry weapons for self-defense is a guaranteed and fundamental right of ordinary people, necessary to our system of ordered liberty.[11] Because "self-defense" is not a legal basis for obtaining a full carry concealed permit under New York Law[12], ordinary people cannot lawfully carry a handgun for self-defense. As such, banning open carry is a *per se* violation of the Second Amendment.

---

[10] "The Supreme Court struck down D.C.'s handgun ban because handguns have not traditionally been banned and are in common use by law-abiding citizens, not because the ban failed to serve an important government interest and thus failed the intermediate scrutiny test. And the Court endorsed certain gun laws because they were rooted in history and tradition, not because they passed the intermediate scrutiny test." *Heller v. D.C.*, 670 F.3d 1244, 1284 (D.C. Cir. 2011) (Heller II) (Kavanaugh, J.).
[11] *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 778 (2010).
[12] *Kachalsky v. Cty. of Westchester*, 701 F.3d 81, 86–87 (2d Cir. 2012) (desire to carry a concealed weapon to protect one's person and property does not constitute 'proper cause' for concealed carry license) (citing cases).

D. Intermediate Scrutiny Contravenes the Second Amendment and *Heller*

Despite the historical findings, statutory interpretation, and guidance in *Heller*,

*McDonald*, and *Caetano*, "lower courts struggle to determine the proper approach for analyzing

Second Amendment challenges." *Rogers*, 140 S. Ct. at 1866, supra. (Thomas, J. dissenting from

denial of cert.). "...many courts have resisted our decisions in *Heller* and *McDonald*… then filled

the self-created analytical vacuum with a "two-step inquiry" [13] that incorporates tiers of scrutiny

on a sliding scale …This approach raises numerous concerns. For one, the courts of appeals' test

appears to be entirely made up. The Second Amendment provides no hierarchy of 'core' and

peripheral rights. And the Constitution does not prescribe tiers of scrutiny." *Id.* at 186-87.

The State proposes this Court use the test that was rejected by the Supreme Court.[14]

*Rogers*, 140 S.Ct. at 1866-67 (criticizing *Kachalsky*[15] applying test where "public safety…

outweighs the need to have a handgun for an unexpected confrontation"[16]– the very balancing

test rejected in *Heller*. If applied, the test will "yield analyses that are entirely inconsistent with

*Heller*". *Id.*

E. If Any Level of Scrutiny Applies, Which it Does Not, it is Strict Scrutiny

New York State's open carry ban cannot survive any level of scrutiny. However, if some

level of scrutiny is to be applied, then it should be strict scrutiny. See, e.g., *Heller II*, 670 F.3d at

---

[13] The approach suggested by the State herein. [Br. at p. 23].

[14] See, Br. at pp. 23-24, citing, *Kachalsky*, 701 F.3d at 89, 93, 96-97.

[15] See, *Rogers*, 140 S.Ct. at FN 1, also mentioning *NYSRPA v. New York*, 883 F.3d 45, 64 (C.A.2 2018) (stating a "review of state and local gun control" involves a "balancing of the individual's constitutional right to keep and bear arms against the states' obligation to 'prevent armed mayhem' " (quoting *Kachalsky*, supra, at 96)), vacated and remanded, ante, p. ——; *Gould v. Morgan*, 907 F.3d 659, 676 (C.A.1 2018) (stating "courts must defer to a legislature's choices among reasonable alternatives" when the legislature has "take[n] account of the heightened needs of some individuals to carry firearms for self-defense and balance[d] those needs against the demands of public safety"); *Drake v. Filko*, 724 F.3d 426, 440 (C.A.3 2013) ("refus[ing] ... to intrude upon the sound judgment and discretion of the State of New Jersey" that only "those citizens who can demonstrate a 'justifiable need' to do so" may carry handguns outside the home).

[16] *Rogers*, 140 S.Ct. at FN 1; *Heller v. D.C.*, 670 F.3d 1244, 1283 (D.C. Cir. 2011) (Heller II) (Kavanaugh, J., dissenting) (listing constitutional rights that are not subject to means-ends scrutiny).

1284 (Kavanaugh, J. dissenting) (if any level of scrutiny is appropriate after *Heller*, surely it would be strict scrutiny rather than intermediate scrutiny; *Heller* rejected Justice Breyers' interest balancing approach, and *McDonald* held 'the right to keep and bear arms' is 'among those fundamental rights necessary to our system of ordered liberty.').

Under strict scrutiny analysis, the government's objectives must be narrowly tailored to serve compelling state interests. Taken together, § 265 and § 400 are designed to ban, and have the effect of banning, the ordinary individual's right to carry weapons for self-defense. C.f., *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 164 (2015).[17]

Enforcing criminal laws, for the mere exercise of a constitutionally guaranteed right, against individuals with no alternative to carrying a handgun for self-defense, whom the State's own licensing officers deem fit to possess and carry handguns[18] is not a narrowly tailored manner of achieving a compelling state interest. If public safety is the goal, it was reached by subjecting Plaintiffs and other licensees to a criminal background check. The statutes cannot withstand strict scrutiny.

The State speculates that the fabric of society will be torn apart if Plaintiffs' motion for injunctive relief is granted but provides no sworn declarations or evidence in admissible for that licensed handgun owners pose a danger to society. As borne out by the Declaration of Captain

---

[17] "Our precedents have also recognized a separate and additional category of laws that, though facially content neutral, will be considered content-based regulations of speech: laws that cannot be justified without reference to the content of the regulated speech or that were adopted by the government because of disagreement with the message the speech conveys…must also satisfy strict scrutiny." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 164 (2015). By analogy, New York's criminal laws were adopted by the Legislature because of its disagreement with the Second Amendment right to possess and carry weapons in common use for self-defense - a presumptively unconstitutional act with no corresponding compelling state interest.

[18] "Fitness" for both possession and carry is established upon issuance of a license. See, § 400.00(1). Only when seeking to carry concealed is a licensee required to establish additional criteria, i.e., "proper cause" under § 400.00(2)(f) ("a special need for self-protection distinguishable from that of the general community or of persons engaged in the same profession..."). See, *Knight v. Bratton*, 48 Misc. 3d 536, 538 (N.Y. Sup. Ct. 2015).

Chuck Haggard, when the Attorney General of Kansas issued an opinion, *effective immediately*, that no city in the state could ban open carry[19], his state did not devolve into chaos.

> "At the time, I was a Lieutenant/Watch Commander in the Topeka Police Department. No 'instant mayhem' was created. Our police officers were not spontaneously shooting members of the public they observed carrying a firearm exposed on their body in public. Public awareness of the passage of open carry laws through the media and public service announcements alerted the public to the changes in the law and reduced the possibility of confusion and/or alarm. The non-carrying public quickly grew accustomed to seeing their friends, neighbors, and other residents openly carrying firearms and the novelty faded...banning open carry does not greatly enhance public safety…" [Ex. 1].

### F. Deference to Unconstitutional State Statutes Contravenes *Heller*

When interpreting the United States Constitution, federal courts should not defer to state courts and legislatures that refuse to adhere to the basic premise that people have an individual, preexisting, guaranteed right to possess and carry weapons for self-defense handguns in the first instance[20]. See, *Rogers*, supra; *Young v. Hawaii*, 896 F.3d 1044, 1074 (9th Cir. 2018), on reh'g en banc, 992 F.3d 765 (9th Cir. 2021) (referring to the dissent's quote from *Kachalsky*[21]: "No statement could more clearly indicate where the dissent goes wrong: we are certainly not evaluating a mere 'policy judgment' but rather determining the scope and application of a constitutional right.").

## III. THE SECOND AMENDMENT IS CERTAINLY 'IMPLICATED'

The Second Amendment is implicated because ordinary people exercising the right to carry a handgun for self-defense throughout New York State are subject to criminal sanctions.

---

[19] "Kansas went from being a state with no legal method of concealed or open carry, except for hunting or active duty law enforcement officers (even retired officers were not exempt), to a state where concealed carry was allowed with a license, to a state where open and concealed carry was allowed with no license, in a relatively short period of time." [Ex. 1 at ¶ 25].

[20] In NY, it is well settled that handgun possession handgun is a privilege, not a right, subject to the broad discretion of the licensing officer. *Oquendo v City of NY*, 2020 U.S. Dist. LEXIS 184859, at *8-9 [EDNY Oct. 5, 2020, No. 19-cv-6352 (BMC)]); *Boss v. Kelly*, 306 F. App'x 649, 650 (2d Cir. 2009).

[21] "As the Second Circuit stated in *Kachalsky*, '[i]t is the legislature's job, not ours, to weigh conflicting evidence and make policy judgments.' quoting *Kachalsky*, 701 F.3d at 99." *Young*, 896 F.3d at 1074 (dissenting opinion).

As discussed above, unrestricted concealed carry is not protected by the Second Amendment. See, *Kachalsky*, 701 F.3d at 86–87 (desire to carry a concealed weapon to protect one's person and property does not constitute 'proper cause' for concealed carry license) (citing cases). Because the only other means for ordinary people to carry a handgun for self-defense – open carry - is banned by the enforcement of §§ 265.01(1), 265.01-b, 265.03(3), and § 400.00(15), the Second Amendment is implicated.

The State's reliance on *Young v. Hawaii*, 992 F.3d 765 (9th Cir. 2021) (en banc) is severely misplaced. *Young*, a rogue decision "holding that no 'right of the people to . . . bear arms' exists under the Second Amendment"[22] flatly contradicts Second Amendment text, longstanding history, and Supreme Court precedent.[23] [24]

## IV. THE STATES' HISTORY RESTRICTING, IF NOT BANNING, PISTOLS[25]

"It was plainly the understanding in the post-Civil War Congress that the Second Amendment protected an individual right to use arms for self-defense." *Heller*, 554 U.S. at 616.

State weapons laws in the 1800s were created through the lens of a particular state's constitution, not the Second Amendment, under the belief that the Second Amendment only applied to federal action. This belief was underscored by *United States v. Cruikshank*, 92 U.S. 542 (1875) which held that the Second Amendment does not by its own force apply to anyone other than the federal government. *Heller*, 554 U.S. at 619-20. It was not until *McDonald v. City*

---

[22] Stephen P. Halbrook, "Faux Histoire of the Right to Bear Arms: Young v. Hawaii (9th Cir.2021). https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3885910

[23] Young's petition for certiorari was distributed for the September 27, 2021 Conference of the Supreme Court. https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/20-1639.html

[24] The *Young* decision was reached largely by deferring to the monarchical history of Hawaii. See, Brief Amicus Curiae of Gun Owners of America, Inc., et al. in Support of Petitioner's Petition for a Writ of Certiorari, *Young v Hawaii*, 20-1639 at p. 10-12.

[25] Citing to *Reid* and *Nunn*, the State notes that state prohibitions on concealed carry still provided unrestricted open carry; in *Reid*, the defendant's ability to defend himself negated the argument that the concealed carry ban was unconstitutional; in *Nunn*, the state's ban of concealed carry was not unconstitutional because the statute's exemptions provided, "no persons shall be found guilty…who shall openly wear [such weapons] and which shall be exposed plainly to view." [Br. at p. 26].

*of Chicago, Ill.*, 561 U.S. 742, 778 (2010) that the Supreme Court held the Second Amendment applies to the states through the Fourteenth Amendment. As such, state laws banning handguns or regulating the manner of carry prior to 2010, like the NY Sullivan Law of 1911, that are inconsistent with the Second Amendment, *Heller*, *McDonald*, and *Caetano*, must be rejected. [26]

Texas, Arkansas, Tennessee, and Wyoming – 4 states the State claims banned handguns in the 1870s[27] - are now 4 of the **22 constitutional carry states** in America, meaning there is no permit required to carry concealed or open.[28] Presently, only 5 states ban open carry: New York ("shall not issue" concealed carry unless "proper cause"); Florida ("shall issue" concealed carry ; Illinois ("shall issue" concealed carry) ; California ("may issue" concealed carry if "good cause") ; since Heller, D.C. is now "shall issue" concealed carry.

There are over 19.48 million handgun permit holders. [29] [30]. According to US News and World Report[31], 6 of the top 10 states for public safety are constitutional carry states; the top 3 states being Maine, New Hampshire, and Idaho. Two of the remaining states, CT and VA, are "shall issue" concealed carry states.

## V. CRIMINAL SANCTIONS ARE A 'SUBSTANTIAL BURDEN'

Criminal sanctions imposed by Penal Laws §§ 265.01(1), 265.01-b, 265.03(3), and 400.00(15) for open carry 'substantially burden' the mere exercise of an enumerated right. See,

---

[26] 13 years after *Heller* and 11 years after *McDonald*, a bill to amend the New York State constitution to recognize the right to keep and bear arms never made it out of committee. [Ex. 2].
https://www.nysenate.gov/legislation/bills/2017/S747?intent=support
[27] Br. at pp. 26-27.
[28] https://www.usconcealedcarry.com/resources/terminology/types-of-concealed-carry-licensurepermitting-policies/unrestricted/
[29] 820,000 more than last year despite shutdowns in many states due to covid.
https://crimeresearch.org/2020/10/new-concealed-carry-report-for-2020-19-48-million-permit-holders-820000-more-than-last-year-despite-many-states-shutting-down-issuing-permits-because-of-the-coronavirus/, and many states do not require a permit to carry at all. [Ex. 3, "Permitless Carry States"].
[30] See, *Heller*, 554 U.S. at 570 (handguns are the most popular weapon for self-defense") citing, Gary Kleck & Marc Gertz, Armed Resistance to Crime: The Prevalence and Nature of Self–Defense with a Gun, 86 J. CRIM. L. & CRIMINOLOGY 150, 182–83 (1995).
[31] https://www.usnews.com/news/best-states/rankings/crime-and-corrections/public-safety

e.g., *Azzarmi v. Donnelly*, No. 21-CV-12 (WFK) (LB), 2021 WL 405491, at *4 (E.D.N.Y. Jan. 20, 2021) citing, *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1069-70 (9th Cir. 2008) (en banc) (a 'substantial burden' is imposed when individuals are forced to choose between exercising a constitutional right and threat of civil or criminal sanctions).

The Penal Law criminalizes conduct protected by the Second Amendment, resulting in a 'substantial burden' of the right. There are no alternative means for ordinary people to carry a handgun throughout New York for self-defense. Adopting the State's view, the right to self-defense only exists during the car trip to and from the target shooting range or to and from the campground or hiking trail – an absurd result. See, *Young*, 896 F.3d at 1053 (describing as "bordering on the absurd" the state *amici* suggestion[32] that the court "stretch" the presumptively lawful restricted locations identified in *Heller* (schools and government buildings) to allow all laws "preserving public safety", which would eventually classify the entire public sphere as a 'sensitive place'). Restrictions such as carrying firearms in a school zone, do not indicate that bearing arms is any less protected than keeping arms, because the Second Amendment tolerates equally modest restrictions on keeping firearms. *Wrenn*, 864 F.3d at 663. Regulations on public carry tend to "leave alternative channels" for self-defense outside the home because "[w]hen a state bans guns merely in particular places, such as public schools, a person can preserve an undiminished right of self-defense by not entering those places," *Moore v. Madigan*, 702 F.3d 933, 940. Thus, historical restrictions on public carry "go to show the

---

[32] https://ecf.ca9.uscourts.gov/n/beam/servlet/TransportRoom, Dkt. Entry no. 239; but see, Brief *Amicus Curiae of the States of f Louisiana, Alabama, Arizona, Arkansas, Georgia, Idaho, Indiana, Kansas, Kentucky, Mississippi, Montana, Nebraska, North Dakota, Ohio, Oklahoma, South Carolina, South Dakota, Texas, Utah, and West Virginia* in support of Plaintiff-Appellant noting, "some states - and federal courts - continue to place the Second Amendment on a lower level than the other Amendments in the Bill of Rights. See, e.g., *Mance v. Sessions*, 896 F.3d 390, 398 (5th Cir. 2018) (Ho, J., dissenting from denial of rehearing en banc) ("[T]he Second Amendment continues to be treated as a 'second-class' right—as at least three Justices have noted in recent years." (citing opinions by Justice Thomas, joined by Justices Scalia and Gorsuch))".

scope of the right, not its lack of fundamental character." See, *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 802 (2010).

The question under *Heller* is not whether citizens have adequate alternatives available for self-defense, but whether the law bans conduct protected by the Second Amendment "regardless of whether alternatives exist." *Avitabile*, 368 F. Supp. 3d at 416. Notwithstanding, *DeCastro* is inapposite, as there was no bar to alternative means of purchasing a gun in defendant's state.

## VI. IRREPARABLE HARM AND LIKLIHOOD OF SUCCESS ON THE MERITS

Plaintiffs sufficiently demonstrated irreparable harm by the threat of criminal sanctions for carrying a handgun for self-defense throughout New York, as set forth above. Plaintiffs have no alternative means of exercising their right to self-defense, as criminal statutes ban ordinary people from carrying a handgun for self-defense throughout the state. *Bernstein v. Police Dep't of City of New York*, 85 A.D.2d 574 (1st Dept 1981) ("proper cause" requires "a special need for self-protection distinguishable from that of the general community or of persons engaged in the same profession."); *Blank v. Adler*, 74 A.D.3d 802, 803 (2d Dept 2010).

The challenged are blanket restrictions on all "manner, time, and place"; they do not merely ban where can carry *in public*, such as on school grounds, they restrict the *general public* from the *entire state* – permitting the exercise of the right to self-defense for the privileged, allowing certain 'ordinary people' the right to self-defense only to and from the target range or, for some, while camping/hiking. For all ordinary people, like Plaintiffs, the right to self-defense in New York City is completely banned.

## VII. THE STATE REPRESENTS THAT PLAINTIFFS 'SUFFER NO HARM' AND COULD NOT BE PROSECUTED UNDER PENAL LAW § 265

The State represents that Plaintiffs "suffer no harm whatsoever from the challenged provisions of Penal Law art. 265, under which they could not be prosecuted. Penal Law §

265.20(3)"[33]. Plaintiffs contest the State's unsworn statement; at the very least, Plaintiffs face criminal misdemeanor charges under § 400.00(15), revocation of their license, and the permanent loss of their property (handguns). *People v. Parker*, 52 N.Y.2d 935 (1981).

It is recognized statewide and nationally that open carry is "banned" in New York. [see, FN 28; *Corbett v. City of New York*, 160 A.D.3d 415, 415 (2018) (recognizing the state's blanket ban on open carry); *Kachalsky*, 701 F.3d at 86 (New York bans carrying handguns openly). Not only is that the understanding of the general public, it is also the understanding of law enforcement throughout New York. The State submitted no sworn declaration from *anyone*, including Bruen, to the contrary. If Plaintiffs open carry in public, they will be arrested for a violent felony, their license will be revoked, they will lose their handguns, and likely be convicted and lose their Second Amendment rights. At the very least, Plaintiffs would suffer misdemeanor charges [see above]. Because even full carry concealed NYS pistol licenses are "invalid" in New York City § 400.00(6), open carry in the City will result in felony criminal sanctions.

## VIII. THE EQUITIES TIP IN PLAINTIFFS' FAVOR, SERVE PUBLIC INTEREST

Granting injunctive relief greatly serves the public interest because the ordinary person – "the public" for whom the Second Amendment was created - is banned from exercising their right to carry a handgun for self-defense. When challenging government action that affects the exercise of constitutional rights, "[t]he public interest . . . tip[s] sharply in favor of enjoining the law. See, *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009). "A balance of equities tipping in favor of the party requesting a preliminary injunction" means a balance of the

---

[33] Br. at p. 36.

hardships against the benefits. See, e.g., *Ligon v. City of New York*, 925 F. Supp.2d 478, 539 (S.D.N.Y. 2013).

Contrary to the State's assertion, an injunction will have no effect on the licensing statute. The enforcement of Penal Law §§ 265.01(1), 265.01-b, 265.03(3), and § 400.00(15) would be enjoined from being enforced against valid pistol license holders, as the enforcement of § 265.01 was enjoined from being enforced against those individuals who merely possess an electric stun gun. See, *Avitabile*, supra.

## CONCLUSION

Plaintiffs' motion for a preliminary injunction should be granted in its entirety.[34]

Dated: September 21, 2021
    Scarsdale, New York

                                    THE BELLANTONI LAW FIRM
                                    *Attorneys for Plaintiffs*

                        By:     ____/s_____
                                    Amy L. Bellantoni (AB3061)
                                    2 Overhill Road, Suite 400
                                    Scarsdale, New York 10583
                                    (914) 367-0090
                                    abell@bellantoni-law.com

---

[34] The Federal Rules of Civil Procedure permit this court to "advance the trial on the merits and consolidate it with the hearing" for a preliminary injunction. FED. R. CIV. P. 65(a)(2). "[W]hen the eventual outcome on the merits is plain at the preliminary injunction stage, the judge should, after due notice to the parties, merge the stages and enter a final judgment." *Morris v. District of Columbia*, 38 F. Supp. 3d 57, 62 n.1 (D.D.C. 2014) (quoting *Curtis 1000, Inc. v. Suess*, 24 F.3d 941, 945 (7th Cir. 1994)).

15