UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- X

JASON FREY, BRIANNA FREY, JACK CHENG, and
WILLIAM SAPPE,

                                 Plaintiffs,               21-cv-5334 (NSR)

                -against-

KEVIN P. BRUEN, Acting Superintendent of the New
York State Police, in his official capacity, NEW YORK
CITY, New York, and DERMOT SHEA, in his official
capacity as NYPD Police Commissioner,

                                  Defendants.

---------------------------------------------------------------------- X


**CITY DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION**


                                         GEORGIA M. PESTANA
                                Corporation Counsel of the
                                City of New York
                             Attorney for City Defendants
                        100 Church Street, Room 5-153
                           New York, New York 10007

Service Date:  September 14, 2021

SHERYL NEUFELD,
MICHELLE GOLDBERG-CAHN, and
RACHEL K. MOSTON, OF COUNSEL.

**TABLE OF CONTENTS**

<u>Page</u>

PRELIMINARY STATEMENT ........................................................................ 1

RELEVANT FACTS AND REGULATORY BACKGROUND ............................ 2

      A.   New York Statutory Scheme ........................................ 2

      B.  The New York City Regulatory Scheme ........................... 3

      C.  The Plaintiffs and Their Allegations ................................. 5

      D.  The Instant Action and Motion for a Preliminary
      Injunction................................................................. 9

STANDARD OF REVIEW ......................................................................... 10

ARGUMENT ........................................................................................ 11

      POINT  I:   PLAINTIFFS  ARE  NOT  LIKELY  TO
      SUCCEED ON THE MERITS OF THEIR CLAIMS........................ 11

      A.  Plaintiffs Lack Standing to Raise Many of their
      Challenges ................................................................ 11

      B.  Sappe's Claims are Barred by the Doctrines of
      Res Judicata and Collateral Estoppel ....................... 13

      C.  Plaintiffs are Not Likely to Succeed on the
      Merits of their Second Amendment Claims Because
      Such Claims Run Contrary to the Second Circuit's
      Holding in <u>Kachalsky</u>............................................... 17

      D.  Plaintiffs are Not Likely to Succeed on the
      Merits of their Claim that Banning Open Carry is a
      Per Se Violation of the Second Amendment.......................... 19

      POINT  II:   PLAINTIFFS  HAVE  FAILED  TO
      ESTABLISH IRREPARABLE HARM.................................... 24

      POINT  III:   THE  BALANCE  OF  HARDSHIPS  TIPS
      DECIDEDLY IN THE CITY'S FAVOR.................................. 25

CONCLUSION ..................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Abekassis v. New York City,
    477 F. Supp. 3d 139 (S.D.N.Y. 2020)................................................................... 3

Able v. United States,
    44 F.3d 128 (2d Cir. 1995) ........................................................................ 10

Berlitz Schs. Of Languages of Am., Inc. v. Everest House,
    619 F.2d 211 (2d Cir. 1980) ...................................................................... 15

Campbell v. Kelly,
    85 A.D.3d 446 (1st Dep't 2011) ................................................................. 18

Cheng v. Shea,
    Index No. 152437/2021 ............................................................................... 7

Cheng v. Shea,
    Index No. 154521/2021 ............................................................................ 7, 8

District of Columbia v. Heller,
    554 U.S. 570 (2008) ............................................................... 19, 20, 21, 24

EDP Med. Computer Syst., Inc. v. United States,
    480 F.3d 621 (2d Cir. 2007) ...................................................................... 15

Epperson v. Entm't Express, Inc.,
    242 F.3d 100 (2d Cir. 2001) ...................................................................... 14

Hanrahan v. Riverhead Nursing Home,
    592 F.3d 367 (2d Cir. 2010) ...................................................................... 14

Hurley v. Toia,
    432 F. Supp. 1170 (S.D.N.Y. 1977) .......................................................... 11

JSG Trading Corp. v. Tray-Wrap, Inc.,
    917 F.2d 75 (2d Cir. 1990) ........................................................................ 10

Kachalsky v. County of Westchester,
    701 F.3d 81 (2d Cir. 2012) .................................................................. passim

Matter of Klensoky v. New York City Police Dep't,
    75 A.D.2d 793 (1st Dep't 1980) .................................................................. 3

Kovarsky v. HAD,
    31 N.Y. 2d 184 (N.Y. 1972) .................................................................................................. 16

Kwong v. Bloomberg,
    723 F.3d 160 (2d Cir. 2013) ................................................................................................. 20

Lederman v. New York City Police Department,
    2011 NY Slip Op 30765(U) ........................................................................................... 13, 17

Libertarian Party of Erie Cty. v. Cuomo,
    970 F.3d 106 (2d Cir. 2020) ............................................................................... 19, 20, 21, 22

Magi XXI, Inc. v. Stato Della Cita Del Vacticano,
    22 F. Supp. 3d 195 (E.D.N.Y. 2014) ................................................................................... 16

McDonald v. City of Chicago,
    561 U.S. 742 (2010) ....................................................................................................... 19, 20

Merced v. Ponte,
    2019 U.S. Dist. LEXIS 40949 (E.D.N.Y. 2019) ................................................................ 15

Miller v. City of New York,
    2019 U.S. Dist. LEXIS 82058 (E.D.N.Y. 2019) .......................................................... 14, 16

Mishtaku v. City of New York,
    2015 U.S. Dist. LEXIS 193797 (S.D.N.Y. 2014) ............................................................... 19

Monahan v. New York City Dep't of Corrections,
    214 F.3d 275 (2d Cir. 2000) ........................................................................................... 14, 16

Montana v. United States,
    440 U.S. 147 (1979) .............................................................................................................. 17

N.Y. State Rifle & Pistol Ass'n v. Corlett,
    2021 U.S. LEXIS 2144 (2021) ............................................................................................. 19

O'Brien v. City of Syracuse,
    54 N.Y.2d 353 (N.Y. 1981) .................................................................................................. 14

Oneida Nation of New York v. Cuomo,
    645 F.3d 154 (2d Cir. 2011) .................................................................................................. 10

Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.,
    769 F.3d 105 (2d Cir. 2014) .................................................................................................. 10

Pappas v. Giuliani,
    118 F. Supp. 2d 433 (S.D.N.Y. 2000) ................................................................................. 17

R& G Affiliates, Inc. v. Knoll Int'l Inc.,
    1984 U.S. Dist. LEXIS 14993 (S.D.N.Y. 1984) ................................................................. 11

Reilly v. Reid,
    45 N.Y.2d 24 (N.Y. 1978).................................................................................................. 15

Sappe v. O'Neill,
    Index No. 151336/2020...................................................................................................... 8, 13

Servedio v. Bratton,
    268 A.D.2d 356 (1st Dep't 2000) ...................................................................................... 18

Sewell v. City of New York,
    182 A.D.2d 469 (1st Dep't 1992) ...................................................................................... 18

Sonterra Capital Master Fund, Ltd. v. UBS AG,
    954 F.3d 529 (2d Cir. 2020) .............................................................................................. 11

Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.,
    60 F.3d 27 (2d Cir. 1995).................................................................................................. 11

Toussaint v. City of New York,
    2018 U.S. Dist. LEXIS 152985 (E.D.N.Y. Sept. 8, 2018)................................................ 2, 21

Turley v. Giuliani,
    86 F Supp. 2d 291 (S.D.N.Y. 2000) .................................................................................. 24

United States v. Decastro,
    682 F.3d 160 (2d Cir. 2012).............................................................................................. 13, 20

United States v. Jimenez,
    895 F.3d 228 (2d Cir. 2018).............................................................................................. 20, 21

United States v. Oppedisano,
    No. 09-0305, 2010 WL 4961663 (E.D.N.Y. Nov. 30, 2010)............................................ 21

United States v. Salerno,
    481 U.S. 739 (1987)............................................................................................................ 24

Vantico Holdings S.A. v. Apollo Mgmt.,
    247 F. Supp. 2d 437 (S.D.N.Y. 2003)............................................................................... 11

Weinberger v. Romero-Barcelo,
    456 U.S. 305 (1982)............................................................................................................ 11

**Statutes**

42 U.S.C. § 1983 ..................................................................................................................... 14, 17

Pen. Law §§ 265.01(1), 265.01 (b), and 265.03(3) ..................................................... 12

Pen. Law §§265.01-265.04, 265.20(a)(3) ................................................................... 18

Pen. Law § 400.00(1).................................................................................................... 3

Pen. Law § 400.00(2).................................................................................................... 8

Pen. Law. § 400.00(2)(f) ..................................................................................... 3, 5, 6

Pen. Law § 400.00(6)........................................................................................9, 13, 17

**Other Authorities**

38 RCNY § 5-01............................................................................................4, 8, 13

38 RCNY § 5-02............................................................................................... 4, 5

38 RCNY § 5-03.........................................................................................5, 13, 17

38 RCNY § 5-07.................................................................................................. 5

38 RCNY § 5-10............................................................................................... 5, 9

Defendants, New York City, New York ("City"), and Dermot Shea, in his official capacity as NYPD Police Commissioner ("Commissioner Shea") (collectively, "City Defendants"), submit this memorandum of law in opposition to plaintiffs' motion for a mandatory affirmative preliminary injunction, dated August 9, 2021 ("Pl. Mem.").

## PRELIMINARY STATEMENT

Plaintiffs – four individuals who reside in different counties in New York State (outside of New York City) – ask this Court to upend New York's longstanding public carry laws, which have essentially existed in their current form since 1913, bypass the New York State Legislature, and create a brand new type of carry law that would permit plaintiffs to *openly* carry their handguns in public without any government restriction whatsoever.  Plaintiffs are not entitled to this drastic and unprecedented relief.

New York has always banned the *open* carry of handguns in public.  Under New York's law, applicants may apply for various types of concealed carry permits (depending on the particular jurisdiction within the State).  Indeed, plaintiffs have availed themselves of such licensing options:  the Freys hold concealed carry licenses restricted to sportsman in Westchester County; plaintiff Cheng holds a concealed carry license for target shooting in Nassau County; and plaintiff Sappe holds an unrestricted concealed carry license in Orange County.  Pl. Mem., at 3-4.  However, all four plaintiffs seek to carry their handguns "open and exposed" throughout "the State of New York, including the 5 boroughs of New York City" without submitting a licensing application or providing "proper cause" for doing so, and without the government dictating their method of carry.  See Plaintiffs' Declarations, annexed to the Declaration of Amy L. Bellantoni, dated August 9, 2021 ("Bellantoni Dec.") collectively, as Exhibit 1.  In addition, plaintiff Sappe seeks to carry a concealed handgun throughout the City, despite the fact that the NYPD License Division denied his application for a carry license due to Sappe's prior arrest

history and failure to demonstrate proper cause under the Penal Law.  Recently, a New York State Court Judge upheld the NYPD License Division's determination, denying Sappe a concealed carry license in the City, and dismissed the very challenges that Sappe seeks to relitigate in the instant action.

Accordingly, plaintiffs are not likely to succeed on the merits of any of their claims.  New York's carry laws, which ban open carry, have long faced and survived judicial scrutiny, most notably in Kachalsky v. County of Westchester, 701 F.3d 81 (2d Cir. 2012), which upheld New York State's carry laws and noted New York's historical ban on open carry. Plaintiffs' claims are, therefore, foreclosed by Kachalsky.  In any event, as detailed below, New York's ban on open carry is substantially related to New York's interest in public safety and crime prevention.  Finally, with respect to plaintiff Sappe, he is not likely to succeed on the merits of his claims for a concealed carry permit in New York City because such claims are barred under the doctrines of res judicata and collateral estoppel.  Plaintiffs have also failed to demonstrate irreparable harm, and that the balance of equities tips in their favor.  Plaintiffs' motion for a preliminary injunction, which seeks extraordinary injunctive relief that would upend more than a century of settled law, policy, and legislative judgment should be denied.

## RELEVANT FACTS AND REGULATORY BACKGROUND

**A.  New York State Statutory Scheme.**

The State of New York prohibits possession of "firearms," including handguns, without a license.  Kachalsky, 701 F.3d 81 at 85 (citing N.Y. Pen. Law §§ 265.01-265.04. 265.20(a)(3)); see also, Toussaint v. City of New York, 2018 U.S. Dist. LEXIS 152985, at *4 (E.D.N.Y. Sept. 8, 2018).  Penal Law § 400.00 provides "the exclusive statutory mechanism for the licensing of firearms in New York State."  Kachalsky, 701 F.3d at 85.  Under § 400.00, a licensing officer is to issue a firearm license "only after investigation and finding that all

statements in a proper application for a license are true." Pen. Law § 400.00(1).  To receive a

license, Pen. Law § 400.00 requires that an applicant, inter alia, be at least 21, lack a history of

crime and mental illness, be of good moral character, and be someone for "whom no good cause

exists for the denial of the license." Id. § 400.00(1)(a)-(c), (n).

Most licenses are limited by place or profession.  Kachalsky, 701 F.3d at 86.

Applicants who seek an unrestricted license to carry a concealed handgun in public must

establish "proper cause." Pen. Law. § 400.00(2)(f).  Although "proper cause" is not defined by

the Penal Law, New York Courts have defined the term.  For instance, the Appellate Division,

First Department, has interpreted "proper cause" to mean "a special need for self-protection

distinguishable from that of the general community or of persons engaged in the same

profession." Matter of Klensoky v. New York City Police Dep't, 75 A.D.2d 793 (1st Dep't

1980).  A "generalized desire to carry a concealed weapon to protect one's person and property

does not constitute proper cause." Kachalsky, 701 F.3d at 86.  New York State bans carrying

handguns *openly* in public.  See generally, Pen. Law; Kachalsky, 701 F.3d at 86.  The law

governing licenses to carry concealed firearms in public in New York has existed in the same

essential form since 1913. Id. at 7.

## B.  The New York City Regulatory Scheme.

"To obtain a handgun license, an individual must apply to his or her local

licensing officer." Abekassis v. New York City, 477 F. Supp. 3d 139, 144 (S.D.N.Y. 2020).  The

Penal Law specifies that, for New York City, that official is the NYPD Police Commissioner. Id.

(citing Pen. Law § 265.00(10)).  The NYPD License Division exercises the Police

Commissioner's authority in processing and issuing handgun licenses. Id.  All applications

trigger "a local investigation by police into the applicant's mental health history, criminal

history, [and] moral character[.]" <u>Kachalsky</u>, 701 F.3d at 87.  The licensing officer is vested with "considerable discretion" in deciding whether to grant a licensing application, particularly in determining whether proper cause exists for the issuance of a carry license.  <u>Id.</u>

Title 38 RCNY § 5-01 sets forth the various types of premises and carry[1] handgun licenses issued by the NYPD.  A *premises residence* or *business license*, is a restricted handgun license, issued for a specific business or residence location.  38 RCNY § 5-01(a).  A *carry business license* is an "unrestricted class of license which permits the carrying of a handgun concealed on the person." <u>Id.</u> § 5-01(b).  A *limited carry business license* is a restricted handgun licenses which "permits the licensee to carry the handgun listed on the license concealed on the person to and from specific locations during the specific days and times set forth on the license." <u>Id.</u> § 5-01 § (c).  A *carry guard license* or *gun custodian license* is a restricted type of carry license, valid when the holder is "actually engaged in a work assignment as a security guard or gun custodian." <u>Id.</u> § 5-01(d).  A *special license* is issued according to Pen. Law § 400.00 to persons in possession of a valid New York State County License. <u>Id.</u> § 5-01(e).

Title 38 RCNY § 5-02 sets forth the requirements for the issuance of a premises license, including that the applicant be of good moral character; have no prior conviction for a felony or other serious offense; disclose whether s/he has been the subject or recipient of an order of protection or temporary restraining order; disclose any history of mental illness; be free from any disability or condition that may affect the ability to safely possess or use a handgun; reside or maintain a principal place of business within the confines of New York City; be an applicant concerning whom no good cause exists for the denial of a license; and be at least 21 years of age.  38 RCNY § 5-02(a)-(i).

---

[1] As New York State bans the open carry of weapons, the types of carry licenses set forth in the RCNY require *concealed* carry.

Title 38 RCNY § 5-03 sets forth the requirements for the issuance of *carry licenses* and *special licenses* and sets forth as follows: "In addition to the requirements of 38 RCNY § 5-02, an applicant seeking a carry or special handgun license shall be required to show 'proper cause' pursuant to § 400.00(2)(f) of the New York State Penal Law. 'Proper cause' is determined by a review of all relevant information bearing on the claimed need of the applicant for the license." 38 RCNY § 5-03.

The relevant grounds for denial of a handgun license are set forth in 38 RCNY § 5-10. The licensing approval and disapproval procedures are set forth in 38 RCNY § 5-07. If a license application is disapproved, the applicant can appeal to the Division Head, License Division. Id. If the appeal is denied, the applicant shall receive a "Notice of Disapproval After Appeal," which concludes the NYPD's administrative review procedure. Id. § 5-07(f). Thereafter, the applicant may challenge the NYPD's decision in New York State court under Article 78 of the New York Civil Practice Law and Rules ("CPLR"). Kachalsky, 701 F.3d at 87.

## C. The Plaintiffs and Their Allegations.

### i. *Plaintiffs Jason Frey and Brianna Frey.*

Plaintiff Jason Frey is a resident of Westchester County. Compl. ¶¶ 23-24. As alleged in the Complaint, Mr. Frey was issued a New York State pistol license by a Westchester County licensing officer. Id. ¶ 92. The handgun license was restricted to "sportsman," thus limiting possession of the handguns registered to this license to inside of Mr. Frey's home, to and from target shooting, and during sports activities. Id. ¶¶ 92-93. In 2019, Mr. Frey filed an application with the Westchester County licensing officer to remove the "sportsman" restrictions on his license to allow for an unrestricted concealed carry for self-defense purposes. Id. ¶ 95. The Westchester licensing officer denied the application, finding that Mr. Frey failed to meet the

"proper cause" standard set forth in Pen. Law § 400.00(2)(f).  Id. ¶ 98.  The licensing officer found that Mr. Frey's "concern about being a potential target of violence is 'entirely speculative.'"  Id. ¶ 100.  Mr. Frey did not file an Article 78 proceeding.

According to the Complaint, Mr. Frey seeks to openly carry his handgun in public – specifically within New York City – without any limitations, without regard for intrastate geographical restrictions, and without demonstrating "proper cause" under the law.  Compl. ¶¶ 106-111; see Declaration of Jason Frey, dated June 24, 2021 ("Mr. Frey Dec."), ¶ 16.  Mr. Frey admits that New York State bans the open carry of handguns, and he laments the fact that State law provides no mechanism for obtaining such a license.  Mr. Frey acknowledges that he has never applied to the NYPD License Division for any type of carry license or special license, which would permit concealed carry throughout the City.  According to Mr. Frey, applying for such licenses in New York City would be "futile."  Compl. ¶ 111.

Plaintiff Brianna Frey's claims mirror her husband's allegations.  Like Mr. Frey, Ms. Frey is a resident of Westchester County; she was issued a New York State handgun license restricted to "sportsman."  Compl. ¶¶ 123-126.  In 2019, Ms. Frey filed an application with the Westchester County licensing officer to remove the "sportsman" restrictions to allow for an unrestricted concealed carry for self-defense purposes.  Id. ¶ 127.  The Westchester licensing officer denied the application, finding that Ms. Frey failed to meet the "proper cause" standard.  Id. ¶ 129.  Ms. Frey did not file an Article 78 proceeding.  Id. ¶ 136-137.

Ms. Frey "seeks to, and intends to, carry her handgun open and exposed on her person in public for all lawful purposes."  Id. ¶ 140.  Ms. Frey also seeks to "carry a firearm for self-protection outside of her home and in public without the government dictating the manner in which she carries her firearm – loaded and exposed, concealed, and or unloaded and exposed."

Id. ¶ 142.  Like her husband, Ms. Frey complains that New York State bans the open carry of handguns.  Id. ¶ 143.  Ms. Frey alleges that she has never applied for a concealed carry license in New York City because it "would be futile."  Id. ¶ 153.

      *ii.*     *Plaintiff Jack Cheng.*

Plaintiff Cheng is a resident of Nassau County.  Id. ¶ 160.  Plaintiff Cheng was issued a New York State handgun license by a Nassau County licensing officer.  Id. ¶ 164. Cheng's license is restricted to "possession of his handguns [] inside of his home, to and from target shooting activities, and while engaged in hunting during hunting season."  Id. ¶ 165. Cheng claims he owns several businesses in New York City.  Id. ¶ 168.  Mr. Cheng alleges he first applied for – and was issued – a concealed carry license related to his City businesses by the NYPD License Division over 15 years ago.  Id. ¶ 169.  Mr. Cheng submitted a renewal application to the NYPD License Division, as this license was set to expire on its own terms on October 6, 2019.  Id. ¶ 170.  As required by law, Mr. Cheng was required to demonstrate "proper cause" for the renewal of his carry license.  Id. ¶ 171.  By final determination dated November 9, 2020, the NYPD License Division denied Cheng's renewal application.  See id. ¶ 173.

On or around March 9, 2021, plaintiff Cheng commenced an Article 78 proceeding in state court, challenging the NYPD's denial of the renewal application.  See Cheng v. Shea, Index No. 152437/2021, Kotler, J. (Sup. Ct. N.Y. Co. 2021).  By Decision and Order dated April 19, 2021, Justice Lynn R. Kotler denied the Petition  because "petitioner has failed to provide proof of service of the petition on the respondents."  Id.  (NYSCEF Doc. No. 9). Thereafter, by Notice of Petition and Verified Petition filed May 10, 2021, plaintiff Cheng commenced a second Article 78 proceeding, seeking an order of mandamus, compelling the NYPD to renew Cheng's license.  Cheng v. Shea, Index No. 154521/2021, Love, J. (Sup. Ct.

N.Y. Co. 2021).  The City respondents cross-moved to dismiss the petition, and that motion is currently pending before Justice Laurence L. Love in New York State Supreme Court.  Id.

Plaintiff Cheng seeks to carry his handgun "outside of his home and in public without the government dictating how he wears or carries" his firearm.  Compl. ¶ 174.  Finally, Mr. Cheng seeks to carry his handgun "open and exposed" throughout the State of New York, including New York City, without the need to demonstrate "proper cause."  Id. ¶ 174-177.

iii.   *Plaintiff William Sappe.*

Plaintiff Sappe is a resident of Orange County, New York.  Compl. ¶ 188.  Sappe allegedly "transports substantial amounts of cash, diamonds, and jewelry for high-end jewelers in the Diamond District" and throughout the City.  Id. ¶¶ 190, 192.  Sappe "has held a New York State unrestricted concealed carry (full carry) handgun license, which was issued by a County Court Judge/licensing officer in Orange County."  Id. ¶ 196.  In October 2018, Sappe applied to the NYPD License Division for an endorsement of his Orange County concealed carry license – *i.e.*, a "special carry" license (see 38 RCNY § 5-01).  The NYPD denied Sappe's application finding that Sappe did not establish "proper cause" under Pen. Law § 400.00(2), and that he lacked the requisite good "moral character" for the issuance of a license.  Compl. ¶ 204.

Plaintiff Sappe challenged the NYPD's denial in a state court Article 78 proceeding.  Sappe v. O'Neill. Index No. 151336/2020, Engoron J. (Sup. Ct. N.Y. Co. 2020), Decision, dated December 24, 2020, NYSCEF Doc. No. 67.  Denying the Petition, Justice Engoron held that the NYPD lawfully and properly denied Sappe's application on the basis of "his previous arrest history, including arrests for crimes such as robbery, gang assault, resisting arrest, and reckless endangerment."  Id. Decision, NYSCEF Doc. No. 67, at p. 2.  In addition, Justice Engoron noted that the NYPD License Division rationally found that Sappe's "arrest

history and his negative driving history demonstrated a lack of requisite good moral character and also established good cause for denying the license application." Id.

As alleged in the instant Complaint, Sappe "seeks to carry a firearm for self-protection outside of his home and in public" – "whether concealed or exposed" – throughout New York State, including New York City, without the need to demonstrate "proper cause" or any other reason for exercising his right to bear arms for personal protection.  Compl. ¶¶ 215-216.

**D.  The Instant Action and Motion for a Preliminary Injunction.**

Plaintiffs filed the instant Complaint on June 16, 2021 (see ECF Docket No. 1), alleging that:  (1) the Pen. Law's criminalization of mere possession of handguns violates the Second Amendment to the U.S. Constitution (Compl., Count 1); (2) the State and City's discretionary licensing scheme violates the Second Amendment (id., Count II); (3) the "geographical ban" under Pen. Law § 400.00(6) violates the Second Amendment (id., Count III); (4) the State's open carry ban violates the Second Amendment (id., Count IV); and (5) Title 38 RCNY §§ 5-10 (a), (h), and (n) unconstitutional on their face and as applied to plaintiff Sappe (id., Count V).  Plaintiffs seek declaratory and injunctive relief, as well as compensatory and nominal damages. Id., Wherefore Clause.

On or around August 9, 2021, plaintiffs moved for a mandatory affirmative preliminary injunction, seeking an Order enjoining the defendants from enforcing the Penal Law against "(i) Plaintiffs and those similarly situated who possess a valid NYS handgun license issued by a statutory licensing officer in New York State, who carry a handgun, registered thereon, open and exposed on their person in New York State, including 5 boroughs of New York City; and (ii) Plaintiff William Sappe and those similarly situated individuals who possess

a valid unrestricted NYS concealed carry handgun license issued by a licensing officer outside of New York City who carry a handgun registered thereon concealed on their person within the 5 boroughs of New York City." Pl. Mem., at 3.

## STANDARD OF REVIEW

A preliminary injunction "is an extraordinary remedy that should not be granted as a routine matter." JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 80 (2d Cir. 1990). Generally, a court "may grant a preliminary injunction where a plaintiff demonstrates irreparable harm and meets one of two related standards." Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs., 769 F.3d 105, 110 (2d Cir. 2014). The plaintiff must establish either "(a) likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party." Id.

To obtain a preliminary injunction against a duly enacted government action, a plaintiff cannot rely on a "fair ground for litigation" and must show a likelihood of success on the merits. Id. "This exception reflects the idea that governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly." Able v. United States, 44 F.3d 128, 131 (2d Cir. 1995). The moving party must also show that the balance of the equities tips in its favor and that an injunction would be in the public interest. Oneida Nation of New York v. Cuomo, 645 F.3d 154, 164 (2d Cir. 2011).

Where, as here, the moving party seeks a mandatory affirmative injunction, that will "alter the status quo by commanding some positive act" or provide the moving party with "substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits," the party must satisfy a higher standard than that of a prohibitory

injunction.  Tom Doherty Associates, Inc. v. Saban Entertainment, Inc., 60 F.3d 27, 33-34 (2d Cir. 1995)).  Indeed, a mandatory injunction should only be granted upon a "clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." Vantico Holdings S.A. v. Apollo Mgmt., 247 F. Supp. 2d 437, 451 (S.D.N.Y. 2003).  Courts should show "greater reluctance to issue a mandatory injunction than a prohibitory injunction." Hurley v. Toia, 432 F. Supp. 1170, 1175 (S.D.N.Y. 1977); R& G Affiliates, Inc. v. Knoll Int'l Inc., 1984 U.S. Dist. LEXIS 14993, at *12 (S.D.N.Y. 1984) ("In sum, plaintiff has failed to carry its burden of showing that it is likely to suffer immediate irreparable harm . . . and plaintiff therefore is not entitled to the 'extraordinary and drastic' remedy of a mandatory preliminary injunction."); Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982) ("In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.").

## ARGUMENT

### POINT I

### PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS.

**A. Plaintiffs Lack Standing to Raise Many of Their Challenges.**

    *i.*    *City Defendants Have Not Caused Plaintiffs' Alleged Injuries Regarding Open Carry and Cannot Afford Plaintiffs the Relief They Seek.*

To establish standing, plaintiffs must "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Sonterra Capital Master Fund, Ltd. v. UBS AG, 954 F.3d 529, 534 (2d Cir. 2020) (quoting Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016)).  It appears

that the primary relief sought by all four plaintiffs is to carry their handguns – "open and holstered on their person" – throughout the entire State of New York, including New York City. Pl. Mem. at 4. However, it is undisputed that New York State bans the open carry of handguns in public. See generally, Compl.; Kachalsky, 701 F.3d at 85-86 (explaining the history of New York's carry laws and noting that New York's legislative judgment concerning handgun possession in public was made more than one hundred years ago). Plaintiffs, therefore, lack standing to sue City Defendants because the City has not caused plaintiffs' alleged injuries. City Defendants did not create the State legislation that bans open carry; rather, City Defendants merely developed a licensing scheme for New York City *in accordance* with the State's mandate set forth in the Penal Law. City Defendants have no authority to re-write the Penal Law to permit open carry. Nor can City Defendants provide plaintiffs the relief they seek – namely, to create State-wide open carry laws. To the extent that plaintiffs seek open carry laws, they should petition the New York State legislature.

      *ii.*      *Plaintiffs Lack Standing to Challenge the Basic Structure of New York State's Discretionary Gun Licensing Scheme.*

Plaintiffs attack the basic structure of New York State's overall gun licensing scheme, complaining that Pen. Law §§ 265.01(1), 265.01 (b), and 265.03(3) criminalize the "mere possession" of handguns and require individuals to apply for permits in the first instance. Pl. Mem., at 14. In addition, plaintiffs complain that the licensing scheme affords licensing officers broad discretion in making licensing determinations. Id. Plaintiffs, however, cannot establish that they have actually been aggrieved by the basic structure of New York's discretionary licensing scheme, as all four plaintiffs have successfully obtained pistol permits under these laws. Pl. Mem., at 3-4 (noting the Freys hold concealed carry licenses restricted to

"sportsman"; Cheng holds a concealed carry license for "target shooting"; and Sappe holds an unrestricted concealed carry license).

Finally, plaintiffs Jason and Brianna Frey lack standing to challenge the City's licensing scheme, as the Freys admit that they have never applied to the NYPD License Division for any type of gun license. Compl., ¶¶ 108, 111, 152, 153; United States v. Decastro, 682 F.3d 160, 164 (2d Cir. 2012) ("[B]ecause Decastro failed to apply for a gun license in New York, he lacks standing to challenge the licensing laws of the state.").[2]

## B. Sappe's Claims are Barred by the Doctrines of Res Judicata and Collateral Estoppel.

In the instant motion for a preliminary injunction, plaintiff Sappe seeks an Order, enjoining defendants from enforcing the Penal Law against him in New York City because he possesses a concealed carry handgun license issued by a licensing officer in Orange County.[3] Pl. Mem., at 3. In other words, Sappe seeks an unrestricted concealed carry license in New York City based on his Orange County license. However, Sappe already applied to the License Division for such a license, and the License Division aptly denied the application in 2019 due to Sappe's failure to demonstrate proper cause and his prior criminal history. Sappe, Index No. 151336/2020, Engoron J. (Sup. Ct. N.Y. Co. 2020), Decision, NYSCEF Doc. No. 67. Justice Engoron upheld the License Division's denial of Sappe's application for a carry license. Now,

---

[2] Interestingly, the Freys claim they cannot apply to have their Westchester County license "endorsed" by Commissioner Shea because their Westchester County licenses are not unrestricted concealed carry licenses; and only unrestricted concealed carry licenses can be endorsed by the NYPD to allow concealed carry in New York City. Compl. ¶¶ 117, 152. The Freys provide no support for this conclusory allegation. At bottom, plaintiffs failed to apply to the NYPD License Division for a carry license or a special license, as defined in 38 RCNY § 5-01. Plaintiffs fail to cite any provision of law prohibiting them from submitted such applications.

[3] Indeed, pursuant to Pen. Law § 400.00(6), a license to carry and possess a firearm issued in New York State (such as Sappe's unrestricted carry license in Orange County) "shall not be valid within the City of New York unless a special permit granting validity is issued by the Police Commissioner." Pen. Law § 400.00(6). "Proper Cause" needs to be shown for a Special Carry License for use in New York City. See 38 RCNY §5-03; Lederman v. New York City Police Department, 2011 NY Slip Op 30765(U); 2011 NY Misc. LEXIS 1343 (2011).

Sappe seeks to relitigate these very same claims and issues in the instant federal action, reframing his claims as constitutional challenges to the structure of New York's licensing laws.

**Res Judicata.**   Sappe's instant claims brought under 42 U.S.C. § 1983 for declaratory and injunctive relief, are barred by the doctrine of res judicata because plaintiff's Article 78 proceeding "involved an adjudication on the merits," Monahan v. New York City Dep't of Corrections, 214 F.3d 275, 285 (2d Cir. 2000) and plaintiff's claims for declaratory and injunctive relief "could have been raised in these proceedings." Miller v. City of New York, 2019 U.S. Dist. LEXIS 82058, *5-6 (E.D.N.Y. 2019) (internal citation omitted).

The doctrine of res judicata provides that "a valid, final judgment, rendered on the merits, constitutes an absolute bar to a subsequent action between the same parties … upon the same claim or demand." Epperson v. Entm't Express, Inc., 242 F.3d 100, 108 (2d Cir. 2001) (citations omitted).  The doctrine of res judicata "operates to bind the parties both as to issues actually litigated and determined in the first suit, and as to those grounds or issues which might have been, but were not, actually raised and decided in that action." Id.  In considering the preclusive effect of a state court judgment (such as an Article 78 decision) on a federal action, courts "usually consult preclusion laws of the state in which the judgment was issued." Hanrahan v. Riverhead Nursing Home, 592 F.3d 367, 369 (2d Cir. 2010) (citations omitted). New York "has adopted the transactional analysis approach in deciding res judicata issues." O'Brien v. City of Syracuse, 54 N.Y.2d 353, 357 (N.Y. 1981).  Under such analysis, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." Id., at 357.  A cause of action "arises from the 'same transaction' and is barred by the judgment in a prior proceeding where the same foundation facts serve as a predicate for each

proceeding.'"  Reilly v. Reid, 45 N.Y.2d 24, 30 (N.Y. 1978).  "[W]hatever legal theory is advanced, when the factual predicate upon which claims are based are substantially identical, the claims are deemed duplicative for purposes of res judicata."  Berlitz Schs. Of Languages of Am., Inc. v. Everest House, 619 F.2d 211, 215 (2d Cir. 1980).

Here, Justice Engoron's Decision bars the claims asserted in this federal action, as the requirements for application of res judicata are clearly satisfied.  First, on December 24, 2020, Justice Engoron found that the License Division's denial of Sappe's carry license application, dated October 17, 2019, was reasonable and rational.  The Court found that Sappe failed to provide documentation that his occupation actually required him to routinely engage in transactions that expose him to extraordinary personal danger, and the Court further held that plaintiff's lengthy arrest history indicated that he did not possess the requisite moral character for any type of handgun license.  Id., Decision, at 1-2.  In addition, the Court dismissed Sappe's constitutional due process claims raised in the Petition.  Id., at 2-3.  This Decision plainly constitutes a "final judgment on the merits ... by a court of competent jurisdiction."  EDP Med. Computer Syst., Inc. v. United States, 480 F.3d 621, 624 (2d Cir. 2007); Merced v. Ponte, 2019 U.S. Dist. LEXIS 40949 (E.D.N.Y. 2019) (noting that Article 78 proceedings constitute an "adjudication on the merits" for res judicata purposes).  Second, the parties in this action and the Article 78 proceedings are the same – Sappe and the NYPD Commissioner (formerly James O'Neill, and currently Dermot Shea).

Third, the instant case involves the "same cause of action" as the Article 78 proceeding.  EDP Med. Computer Sys., 480 F.3d at 624.  Plaintiff's Second Amendment claims asserted in this federal action arise out of the "same transaction or series of transactions" as those

at issue in the Article 78 proceeding and, thus, could have been raised in state court.[4]  In the Article 78 Petition, plaintiff challenged the License Division's 2019 determination, denying his application for a carry license in New York City.  Plaintiff's claims in this federal action are no different.  Plaintiff challenges the denial of a carry license for use in New York City.  Compl., ¶¶ 201-202.  Sappe raises the same arguments that he asserted in the Petition and during his administrative appeal at the NYPD.  Sappe challenges the License Division's finding that he lacked good moral character based on prior arrests, driving infractions, and warrant history.  Id., ¶¶ 203-213.  Justice Engoron rejected all of these arguments in upholding the License Division's final determination.

The instant action and the Article 78 proceedings are predicated on the very same facts – namely, the License Division's denial of plaintiff's 2018 carry license application due to Sappe's failure to demonstrate proper cause and good moral character.  Although plaintiff's federal Complaint contains different allegations of constitutional violations under the Second Amendment, these new allegations are not sufficient to avoid the preclusive effect of Justice Engoron's Decision.  Magi XXI, Inc. v. Stato Della Cita Del Vacticano, 22 F. Supp. 3d 195, 205 (E.D.N.Y. 2014) ("[T]he Second Circuit has made it clear that '[n]ew legal theories do not amount to a new cause of action so as to defeat the application of the principle of res judicata.");  Miller, 2019 U.S. Dist. LEXIS (finding plaintiff's federal constitutional claims for declaratory and injunctive relief barred by res judicata because plaintiff could have raised these issues in his unsuccessful Article 78 proceeding);  Monahan, 214 F.3d at 290 (plaintiff cannot "elude" claim preclusion "merely by invoking legal terms of art with constitutional mystique.").

---

[4] It is well-settled that a petitioner may also raise constitutional claims in a state court Article 78 proceeding. Kovarsky v. HAD, 31 N.Y. 2d 184, 191 (N.Y. 1972) ("[A]n Article 78 proceeding is generally the proper vehicle to determine whether a statute, ordinance, or regulation has been applied in an unconstitutional manner.").  Indeed, Sappe raised a constitutional due process claim in his Article 78 proceeding.

**Collateral Estoppel.** In any event, all of plaintiff Sappe's claims asserted herein – including Sappe's § 1983 claims for money damages – are barred by the doctrine of collateral estoppel. To the extent that plaintiff seeks to relitigate the propriety of the License Division's determination and obtain a special license in the City, plaintiff's purported claims are barred by the doctrine of collateral estoppel. The doctrine of collateral estoppel provides as follows: "Once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." Montana v. United States, 440 U.S. 147, 153 (1979).

Plaintiff was the named petitioner in the Article 78 proceeding and had the opportunity to litigate the issues surrounding the License Division's final determination, dated October 17, 2019. As set forth above, these are the same claims plaintiff raises herein. See Compl. ¶¶ 203-215. Although plaintiff now frames these claims as violations of the Second Amendment (and now seeks to challenge the "intrastate geographical restrictions of 400.00(6)"), plaintiff plainly seeks to relitigate the propriety of the License Division's denial of a carry license. Plaintiff cannot be permitted to use § 1983 "as an end run around" its Article 78 proceedings to "achieve an impermissible 'second bite at the apple.'" Pappas v. Giuliani, 118 F. Supp. 2d 433 (S.D.N.Y. 2000). Accordingly, plaintiff Sappe's is not likely to succeed on the merits of his claims under the doctrine of collateral estoppel.[5]

## C. Plaintiffs Are Not Likely to Succeed on the Merits of Their Second Amendment Claims Because Such Claims Run Contrary to the Second Circuit's Holding in Kachalsky.

---

[5] To the extent that plaintiff relies upon Justice Eileen A. Rakower's Decision in Vicari v. Shea, 161001/2020, annexed as Exhibit 2 to the Bellantoni Dec., such reliance is misplaced. The City is currently appealing that Decision, as it contained misstatements of law and fact. See Vicari, 161001/2020 Notice of Appeal (NYSCEF Doc. No. 27), dated July 8, 2021. As noted above, Pen. Law § 400.00(6) requires Sappe to obtain a "special license" to carry a handgun in the City. And Sappe must demonstrate "proper cause" to the License Division as part of that application process. See 38 RCNY §5-03; Lederman, 2011 NY Misc. LEXIS 1343. Thus, whether or not Sappe was issued a license to carry a gun elsewhere in New York State has no bearing on his ability to obtain a license in the City.

Plaintiffs claim that New York State's ban on open carry is a "per se violation of the Second Amendment." Pl. Mem., at 11.  Plaintiffs seek an Order, allowing them to openly carry their handguns throughout the City and the State without establishing "proper cause" and without any restriction.  Id.  However, plaintiffs' claims – and their requested relief for open carry – fly in the face of well-settled jurisprudence.

In Kachalsky, 701 F.3d 81, the Second Circuit sustained New York State's carry laws, noting that New York State has always banned open carry in public.  The Court upheld the constitutionality of the requirement that applicants seeking concealed carry licenses demonstrate "proper cause."  Id., 701 F.3d at 86-87.  The Court began by examining the history of public carry laws in New York State.  During the nineteenth century, New York heavily regulated the carrying of concealable firearms.  Id., at 84.  Due to a rise in violent crime associated with concealable firearms in the early twentieth century, New York enacted the Sullivan Law in 1911, which made it unlawful for any person to possess, without a license, any pistol of a size which may be concealed on a person.  Id. (citing 1911 Laws of N.Y., ch. 195, § 1, at 443).  In 1913, the Sullivan Law was amended to impose a statewide standard for the issuance of licenses to carry firearms in public.  Id. at 85.  To obtain a license to carry a concealed handgun, the applicant must demonstrate "good moral character" and that "proper cause exists."  Id.  These requirements remain the central features of New York's carry laws today.[6]  Id., at 86-87.

---

[6] The Court further underscored other hallmark features of New York's gun licensing laws:  New York's general prohibition on the possession of firearms without a license; and that licensing officers are vested with considerable discretion in deciding whether to grant a license application, particularly in determining whether proper cause exists for the issuance of a carry license.  Indeed, these features have been upheld for decades.  Kachalsky, 701 F.3d at 85 (noting that Pen. Law §§265.01-265.04, 265.20(a)(3) impose a general prohibition on the possession of firearms absent a license); Campbell v. Kelly, 85 A.D.3d 446 (1st Dep't 2011) (holding that the Police Commissioner is necessarily vested with broad discretion to regulate the possession of firearms within New York City); Servedio v. Bratton, 268 A.D.2d 356 (1st Dep't 2000) (same); Sewell v. City of New York, 182 A.D.2d 469, 472 (1st Dep't 1992) (same).  Thus, plaintiffs' are not likely to succeed on their challenges to these basic longstanding licensing requirements.

Applying intermediate scrutiny, the Court found that New York has a "substantial, indeed compelling government interest in public safety and crime prevention." <u>Id.</u>, at 97.   And the Court found that the "proper cause" requirement for carrying a license is substantially related to these interests.  <u>Id.</u>  Accordingly, plaintiffs' claims that they are entitled to open carry licenses under the Second Amendment fails under <u>Kachalsky</u>.   Although <u>Kachalsky</u> did not expressly involve an open carry challenge, the Court nonetheless upheld the current state of New York's longstanding carry licensing laws, which unequivocally ban open carry.  <u>See also</u>, <u>Libertarian Party of Erie Cty. v. Cuomo</u>, 970 F.3d 106, 113 (2d Cir. 2020) (finding that New York's "proper cause" requirement does not violate the Second Amendment).[7] Thus, plaintiffs are not likely to succeed on their claims because they run contrary to <u>Kachalsky</u>.

**D. Plaintiffs are Not Likely to Succeed on the Merits of their Claim that Banning Open Carry is a Per Se Violation of the Second Amendment.**

Even if <u>Kachalsky</u> does not foreclose plaintiffs' challenges to New York's carry laws, plaintiffs' claims nevertheless fail.   Plaintiffs argue that the State's open carry ban is unconstitutional – both facially and as applied to them.  Pl. Mem.  In <u>District of Columbia v. Heller</u>, 554 U.S. 570 (2008), the Supreme Court held, for the first time, that the Second Amendment "protects and 'individual right to possess and carry weapons in case of confrontation[.]"  <u>Heller</u>, 554 U.S. at 592.  The "core of this protection is 'the right of law-abiding responsible citizens to use arms in defense of hearth and home.'"  <u>Mishtaku v. City of New York</u>, 2015 U.S. Dist. LEXIS 193797 (S.D.N.Y. 2014) (quoting <u>Heller</u>, 554 U.S. at 635). The Second Amendment right articulated in <u>Heller</u> (and later in <u>McDonald v. City of Chicago</u>,

---

[7] Notably, in <u>N.Y. State Rifle & Pistol Ass'n v. Corlett</u>, 2021 U.S. LEXIS 2144 (2021), the United States Supreme Court granted plaintiffs' petition for writ of certiorari and limited review to the following question: "Whether [New York] State's denial of petitioners' applications for concealed-carry licenses for self-defense violated the Second Amendment." <u>Id.</u>  That matter is scheduled for oral argument on November 3, 2021.

561 U.S. 742 (2010)), is "not unlimited." Heller, 554 U.S. at 626. It is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."[8] Id. In addition, the right does not imperil every municipal regulation of guns. See McDonald, 561 U.S. at 786. For example, the Supreme Court has identified bans on the possession of guns by felons and the mentally ill as "presumptively lawful." Heller, 554 U.S. at 626-27, n. 26. And it emphasized that it did not intend these examples of presumptively lawful measures to be exhaustive. Id., at 627 n. 26; Libertarian Party, 970. F.3d at 127.

The Second Circuit has adopted a two-step framework to assess whether a firearm restriction violates the Second Amendment. First, the courts consider whether the measure burdens the Second Amendment right and then, if it does, selects and applies the appropriate level of scrutiny for reviewing that measure. See Libertarian Party, 970 F.3d at 127; United States v. Jimenez, 895 F.3d 228, 232 (2d Cir. 2018). At the second step, the Court has noted that not all measures that burden Second Amendment rights receive heightened scrutiny. See Kwong v. Bloomberg, 723 F.3d 160, 167 (2d Cir. 2013); Decastro, 682 F.3d at 164. Here, though, even assuming that the licensing provisions that ban open carry burden Second Amendment rights and that some form of heightened scrutiny applies, plaintiffs are not likely to succeed on the merits of their facial and as-applied challenges under intermediate scrutiny.

       *i.      Plaintiffs' Claims Are Subject to Intermediate Scrutiny.*

It is well-settled in the Second Circuit that intermediate scrutiny is the appropriate level of review for statutes or laws that restrict the carrying of handguns in public, as well as the appropriate level of review for statues or laws that may restrict the possession of handguns in the

---

[8] Thus, to the extent that plaintiffs argue they have a right to openly carry handguns in public without having to establish proper cause or without any government restriction, plaintiffs are flatly wrong and their claims fail as a matter of law.

home.  Kachalsky, 701 F.3d at 96 (applying intermediate scrutiny to New York's "proper cause" requirement for carry licenses); Libertarian Party, 970 F.3d at 126 (same); see also, United States v. Oppedisano, No. 09-0305, 2010 WL 4961663, at * 2 (E.D.N.Y. Nov. 30, 2010); Toussaint, 2018 U.S. Dist. LEXIS 152985 *11.  Indeed, to determine the appropriate level of scrutiny, courts consider: (1) how close the challenged measure comes to the core of the Second Amendment right; and (2) how severely it burdens that right.  Jimenez, 895 F.3d at 234.  Courts apply intermediate scrutiny if the measure either substantially burdens conduct outside the core of the right or insubstantially burdens conduct at the core.  Libertarian Party, 970 F.3d at 128; Jimenez, 895 F.3d at 234.  Courts employ strict scrutiny only if the measure substantially burdens the core right.  Id.

Here, the State's open carry ban does not substantially burden the Second Amendment's *core* right.  The Second Circuit has repeatedly recognized that the Supreme Court's decision in Heller defined that core as "the right of law abiding, responsible citizens to use arms in defense of hearth and home."  Kachalsky, 701 F.3d at 94 ("The proper cause requirement falls outside the core Second Amendment protections identified in Heller.  New York's licensing scheme affects the ability to carry handguns only in public, while the District of Columbia ban applied in the home 'where the need for defense of self, family, and property is most acute[.]  This is a critical difference.").  As plaintiffs here challenge laws regulating their right to carry handguns in public – not in the home – the core of the Second Amendment is simply not implicated.  Id.  The Court in Kachalsky held that intermediate scrutiny is appropriate when examining New York's carry laws, and the Court refused to apply strict scrutiny.  Id. at 92 ("[W]e believe applying less than strict scrutiny when the regulation does not burden the 'core' protection of self-defense in the home makes eminent sense in this context[.]").

In an effort to invoke strict scrutiny, plaintiffs here frame their claims as challenging a complete ban on the right to openly carry handguns.   Plaintiffs contend that because this amounts to a categorical ban on the specific right to open carry, strict scrutiny necessarily applies.   But plaintiffs incorrectly frame the issue.   Plaintiffs try to separate open carry from concealed carry without any legal basis for doing so.   New York's carry laws must be viewed more broadly.   While New York's licensing scheme does not permit open carry, it does allow many forms of concealed carry.   Id., at 85.   Individuals maintain the ability to carry concealed handguns in public, assuming they satisfy all applicable licensing requirements.   New York's longstanding and measured licensing scheme does *not* amount to a categorical ban of the right to carry, or any core Second Amendment right that would trigger strict scrutiny.   Thus, intermediate scrutiny is the appropriate level of review for plaintiffs' claims.

ii.     *New York's Ban on Open Carry Satisfies Intermediate Scrutiny.*

New York's open carry ban easily satisfies intermediate scrutiny as substantially related to public safety.   Under intermediate scrutiny, gun regulations pass constitutional muster so long as they are "substantially related to the achievement of an important government interest." Libertarian Party, 970 F.3d at 128 (internal citations omitted).   It is beyond cavil that New York has a "substantial, indeed compelling," interest in public safety and crime prevention. Id.; Kachalsky, 701 F.3d at 97.   While the State's ability to regulate firearms is circumscribed in the home, "outside the home, firearm rights have always been more limited, because public safety interests often outweigh individual interests in self-defense." Id., at 94.   There is a longstanding tradition of states regulating firearm possession and use in public because of the dangers posed to public safety. Id.

New York has always banned open carry of handguns, and New York's concealed carry laws have existed in the same essential form since 1913.  New York's legislative judgment concerning handgun possession in public is entitled to substantial deference.  <u>Id.</u>, at 97-98.  As the Court noted in <u>Kachalsky</u>, in the context of firearm regulation, the legislature is "far better equipped than the judiciary to make sensitive public policy judgments (within constitutional limits) concerning the dangers in carrying firearms and the manner to combat those risks."  <u>Id.</u>

Given New York's interest in regulating handgun possession for public safety and crime possession, it crafted the State's carry laws, which do not ban the carry of handguns, but rather limit licensure to the carrying of *concealed* handguns for those individuals who have demonstrated proper cause and met all other licensing requirements.  <u>Id.</u>, at 98.  New York's ban on open carry is designed to prevent gun violence and gun related crimes.  <u>Id.</u>, at 97.  It is axiomatic that permitting any individual to openly carry a handgun in public without demonstrating proper cause or requiring a license – which is the drastic affirmative relief that plaintiffs seek herein (<u>see</u> Pl. Mem. at 1-3; Compl. ¶¶ 174-177) – would give rise to *dire* public safety concerns in New York State.  And such radical relief would unravel New York's carry laws that have existed in their current form for more than a century.

New York's carry laws do not operate as a total ban on the carrying of handguns outside the home.  Rather, they require only that an applicant's need to carry a concealed weapon outside the home be "actual and articulable – rather than merely speculative or specious."  <u>Id.</u> at 98.  New Yorkers, like many of the plaintiffs herein, may also obtain permits to carry concealed handguns outside the home for target shooting, hunting, or self-defense.  New York's law is therefore, "oriented to the Second Amendment's protections," <u>id.</u>, while also recognizing that those protections to not include "a right to keep and carry any weapon whatsoever in any manner

whatsoever and for whatever purpose." Heller, 554 U.S. at 626.  At bottom, New York's carry laws are substantially related to legitimate government interests in protecting the public, and do not run afoul of the Second Amendment. Kachalsky, 701 F.3d at 100.[9]

## POINT II

## PLAINTIFFS HAVE FAILED TO ESTABLISH IRREPARABLE HARM.

Plaintiffs claim that their alleged constitutional violation constitutes irreparable harm.  Pl. Mem., at 22.  All of the plaintiffs argue that they will be criminally prosecuted for openly carrying a handgun in public; and plaintiff Sappe claims that if he carries his "lawfully owned handgun concealed within New York City" he is subject to criminal penalties.  Id. at 22-23.  However, a "presumption of irreparable harm arises only after a plaintiff has shown a likelihood of success on the merits of the constitutional claim," which plaintiffs have not done, as detailed above. Turley v. Giuliani, 86 F Supp. 2d 291, 295 (S.D.N.Y. 2000).

In any event, plaintiffs' claimed harm is speculative.  Plaintiffs have all owned their guns for many years without arrest related to improper usage of their handguns or failure to abide by the terms of their licenses.  See generally, Compl.  Plaintiffs fail to plead facts indicating that they are now all of a sudden at risk for arrest or license revocation.  Put simply, plaintiffs do not plead facts to show that anything has changed regarding their intent or need to publicly carry their handguns.  Their mere intent to carry guns openly (or concealed for plaintiff Sappe) throughout the City and State at some unidentified point in the future is nothing more

---

[9] To the extent that plaintiffs' claims are deemed facial challenges, such claims are not likely to succeed.  A facial challenge to legislation is "the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the act would be valid." United States v. Salerno, 481 U.S. 739, 745 (1987).  Plaintiffs are not likely to succeed in meeting this high burden.  As detailed above, New York's ban on open carry is substantially related to an important government interest.  Plaintiffs are not likely to establish that *all* individuals – even those that have prior felony convictions and mental illness (which are categories specifically excluded from licensure by the Supreme Court under Heller) – are entitled to *openly* carry handguns without restriction or licensure throughout New York State.

than speculative at this juncture.  Such conclusory allegations are not indicative of irreparable harm sufficient to justify the drastic injunctive relief that plaintiffs seek.

## POINT III

### THE BALANCE OF THE HARDSHIPS TIPS DECIDEDLY IN THE CITY'S FAVOR.

Any purported injury to plaintiffs is *substantially* outweighed by the State's significant interest in protecting the public from individuals, including plaintiffs, who seek to openly carry their handguns in public throughout the State of New York without demonstrating proper cause or a need for doing so.  Indeed, New York has a compelling governmental interest in public safety and crime prevention, as detailed above.  Plaintiffs – via this motion for a preliminary injunction – ask this Court to upend the status quo (a century of settled law regarding public carry), bypass the New York State legislature, and affirmatively create a brand new open carry law that has never before existed in New York State.  Plaintiffs are not entitled to this drastic mandatory injunction.

Here, given the City's compelling interest in regulating the public carry of handguns for public safety and crime prevention, and given that the State Legislature has always banned open carry, plaintiffs are not entitled to mandatory preliminary injunctive relief. Plaintiffs have all possessed different types of carry licenses under New York's licensing scheme for years, thus indicating that their claimed hardship is minimal at best.  Pl. Mem., at 1-3. Accordingly, the balance of equities tips decidedly in defendants' favor.

## CONCLUSION

For the foregoing reasons, City Defendants respectfully request that this Court deny plaintiffs' motion for a preliminary injunction, together with such other and further relief as this Court deems just and proper.

Dated:      New York, New York
            September 14, 2021

Respectfully submitted,

GEORGIA M. PESTANA
Corporation Counsel of the City of New York
Counsel for City Defendants
100 Church Street
New York, New York 10007
(212) 356-2190

By:     /s/

        Rachel K. Moston
        Assistant Corporation Counsel