UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
JASON FREY, BRIANNA FREY,
JACK CHENG, and WILLIAM SAPPE,

                                        Plaintiffs,

         -against-                                       Case No. 21 Civ. 5334 (NSR)

KEVIN P. BRUEN, Acting Superintendent
of the New York State Police, in his official
capacity, NEW YORK CITY, New York,
and DERMOT SHEA, in his official capacity
as NYPD Police Commissioner,

                                        Defendants.
-------------------------------------------------------------x

# PLAINTIFFS' REPLY TO DEFENDANTS
# NEW YORK CITY AND DERMOT SHEA
# IN FURTHER SUPPORT OF
# MOTION FOR PRELIMINARY INJUNCTION

**THE BELLANTONI LAW FIRM, PLLC**
*Attorneys for Plaintiffs*
**2 Overhill Road, Suite 400**
**Scarsdale, New York 10583**
**(914) 367-0090**
**abell@bellantoni-law.com**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ........................................................................................... i

I. THE NEW YORK PENAL LAW IGNORES SUPREME COURT PRECEDENT
AND THE SECOND AMENDMENT ......................................................................... 1

II. IRREPARABLE HARM, TRACEABLE TO THE CITY DEFENDANTS ............................ 4

III. PLAINTIFFS HAVE A HIGH LIKELIHOOD OF SUCCESS ON THE MERITS ............... 4

A. The Right to 'Possess and Carry Weapons' is 'Guaranteed' ................................ 4

B. The Supreme Court Affirmatively Rejected Interest Balancing, Public Safety Tests ......... 4

C. Intermediate Scrutiny Contravenes the Second Amendment and *Heller* ............................. 6

D. If Any Level of Scrutiny Applies, Which it Does Not, it is Strict Scrutiny ......................... 6

IV. PLAINTIFFS HAVE NO ALTERNATIVES TO CARRYING FOR SELF-DEFENSE ........ 7

V. 'IRREPARABLE HARM' AND BALANCE OF EQUITIES STANDARDS MET ............... 8

VI. MR. SAPPE'S CLAIMS ARE NOT BARRED .................................................... 9

CONCLUSION ........................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham v Hermitage Ins. Co.*,
    47 AD3d 855 (2008) ........................................................................... 9

*Avitabile v. Beach*,
    277 F. Supp. 3d 326 (N.D.N.Y. 2017) .................................................. 7

*Bayer v. City of New York*,
    115 A.D.3d 897 (2014) ....................................................................... 9

*Caetano v. Massachusetts*,
    577 U.S. 411 (2016) ........................................................................... 2

*Curtis 1000, Inc. v. Suess*,
    24 F.3d 941 (7th Cir. 1994) ............................................................... 11

*D.C. v. Heller*,
    554 U.S. 570 (2008) .................................................................. 1, 2, 4, 5

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
    559 F.3d 110 (2d Cir. 2009) ............................................................... 8

*Heller v. D.C.*,
    670 F.3d 1244 (D.C. Cir. 2011) ....................................................... 5, 6

*Jolly v. Coughlin*,
    76 F.3d 468 (2d Cir. 1996) ................................................................. 8

*Kachalsky v. Cnty. of Westchester*,
    817 F. Supp. 2d 235, FN 28 (S.D.N.Y. 2011) ..................................... 3

*Kachalsky v. Cty. of Westchester*,
    701 F.3d 81 (2d Cir. 2012) ........................................................ 5, 7, 8

*Knight v. Bratton*,
    48 Misc. 3d 536 (N.Y. Sup. Ct. 2015) ................................................ 6

*McDonald v. City of Chicago, Ill.*,
    561 U.S. 742 (2010) ....................................................................... 1, 5

*Moore v. Madigan*,
    702 F.3d 933 (7th Cir. 2012) ............................................................. 7

# TABLE OF AUTHORITIES (con't)

**Page(s)**

**Cases**

*Morris v. District of Columbia*,
  38 F. Supp. 3d 57 (D.D.C. 2014) ........................................................................... 11

*Nelson v. Stander*,
  79 A.D.3d 1645 (4th Dept. 2010) ........................................................................... 9

*Newman v. Board of Education*,
  508 F.2d 277 (2d Cir.) ........................................................................................... 9

*People ex rel. Ferris v. Horton*,
  147 Misc. 506 (Co. Ct. 1933) ................................................................................. 1

*People v. Persce*,
  204 N.Y. 397 (1912) ............................................................................................... 1

*Peruta v. Cty. of San Diego*,
  824 F.3d 919 (9th Cir. 2016) ................................................................................. 8

*Peterson v. Martinez*,
  707 F.3d 1197 (10th Cir. 2013) ............................................................................. 3

*Reed v. Town of Gilbert, Ariz.*,
  576 U.S. 155 (2015) ............................................................................................... 6

*Rogers v. Grewal*,
  140 S. Ct. 1865 (2020) ....................................................................................... 4, 6

*Sibley v. Watches*,
  194 A.D.3d 1385 (4th Dep't 2021) ....................................................................... 10

*Steffel v. Thompson*,
  415 U.S. 452 (1974) ............................................................................................... 9

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ............................................................................................... 8

*United States v. Cruikshank*,
  92 U.S. 542 (1875) ................................................................................................. 1

*United States v. Masciandaro*,
  638 F.3d 458 (4th Cir. 2011) ................................................................................. 8

# TABLE OF AUTHORITIES (con't)

**Page(s)**

**Cases**

*Velez v. DiBella*,
 77 A.D.3d 670 (2d Dept. 2010) ............................................................................ 10

*Wrenn v. D.C.*,
 864 F.3d 650 (D.C. Cir. 2017) ........................................................................... 4, 7

*Young v. Hawaii*,
 896 F.3d 1044 (9th Cir. 2018), on reh'g en banc, 992 F.3d 765 (9th Cir. 2021)............................ 7, 8

**Rules**

FED. R. CIV. P. 65(a)(2) ............................................................................ 11

**Other Authorities**

Armed Resistance to Crime: The Prevalence and Nature of Self–Defense with a Gun,
 86 J. CRIM. L. & CRIMINOLOGY 150 (1995) ...................................................... 2

## I. THE NEW YORK PENAL LAW IGNORES SUPREME COURT PRECEDENT AND THE SECOND AMENDMENT

At the outset, the City misunderstands the nature of the relief sought by Plaintiffs in this action and the rights protected by the Constitution. Plaintiffs are not challenging the State's licensing scheme. Plaintiffs are challenging the assured enforcement of criminal penalties against them if they exercise their guaranteed right to possess and carry weapons for self-defense. *D.C. v. Heller*, 554 U.S. 570, 592 (2008). Plaintiffs seek to restore the basic, fundamental rights that existed before the passage of the Sullivan Law in 1911. Prior to criminalizing the possession of handguns, ordinary people in New York were free to possess and carry handguns to protect themselves[1] from criminals. State laws enacted pre-*Heller* were created through the lens of a particular state's constitution, not the Second Amendment, under the belief that the Second Amendment only applied to federal action. This belief was underscored by *United States v. Cruikshank*, 92 U.S. 542 (1875) which held that the Second Amendment does not by its own force apply to anyone other than the federal government [*Heller*, 554 U.S. at 619-20] and underlies the enactment of the Sullivan Law in 1911. It was not until *McDonald v. City of Chicago, Ill.*, 561 U.S. 742 (2010) that the Supreme Court held the Second Amendment applies to the states through the Fourteenth Amendment. As such, state laws banning handguns or regulating the manner of carry prior to 2010 that are inconsistent with the Second Amendment, *Heller*, *McDonald*, and *Caetano*, like the Sullivan Law, must be rejected as unconstitutional.

---

[1] See, *People ex rel. Ferris v. Horton*, 147 Misc. 506, 509 (Co. Ct. 1933), aff'd, 239 A.D. 610, 269 N.Y.S. 579 (App. Div. 1934) (questioning whether, under the Sullivan Law, "the police power may be so far extended as to condemn or penalize otherwise law-abiding citizens in possessing such instruments [handguns] as by common knowledge are ordinarily and customarily used by them for their protection" in comparison to *People v. Persce*, 204 N.Y. 397 (1912) (recognizing that the well-understood character of slungshots, billies, sandbags and brass knuckles make it evident that the legislature were entirely justified in regarding them as dangerous and foul weapons seldom used for justifiable purposes but ordinarily the effective and illegitimate implements of thugs and brutes in carrying out their unlawful purposes.").

After the Supreme Court decided *Heller*, which declared that the Second Amendment protected an individual, not a collective, right[2] to possess and carry[3] weapons for self-defense[4], *McDonald*, holding the Second Amendment applies to the states via the Fourteenth Amendment, and *Caetano v. Massachusetts*, 577 U.S. 411 (2016), holding that the Second Amendment applies to weapons in common use for self-defense, New York should have amended its state laws to comply with the Constitution, which it did not.

There are now **22 constitutional carry states** in America (no permit required to carry concealed or open).[5]  Presently, only 5 states ban open carry: New York ("shall not issue" concealed carry unless "proper cause"); Florida ("shall issue" concealed carry; Illinois ("shall issue" concealed carry); California ("may issue" concealed carry if "good cause"); and since *Heller*, D.C. has become a "shall issue" state for concealed carry.  There are over 19.48 million handgun permit holders.[6] [7]According to US News and World Report[8], 6 of the top 10 states for public safety are constitutional carry states; the top 3 states being Maine, New Hampshire, and Idaho. Two of the remaining states, CT and VA, are "shall issue" concealed carry states.

---

[2] "We start therefore with a strong presumption that the Second Amendment right is exercised individually and belongs to all Americans." *Heller*, 554 U.S. at 581-582 ("Reading the Second Amendment as protecting only the right to "keep and bear Arms" in an organized militia therefore fits poorly with the operative clause's description of the holder of that right as "the people.").

[3] "Putting all of these textual elements together, we find that they guarantee the individual right to possess and carry weapons in case of confrontation. *Heller*, 554 U.S. at 592.

[4]"[S]elf-defense had little to do with the right's codification; it was the central component of the right itself." *Heller*, 554 U.S. at 599.

[5] https://www.usconcealedcarry.com/resources/terminology/types-of-concealed-carry-licensurepermitting-policies/unrestricted/

[6] https://crimeresearch.org/2020/10/new-concealed-carry-report-for-2020-19-48-million-permit-holders-820000-more-than-last-year-despite-many-states-shutting-down-issuing-permits-because-of-the-coronavirus/, and many states do not require a permit to carry at all. [Ex. 3, "Permitless Carry States"].

[7] See, *Heller*, 554 U.S. at 570 (handguns are the most popular weapon for self-defense") citing, Gary Kleck & Marc Gertz, Armed Resistance to Crime: The Prevalence and Nature of Self–Defense with a Gun, 86 J. CRIM. L. & CRIMINOLOGY 150, 182–83 (1995).

[8] https://www.usnews.com/news/best-states/rankings/crime-and-corrections/public-safety

The City speculates, without more, that allowing people to exercise a guaranteed constitutional right will cause '*dire* public safety concerns' and 'unravel carry laws'. As evidenced by the Declaration of Captain Chuck Haggard [Ex. 1], when the Attorney General of Kansas issued an opinion, *effective immediately*, that no city in the state could ban open carry, his state did not devolve into 'chaos'. The City has offered no evidence that ordinary people, particularly those who have already been vetted by a statutory licensing officer and hold a valid handgun license, will cause 'chaos' or increase crime. An injunction may "upend more than a century of settled law, policy, and legislative judgment"[9], but that law, policy and judgment are constitutionally unsound in light of *Heller*, *McDonald* and *Caetano*. While concealed carry challenges have been upheld, no open carry challenge has been brought. Indeed, *Kachalsky v. Cnty. of Westchester*, 817 F. Supp. 2d 235, 264, FN 28 (S.D.N.Y. 2011), aff'd sub nom. *Kachalsky v. Cty. of Westchester*, 701 F.3d 81 (2d Cir. 2012) cannot be read to "uphold" a ban on open carry where neither open carry nor criminal statutes were challenged.[10] To the extent that the City relies on *Kachalsky* for historical analysis, the extensive historical analysis in *Heller* and *McDonald* controls, even if viewed as dicta. See, *Peterson v. Martinez*, 707 F.3d 1197, 1210 (10th Cir. 2013) (the inferior federal courts "are bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements.").

---

[9] Br. at p. 2.
[10] Likewise, the Supreme Court's consideration of *NYSRPA v. Corlett*, is limited to the issue of New York State's "proper cause" requirement for concealed carry licenses, which the Court itself narrowed from the petitioners' original question of whether the Second Amendment allows the government to prohibit ordinary citizens from carrying handguns outside of the home for self-defense.
https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/20-843.html

## II. IRREPARABLE HARM, TRACEABLE TO THE CITY DEFENDANTS

Plaintiffs are suffering actual constitutional harm that are directly traceable to the City defendants. Plaintiffs travel to New York City, particularly Jason Frey, Jack Cheng, and William Sappe who work therein, and have no legal means of defending themselves in the City. Should they carry a handgun open and holstered, they will be arrested and incarcerated by the NYPD, who are under the direct control of New York City and Police Commissioner Shea.

## III. PLAINTIFFS HAVE A HIGH LIKELIHOOD OF SUCCESS ON THE MERITS

A. <u>The Right to 'Possess and Carry Weapons' is 'Guaranteed'</u>

The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *D.C. v. Heller*, 554 U.S. 570, 592 (2008); *Rogers v. Grewal*, 140 S. Ct. 1865, 1869 (2020) (Thomas, J. dissenting from denial of cert.) ("it would take serious linguistic gymnastics - and a repudiation of this Court's decision in *Heller* - to claim that the phrase "bear Arms" does not extend the Second Amendment beyond the home.").

Plaintiffs seek to exercise the guaranteed right to possess and carry weapons in case of confrontation; not 'to keep and carry any weapon whatsoever, in any manner whatsoever, and for whatever purpose', but to open carry a registered handgun, in a holster, for self-defense.

B. <u>The Supreme Court Affirmatively Rejected Interest Balancing, Public Safety Tests</u>

This court is bound to "explicitly reject [as the Supreme Court did in Heller] the invitation to evaluate Second Amendment challenges under an 'interest-balancing inquiry, with the interests protected by the Second Amendment on one side and the governmental public-safety concerns on the other.'" The City's interest balancing and public safety arguments must be rejected, as they were affirmatively rejected by the Supreme Court [*Heller*, 554 U.S. at 634-35] and confirmed by Justice Thomas in *Rogers v. Grewal*, 140 S.Ct. at 1865; see also, *Wrenn*

*Wrenn v. D.C.*, 864 F.3d 650, 667-68 (D.C. Cir. 2017) (striking D.C.'s 'good cause' requirement for concealed carry as unconstitutional, noting that gun violence cannot obfuscate the boundaries laid in 1791 and flagged in *Heller*: the right to bear common arms enables the typical citizen to carry a gun.).   C. <u>Any Level of Scrutiny in This Case Contravenes the Second Amendment and</u> <u>*Heller*</u>

The Supreme Court did not adopt a strict or intermediate scrutiny test for Second Amendment challenges; *Heller* rejected a "judge-empowering 'interest-balancing inquiry' that asks whether the statute burdens a protected interest in a way or to an extent that is out of proportion to the statute's salutary effects upon other important governmental interests." *Heller*, 554 U.S. at 634. The Court ruled that because handguns are weapons in common use for self-defense, banning their use for self-defense violates the Second Amendment.[11]

The right to possess and carry weapons for self-defense is a guaranteed and fundamental right of ordinary people, necessary to our system of ordered liberty.[12] Because "self-defense" is not a legal basis for obtaining a full carry concealed permit under New York Law[13], ordinary people cannot lawfully carry a handgun for self-defense.  Even individuals who have a full carry concealed license, like Mr. Sappe, cannot get an endorsement of his pistol license to carry concealed in the City and open carry is banned in the City. As such, banning open carry is a *per se* violation of the Second Amendment; the enforcement of §§ 265.01(1), 265.01-b, 265.03(3),

---

[11] "The Supreme Court struck down D.C.'s handgun ban because handguns have not traditionally been banned and are in common use by law-abiding citizens, not because the ban failed to serve an important government interest and thus failed the intermediate scrutiny test. And the Court endorsed certain gun laws because they were rooted in history and tradition, not because they passed the intermediate scrutiny test." *Heller v. D.C.*, 670 F.3d 1244, 1284 (D.C. Cir. 2011) (Heller II) (Kavanaugh, J.).

[12] *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 778 (2010).

[13] *Kachalsky v. Cty. of Westchester*, 701 F.3d 81, 86–87 (2d Cir. 2012) (desire to carry a concealed weapon to protect one's person and property does not constitute 'proper cause' for concealed carry license) (citing cases).

and § 400.00(15) against licensed handgun owners who open carry in New York State cannot survive any level of scrutiny.

      C. <u>Intermediate Scrutiny Contravenes the Second Amendment and Heller</u>

The intermediate scrutiny test suggested by the City was rejected in Heller and confirmed by Justice Thomas in Rogers v. Grewal, Rogers, 140 S. Ct. at 1866-1867. (Thomas, J. dissenting from denial of cert.) (identifying Kachalsky, where the court found "public safety… outweighs the need to have a handgun for an unexpected confrontation" – the very balancing test rejected in Heller. If applied here, the intermediate scrutiny test suggested by the City will "yield analyses that are entirely inconsistent with Heller". Id.

      D. <u>If Any Level of Scrutiny Applies, Which it Does Not, it is Strict Scrutiny</u>

New York State's open carry ban cannot survive any level of scrutiny. However, if some level of scrutiny is to be applied, then it should be strict scrutiny. See, e.g., Heller II, 670 F.3d at 1284 (Kavanaugh, J. dissenting). Under strict scrutiny analysis, the government's objectives must be narrowly tailored to serve compelling state interests. Taken together, § 265 and § 400 are designed to ban, and have the effect of banning, the ordinary individual's right to carry weapons for self-defense. C.f., Reed v. Town of Gilbert, Ariz., 576 U.S. 155, 164 (2015).

Enforcing criminal laws for the mere exercise of a constitutionally guaranteed right against individuals the State's own licensing officers deem fit to possess and carry handguns  is not a narrowly tailored manner of achieving a compelling state interest. If public safety is the goal, it was reached by subjecting Plaintiffs and other licensees to a criminal background check. The statutes cannot withstand strict scrutiny.

**IV. PLAINTIFFS HAVE NO ALTERNATIVES TO CARRYING FOR SELF-DEFENSE**

The question under *Heller* is not whether citizens have adequate alternatives available for self-defense, but whether the law bans conduct protected by the Second Amendment "regardless of whether alternatives exist." *Avitabile v. Beach*, 277 F. Supp. 3d 326, 416 (N.D.N.Y. 2017).

**B**ecause New York deems unrestricted concealed carry to be outside of the Second Amendment protections [*Kachalsky*, supra], Plaintiffs have no alternatives for the exercise of the right to carry a handgun self-defense throughout their home state, including New York City. While regulations on 'sensitive areas' leave alternative channels for self-defense outside the home because, "[w]hen a state bans guns merely in particular places, such as public schools, a person can preserve an undiminished right of self-defense by not entering those places" [*Moore v. Madigan*, 702 F.3d 933, at 940 (7ᵗʰ Cir. 2012)]. Banning an entire city is an overly broad and unjustifiable restriction on the right to self-defense. The prevalence of modest regulations on bearing arms, such as a restriction on carrying firearms in a school-zone, does not itself indicate that bearing arms is any less protected than keeping arms, because the Second Amendment tolerates equally modest restrictions on keeping firearms, such as open surface restrictions in the home. *Wrenn*, 864 F.3d at 661-663 ("we conclude: the individual right to carry common firearms beyond the home for self-defense -even in densely populated areas, even for those lacking special self-defense needs - falls within the core of the Second Amendment's protections.").

Adopting the City's view, the right to self-defense only to and from the range, the campground, or hiking trail - an absurd result. *Young*, 896 F.3d 1044, 1053 (9th Cir.2018) on

reh'g en banc, 992 F.3d 765 (9th Cir. 2021)[15] (describing as "bordering on the absurd" the state

amici suggestion that the court "stretch" the presumptively lawful restricted locations identified

in Heller (schools and government buildings) to allow all laws "preserving public safety", which

would eventually classify the entire public sphere as a 'sensitive place'); *Young v. Hawaii*, 896

F.3d at 1068 ("we are satisfied that the Second Amendment encompasses a right to carry a

firearm openly in public for self-defense. Because section 134-9 restricts Young in exercising

such right to carry a firearm openly, it burdens conduct protected by the Second Amendment.").

## V. 'IRREPARABLE HARM' AND BALANCE OF EQUITIES STANDARDS MET

A showing of irreparable harm is the single most important prerequisite for the issuance

of a preliminary injunction. *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d

Cir. 2009) (internal quotation marks and citation omitted). Where a plaintiff has asserted a

constitutional violation, a presumption of irreparable harm attaches. *Jolly v. Coughlin*, 76 F.3d

468, 482 (2d Cir. 1996). Plaintiffs are suffering actual and irreparable harm from being barred

through criminal and civil sanctions from the exercise of the right to self-defense.[16]  See, *Susan*

*B. Anthony List v. Driehaus*, 573 U.S. 149, 158–59 (2014) (When an individual is subject to such

a threat, an actual arrest, prosecution, or other enforcement action is not a prerequisite to

challenging the law); *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). Moreover, the City

---

[15]In an en banc ruling, similar to that in Peruta v. Cty. of San Diego, 824 F.3d 919 (9th Cir. 2016) (Peruta II) (holding, like New York, that the concealed carry of firearms categorically falls outside of Second Amendment protection), the Ninth Circuit reversed the circuit panel's holding in Young v. Hawaii, that "the right to carry a firearm openly for self-defense falls within the core of the Second Amendment". Young v. Hawaii, 896 F.3d 1044, 1070 (9th Cir. 2018), on reh'g en banc, 992 F.3d 765 (9th Cir. 2021) ("We are unpersuaded that historical regulation of public carry requires us to remove the right to bear arms from the Second Amendment's core protection. See, e.g., Kachalsky, 701 F.3d at 94; United States v. Masciandaro, 638 F.3d 458, 470– 71 (4th Cir. 2011)." Young, at 1070. George Young's petition for certiorari of the Ninth Circuit's en banc decision, which remarkably held that the Second Amendment does not protect any right to bear arms, was distributed for Conference of September 27, 2021. https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/20-1639.html
[16] Under oath, Plaintiffs represent that they intend to, but cannot because of the risk of jail and other criminal and civil penalties, freely exercise their right to open carry for self-defense. Plaintiffs do not seek to carry a handgun openly at "some point in the future" but **right now**. [Br. at p. 24]

defendants have not submitted any sworn declaration that Plaintiffs will not be subject to criminal sanctions.

The balance also tips in Plaintiffs' favor because when challenging government action that affects the exercise of constitutional rights, the public interest tips sharply in favor of enjoining the law. *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009).

## V. MR. SAPPE'S CLAIMS ARE NOT BARRED

The City's *res judicata* and *collateral estoppel* arguments are without merit and should be rejected. William Sappe's Article 78 proceeding was limited to challenging as arbitrary and capricious the License Division's determination denying his application for the endorsement of his NYS unrestricted concealed carry handgun license.

"In contrast with the usual rules of *res judicata*, a constitutional claim is not barred by prior state proceedings simply because it would have been appropriate to litigate the claim in those proceedings. Rather, a constitutional claim is barred only if it was actually raised and litigated in the state court action." *Newman v. Board of Education*, 508 F.2d 277, 278 (2d Cir.), cert. denied, 420 U.S. 1004 (1975). No constitutional claim was actually raised or litigated in Mr. Sappe's Article 78 proceeding.  Any overlap of background facts in each matter presents relevant background to establish Mr. Sappe's standing in this action.

"Under the doctrine of *res judicata*, a disposition on the merits bars litigation between the same parties, or those in privity with them, of a cause of action arising out of the same transaction or series of transactions as a cause of action that either was raised or could have been raised in the prior proceeding." *Bayer v. City of New York*, 115 A.D.3d 897, 898 (2014); *Abraham v. Hermitage Ins. Co.*, 47 AD3d 855, 855 (2008). The Article 78 proceeding brought by William Sappe related solely to the basis for the NYPD's denial of his application for a

9

statutory endorsement[17] of his New York State concealed carry license[18], limited to whether the determination was arbitrary and capricious.

Mr. Sappe raised no constitutional challenge to § 400.00(6) or any mirroring City regulation under 38 RCNY 5, nor could he have raised them. "With respect to petitioner's challenge to the constitutionality of the pistol licensing application statutes—i.e., Penal Law §§ 400.00 (1) and 265.00 (10)—we note that "[a] declaratory judgment action is the proper vehicle for [such a] challeng[e]". *Sibley v. Watches*, 194 A.D.3d 1385, 1388 (4th Dep't 2021), leave to appeal denied, 196 A.D.3d 1094, 147 N.Y.S.3d 496 (2021) citing, *Matter of Velez v. DiBella*, 77 A.D.3d 670, 671 (2d Dept. 2010); *Matter of Nelson v. Stander*, 79 A.D.3d 1645, 1647 (4th Dept. 2010).

## CONCLUSION

Plaintiffs' motion for a preliminary injunction should be granted in its entirety.[19]

Dated: September 21, 2021
     Scarsdale, New York

                    THE BELLANTONI LAW FIRM, PLLC
                    Attorneys for Plaintiffs

        By:    _____/s_____
                    Amy L. Bellantoni (AB3061)
                    2 Overhill Road, Suite 400
                    Scarsdale, New York 10583
                    (914) 367-0090 (t)
                    (888) 763-9761 (f)
                    abell@bellantoni-law.com

---

[17] Neither Mr. Sappe's Verified Petition nor the accompanying memoranda raised any constitutional claims.

[18] Plaintiffs proceed with the understanding that no argument was made by the City that Mr. Sappe's current open carry-related claims are barred by *res judicata* or *collateral estoppel*, a reasonable assumption since neither Mr. Sappe's application to the License Division nor his Article 78 proceeding challenging that decision, contained any reference to open carry. If mistaken, Mr. Sappe reserves his right to address any such arguments.

[19] The Federal Rules of Civil Procedure permit this court to "advance the trial on the merits and consolidate it with the hearing" for a preliminary injunction. FED. R. CIV. P. 65(a)(2). "[W]hen the eventual outcome on the merits is plain at the preliminary injunction stage, the judge should, after due notice to the parties, merge the stages and enter a final judgment." *Morris v. District of Columbia*, 38 F. Supp. 3d 57, 62 n.1 (D.D.C. 2014) (quoting *Curtis 1000, Inc. v. Suess*, 24 F.3d 941, 945 (7th Cir. 1994)).