UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
JASON FREY, BRIANNA FREY,                     :
JACK CHENG, and WILLIAM SAPPE,
                                              :
                Plaintiffs,
                                              :
   -against-
                                              :       Case No. 21 Civ. 5334 (NSR)

KEVIN P. BRUEN, Acting Superintendent
of the New York State Police, in his          :
official capacity, NEW YORK CITY,
New York, and DERMOT SHEA, in his             :
official capacity as NYPD Commissioner,
                                              :
                Defendants.
------------------------------------------------------X

# MEMORANDUM OF LAW IN SUPPORT OF SUPERINTENDENT BRUEN'S MOTION TO DISMISS

                                                                LETITIA A. JAMES
                                                                Attorney General
                                                                State of New York
                                                                *Attorney for Superintendent Bruen*
                                                                28 Liberty Street
                                                                 New York, New York 10005
                                                                (212) 416-8659

IAN RAMAGE
NEIL SHEVLIN
Assistant Attorneys General
    *Of Counsel*

## TABLE OF CONTENTS

**Page**

Table of Authorities......................................................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................................... 1

STATEMENT OF ALLEGATIONS ............................................................................................... 2

LEGAL STANDARD ..................................................................................................................... 6

ARGUMENT ................................................................................................................................... 7

POINT I       PLAINTIFFS HAVE NO STANDING TO ASSERT THEIR CLAIMS
AGAINST SUPERINTENDENT BRUEN........................................................... 7

    A.    Plaintiffs Have Not Suffered Imminent Injury ................................................ 7

    B.    Superintendent Bruen Did Not Cause the Alleged Injuries............................. 9

    C.    Superintendent Bruen Cannot Provide the Requested Relief........................ 11

POINT II      SUPERINTENDENT BRUEN IS NOT A PROPER PARTY ............................ 12

CONCLUSION.............................................................................................................................. 14

## TABLE OF AUTHORITIES

**Case**                                                                                                         **Page(s)**

*Adam v. Barr*,
    792 F.App'x at 22 (2019) ............................................................................................... 9

*Anderson v. Mulroy*,
    186 A.D.2nd. 1045 (4th Dept. 1992) ............................................................................. 3

*Aron v. Becker*,
    48 F.Supp.3d 347 (N.D.N.Y. 2014) ........................................................................ 10, 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................................................................... 6

*Babbitt v. United Farm Workers Nat'l Union*,
    442 U.S. 289 (1979) ............................................................................................... 7, 8, 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ....................................................................................................... 6

*Bobrick v. Leggett*,
    71 A.D.2d 869 (2nd Dep't 1979) ................................................................................... 3

*Chan v. Pataki*,
    201 F.3d 430 (2d Cir. 1999) ......................................................................................... 13

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ................................................................................................... 7, 10

*Ex parte Young*,
    209 U.S. 123 (1908) ..................................................................................................... 12

*Gras v. Stevens*,
    415 F.Supp. 1148 (S.D.N.Y. 1976) .............................................................................. 13

*Johnson v. N.Y. State Dep't of Corr. Servs.*,
    709 F. Supp. 2d 178 (N.D.N.Y. 2010) ......................................................................... 12

*Kachalsky v. Cnty of Westchester*,
    701 F.3d 81 (2d Cir. 2012) ........................................................................................... 13

*Kwong v. Bloomberg*,
    876 F.Supp.2d 246 (S.D.N.Y. 2012) ...................................................................... 10, 13

*Lerner v. Fleet Bank, N.A.*,
    318 F.3d 113 (2d Cir. 2003) .................................................................................................. 6

*Libertarian Party of Erie County v. Cuomo*,
    970 F.3d 106 (2d Cir. 2020) ............................................................................... 7, 10, 11, 13

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ................................................................................................. 7, 9, 11

*Mangiafico v. Blumenthal*,
    471 F.3d 391 (2d Cir. 2007) .................................................................................................. 2

*Makarova v. U.S.*,
    201 F.3d 110 (2d Cir. 2000) .................................................................................................. 6

*McCluskey v. Comm'r of Nassau Cnty. Dep't of Soc. Servs.*,
    2013 WL 4780854 at *15 (E.D.N.Y. July 23, 2013) ........................................................... 12

*Osterweil v. Bartlett*,
    819 F.Supp.2d 72 (N.D.N.Y. 2011) ............................................................................. 10, 13

*People v. Thompson*,
    92 N.Y..2d 957 (1998) ......................................................................................................... 8

*Sabin v. Nelson*,
    No. 12 Civ. 1373, 2014 WL 2945770 (N.D.N.Y. June 30, 2014) ...................................... 13

*Savitch v. Lang*,
    114 A.D.2d 372 (2nd Dep't 1985) ........................................................................................ 3

*Shipping Fin. Serv. Corp. v. Drakos*,
    140 F.3d 129 (2d Cir. 1998) .................................................................................................. 6

*Sibley v. Watches*,
    501 F.Supp. 3d 210 (W.D.N.Y. 2020) .................................................................................. 9

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ............................................................................................................. 7

*United States v. Int'l Longshoremen's Ass'n*,
    518 F.Supp 422 (E.D.N.Y. 2007) .......................................................................................... 2

*Va. Office for Prot. & Advocacy v. Stewart*,
    131 S.Ct. 1632 (2011) ........................................................................................................ 12

*Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*,
    535 U.S. 635 (2002) ........................................................................................................... 12

*Warden v. Pataki*,
    35 F.Supp.2d 354 (S.D.N.Y 1999) .................................................................................. 13

*Warth v. Seldin*,
    422 U.S. 490 1975) ............................................................................................................ 7

*W.R. Huff Asset Management Co. v. Deloitte & Touche LLP*,
    F.3d 100 (2d Cir. 2008) ..................................................................................................... 7

*Younger v. Harris*,
    401 U.S. 37 (1971) ............................................................................................................ 7

## UNITED STATES CONSTITUTION

Eleventh Amendment ................................................................................................................ 2

## FEDERAL STATUTES

42 U.S.C.

    § 1983 ........................................................................................................................passim

## STATE STATUTES

New York Penal Law

    §§265.01(1), 265.01-B, 265.03(3), and 400.00(15) ....................................................passim

## FEDERAL RULES

Federal Rules of Civil Procedure
    Rule 8 ................................................................................................................................ 2
    Rule 12(b)(1) ..................................................................................................................... 3

**PRELIMINARY STATEMENT**

Kevin P. Bruen, sued in his official capacity as Superintendent of the New York State Police ("Superintendent Bruen"), by his attorney, Letitia James, Attorney General of the State of New York, respectfully submits this memorandum of law in support of his motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).

The Complaint must be dismissed because plaintiffs lack standing to assert their claims against Superintendent Bruen. First, Plaintiffs have not suffered injury-in-fact in that Plaintiffs already possess valid firearm licenses and therefore face no criminal penalties for violating Penal Laws §§ 265.01(1), 265-01B, 265.03(2), and 265.03(3). Second, Plaintiffs fail to set forth allegations of non-hypothetical, imminent injury sufficient to support a pre-enforcement challenge. Next, Plaintiffs fail to link their alleged injuries to any conduct by Superintendent Bruen or the New York State Police ("NYSP"). Plaintiffs are silent as to any role Superintendent Bruen had in denying their licenses, and any alleged role Superintendent Bruen had in approving blank license forms is too remote to cause any injury that is "fairly traceable" to him. Finally, Superintendent Bruen cannot grant the relief that Plaintiffs seek, which is a change to New York's firearm licensing scheme and the ability to "open carry" a firearm in public. As such, there is no non-speculative likelihood that Plaintiffs' injury can be redressed by Superintendent Bruen.

In any event, Superintendent Bruen is not a proper party to this case because Plaintiffs fail to plead facts showing Superintendent Bruen had any connection with an alleged violation of federal law. Accordingly, Plaintiffs' claims against Superintendent Bruen must be dismissed.

## STATEMENT OF ALLEGATIONS[1]

1.  **Jason and Brianna Frey**

Jason and Brianna Frey are husband and wife. (ECF No. 22 ¶ 10). They are both United States citizens and reside in Westchester County. *See* Complaint ("Compl.") ¶¶ 23-24; (ECF No. 21 ¶ 3).[2] On an unidentified date, both applied for, and were granted, restricted concealed carry licenses by a Westchester County judge. (Compl. ¶¶ 92 and 125). The licenses were restricted "sportsman" licenses, limiting possession of their handguns to the inside of their home, to and from target shooting, and during sporting activities. *Id.* ¶¶ 93-94 and 126.

In 2019, both Freys allegedly applied for an amendment to allow for unrestricted concealed carry licenses. *Id.* ¶¶ 95 and 127. Their application was allegedly motivated by a physical and verbal attack on them by a former tenant in June 2018.[3] (ECF No. 22 ¶¶ 9 and 13). The licensing officer denied the applications because neither Frey had met the "proper cause" standard as they had "not demonstrated the necessary proper cause for the issuance of a full carry firearm license . . . [in that they had] not demonstrated a need for self-protection distinguished from that of the general public." (Compl. ¶¶ 98 and 129).

Neither Frey appealed the denial of their applications by filing an Article 78 proceeding because "it would have been futile" as licensing officers have "broad discretion" in determining what constitutes "proper cause" and, in their opinion, New York State appellate courts, typically

---

[1] The plausible and non-conclusory factual allegations of Plaintiffs' complaint are accepted as true only for purposes of this motion. Superintendent Bruen does not concede the truth of any of Plaintiffs' allegations.

[2] Subsequent to filing their Complaint, Plaintiffs filed a Preliminary Injunction Motion and other supporting documents. In addition to the Complaint, the Court may take judicial notice of publicly filed documents in resolving a motion to dismiss. *See United States v. Int'l Longshoremen's Ass'n*, 518 F.Supp 422 at 450 (E.D.N.Y. 2007); *Mangiafico v. Blumenthal*, 471 F.3d 391 at 398 (2d Cir. 2007).

[3] Plaintiffs have elected not to attach any of their licensing amendment applications, or any transcripts or licensing decisions to their Complaint. It is thus not clear what information they shared with the licensing officer or the particulars and reasoning of the decisions in their applications.

"rubber stamp" the determinations of licensing officers.[4] (Compl. ¶¶ 102 and 135-137).

Both Freys "seek to, and intend to, carry [their] handguns" in "public for all lawful purposes, whether concealed or open carry, without regard for any intrastate geographical restrictions" and without having to demonstrate "cause" or "need" to do so. (Compl. ¶¶ 105-106 and 140-141). Neither Frey has applied for an open carry license because New York State does not permit the open carry of a handgun. (Compl. ¶¶ 108 and 143). The Freys claim to travel to New York City but provide no details regarding the same. *Id.* ¶¶ 113 and 148. They claim to fear for their safety while in New York City because of, *inter alia*, the defunding of the New York Police Department, the reduction in the police force, the rise in violent crime, the rise in roving, armed gangs in New York City, [and] the rise in violent attacks (even in broad daylight) in New York City. *Id.* ¶¶ 115 and 150.

**2.    Jack Cheng**

Jack Cheng is a resident of Nassau County. (Compl. ¶ 160). On an undisclosed date, he was issued a restricted concealed carry license by a Nassau County licensing officer. *Id.* ¶ 164-65; (ECF No. 21 ¶¶ 3-4). The license limits possession of handguns to inside his home, to and from target shooting activities, and while engaged in hunting. *Id.* ¶ 165; (ECF No. 22 ¶ 6).

According to Mr. Cheng, his NYS license is not valid in NYC (Compl. ¶ 166), and he

---

[4] Plaintiffs cite no evidentiary basis for this conclusory. They ignore the evidence that, for decades, even pre-*Heller*, New York courts have regularly reversed improper licensing decisions. *See, e.g.*, *Bobrick v. Leggett*, 71 A.D.2d 869, 870 (2nd Dep't 1979) (reversing licensing decision where petitioner was not given a reasonable opportunity to address reasons for his denial); *Anderson v. Mulroy*, 186 A.D.2d 1045, 1045 (4th Dep't 1992) (voiding a licensing decision where licensing officer did not identify specific reasons for denial and holding that the petitioner must be "given the opportunity to respond to the objections to his application and to present evidence in response."); *Anderson v. Mulroy*, 186 A.D.2d 1045, 1045 (4th Dep't 1992) (reversing and remanding licensing decision with instructions to "provide petitioner with the specific reasons for the denial of the pistol license and afford petitioner the opportunity to present evidence in response"); *Savitch v. Lange*, 114 A.D.2d 372, 373 (2nd Dep't 1985) (remanding matter with instructions to "provide petitioner with the specific reasons gleaned from the police report for the denial of her application for a pistol license, and afford her the opportunity to present evidence in response").

cannot apply to have his NYS handgun license "endorsed" by a licensing officer in New York City because his state license is not an unrestricted license. (Compl. ¶ 167). He claims that over fifteen years ago, he was issued a concealed carry license related to his businesses by the New York City Police Department ("NYPD") License Division. *Id*. ¶¶ 168-169. When that license was set to expire in October 2019, Mr. Cheng sought renewal. *Id*. ¶ 172. The NYPD License Division denied Mr. Cheng's renewal application. *Id*. ¶¶ 172-173; Cheng Decl. ¶ 14.

Mr. Cheng alleges that he travels to NYC on a daily basis to manage his various businesses, which includes collecting rents and making bank deposits. (Compl. ¶ 180). Like the Freys, he allegedly fears for his safety while travelling to and from NYC, and while spending time there. In addition, he is concerned "for [his] safety as an Asian American because of the incidents of random, violent attacks on Asian Americans in New York City arising from the COVID pandemic." (ECF No. 22. ¶¶ 20, 21).

Mr. Cheng seeks to, and intends to, carry his handgun open and exposed on his person in public for all lawful purposes throughout NYS, including NYC, without geographical restriction and/or fear of criminal prosecution. (Compl. ¶¶ 176 and 178).

### 3. William Sappe

William Sappe is a resident of Orange County. (Compl. ¶ 188). He is self-employed and alleges that his business involves transporting "substantial amounts of cash, diamonds, and jewelry for high-end jewelers." *Id*. ¶¶ 190-192.

Since 2015, Mr. Sappe has held an open carry license from the State of California, where he is licensed as an armed security guard. (Compl. ¶¶ 193-194). Mr. Sappe is also licensed as an armed security guard in NYS and claims that for the past seven years he has held a valid NYS "unrestricted concealed carry (full carry) handgun license, which was issued by a County Court

Judge/licensing officer in Orange County, New York." *Id*. ¶¶ 196-197; (ECF No. 22 at 4). Pursuant to Penal Law § 400.00(6), Mr. Sappe's NYS unrestricted concealed carry handgun license is valid across the entire state except for NYC. *Id*. ¶¶ 199, 200.

In October 2018, Mr. Sappe applied to the NYPD License Division for an endorsement of his NYS concealed carry license, which would allow him to continue to carry a concealed handgun in NYC. *Id*. ¶ 201. This application was denied. *Id*. ¶ 202. Mr. Sappe's appeal to the NYPD's License Division's Appeals Unit was also denied. *Id*. ¶ 204. Both the NYPD License Division and its Appeals Unit determined that plaintiff had failed to establish "proper cause" for the issuance of an unrestricted conceal carry license and that he did not possess the necessary "moral character" for the issuance of the license. *Id*. ¶ 204. The "lack of moral character" determination was based on Mr. Sappe's "driving history and dismissed criminal charges." *Id*. ¶ 205.

Mr. Sappe filed an Article 78 proceeding in New York County Supreme Court challenging the NYPD's denial of his application for a license to carry in New York City, which proceeding was subsequently dismissed by the court. *Id*. ¶ 212. In its decision, the court stated, "proper grounds for denial of a handgun license may include '[o]ther information [that] demonstrates an unwillingness to abide by the law, a lack of candor towards lawful authorities, a lack of concern for the safety of oneself and/or other persons and/or for public safety, and/or other good cause for the denial of the license.' 38 RCNY § 5-10(n)." (ECF No. 22 ¶ 19).

Mr. Sappe states that he travels to NYC on an almost daily basis for business. (Compl. ¶ 221). As with his co-Plaintiffs, he also fears for his safety while travelling to and from, and spending time in, New York City. *Id*. ¶ 224; (ECF No. 22 ¶ 26).

Mr. Sappe states that he seeks to carry a firearm, concealed or open carry, for self-protection outside of his home and in public, (Compl. ¶¶ 214-218). Mr. Sappe states that he does

not carry his handgun concealed on his person in NYC because of Penal Law § 400.00(6). *Id.* ¶ 225. Mr. Sappe further does not carry his handgun "open and exposed on his person anywhere in New York State, including New York City," for fear of criminal prosecution, the seizure of his registered handguns, and the revocation of his license. *Id.* ¶ 229.

## **LEGAL STANDARD**

To survive a motion to dismiss for lack of subject matter jurisdiction under 12(b)(1) of the Federal Rules of Civil Procedure, it is the Plaintiff who has the burden of proof. *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003) (citations omitted). The Court may go outside the pleadings to resolve disputed fact issues on a 12(b)(1) motion. *Makarova v. U.S.,* 201 F.3d 110, 113 (2d Cir. 2000). "[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Serv. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir. 1998). Still, a complaint must contain a "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the Plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 556-57). The pleading requirements under Rule 8 of the Federal Rules of Civil Procedure "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Where a Plaintiff has failed to "nudge [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

# ARGUMENT[5]

## POINT I

## PLAINTIFFS DO NOT HAVE STANDING TO ASSERT THEIR CLAIMS AGAINST SUPERINTENDENT BRUEN

Standing is "the threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). In order to have standing in federal court, a plaintiff must show (1) injury in fact, which is a "concrete and particularized" harm to a "legally protected interest"; (2) causation in the form of a "fairly traceable" connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) redressability, or a non-speculative likelihood that the injury can be remedied by the requested relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also Libertarian Party of Erie County v. Cuomo*, 970 F.3d 106, 116 (2d Cir. 2020) (quoting *W.R. Huff Asset Management Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106-07 (2d Cir. 2008)). Plaintiffs bear the burden and must establish standing with respect to each claim he or she asserts. *Libertarian Party*, 970 F.3d at 116. As explained below, Plaintiffs fail to meet that burden.

### A. Plaintiffs Have Not Suffered Imminent Injury

Justiciable injury for purposes of Article III must be "real and immediate" and not purely speculative and abstract. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). While a plaintiff challenging the constitutionality of a law generally need not wait until they are actually arrested or prosecuted, a credible threat of imminent prosecution against the plaintiff must exist. *Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 159 (2014). A credible threat of prosecution cannot rest

---

[5] Throughout their Complaint and subsequent moving papers, Plaintiffs make conclusory allegations for which they provide no evidentiary support. For example, they each allege that for safety reasons, they should be permitted to bring handguns into NYC because crime there has risen exponentially because of cuts in funding to the New York City Police Department. Plaintiffs have not offered any evidence to support these allegations, including, for example budget and fiscal information related to police funding, or any quantitative evidence supporting the otherwise bare assertion that armed gangs are "roving" the streets of the City.

on fears that are "imaginary or speculative." *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298 (1979), (quoting *Younger v. Harris,* 401 U.S. 37, 42 (1971)). Nor is such an injury evident where plaintiffs "do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible." *Babbitt,* 442 U.S. at 298–99 (internal quotation marks omitted).

First, Plaintiffs lack standing to challenge Penal Laws §§ 265.01(1), 265.01-B, 265.03(2), and 265.03(3) because they have not and cannot be injured by those statutes. The Penal Law creates an exemption from the criminal penalties set out in the Penal Law art. 265 provisions for persons with a valid license. Under Penal Law § 265.20(3), each of the foregoing sections "shall not apply" to "[p]ossession of a pistol or revolver by a person to whom a license therefor has been issued as provided under" Penal Law § 400.00.[6] *See also* Penal Law § 400.00(17) (making pertinent provisions of Penal Law § 265 inapplicable to illegal possession of a firearm). Here, Plaintiffs have valid licenses. *See* (ECF No. 13, p. 2) ("Each plaintiff has a handgun license"). As such, they face no criminal penalties or threats of prosecution for violating the cited provisions of Penal Law art. 265 and accordingly lack standing to challenge those provisions.

Plaintiffs are therefore left with the hypothetical assumption that they will suffer imminent injury because, if they openly carry a handgun in New York State or if they carry in any manner in New York City without obtaining a separate New York City license, they *could* be arrested and prosecuted by the New York State Police under Penal Law § 400.00(15).[7] Plaintiffs' "imminent

---

[6] Penal Law §§ 400.00(15) and (17) set out the penalty for those who have a license but nevertheless are caught carrying in violation of the license (carrying in New York City, for example, when you are not licensed to do so). For a violation of the terms of the license which is not itself a violation of a penal law provision, the result is an administrative penalty like revocation or suspension. *See People v. Thompson,* 92 N.Y.2d 957, 959 (1998).

[7] Penal Law §§ 265.01(1) and 265.01-B criminalize the unlicensed "possession" of a firearm while §§ 265.03(2) and 265.03(3) criminalize the possession of a certain number of firearms. Penal Law § 400.00(15) makes any violation of Penal Law § 400 a class A misdemeanor.

8

injury" argument fails because, although pre-enforcement challenges to a criminal statute are permissible, there must be a showing of "imminent injury." *See Driehaus,* 573 U.S. 149 at 159 (2014); *Babbitt,* 442 U.S. at 298. Absent allegations of particular circumstances that support credible threats of prosecution, such as prior prosecution or prior threats of prosecution, there is no "imminent injury" and standing fails. *Sibley v. Watches*, 501 F.Supp. 3d 210, 222 (W.D.N.Y. 2020) (quoting *Adam v. Barr*, 792 F.App'x at 22 (2019)). Such is the case here. Plaintiffs have alleged no past or present threats of prosecution, nor any other particularized threats that would justify "imminent injury."

Moreover, if the Court were to adopt the broad scope of Plaintiffs' "imminent injury" argument, then essentially any person would have standing to challenge any existing criminal statute simply by alleging that they may, at some hypothetical point in the future, choose to violate the statute, and that they would then be arrested and prosecuted for this act. Such speculative and hypothetical scenarios are insufficient to confer standing. *See generally Lyons*, 461 U.S. at 95 (injury must be real and immediate and not purely speculative and abstract); *Babbit,* 442 U.S. at 298 (1979) (same). Plaintiffs' threat of imminent injury is entirely speculative, and they have not suffered injury in fact.

### B. Plaintiffs Have Not Established That Superintendent Bruen Caused Their Alleged Injuries

To succeed in showing causation, "there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly…trace[able] to the challenged action of the defendant." *Lujan*, 504 U.S. 555 at 560-61. Here, Plaintiffs completely fail to link their alleged injuries to *any* conduct by Superintendent Bruen. Plaintiffs allege that their license applications for unrestricted carry of firearms were denied by various licensing officers throughout

9

New York State. Plaintiffs are silent as to any role either Superintendent Bruen or the NYSP had in denying their licenses. In fact, Plaintiffs' licensing decisions were made by Westchester, Orange, and Nassau licensing officers and the NYPD's Licensing Division and not by any action or inaction of the NYSP or Superintendent Bruen. As such, there is no alleged injury that is "fairly traceable" to Superintendent Bruen. *See Libertarian Party*, 970 F.3d at 116 (finding no causal connection between plaintiff's denial of a handgun license and the NYSP Superintendent, thereby dismissing the claims against him).

To the extent that Plaintiffs point to the fact that the Superintendent of State Police is charged with drafting license application forms, and therefore their injury is "fairly traceable" to him, those claims also fail. (Compl. ¶ 11). Superintendent Bruen does not decide what types of firearms-carrying are permitted in New York State or make individual licensing determinations. Instead, the types of carrying permitted and licenses available are set forth in the Penal Law. *See* Penal Law § 400.00(2). Likewise, Superintendent Bruen does not have the authority to grant or deny unrestricted licenses or licenses to carry in New York City.

Furthermore, it is not the form of the license application that the Plaintiffs challenge by their Complaint, it is the licensing scheme itself – a decision that is not made or governed by Superintendent Bruen. Indeed, courts in this Circuit have expressly held that the Superintendent (as well as the Governor and the Attorney General) are not proper parties to actions, like this one, challenging New York's firearms licensing scheme as unconstitutional. *See Libertarian Party*, 970 F.3d at 116 (Superintendent); *Aron v. Becker*, 48 F. Supp. 3d 347, 368-69 (N.D.N.Y. 2014) (Governor); *Osterweil v. Bartlett*, 819 F. Supp. 2d 72, 75 (N.D.N.Y. 2011) (Governor and Attorney General), *vacated on other grounds by* 738 F.3d 520 (2d Cir. 2013); *see also Kwong v. Bloomberg*, 876 F. Supp. 2d 246, 248 n.1 (S.D.N.Y. 2012) (noting that the Attorney General was initially sued

10

in this action challenging the constitutionality of aspects of the State's licensing law, but then subsequently dismissed as a defendant), *aff'd*, 723 F.3d 160 (2d Cir. 2013). Likewise, assuming *arguendo* – but not admitting – that Plaintiffs suffered injury by virtue of the absence of an option to apply for an "open carry" license, that injury would also not be "fairly traceable" to Superintendent Bruen. *Libertarian Party*, 970 F.3d at 116.

Lastly, Plaintiffs argue that any injury caused by arrest and prosecution under the statutes is necessarily traceable to Superintendent Bruen through the New York State Police. *See*, ECF No. 13, ¶ 2. However, as with the hypothetical injury, any such connection between the injury and Superintendent Bruen is also entirely speculative. Plaintiffs have simply not shown that the injury they complain of is fairly traceable to Superintendent Bruen and accordingly cannot establish one for the essential elements of standing. *Lujan*, 504 U.S. at 560.

### C. Superintendent Bruen Could Not Provide the Requested Relief

To successfully show redressability, there must exist a non-speculative likelihood that the injury can be remedied by the relief requested. *Lujan*, 504 U.S. 555 at 560-61. Plaintiffs lack standing where the parties sued cannot grant the relief they seek. *Id.* at 568. Here, Plaintiffs claim that New York's firearm licensing scheme is unconstitutional and challenge the denial of licensure to be free to carry loaded handguns throughout the State, including New York City. However, Superintendent Bruen cannot address Plaintiffs' objection to any particular licensing decisions. As noted above, Plaintiffs' licensing decisions were made by Westchester, Orange, and Nassau licensing officers and the NYPD's Licensing Division, not by any action of the NYSP or Superintendent Bruen. Further, to the extent Plaintiffs complain of the inability to obtain an "open carry" license, even assuming for the sake of argument that this was an injury to a "legally protected interest," *id* at 556, the unavailability of such manner of carrying was not caused by, and

11

is not redressable by, Superintendent Bruen. Simply put, Superintendent Bruen cannot grant the relief that Plaintiffs seek – a change in New York's firearm licensing scheme and the ability to "open carry" a firearm in public. Accordingly, there is no non-speculative likelihood that Plaintiffs' injuries can be redressed by Superintendent Bruen.

## POINT II

### SUPERINTENDENT BRUEN IS NOT A PROPER PARTY TO THIS CASE

Plaintiffs have also failed to allege any specific connection between Superintendent Bruen to the administration or enforcement of New York's firearms licensing laws. Thus, he is not a proper party to this action.

The law on this point is clear. The *Ex parte Young*, 209 U.S. 123 (1908) exception to Eleventh Amendment sovereign immunity allows for suits against state officers in their official capacities if the "complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Va. Office for Prot. & Advocacy v. Stewart*, 131 S. Ct. 1632, 1639 (2011) (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)) (internal quotation marks omitted). But this exception only applies where the official sued has "some connection with the enforcement of the [allegedly unconstitutional] act." *Ex parte Young*, 209 U.S. at 157; *see also, e.g., McCluskey v. Comm'r of Nassau Cnty. Dep't of Soc. Servs.*, 2013 WL 4780854 at *15 (E.D.N.Y. July 23, 2013) (explaining that the state official "must ha[ve] a direct connection to, or responsibility for, the alleged illegal action" (internal quotation marks and citations omitted)).

Plaintiffs must plead facts showing that Superintendent Bruen "had a connection with the alleged violation of federal law." *Johnson v. N.Y. State Dep't of Corr. Servs.*, 709 F. Supp. 2d 178, 183 (N.D.N.Y. 2010). Here, they have failed to do so. As noted above, courts in this Circuit have

expressly held that the Superintendent (as well as the Governor and the Attorney General) are not proper parties to actions challenging New York's firearms licensing scheme as unconstitutional. Rather, the case law makes clear that such suits should be brought, if at all, against Plaintiffs' local licensing officers. *Kachalsky v. Cnty of Westchester*, 701 F.3d 81 at 83, 84 (2d Cir. 2012); *See also Libertarian Party*, 970 F.3d at 116 (Superintendent); *Aron v. Becker*, 48 F. Supp. 3d 347, 368-69 (N.D.N.Y. 2014) (Governor); *Osterweil v. Bartlett*, 819 F. Supp. 2d 72, 75 (N.D.N.Y. 2011) (Governor and Attorney General), *vacated on other grounds by* 738 F.3d 520 (2d Cir. 2013); *see also Kwong v. Bloomberg*, 876 F. Supp. 2d 246, 248 n.1 (S.D.N.Y. 2012) (noting that the Attorney General was initially sued in this action challenging the constitutionality of aspects of the State's licensing law, but then subsequently dismissed as a defendant), *aff'd*, 723 F.3d 160 (2d Cir. 2013).

Likewise, unsupported fears of arrest and prosecution cannot turn Superintendent Bruen into a proper party to a suit, which, at its core, challenges the constitutionality of a licensing scheme that is administered by local licensing officers. Under settled precedent, that is simply not enough to make Superintendent Bruen a proper party here. *See, e.g., Libertarian Party,* 970 F.3d at 116; *Warden v. Pataki,* 35 F. Supp. 2d 354, 359 (S.D.N.Y. 1999) (noting that "the vast majority of courts to consider the issue have held . . . that a state official's duty to execute the laws is not enough by itself to make that official a proper party in a suit challenging a state statute"), *aff'd sub nom. Chan v. Pataki,* 201 F.3d 430 (2d Cir. 1999); *Sabin v. Nelson*, No. 12 Civ. 1373, 2014 WL 2945770 at *6 (N.D.N.Y. June 30, 2014) (same); *Gras v. Stevens*, 415 F. Supp. 1148, 1151-52 (S.D.N.Y. 1976) (three-judge court) (Friendly, J.).

Accordingly, Plaintiffs' claims against Superintendent Bruen are subject to dismissal as he is not a proper party herein.

13

## CONCLUSION

For the reasons set forth above, Superintendent Bruen's motion to dismiss should be granted, and the claims against him dismissed.

Dated: New York, New York
November 17, 2021

                                                  LETITIA JAMES
                                                  Attorney General
                                                  State of New York
                                                  *Attorney for Superintendent Bruen*

By:    */s/ Ian Ramage*
            Ian Ramage
            Neil Shevlin
            Assistant Attorneys General
            28 Liberty Street, 18th Floor
            New York, New York 10005
            (212) 416-8659/8561
            Ian.Ramage@ag.ny.gov
            Neil.Shevlin@ag.ny.gov