UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JASON FREY, BRIANNA FREY,
JACK CHENG, and WILLIAM SAPPE,                    **ORAL ARGUMENT REQUESTED**

                              Plaintiffs,

          -against-                               Case No. 21 Civ. 5334 (NSR)

KEVIN P. BRUEN, Acting Superintendent
of the New York State Police, in his official
capacity, NEW YORK CITY, New York,
and DERMOT SHEA, in his official capacity
as NYPD Police Commissioner,

                              Defendants.
------------------------------------------------------------x

# PLAINTIFFS' MEMORANDUM OF LAW
# IN OPPOSITION TO DEFENDANT BRUEN'S
# MOTION TO DISMISS PURSUANT TO Fed. R. Civ. P. 12(b)(1)

**THE BELLANTONI LAW FIRM, PLLC**
*Attorneys for Plaintiffs*
**2 Overhill Road, Suite 400**
**Scarsdale, New York 10583**
**(914) 367-0090**
**abell@bellantoni-law.com**

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ........................................................................................... i

PRELIMINARY STATEMENT .................................................................................... 1

LEGAL ARGUMENT.................................................................................................... 3

Standard for Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) ........................... 3

I. PLAINTIFFS ARE SUFFERING AN INJURY-IN-FACT ........................................ 4

    A. Penal Law Sections 265.01(1), 265.01-b, 265.03(2), 265.03(3) vs. 400.00(15), (17) ....... 5

    B. Arrest and Prosecution Under § 400.00(15) and/or (17)..................................... 5

    C. Imminent Injury............................................................................................. 8

II. PLAINTIFFS' INJURIES ARE TRACEABLE TO DEFENDANT BRUEN........................ 10

III. ENJOINING DEFENDANT BRUEN AND ALL THOSE "ACTING IN ACTIVE
CONCERT" WITH HIM WILL PROVIDE THE REQUESTED RELIEF................................ 11

IV. DEFENDANT BRUEN IS A "PROPER PARTY"................................................... 12

CONCLUSION.............................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................ 3

*Avitabile v. Beach*,
  277 F. Supp. 3d 326 (N.D.N.Y. 2017) ............................................................. 8, 10, 12

*Baur v. Veneman*,
  352 F.3d 625 (2d Cir. 2003) .................................................................................... 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................ 3

*Bery v. City of New York*,
  97 F.3d 689 (2d Cir. 1996) ..................................................................................... 2

*Carey v. Piphus*,
  435 U.S. 247 (1978) ................................................................................................ 9

*Cayuga Nation v. Tanner*,
  824 F.3d 321 (2d Cir. 2016) .................................................................................... 9

*Conn. Dep't of Envtl. Prot. v. OSHA*,
  356 F.3d 226 (2d Cir. 2004) .................................................................................... 2

*D.C. v. Heller*,
  554 U.S. 570 (2008) ................................................................................................ 4

*Duncan v. Becerra*,
  742 F. App'x 218 (9th Cir. 2018) .......................................................................... 13

*Ex parte Young*,
  209 U.S. 123 (1908) .......................................................................................... 12, 13

*John v. Whole Foods Mkt. Grp., Inc.*,
  858 F.3d 732 (2d Cir. 2017) .................................................................................... 4

*Knife Rts., Inc. v. Vance*,
  802 F.3d 377 (2d Cir. 2015) .................................................................................... 9

*Libertarian Party of Erie County v. Cuomo*,
  970 F.3d 106 (2d Cir. 2020) .................................................................................... 2

**TABLE OF AUTHORITIES (con't)**

**Page(s)**

**Cases**

*Litwin v. Blackstone Grp., L.P.*,
   634 F.3d 706 (2d Cir. 2011) ................................................................... 3

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ................................................................... 4, 5

*Makarova v. United States*,
   201 F.3d 110 (2d Cir. 2000) ................................................................... 3

*Marquez v. Annucci*,
   2020 WL 3871362 (S.D.N.Y. July 9, 2020) ................................................. 2

*Moore v. PaineWebber, Inc.*,
   189 F.3d 165 (2d Cir. 1999) ................................................................... 3

*N.Y.S. Motor Truck Ass'n v. Pataki*,
   2004 WL 2937803 (S.D.N.Y. Dec. 17, 2004) ........................................... 11

*Nolan v. Cuomo*,
   2013 WL 168674, n.7 (E.D.N.Y. Jan. 16, 2013) ......................................... 12

*People v. Moore*,
   127 Misc.2d 402, 486 N.Y.S.2d 642 (Crim. Ct. 1985) ................................ 7

*People v. Nance*,
   146 Misc. 2d 971, 553 N.Y.S.2d 956 (Sup. Ct. 1990) ................................ 7

*People v. Thompson*,
   92 N.Y.2d 957 (4th Dep't 1998) ............................................................. 5

*Regal Knitwear Co. v. N.L.R.B.*,
   324 U.S. 9 (1945) ................................................................... 13

*Shipping Fin. Serv. Corp. v. Drakos*,
   140 F.3d 129 (2d Cir 1988) ................................................................... 3, 4

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ................................................................... 5, 9

*Taylor v. Stewart*,
   479 F. App'x 10 (7th Cir. 2012) ............................................................ 11

ii

## TABLE OF AUTHORITIES (con't)

**Page(s)**

**Cases**

*United States v. New York*,
  2007 WL 951576 (N.D.N.Y.) ................................................................................. 10

**Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................................. 1, 3, 14
Fed. R. Civ. P. 12(b)(6) ................................................................................. 3

## PRELIMINARY STATEMENT

Plaintiffs, Jason Frey, Brianna Frey, Jack Cheng, and William Sappe, by and through their attorneys The Bellantoni Law Firm, PLLC, submit the following Memorandum of Law in opposition to the motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) filed by Defendant, Kevin Bruen, sued herein in his official capacity as the Superintendent of the New York State Police.

Defendant's motion misses the mark.

Defendant's motion is rooted in the false premise that Plaintiffs' causes of action are aimed at the State's handgun licensing process.  While the Complaint details the existing statutory scheme, application process, and existing standards for carrying a handgun in public for self-defense ~ concealed carry upon a showing of "proper cause" and the absence of any route to open carry ~ the Complaint does not seek to change New York State's pistol licensing scheme.

Open carry falls outside of the licensing scheme altogether. This means either that (i) open carry is legal for individuals who hold a valid pistol license – as they have already been vetted and deemed "eligible" to possess handguns; or (ii) open carry is banned and those who carry openly are subject to criminal penalties.

By all means, if NYSP Superintendent Bruen is conceding that open carry is legal and no criminal penalties will be imposed for any handgun licensee who carries a handgun open and holstered in public ~ that the State only requires a special license to carry *concealed* ~ then let the State so declare and put the matter to rest.

1

But since the overwhelming practice and belief is that open carry is banned in New York State[1] ~ a crime for the licensed and unlicensed alike, and subjects licensed handgun owners to incarceration, fines, stigma and other criminal sanctions, license revocation, and divestiture of all handguns owned and possessed, Plaintiffs and many other similarly situated residents of this State call out for a judicial resolution.

Whether Superintendent Bruen played a role in denying Plaintiffs' applications for a *concealed carry* license is an immaterial[2] red herring. This is not a concealed carry case. If it were, Plaintiffs would have named the licensing officer(s) who denied their concealed carry applications. See, *Libertarian Party of Erie County v. Cuomo*, 970 F.3d 106 (2d Cir. 2020).

Plaintiffs challenge, and seek to enjoin the enforcement of, criminal statutes; not the licensing itself.[3] Plaintiffs' constitutional injuries, presumed to be irreparable as a matter of law[4], are directly traceable to Defendant Bruen. As the Superintendent of the New York State Police, Bruen and his agency enforce the New York State Penal Law throughout the State and advise county and local police departments on the state of the law relating to firearm regulations. Plaintiffs seek a temporary and permanent injunction against Bruen, his officers, agents, servants, employees, and all persons in active concert with or participation with him who receive

---

[1] Five states and the District of Columbia prohibit people from openly carrying handguns in public: California, Florida, Illinois, New York and South Carolina. More than half of the United States - 31 states - allow open carry without a permit or license. https://worldpopulationreview.com/state-rankings/open-carry-states.

[2] The only plaintiff with a claim related to concealed carry is William Sappe, who asserts that Penal Law § 400.00(6), which criminalizes the concealed carry of a handgun in New York City by an individual who holds a valid concealed carry pistol license that was issued by a licensing officer outside of New York City.

[3] To the extent that the Complaint complains of the discretionary provisions of Penal Law § 400.00(1)(b) and (n), the challenge is on the context of William Sappe's challenge to 38 RCNY 5, not Defendant Bruen.

[4] See, *Marquez v. Annucci*, No. 20 CIV. 1974 (AKH), 2020 WL 3871362, at *5 (S.D.N.Y. July 9, 2020), citing *Conn. Dep't of Envtl. Prot. v. OSHA*, 356 F.3d 226, 231 (2d Cir. 2004) ("Because violations of constitutional rights are presumed irreparable, 'the very nature of [plaintiff's] allegations' satisfies the requirement that it show irreparable injury." (internal citations omitted) (quoting *Bery v. City of New York*, 97 F.3d 689, 694 (2d Cir. 1996)).

actual notice of the injunction from enforcing the enumerated Penal Law statutes against Plaintiffs and other similarly situated individuals.

## LEGAL ARGUMENT

### Standard for Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)

The standard of review for a motion to dismiss under Rule 12(b)(1) is substantively "identical" to the standard for a Rule 12(b)(6) motion. *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 169 n.3 (2d Cir. 1999). Dismissal is proper under Rule 12(b)(1) for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate" the claim, such as when Article III standing is not met. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

To survive a Rule 12(b)(6) motion, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 715 (2d Cir. 2011).

### *"Drawing inferences in Plaintiffs' Favor"*

Defendant's representation that a plaintiff's showing of jurisdiction "is not made by drawing from the pleadings inferenced favorable to the party asserting it" [citing, *Shipping Fin. Serv. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir 1988)] was rejected after clarification by the

Second Circuit in *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 737 (2d Cir. 2017) in light of *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

"Our broad statement in *Drakos* relied on a more circumscribed statement by the Supreme Court in *Norton v. Larney* that appeared to prohibit drawing "argumentative" inferences favorable to the party asserting jurisdiction." *Whole Foods*, 858 F.3d at 737 (citation omitted). "To the extent *Norton* shunned the drawing of inferences in favor of a plaintiff's standing at the pleading stage, the Supreme Court more recently has held that 'general factual allegations of injury ... may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim.' *Lujan*, 504 U.S. at 561 (quotation marks omitted). When the defendant asserts a 'facial' challenge to standing, therefore, it remains the case that courts should continue to draw from the pleadings all reasonable inferences in the plaintiff's favor and "are to 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Whole Foods,* 858 F3d at 737, quoting *Lujan*, 504 U.S. at 561.

As such, all reasonable inferences are to be drawn in favor of Plaintiffs.

## I. PLAINTIFFS ARE SUFFERING AN INJURY-IN-FACT

Plaintiffs are suffering the violation of a preexisting and guaranteed constitutional right – the "guaranteed [ ] individual right to possess and carry weapons in case of confrontation[5] - an injury-in-fact. Plaintiffs' injuries are caused by the enforcement of criminal statutes for the mere exercise of their preexisting, individual and guaranteed constitutional right.

---

[5] "Putting all of these textual elements together, we find that they guarantee the individual right to possess and carry weapons in case of confrontation. This meaning is strongly confirmed by the historical background of the Second Amendment. We look to this because it has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a pre-existing right. The very text of the Second Amendment implicitly recognizes the pre-existence of the right and declares only that it "shall not be infringed." *D.C. v. Heller*, 554 U.S. 570, 592 (2008).

To establish injury-in-fact, a plaintiff must show that they suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). In evaluating whether the alleged injury is concrete and particularized, the court is to we "assess whether the injury affect[s] the plaintiff in a personal and individual way, to confirm that the plaintiff has a personal stake in the controversy and avoid having the federal courts serve as merely publicly funded forums for the ventilation of public grievances or the refinement of jurisprudential understanding[.]" *Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003) (citation and internal quotation marks omitted). "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016).

A. <u>Penal Law Sections 265.01(1), 265.01-b, 265.03(2), 265.03(3) vs. 400.00(15), (17)</u>

Plaintiffs' existing handgun licenses do not exempt them from arrest and prosecution under § 265.00*, et seq.* for the open carriage of a handgun.

Defendant argues that Plaintiffs are not at risk for arrest and prosecution under the criminal provisions of § 265.00 for open carry; that their only exposure to criminal prosecution exists under § 400.00(15) and (17) for "a violation of the terms of their license". While that is an issue to be determined by the Court, as set forth below, Defendant misrepresents that a violation of §§ 400.00(15) and (17) would result in no more than an "administrative penalty like a revocation or suspension" of their handgun license. [Def. MOL at FN 6 citing, *People v. Thompson*, 92 N.Y.2d 957, 958 (4th Dep't 1998)][6].

---

[6] In *People v. Thompson*, 92 N.Y.2d 957 (1998), cited by Defendant, the defendant had a concealed carry license issued in New York City that was restricted to Target shooting and allowed transportation of handguns to and from the range so long as they were carried in a locked container – the defendant's containers were unlocked. The only question on appeal from the trial court's dismissal of the weapons charges under § 265 and violations of § 400.00(8) and (17), was whether defendant's violation of the terms and conditions of his weapons license – that he transport his handguns in a locked container - may constitute a misdemeanor under Penal Law § 400.00. The Fourth Department, Appellate Division held it could not. "Thus, we conclude that this violation of the regulatory terms and conditions of

5

Not so.

First, a violation of § 400.00(15) is a crime. The plain language of § 400.00(15) provides,

*"[a]ny violation by any person of any provision" of § 400.00, et seq.*
*is a Class A Misdemeanor – a crime – punishable by up to 1 year in jail*
*and $1,000 fine."*

A violation of § 400.00(15) carries incarceration, fines, 3 years' probation and other criminal penalties, not mere "administrative penalties."

Second, the revocation of one's handgun license does not just terminate the right to possess and carry a handgun for self-protection, it divests the owner of his/her entire collection of handguns, which poses a substantial financial and, in many cases, sentimental loss particularly where handguns are passed down from family members and/or collected over time.

Third, it is not clear that open carry by an existing licensee constitutes "a violation of the terms of [an existing handgun] license" [Def. MOL at p. 8] such that § 400.00(15) and/or (17) are implicated but not § 265.00, *et seq.* The licensing statute neither includes nor contemplates open carry.

According to § 400.00(17), the provisions of § 265.00*, et seq.* "shall not apply to an offense which also constitutes a violation of this section by a person holding an otherwise valid license under the provisions of this section and such offense shall only be punishable as a class A misdemeanor pursuant to this section."

"This section", meaning the handgun licensing scheme encompassed in § 400.00*, et seq.,* only identifies only 2 ways to legally possess a handgun - (i) on your premises, residence or business (non-carry) and (ii) *concealed* carry. See, § 400.00(2), "Types of Licenses."

---

the license may not carry a penal sanction. That consequence is for the Legislature to prescribe and proscribe, and it has not done so within the framework of Penal Law § 400.00." *Id.* at 959. To the contrary, § 400.00(15) "carries a penal sanction", as detailed above.

The phrase "an offense that also constitutes a violation of § 400.00" is widely understood to occur where a licensee with restricted concealed carry license, for example target shooting, carries outside of their *concealed carry license restriction* by, for example carrying their handgun concealed to the store or the movies, not strictly to and from target shooting activities as restricted by their license.

In that connection, Plaintiff William Sappe's concealed carry of a handgun in New York City would be a violation of § 400.00(6) ("this section") because his concealed carry license was issued outside of New York City, is not "valid" in New York City, and his NYS unrestricted concealed carry license was not endorsed by the NYPD Police Commissioner to carry concealed inside of the 5 boroughs. Likewise, carrying outside of one's premises restriction would occur where the licensee carried their handgun concealed in public.

To the contrary, open carry is not "a violation of the provisions" of the licensing statute because "open carry" is not a "provision" of the statute. Open carry falls outside of § 400.00 entirely and is banned.  As set forth in the Preliminary Statement above – either (i) open carry is legal and does not require a special license from the government for an existing licensee; or (ii) open carry is a crime under § 265.00*, et. seq*.

B. Arrest and Prosecution Under § 400.00(15) and/or (17)

Even assuming that open carry is only a violation of the licensing statute, and therefore exempted from prosecution under the provisions of § 265.00, Plaintiffs nevertheless remain subject to arrest and prosecution under § 400.00(15) and/or (17)[7] – each Class "A"

---

[7] *People v. Nance*, 146 Misc. 2d 971, 975, 553 N.Y.S.2d 956, 958 (Sup. Ct. 1990) noted "the dichotomy between gun possession under Penal Law 265.00 and violations under conditions of a license pursuant to Penal Law 400.00. The latter acts can only be punished as class A misdemeanors pursuant to the section and not as a felony under article 265." citing, *People v. Moore*, 127 Misc.2d 402, 404, 486 N.Y.S.2d 642.

misdemeanors carrying a penalty of 1 year of incarceration, 3 years of probation, $1,000 fine, license revocation[8], and the permanent loss of all handguns.

      C.  <u>Imminent Injury</u>

      By the Complaint and their sworn declarations, Plaintiffs have demonstrated their intention to open carry a handgun for self-defense throughout New York State.

      Defendant concedes that, at the very least, Plaintiffs face prosecution under §§ 400.00(15) and/or (17).[9]

      It is hard to imagine what, if any, additional conduct Plaintiffs might be required to engage in to trigger a more credible threat of prosecution short of actually committing the proscribed act. See, *Avitabile v. Beach*, 277 F. Supp. 3d 326, 332 (N.D.N.Y. 2017) (striking New York's statutory ban on the possession and carrying of electronic stun guns and tasers as violating the Second Amendment right to possess and carry weapons "in common use for self-defense.").[10]

      If the threat of imminent harm exists for a plaintiff evincing an intention to possess and carry a [formerly illegal] taser or electric stun gun for self-defense [see, *Avitabile v. Beach*, *supra*], surely imminent harm exists for Plaintiffs, who have already evinced their intention to carry handguns in public for self-defense by the fact that they applied for full carry CCW licenses and Plaintiff William Sappe already carries a handgun concealed for self-defense. Defendant complains that Plaintiffs have no "credible threats of prosecution…to justify

---

[8] A violation of § 400.00(15) and/or (17) would result in a license revocation for "good cause" under § 400.00(11).

[9] While ignoring the fact that both subsections constitute a Class "A" misdemeanor with its own penalties, Defendant ignores separate imminent injuries of the revocation of the right to possess handguns for self-defense and the permanent loss of property, which are alleged in the Complaint and are to be taken as true for purposes of deciding this motion.

[10] If the threat of imminent harm exists for a plaintiff evidencing an intention to possess and carry a [formerly illegal] taser or electronic stun gun for self-defense, surely imminent harm exists for Plaintiffs herein, who have already evidenced their intention to carry handguns in public for self-defense by the fact that they applied for full carry CCW licenses and Plaintiff William Sappe already carries a handgun concealed for self-defense.

'imminent injury' " but such proof is not required. The concrete-harm requirement does not apply as rigorously when a private plaintiff seeks to vindicate his own private rights. Our contemporary decisions have not required a plaintiff to assert an actual injury beyond the violation of his personal legal rights to satisfy the "injury-in-fact" requirement. See, e.g., *Spokeo, Inc. v. Robins*, 578 U.S. 330, 347 (2016), as revised (May 24, 2016) (Thomas, J. concurring opinion) ("But the concrete-harm requirement does not apply as rigorously when a private plaintiff seeks to vindicate his own private rights.  Our contemporary decisions have not required a plaintiff to assert an actual injury beyond the violation of his personal legal rights to satisfy the "injury-in-fact" requirement.") citing, *Carey v. Piphus*, 435 U.S. 247, 266 (1978) (holding that nominal damages are appropriate when a plaintiff's constitutional rights have been infringed but he cannot show further injury).

Under Bruen's view, the only way for Plaintiffs to demonstrate "imminent injury" would be for them to violate the unconstitutional law and suffer arrest, which would lead to the permanent and irreparable injury detailed above – a standard not required to satisfy Article III standing.

Defendants have not averred under oath that neither they nor their officers would arrest Plaintiffs for such conduct, nor have they averred under oath that no other law enforcement agency in New York State would either. C.f., *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016) (reversing dismissal for lack of standing where "there is reason to believe that the plaintiffs will be targets of criminal prosecution, and there has been no disavowal of an intention to prosecute those individuals"); *Knife Rts., Inc. v. Vance*, 802 F.3d 377, 386–87 (2d Cir 2007 ("nowhere in the record of this litigation have defendants disavowed that they would criminally charge [plaintiffs]").

Plaintiffs request that the Court take particular note of Defendant's position that Plaintiffs' fears of arrest and prosecution should they open carry a handgun in public are merely a "hypothetical assumption". [Def. MOL at p. 9]. Indeed, any future claim by Defendant that "open carry" in New York City or any other location in New York State would cause public discord, panic and/or unrest should be flatly rejected.

To be sure, absent judicial intervention granting the requested relief, it is beyond cavil that Plaintiffs would be arrested and charged with a crime for open carry. However, Defendant's representations demonstrate that *after* obtaining the relief sought herein, the State's transition to the free exercise of the right to open carry will be unremarkable. Certainly, if the State's chief law enforcement officer believes that it is unlikely that Plaintiffs would be arrested for carrying their handguns openly in a holster on their person in public *without* judicial intervention, the transition to open carry *with* judicial intervention will be seamless.

## II. PLAINTIFFS' INJURIES ARE TRACEABLE TO DEFENDANT BRUEN

A state official may be restrained from the enforcement of an allegedly unconstitutional statute if that official by virtue of his office has some connection with the enforcement of the act. *United States v. New York*, 2007 WL 951576, at *3 (N.D.N.Y.).

As the Superintendent of the New York State Police, Bruen enforces the Penal Laws through his officers, staff, agents, and those working in concert with them including local law enforcement. As such, Plaintiffs' injuries – criminal sanctions under §§ 265.01(1), 265.01-b, 265.03(3), and §§ 400.00(15), (17) for carrying a handgun open and holstered throughout New York State – are traceable to Bruen who enforces the Penal Law. See, *Avitabile v. Beach*, supra (holding § 265.01(1) violated the Second Amendment as applied to tasers and stun guns, and enjoined the [former] NYSP Superintendent, "his officers, agents, servants, employees, and all

persons in active concert or participation with the New York State Police); *Taylor v. Stewart*, 479 F. App'x 10, 14 (7th Cir. 2012) (injury traceable to officers who enforced a statute challenged as unconstitutional; declaratory judgment would vindicate plaintiff's rights); c.f., *N.Y.S. Motor Truck Ass'n v. Pataki*, 2004 WL 2937803, at *12 (S.D.N.Y. Dec. 17, 2004) (dismissing claims against the governor who had no connection to enforcement of the statute).

Plaintiffs have no duty to demonstrate that Defendant "caused their injury" [Def. MOL at p. 9-11], only that their injury – being subject to arrest and prosecution under the criminal statutes for engaging in the open carriage of a handgun - is traceable to him. Plaintiffs' injuries are traceable to Bruen because he implements and enforces the criminal laws. A judicial declaration that enforcement of the criminal laws against Plaintiffs for open carry and an injunction against their enforcement will provide the relief sought.[11]

## III. ENJOINING DEFENDANT BRUEN AND ALL THOSE "ACTING IN ACTIVE CONCERT" WITH HIM WILL PROVIDE THE REQUESTED RELIEF

Enjoining Defendant Bruen, his officers, agents, servants, employees, and all persons in active concert and/or participation with the New York State Police from enforcing §§ 265.01(1), 265.01-b, 265.03(3), and/or§ 400.00(15) and (17) will redress Plaintiffs' injuries – just like the relief provided in *Avitable* provided the plaintiff's relief therein.

Deflecting from the actual issues in this case, Defendant repeatedly mischaracterizes Plaintiffs' claims and the relief sought by dwelling on the "licensing decisions" related to denials of Plaintiffs' respective concealed carry applications, the unconstitutionality of the licensing scheme, and the form of the State handgun licensing application. As related to Defendant Bruen,

---

[11] While Plaintiffs do not contest the fact that New York's discretionary handgun licensing scheme is unconstitutional, it is not the licensing scheme that Plaintiffs are challenging. Plaintiffs are challenging the enforcement of criminal statutes for their exercise of a constitutional right.  The absence of a provision for open carry in the State's licensing scheme and the denial of Plaintiffs' respective concealed carry applications, is factual background and relevant to show, inter alia, that Plaintiffs genuinely intend to open carry throughout New York State. The absence of a provision for open carry in the State's licensing scheme demonstrates the State's open carry ban.

there is no relief sought by Plaintiffs outside of the declaratory and injunctive relief related to the unconstitutional enforcement and implementation of the criminal statutes under § 265.00, *et seq.* and § 400.00, *et seq.*, presumed nominal damages for such constitutional violations, statutory attorney's fees, and costs. [See, Complaint at pp. 38-40]. To the extent that § 400.00(15) and (17) are "part of the licensing scheme", they are *criminal* statutes, not part of the licensing authority of the statutory licensing officers. Defendant, his law enforcement officers, and those acting in active concert with him are the proper individuals to enjoin.

## IV. DEFENDANT BRUEN IS A "PROPER PARTY"[12]

Defendant's reliance to *Ex parte Young* is misplaced.

This court has jurisdiction over Plaintiffs' claims because they involve decisions about Federal questions arising under the Constitution of the United States. See, *Ex parte Young*, 209 U.S. 123, 145 (1908) ("We conclude that the circuit court had jurisdiction in the case before it, because it involved the decision of Federal questions arising under the Constitution of the United States.").

With respect to the parties named, the *Ex parte Young* exception to Eleventh Amendment sovereign immunity permits an official-capacity claim against state officials for prospective, injunctive relief to remedy an ongoing violation of federal constitutional law, like the one alleged here. See, e.g, *Avitabile*, 277 F. Supp. 3d at 332 (where NY stipulated to the dismissal of the governor and attorney general, leaving the NYSP Superintendent as proper defendant); *Nolan v. Cuomo*, 2013 WL 168674, at *11–12 & n.7 (E.D.N.Y. Jan. 16, 2013) (district attorney was proper party to plaintiff's official-capacity claims for injunctive relief).

---

[12] While the New York State Police are connected to and involved in various handgun licensing issues, Plaintiffs seek to enjoin the enforcement of unconstitutional criminal statutes.

In a suit brought seeking a declaration of the unconstitutionality of a state statute or to enjoin the enforcement of the statute, an officer of a state is an appropriate defendant if he has some connection with the enforcement of the act. *Ex parte Young*, 209 U.S. at 157.

"It would seem to be clear that the attorney general, under his power existing at common law, and by virtue of these various statutes, had a general duty imposed upon him, which includes the right and the power to enforce the statutes of the state, including, of course, the act in question, if it were constitutional. His power by virtue of his office sufficiently connected him with the duty of enforcement to make him a proper party to a suit of the nature of the one now before the United States circuit court.

Bruen, by virtue of his position as the Superintendent of the NYSP, has the authority and power to enforce the statutes of the state, including the challenged criminal statutes. Bruen's power by virtue of his office sufficiently connects him with the duty of enforcement to make him a proper party to this action.[13]

Defendant notes that courts in this circuit have held that the Governor, Superintendent of the State Police, and Attorney General are not "proper parties" to a challenge to the state's licensing scheme where there was a denial of a handgun license. But again, with respect to Defendant Bruen, Plaintiffs seek, *inter alia,* relief from *criminal* laws for constitutionally protected conduct, not from the denial of a concealed carry license. Plaintiffs' relief will be

---

[13] Under Federal Rule 65, an injunction would apply to Defendant, his servants, employees, and all those receiving actual notice of such injunction who are in active concert or participation with the NYSP, as well as those identified with them in interest. See, e.g., *Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 14 (1945). A preliminary injunction would apply to those government agencies charged with enforcing and prosecuting the challenged sections of the Penal Law. Adopting Defendant's rationale, Plaintiffs would be required to name every local law enforcement agency and district attorney's office in the state – an oppressive and overburdensome task frustrating the redressability of claims. No such requirement existed in *Avitabile*, nor has the State identified one.  See, e.g., *Duncan v. Becerra*, 742 F. App'x 218, 220 (9th Cir. 2018) (preliminary injunction of criminal statute issued where chief law enforcement officer named as sole defendant); *Dr. A, et al. v. Hochul*, (21-cv-1009 NDNY) (enjoining NY Dep't of Health vaccine mandate statewide).

provided by the state official charged with the enforcement of such laws – Defendant Bruen, Superintendent of the NYSP.

Bruen is the proper party to be sued, warranting denial of Defendant's motion.

## CONCLUSION

Defendant Bruen's motion to Fed. R. Civ. P. 12(b)(1) motion to dismiss should be denied in its entirety.

Dated: December 17, 2021
     Scarsdale, New York

THE BELLANTONI LAW FIRM, PLLC
*Attorneys for Plaintiffs*

By:   *Amy L. Bellantoni*
     Amy L. Bellantoni (AB3061)
     2 Overhill Road, Suite 400
     Scarsdale, New York 10583
     914/367-0090
     abell@bellantoni-law.com

14