UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------X

JASON FREY, BRIANNA FREY, JACK CHENG, and WILLIAM SAPPE,

Plaintiffs,

-against-

KEVIN P. BRUEN, Acting Superintendent of the New York State Police, in his official capacity, NEW YORK CITY, New York, and DERMOT SHEA, in his official capacity as NYPD Commissioner,

Defendants.

---------------------------------------------------X

Case No. 21 Civ. 5334 (NSR)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF SUPERINTENDENT BRUEN'S MOTION TO DISMISS**

LETITIA A. JAMES
Attorney General
State of New York
*Attorney for Superintendent Bruen*
28 Liberty Street
New York, New York 10005
(212) 416-8659

Ian Ramage
Neil Shevlin
Assistant Attorneys General
*Of Counsel*

## TABLE OF CONTENTS

**Page**

Table of Authorities ..... ii

PRELIMINARY STATEMENT ..... 1

ARGUMENT ..... 3

POINT I PLAINTIFFS' ATTEMPTS TO AVOID THEIR LACK OF STANDING AND FAILURE TO NAME A PROPER STATE PARTY BY MOUNTING A COLLATERAL CHALLENGE TO NEW YORK'S FIREARM LICENSING SCHEME THROUGH THE PENAL LAW IS UNAVAILING ..... 3

POINT II PLAINTIFFS' STANDING ARGUMENTS ARE MISPLACED AND UNPERSUASIVE ..... 4

A. Plaintiffs Have Failed to Show a "Concrete and Particularized" Harm to a "Legally Protected Interest" ..... 5

B. There is "No Injury in Fact" Traceable to Superintendent Bruen ..... 7

C. Superintendent Bruen Cannot Provide the Requested Relief ..... 8

POINT III SUPERINTENDENT BRUEN IS NOT A PROPER PARTY TO ENFORCEMENT CHALLENGES TO FIREARM LICENSING LAWS ..... 8

CONCLUSION ..... 10

## TABLE OF AUTHORITIES

**Case** | **Page(s)**

*Aron v. Becker*,
48 F.Supp.3d 347 (N.D.N.Y. 2014) .......... 10

*Chan v. Pataki*,
201 F.3d 430 (2d Cir. 1999) .......... 9

*Gras v. Stevens*,
415 F. Supp. 1148 (S.D.N.Y. 1976) .......... 9

*Kachalsky v. Cnty of Westchester*,
701 F.3d 81 (2d Cir. 2012) .......... 4, 10

*Libertarian Party of Erie County v. Cuomo*,
970 F.3d 106 (2d Cir. 2020) .......... *passim*

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 7

*Osterweil v. Bartlett*,
819 F. Supp. 2d 72 (N.D.N.Y. 2011) .......... 10

*People v. Thompson*,
92 N.Y.2d 957 (1998) .......... 1, 5, 6

*Sabin v. Nelson*,
No. 12 Civ. 1373, 2014 WL 2945770 (N.D.N.Y. June 30, 2014) .......... 9

*Sibley v. Watches*,
501 F.Supp. 3d 210 (W.D.N.Y. 2020) .......... 6

*Warden v. Pataki*,
35 F. Supp. 2d 354 (S.D.N.Y 1999) .......... 9

**STATE STATUTES**

New York Penal Law

§§265.01(1), 265.01-B, 265.03(3), and 400.00(15) .......... *passim*

**FEDERAL RULES**

Federal Rules of Civil Procedure
Rule 12(b)(1)....................................................................................................................... 3

Kevin P. Bruen, sued in his official capacity as Superintendent of the New York State Police ("Superintendent Bruen" or "State Defendant"), by his attorney, Letitia James, Attorney General of the State of New York, respectfully submits this reply memorandum of law in further support of his motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).

**PRELIMINARY STATEMENT**

Plaintiffs' efforts to manufacture standing to challenge New York's pistol licensing scheme is unavailing. Plaintiffs argue that since their existing handgun licenses do not immunize them from arrest or prosecution under New York's Penal Laws, they are injured. Plaintiffs' convoluted theory of "imminent injury" runs contrary to controlling law and does not create standing. That Plaintiffs' apparently believe that their arrest and prosecution is "imminent" is completely irrelevant for standing purposes. This alone warrants dismissal.

Furthermore, as valid New York firearm license holders, if Plaintiffs choose to open carry, they have not and cannot be injured by New York Penal Laws §§ 265.01(1), 265.01-B, 265.03(2), and 265.03(3). The only hypothetical injury Plaintiffs could face is arrest and prosecution under Penal Laws §§ 400.00(15) and 400.00(17) for violating the terms of their licenses.[1] Even then, Plaintiffs' fears of imminent injury are entirely hypothetical and not based on any past, future, or imminent actions. As such, any hypothetical injury is not imminent and therefore not actionable.

In any event, Plaintiffs offer no viable arguments in support of their constitutional challenges to New York's Penal Laws, which all fail on the merits. By way of Opposition, Plaintiffs contend that their Complaint does not actually say what it says. In a desperate attempt to

[1] Penal Law §§ 400.00(15) and (17) set out the penalty for those who have a license but nevertheless are caught carrying in violation of the license (carrying in New York City, for example, when you are not licensed to do so). For a violation of the terms of the license which is not itself a violation of a penal law provision, the result is an administrative penalty like revocation or suspension. *See People v. Thompson*, 92 N.Y.2d 957, 959 (1998).

defeat dismissal, Plaintiffs disavow that they are challenging the State's firearm licensing scheme.[2] They argue instead that they "seek to enjoin the enforcement of criminal statutes; not the licensing itself," despite alleging in the Complaint that New York State's discretionary handgun licensing scheme is unconstitutional.[3] Plaintiffs attempt to salvage meritless claims by invoking a confusing presentation of conflicting statements—simultaneously alleging that their causes of action fall outside the purview of New York's firearm licensing scheme while also claiming that New York's licensing scheme is unconstitutional. Because it is clear that Plaintiffs' Complaint alleges a challenge to New York's firearm licensing scheme, the Court should treat it as such when considering Superintendent Bruen's Motion to Dismiss. Furthermore, the Court should disregard Plaintiffs' newly crafted allegations that plainly contradict the Complaint, and which are offered for consideration for the first time in their Opposition.

Further, as Plaintiffs contend in their Complaint and acknowledge in their Opposition, that they did not or could not obtain a license under the licensing scheme that fully insulates them from prosecution if they open-carried or carried in New York City without the requisite permit, then pursuant to *Libertarian Party of Erie County v. Cuomo*, 970 F.3d 106 (2d Cir. 2020), Superintendent Bruen is not the proper defendant. Put another way, Plaintiffs' purported injury, causation, and redressability still relates to the absence of a license, not the challenged criminal laws and the vague, unsupportable threat of prosecution thereunder. Either way, Superintendent Bruen's motion should be granted.

Nor can Superintendent Bruen grant the relief Plaintiffs seek, the ability to openly carry

---

[2] *Compare* Pls.' Opp. to Motion to Dismiss, dated December 17, 2021, ("Pl. Opp.") 1 and n. 11 at 11 ("[I]t is not the licensing scheme that Plaintiffs are challenging.") *with* Pls.' Complaint ("Compl.") ¶ 4 ("This action further seeks a declaration that New York State's ban on the open carriage of a handgun violates the Second Amendment.").
[3] *Compare* Pls.' Opp. 2 *with* Compl. ¶¶ 5,6,9.

firearms. New York's firearm licensing scheme dictates who and in what manner firearms are possessed and carried, not Superintendent Bruen. Pursuant to settled caselaw (*see* Point III, *infra*), he is not a proper party to constitutional challenges against New York's firearm licensing scheme.

## ARGUMENT

### POINT I

### PLAINTIFFS' ATTEMPTS TO AVOID LACK OF STANDING AND FAILURE TO NAME A PROPER STATE PARTY BY MOUNTING A COLLATERAL CHALLENGE TO NEW YORK'S FIREARM LICENSING SCHEME THROUGH THE PENAL LAW IS UNAVAILING

In an attempt to avoid dismissal, Plaintiffs go to great lengths to try to re-package their claims. But their attempts fail. In their Opposition, Plaintiffs argue that they are not attacking the State's handgun licensing scheme nor are they seeking to change New York's licensing scheme to allow for the open carry of handguns. (Pl. Opp. 1). Instead, Plaintiffs allege that they are challenging the enforcement of certain of the State's laws that criminalize the open carry of handguns — New York Penal Laws §§ 265.01(1), 265.01-B, 265.03(2), and 265.03(3).[4] Plaintiffs are engaging in sophistry in an attempt to invalidate New York's firearm licensing scheme while claiming they are not. New York's licensing scheme regulates the possession and carrying of handguns in public and, as is relevant here, permits only the concealed carrying of handguns. As Plaintiffs want to openly carry firearms, but the open carry of firearms is not permitted by the licensing scheme, they are quite clearly challenging the licensing scheme. Plaintiffs' characterization that their claims lie instead in the enforcement of certain Penal Laws is blatant misdirection because pursuant to Penal Law § 400.00(15) and (17), as license holders, the Penal

[4] Penal Law §§ 265.01(1) and 265.01-B criminalize the unlicensed "possession" of a firearm while §§ 265.03(2) and 265.03(3) criminalize the possession of a certain number of firearms. Penal Law § 400.00(15) makes any violation of Penal Law § 400 a class A misdemeanor.

Law art. 265 sections Plaintiffs purport to challenge are entirely inapplicable to them. Plaintiffs apparently believe that if they claim to enjoin enforcement of those provisions of the Penal Law, they will be permitted to do something the licensing scheme does not currently allow – open carry.[5] Put another way, Plaintiffs' entire theory of injury, causation, and redressability stems from an absence of the licensing provision, not the Penal Law. In fact, Plaintiffs move for injunctive relief against portions of the licensing scheme in Counts II, III, IV, and V of their Complaint. Count II specifically addresses the "Discretionary, Permissive Licensing Scheme." (Compl. 36, 37).

The Second Circuit has ruled that New York's licensing scheme — which does not allow for the application of an open carry permit — is constitutional. *Kachalsky v. Cnty of Westchester*, 701 F.3d 81, 83, 84 (2d Cir. 2012). Therefore, Plaintiffs resort to mounting a roundabout attack on the licensing scheme through inapplicable Penal Law enforcement provisions. Either way, it is still an attack on New York's licensing scheme in an attempt to allow the statewide open carry of firearms. As such, the law on this point is clear – New York State Police Superintendent Bruen is not a proper party to actions challenging New York's firearms licensing scheme. *Id.* at 83, 84; *Libertarian Party*, 970 F.3d at 116.

Accordingly, for the reasons set forth in Superintendent Bruen's motion and summarized *infra*, Superintendent Bruen is not a proper party to such an action.

**POINT II**

**PLAINTIFFS STANDING ARGUMENTS ARE MISPLACED AND UNPERSUASIVE**

Plaintiffs bear the burden and must establish standing with respect to each claim asserted.

[5] Plaintiffs repeatedly complain that Superintendent Bruen "mischaracterizes" their claims by dwelling on "licensing decisions" and the licensing scheme itself. (Pl. Opp. 11). However, Plaintiffs' Complaint and requests for relief show their target is the licensing scheme itself. And, in any event, their purported injury would still be traceable to the licensing scheme and redressed by changes to the licensing scheme or eradication thereof.

*See Libertarian Party*, 970 F.3d at 116. Plaintiffs have failed to show a "concrete and particularized" harm to a "legally protected interest," failed to show how any injury is "fairly traceable" to Superintendent Bruen, and failed to show how Superintendent Bruen can provide the requested relief.

**A. Plaintiffs Have Failed to Show a "Concrete and Particularized" Harm to a "Legally Protected Interest"**

Plaintiffs fail to show how they would be injured under Penal Laws §§ 265.01(1), 265.01-B, 265.03(2), and 265.03(3). Although Plaintiffs claim that their existing handgun licenses do not exempt them from arrest and prosecution under those statues (Pl. Opp. 5), under settled law this claim is simply false. A valid firearms license holder who violates the terms of their license to carry is not subject to criminal prosecution under Penal Laws §§ 265.01(1), 265.01-B, 265.03(2), and 265.03(3). Rather, a valid firearms license holder could only be prosecuted under Penal Law §§ 400.00(15) or (17), including receiving a possible administrative penalty. *See Thompson*, 92 N.Y.2d 957, 959 (1998). ("We agree with the lower courts that the available sanction for the violation of this administratively imposed condition relating to the license at issue should be confined to the administrative apparatus."). Plaintiffs are all valid license holders. (*See* Pls' Letter to Court, dated Sept. 2, 2021, at 2, ECF No. 13.) If Plaintiffs were to openly carry firearms in New York State, they would be in violation of the terms of their licenses. As such, under settled law as valid license holders, Plaintiffs would not be subject to the provisions of Penal Law § 265.00, only to the applicable administrative penalties under Penal Law § 400.00. *See Thompson*, 92 N.Y.2d at 959. Plaintiffs' assertion that they are subject to prosecution because "open carry" is not permitted by the terms of their licenses is incorrect. Penal Law § 265.20(3) clearly states that each of the foregoing sections of Penal Law § 265 "shall not apply" to "[p]ossession of a pistol or revolver by

a person to whom a license therefor has been issued." *See also Thompson*, 92 N.Y.2d at 959.

Since Plaintiffs are not subject to penalties under Penal Law § 265, the only possible injury they could suffer is through violating the terms of their license pursuant to Penal Laws §§ 400.00(15) and/or (17). However, even in that case, Plaintiffs' fears are entirely hypothetical. As detailed in State Defendant's moving memorandum of law, absent allegations of particular circumstances that support credible threats of prosecution — such as prior prosecution or prior threats of prosecution — there is no imminent injury and standing fails. *See* State Def's Mem. of Law 7-9; *see also Sibley v. Watches*, 501 F. Supp. 3d 210, 222 (W.D.N.Y. 2020) (quoting *Adam v. Barr*, 792 F. App'x 20, 22 (2019)) (finding for standing purposes that "an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."). Moreover, if the Court were to adopt Plaintiffs' "imminent injury" argument, then any person would have standing to challenge any existing criminal statute by alleging only that they intend to violate said statute. Adopting such a broad scope of standing negates any real showing of "imminent injury" and we ask the Court not to do so here.[6]

Finally, Plaintiffs' reliance on *Avitabile v. Beach*, 277 F. Supp. 3d 326 (N.D.N.Y. 2017), to find imminent injury is also misplaced. Unlike *Avitabile*, where a blanket and categorical ban on a particular weapon ("stun guns") was at issue, *see id.* at 408, there is no such ban here. Plaintiffs own and possess firearms and have legal mechanisms, through New York's firearm licensing laws, to carry them in public. As such, there is no ongoing "imminent harm" to a "legally protected interest" because the law already allows Plaintiffs to own and carry firearms. *See District of Columbia v. Heller*, 554 U.S. 570, 626 (2008) (there is no constitutional right to "carry any weapon

[6] Plaintiffs allege "injury-in-fact" based on a purported violation of a preexisting right to possess and carry fireams. (Pl. Opp. 4). Since Plaintiffs possess and can carry firearms, it is unknown where this supposed "injury-in-fact" exists.

whatsoever, in any manner whatsoever, and for whatever purpose"). Plaintiffs simply disagree with New York's legal mechanisms that deny them the ability to carry firearms in "any manner whatsoever," *Id.* at 626, (in this case, openly and in public) and further disagree with the limitations such mechanisms place on them. Either way, their disagreements with the current licensing laws do not rise to the level of a constitutional breach, and hypothetical fears of prosecution for violating the terms of their licenses do not rise to the level of "imminent injury."

**B. There is No Injury in Fact Traceable to Superintendent Bruen**

In their Opposition, Plaintiffs continue to claim a hypothetical injury arising from the enforcement of New York Penal Law. (Pl. Opp. 10, 11). As mentioned in State Def's motion and reiterated in Point II(A), any such connection between a purely hypothetical injury and Superintendent Bruen is entirely speculative. Plaintiffs have not shown any injury they complain of is fairly traceable to Superintendent Bruen and accordingly cannot establish a basic requirement for standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (for standing purposes, "there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.")(citation omitted).

To the extent Plaintiffs allege injury due to an inability to obtain an "open carry" license, Plaintiffs continue to fail to link that inability to Superintendent Bruen. Simply put, the reason Plaintiffs cannot openly carry firearms is due to an absence of such a provision in the firearm licensing scheme and not to any action or inaction by Superintendent Bruen. It is the licensing scheme itself that Plaintiffs are unhappy with, and the Courts have held that the Superintendent is not a proper party to actions challenging New York's firearms licensing scheme. *See Libertarian Party*, 970 F.3d at 116. As such, no such "injury" is fairly traceable to Superintendent Bruen.

**C. Superintendent Bruen Cannot Provide The Requested Relief**

In opposition, Plaintiffs claim that Superintendent Bruen, and those acting in concert with him, can grant them the relief they request if they are enjoined from enforcing certain provisions of the Penal Law which, in turn, would then supposedly grant Plaintiffs the ability to carry firearms openly throughout New York State, including New York City. He cannot. Superintendent Bruen cannot grant Plaintiffs the ultimate remedy they seek – to openly carry firearms. Nor can Superintendent Bruen address Plaintiffs' objections to the licensing scheme, or any particular decisions made by licensing officials. *See* Point III, *infra*.

To the extent Plaintiffs complain of the inability to obtain an "open carry" license, even assuming for the sake of argument that this was an injury to a "legally protected interest," the unavailability of open carry is not redressable by Superintendent Bruen. Neither Superintendent Bruen, nor any agents or entities "acting in concert" with him, can grant the relief that Plaintiffs seek – a change in New York's firearm licensing scheme and the ability to "open carry" a firearm in public. (*See generally*, State Def's Mem.of Law in Support of Motion to Dismiss).

**POINT III**

**SUPERINTENDENT BRUEN IS NOT A PROPER PARTY TO ENFORCEMENT CHALLENGES TO FIREARM LICENSING LAWS**

As described *supra*, Plaintiffs insist for the first time in their Opposition that they are only challenging provisions of the Penal Law that punish them for the "open carry" of handguns rather than the firearm licensing scheme's prohibition regarding the same. Plaintiffs claim that they only seek to declare that the sections of the Penal Law criminalizing unlicensed possession of firearms are unconstitutional, not the licensing scheme itself. (Pl. Opp. 12, 13). Accordingly, Plaintiffs conclude that Superintendent Bruen is a proper party because he enforces New York's Penal Law.

Plaintiffs' conclusions are incorrect. Superintendent Bruen is not a proper party to a suit which, on its face and at its core, challenges the constitutionality of a licensing scheme that is created by the legislature and administered by local licensing officers. *See, e.g., Libertarian Party,* 970 F.3d at 116; *Warden v. Pataki,* 35 F. Supp. 2d 354, 359 (S.D.N.Y. 1999) (noting that "the vast majority of courts to consider the issue have held . . . that a state official's duty to execute the laws is not enough by itself to make that official a proper party in a suit challenging a state statute"), *aff'd sub nom., Chan v. Pataki,* 201 F.3d 430 (2d Cir. 1999); *Sabin v. Nelson*, No. 12 Civ. 1373, 2014 WL 2945770, at *6 (N.D.N.Y. June 30, 2014) (same); *Gras v. Stevens*, 415 F. Supp. 1148, 1151-52 (S.D.N.Y. 1976) (three-judge court) (Friendly, J.) (same).

Likewise, as addressed in Point II *supra*, Plaintiffs' reliance on *Avitabile* to show Superintendent Bruen's involvement is entirely misplaced. *Avitabile* involved the Superintendent's enforcement of a categorical ban on particular weapons, making any carrying of the weapon illegal under the criminal enforcement provisions of Penal Law Article 265. Superintendent Bruen did not challenge his status as a party in that action. More significantly, there is no such categorical ban at issue here. Firearms are legal in New York State. In fact, New York has a longstanding and constitutional licensing scheme designating who is permitted to possess firearms and in what manner. *See Kachalsky*, 701 F.3d at 84-86; *see also* State Def's Opp. to Pls.' Mot. for Prelim. Inj. 5-9, ECF No. 23. Additionally, New York has Penal Laws which criminalize improper possession and use of firearms in violation of its licensing scheme. *Kachalsky*, 701 F.3d at 85. Those statutes specifically *do not* criminalize possession or use of firearms by valid license holders like Plaintiffs here – the exact opposite of the penal statutes at issue in *Avitabile*. Plaintiffs here can (and do) legally own, possess, and carry firearms according to New York's licensing scheme – they are simply unhappy that they are not allowed to carry

firearms in a specific manner. Therefore, Plaintiffs' real target is the licensing scheme itself, not the enforcement of certain penal laws directed at enforcing the licensing scheme.

Courts in this Circuit have expressly held that the Superintendent (as well as the Governor and Attorney General) are not proper parties to actions, like this one, challenging New York's firearms licensing scheme as unconstitutional. *Kachalsky*, 701 F.3d at 83, 84; s*ee also Libertarian Party*, 970 F.3d at 116 (Superintendent); *Aron v. Becker*, 48 F. Supp. 3d 347, 368-69 (N.D.N.Y. 2014) (Governor); *Osterweil v. Bartlett*, 819 F. Supp. 2d 72, 75 (N.D.N.Y. 2011) (Governor and Attorney General), *vacated on other grounds,* 738 F.3d 520 (2d Cir. 2013).

Accordingly, as stated *infra* and in Superintendent Bruen's opening brief, Plaintiffs claims against Superintendent Bruen should be dismissed because he is not a proper party.

## CONCLUSION

For the reasons set forth above, and in Defendant's initial moving papers, Superintendent Bruen's motion should be granted, and the case dismissed against him.

Dated: New York, New York
January 3, 2022

LETITIA JAMES
Attorney General
State of New York
*Attorney for Superintendent Bruen*

By: /s/ *Ian Ramage*
Ian Ramage
Neil Shevlin
Assistant Attorneys General
28 Liberty Street, 18th Floor
New York, New York 10005
(212) 416-8659/8561
Ian.Ramage@ag.ny.gov
Neil.Shevlin@ag.ny.gov