UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JASON FREY, BRIANNA FREY, JACK CHENG, and WILLIAM SAPPE,

                         Plaintiffs,

            v.

KEVIN P. BRUEN, Acting Superintendent of the New York State Police, in his official capacity, NEW YORK CITY, New York, and DERMOT SHEA, in his official capacity as NYPD Police Commissioner,

                         Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __2/22/2022__

21 CV 05334 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

      Plaintiffs Jason Frey, Brianna Frey, Jack Cheng, and William Sappe ("Plaintiffs") bring this action against New York City, the New York Police Department Police Commissioner (together the "City Defendants"), and the Acting Superintendent of the New York State Police (the "Superintendent," together "Defendants"), alleging various violations of the Second Amendment. (ECF No. 1.) Presently before the Court is Plaintiffs' motion for a preliminary injunction. (ECF No. 20.) For the following reasons, Plaintiffs' motion is DENIED.

## BACKGROUND

### I. New York State Firearms Laws

      New York State "maintains a general prohibition on the possession of 'firearms' absent a license." *Kachalsky v. County of Westchester*, 701 F.3d 81, 85 (2d Cir. 2012). New York Penal Law Section 400.00 contains "the exclusive statutory mechanism for the licensing of firearms in New York State." *Id.* (citing *O'Connor v. Scarpino*, 83 N.Y.2d 919, 920 (1994)). The New York Penal Laws also include misdemeanor and felony violations for the illegal carrying of firearms without a license. *See, e.g.*, N.Y. Penal Law §§ 265.01(1); 265.01-b; 265.03(3).

1

Under Section 400.00, a licensing officer can issue a firearm license "only after investigation and finding that all statements in a proper application for a license are true." N.Y. Penal Law § 400.00(1). The statute requires that an applicant (i) be at least 21 years of age; (ii) lack a history of crime and mental illness; (iii) be of good moral character; and (iv) be someone for "whom no good cause exists for the denial of the license." N.Y. Penal Law § 400.00(1)(a)-(d), (n). New York State residents may apply for "[a] license for a pistol or revolver" to "have and possess in [a] dwelling by a householder" or "have and carry concealed . . . by any person when proper cause exists for the issuance thereof." N.Y. Penal Law § 400.00(2). The Second Circuit has interpreted "proper cause" to include "carrying a handgun for target practice, hunting, or self-defense" and a licensing offer may restrict a license "to the purposes that justified the issuance." *Kachalsky,* 701 F.3d at 86 (citing *O'Connor*, 83 N.Y.2d at 921).

To establish the proper cause needed to obtain an unrestricted concealed carry license, the applicant must "demonstrate a special need for self-protection distinguishable from that of the general community or of persons engaged in the same profession." *Id*. (quoting *Klenosky v. N.Y City Police Dep't*, 75 A.D.2d 793, 793 (1st Dep't 1980)). This standard does not include "[a] generalized desire to carry a concealed weapon to protect one's person and property" or "living or being employed in a high crime area." *Id*. (internal quotation marks and citations omitted). If denied a license, an applicant may challenge the decision in New York State court under Article 78 of the New York Civil Practice Law and Rules. *Kachalsky*, 701 F.3d at 87.

Pursuant to Section 400.00(15), any violation of a provision of this section is a class A misdemeanor. N.Y. Penal Law § 400.00(15). New York State does not permit the open carry of handguns. *Kachalsky,* 701 F.3d at 86.

  II.    *New York City Firearms Laws*

2

New York City has its own regulatory licensing scheme. For New York City, an applicant must apply to the New York Police Department ("NYPD") License Division. 38 RCNY § 5-05. There are various types of handgun licenses issued by the NYPD. 38 RCNY § 5-01. One such license is a special license, which is issued to persons in possession of a valid New York State County License. 38 RCNY § 5-01(e). To be eligible for a carry or special license, an applicant must meet the requirements for a premises license, and must also show "proper cause" pursuant to Section 400.00(2)(f), which is "determined by a review of all relevant information bearing on the claimed need of the applicant for the license." 38 RCNY § 5-03.

If a license application is denied, the applicant may appeal to the Division Head, License Division. 38 RCNY § 5-07(e)-(f). If the appeal is denied, the applicant shall receive a "Notice of Disapproval After Appeal," which concludes the NYPD's administrative review procedure. 38 RCNY § 5-07(f).

### III. The Plaintiffs

Plaintiffs are residents of New York State who possess various kinds of New York State pistol licenses. (Compl. ¶¶ 92; 125; 164; 196.) Jason Frey was issued a New York State pistol license by Westchester County. (*Id.* ¶ 92.) The license is restricted to "sportsman" which means he may only carry it inside his home, to and from target shooting, and during sports activities. (*Id.* ¶¶ 93-94.) In 2019, Mr. Frey filed an application with Westchester to remove the restrictions from his license to allow unrestricted concealed carry for self-defense based on a physical and verbal attack in June of 2018. (*Id.* ¶¶ 95-96.) The application was denied, as he failed to meet the "proper cause" standard because his concern about being a potential target of violence was "entirely speculative." (*Id.* ¶¶ 97-100.) Mr. Frey did not file an Article 78 proceeding as it would be "futile." (*Id.* ¶ 102.) He seeks to carry his handgun both openly and concealed in New York State and New

3

York City without restriction and without having to demonstrate proper cause. (*Id*. ¶¶ 105-107.) He has never applied to the NYPD Licensing Division for a New York City license, as that would be "futile." (*Id*. ¶ 111.)

Brianna Frey was issued a New York State handgun license by Westchester County. (*Id*. ¶ 125.) The license is restricted to possession of her handguns inside of her home, to and from target shooting, and during sporting activities. (*Id*. ¶ 126.) In 2019, Mrs. Frey filed an application with Westchester to remove the restrictions from her license to allow unrestricted concealed carry based on a physical and verbal attack in June of 2018. (*Id*. ¶¶ 127; 131.) The application was denied, as she failed to meet the "proper cause" standard. (*Id*. at ¶¶ 128-130.) Mrs. Frey did not file an Article 78 proceeding as it would be "futile." (*Id*. ¶¶ 135-138.) She seeks to carry her handgun openly and concealed in New York State and New York City without restriction and without having to demonstrate proper cause. (*Id*. ¶¶ 139-144.) She has never applied to the NYPD Licensing Division for a New York City license, as that would be "futile." (*Id*. ¶ 153.)

Jack Cheng was issued a New York State handgun license by Nassau County. (*Id*. ¶ 164.) The license is restricted to possession of his handguns inside of his home, to and from target shooting activities, and while engaged in hunting during hunting season. (*Id*. ¶ 165.) The NYPD License Division issued him a concealed carry license related to his businesses in New York City over 15 years ago. (*Id*. ¶ 169.) The New York City license expired in 2019. (*Id*. ¶ 170.) Cheng submitted a recertification application in 2019, which was denied. (*Id*. ¶¶ 172-173.) In March of 2021, Cheng commenced an Article 78 proceeding in state court challenging the denial of the application, but his petition was denied. *See Cheng v. Shea*, Index No. 152437/2021, Kotler, J. (Sup. Ct. N.Y. Co. 2021). Cheng commenced a second proceeding seeking an order of mandamus compelling renewal of his license, which was also denied. *See Cheng v. Shea*, Index No.

154521/2021, Love, J. (Sup. Ct. N.Y. Co. 2021). Cheng seeks to carry his handgun openly in New York State and New York City without restriction and without having to demonstrate proper cause. (Compl. ¶¶ 175-176.)

William Sappe was issued a New York State handgun license by Orange County. (*Id.* ¶ 196.) The license is an unrestricted concealed carry handgun license. (*Id.*) In 2018, Sappe applied to the NYPD License Division for a New York City special carry license. (*Id.* ¶ 201.) The application was denied as he failed to establish "proper cause" and lacked good "moral character." (*Id.* ¶¶ 202-205.) Sappe challenged the denial of his application in an Article 78 proceeding in 2020. (*Id.* ¶ 212.) The court denied the petition based on "an unwillingness to abide by the law, a lack of candor towards lawful authorities, a lack of concern for the safety of oneself and/or other persons and/or for public safety, and/or other good cause for the denial of the license." (*Id.* ¶ 213.)[1] Sappe seeks to carry a firearm both openly and concealed in New York State and New York City without demonstrating proper cause. (*Id.* ¶¶ 214-217.)

Plaintiffs do not carry their handguns open and exposed in New York State, and Sappe does not carry his handgun concealed into New York City, out of fear of criminal prosecution, the revocation of their handgun licenses, the seizure of their firearms, and the forfeiture of their right to possess firearms in the future. (*Id.* ¶¶ 116; 147; 187; 228-229.) Each Plaintiff intends to violate the limitations of their handgun licenses. (*Id.* ¶¶ 106; 140; 176; 217.)

Plaintiffs initiated this action on June 16, 2021. (ECF No. 1.) On September 21, 2021, Plaintiffs filed a motion for a preliminary injunction. (ECF No. 20.) Both the Superintendent and

---

[1] While not discussed fully in this Opinion, the Court notes that neither Sappe nor Cheng brought constitutional challenges during their Article 78 proceedings, and therefore their claims are likely barred. *See Miller v. City of N.Y.*, No. 17 CV 4198 (RJD), 2019 WL 2164100, at *2 (May 10, 2019) (holding the plaintiff's Section 1983 claims were barred by res judicata as his "constitutional claims seeking declaratory relief" arose out of the "same transaction or series of transactions as those at issue in his Article 78 proceeding" and therefore could have been raised in his Article 78 proceeding).

the City Defendants filed oppositions.  (ECF Nos. 23 & 26.)  On February 1, 2022, the Court held oral argument.

## **LEGAL STANDARD**

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  A party seeking a preliminary injunction "must demonstrate that it will suffer irreparable harm absent injunctive relief and either (1) that it is likely to succeed on the merits of the action, or (2) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, provided that the balance of hardships tips decidedly in favor of the moving party."  *Mullins v. City of New York*, 626 F.3d 47, 52–53 (2d Cir. 2010) (citing *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 34–35 (2d Cir. 2010)).

Where "a party seeks an injunction that will affect governmental action taken in the public interest pursuant to a statutory or regulatory scheme, the plaintiff must typically show a likelihood of success on the merits—a serious question going to the merits is usually insufficient[.]" *Mullins*, 626 F.3d at 53.  However, where a party seeks a mandatory injunction "altering, rather than maintaining, the status quo," such as in this case, that party "must meet [a] more rigorous standard." *Almontaser v. N. Y. City Dep't of Educ.*, 519 F.3d 505, 508 (2d Cir. 2008) (internal alterations omitted); *see also Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 33 (2d Cir. 1995) ("[W]e have required the movant to meet a higher standard where . . . an injunction will alter, rather than maintain, the status quo . . . .").  The moving party must establish "a clear showing

that the moving party is entitled to the relief requested," or show that "extreme or very serious damage" would result in the absence of preliminary relief. *Tom Doherty Assocs.*, 60 F.3d at 34.

## DISCUSSION

Plaintiffs are requesting a preliminary injunction that will temporarily enjoin Defendants from enforcing Penal Law Sections 265.01(1), 265.01-b, 265.03(3), and 400.00(15) against those who (i) possess a valid New York State handgun license and who carry a handgun open and exposed on their person, and (ii) possess a valid unrestricted New York State concealed carry handgun license who carry a handgun concealed on their person within New York City. (Plaintiffs' Memorandum of Law in Support of Motion for Preliminary Injunction ("Mem.") ECF No. 20 at 2-3.) Defendants allege that Plaintiffs do not have standing to assert their claims and have failed to satisfy their burden for a preliminary injunction. The Court will first examine Plaintiffs' standing, and then will discuss the merits of Plaintiffs' injunctive request.

### I. Standing

The Supreme Court has called the doctrine of standing "perhaps the most important" of the case-or-controversy doctrines. *Allen v. Wright*, 468 U.S. 737, 750 (1984). The doctrine requires a plaintiff to have a "personal stake," in the outcome of the action. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). That is, a plaintiff must allege a "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen*, 468 U.S. at 751.

"[T]he 'irreducible constitutional minimum' of standing consists of three elements[:] [t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555,

560–61 (1992)).  The party seeking to invoke federal jurisdiction has the burden of establishing each element.  *Id.* at 561.

To have standing to seek injunctive relief, a plaintiff must establish a "real or immediate threat" of injury.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *see also Nicosia v. Amazon.com, Inc*., 834 F.3d 220, 239 (2d Cir. 2016) ("Plaintiffs lack standing to pursue injunctive relief where they are unable to establish a 'real or immediate threat' of injury.").  Mere "allegations of possible future injury are not sufficient"; the "injury must be certainly impending."  *Izquierdo v. Panera Bread Co.*, 450 F.Supp.3d 453, 460 (S.D.N.Y. 2020) (quoting *Daniel v. Tootsie Roll Indus., LLC*, No. 17 CIV. 7541 (NRB), 2018 WL 3650015, at *6 (S.D.N.Y. Aug. 1, 2018)).

    a.  *Injury in Fact*

The Superintendent first alleges that Plaintiffs have failed to show an injury in fact as they have failed to show a credible threat of imminent prosecution.  (State Defendant Superintendent Kevin P. Bruen's Memorandum of Law in Opposition to Plaintiffs' Motion for a Preliminary Injunction ("Superintendent Opp.") ECF No. 23 at 15-20.)  In response, Plaintiffs argue that they have demonstrated their intention to openly carry their handguns throughout New York State, which would create a credible threat of prosecution.  (Plaintiffs' Reply to State Defendant in Further Support of Motion for Preliminary Injunction ("Superintendent Reply") ECF No. 24 at 1.)

"[P]re-enforcement review is available where the 'circumstances . . . render the threatened enforcement sufficiently imminent'" which can be established "by plausible allegations that a plaintiff intends to engage in conduct proscribed by a statute, and 'there exists a credible threat of prosecution thereunder.'"  *Adam v. Barr*, 792 F. App'x 20, 21–22 (2d Cir. 2019) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159–60 (2014)).  A credible threat of prosecution cannot be "imaginary or speculative," *Knife Rights, Inc. v. Vance,* 802 F.3d 377, 384 (2d Cir. 2015)

(quoting *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298 (1979)), and it "will not be found where 'plaintiffs do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible.'" *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016) (citing *Knife Rights,* 802 F.3d at 377).

Here, Plaintiffs' Complaint alleges that they "intend[] to" carry their handguns on their person in public throughout the state. (Compl. ¶¶ 72; 106; 140; 144; 176; 178; 217.) In addition, the Freys signed sworn declarations that state they "intend to carry [their] handgun[s] on [their] person in public for all lawful purposes." (Declaration of Amy L. Bellantoni ("Bellantoni Decl.") ECF No. 22 at Ex. 1.) These allegations are insufficient.

First, Plaintiffs have not alleged concrete plans to violate the New York Penal Laws. While Plaintiffs state they "intend to" violate their license limitations, such "'some day' intentions— without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury" that is required. *Lujan,* 504 U.S. at 564; *see also San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1127 (9th Cir. 1996) (holding the plaintiffs' assertions that they "wish and intend to engage in activities prohibited" by the Crime Control Act, which prohibited the manufacture, transfer or possession of semiautomatic assault weapons, was insufficient to establish a genuine threat of imminent prosecution).

Second, Plaintiffs do not allege a credible threat of prosecution. Instead, Plaintiffs infer that because the Penal Laws exist, they will be prosecuted once they carry their firearms outside the confines of their licenses. A similar challenge was held to be insufficient in *Sibley v. Watches*, 501 F. Supp. 3d 210, 218 (W.D.N.Y. 2020). In *Sibley*, the plaintiff brought a challenge to the constitutionality of New York's law banning the possession of cane swords. *Id*. at 221 (citing

9

N.Y. Penal Law § 265.01(1)). The defendant moved to dismiss for lack of standing, which the Court granted. *Id*. at 222–23. The plaintiff lacked standing in part because he did not allege a credible threat of prosecution. *Id*. (citing *Adam*, 792 F. App'x at 22 ("the mere existence of a law prohibiting intended conduct does not automatically confer Article III standing")). The court held that his "assertion of standing rest[ed] on the mere existence" of the statute, and he did "not allege that the statute ha[d] been enforced against him in the past or that anyone threatened him with prosecution." *Id*. at 223. Similarly, here, Plaintiffs have not alleged any facts showing that they have been prosecuted in the past or have been threatened with enforcement of any of the statutes they are challenging. Therefore, they have failed to show an injury in fact sufficient for standing.

Plaintiffs aver that a credible threat of prosecution exists as the Superintendent has not stated the criminal statutes will not be enforced against Plaintiffs. (Superintendent Reply at 1-2.) However, the Superintendent is not required to make this disavowal, as he has not previously threatened or charged Plaintiffs under the relevant statutes. *See Cayuga Nation*, 824 F.3d at 331 (holding the plaintiffs demonstrated a credible threat of prosecution where the defendants previously announced their intention to enforce an ordinance against them, and previously warned plaintiffs that failure to comply may constitute an offense punishable by fine or imprisonment or both); *Knife Rights,* 802 F.3d at 386 (holding the plaintiffs' fear of being charged under the statute for criminal possession of a weapon was "not conjectural or hypothetical" as "[e]ach man ha[d] already been charged with a § 265.01(1) violation for carrying a common folding knife" and was "obliged to retain counsel to secure an adjournment in contemplation of dismissal").

In addition, the Superintendent argues that Plaintiffs lack standing to challenge New York Penal Law Sections 265.01(1), 265.01-b, 265.03(2), and 265.03(3) specifically because, as licensed firearm owners, they are exempted from these criminal penalties. (Superintendent Opp.

at 16-17.) Section 265.20(a)(3) explicitly states that these Sections "shall not apply" to "[p]ossession of a pistol or revolver by a person to whom a license therefor has been issued as provided under section 400.00 or 400.01[.]" N.Y. Penal Law § 265.20(a)(3). In addition, Section 400.00(17) states:

> [t]he provisions of article two hundred sixty-five of this chapter relating to illegal possession of a firearm, shall not apply to an offense which also constitutes a violation of this section by a person holding an otherwise valid license under the provisions of this section and such offense shall only be punishable as a class A misdemeanor pursuant to this section.

N.Y. Penal Law § 400.00(17). As each Plaintiff has been issued such a license, they do not and will not face criminal liability under Section 265.

Plaintiffs argue that they intend to carry their weapons openly, and open carry is not an exception to the criminal statutes because it is not within the scope of Section 400.00. (Superintendent Reply at 2.) The Court is not convinced. The plain language of the statute explicitly states that the relevant Sections will not apply to persons such as Plaintiffs. Instead, if Plaintiffs were to carry their weapons openly, they would at best be committing a violation of their handgun license restrictions, and subject to potential penalties under Section 400.00(15). Plaintiffs have failed to proffer any evidence indicating that they may be prosecuted specifically under Section 265 for openly carrying their weapons. Therefore, Plaintiffs have failed to show a credible threat of prosecution under Section 265, and therefore they also lack standing to assert their claims under these specific statutes.

Accordingly, Plaintiffs lack standing to bring their request for a preliminary injunction.[2]

**II.     Preliminary Injunction**

---

[2] The Superintendent's Opposition also argues that he is not a proper party to this case under the Eleventh Amendment. (Superintendent Opp. at 20-21.) The Court will reserve judgment on this argument as it is also raised in the Superintendent's motion to dismiss. (ECF No. 31.)

11

Even assuming, *arguendo*, that Plaintiffs have standing to bring this action and request a preliminary injunction, their request would still be denied.

    *a. Likelihood of Success on the Merits*

As discussed above, Plaintiffs are requesting a preliminary injunction that will temporarily enjoin Defendants from enforcing Penal Law Sections 265.01(1), 265.01-b, 265.03(3), and 400.00(15) against those who (i) possess a valid New York State handgun license and who carry a handgun open and exposed on their person, and (ii) possess a valid unrestricted New York State concealed carry handgun license who carry a handgun concealed on their person within New York City, as the enforcement of these statutes is an infringement on their Second Amendment rights. (Mem. at 2-3.)

Plaintiffs' argument focuses on three main Supreme Court cases that they contend provide an absolute right for law-abiding citizens to carry handguns in self-defense in non-sensitive areas. (*See* Mem. at 6-21.) First, the Supreme Court in *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008), held that the core of the Second Amendment is the "right of law-abiding, responsible citizens to use arms in defense of hearth and home." The *Heller* Court also held that the Second Amendment guarantees "the individual right to possess and carry weapons in case of confrontation." *Id*. at 592. Second, the Court in *McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010), incorporated the Second Amendment against the States through the Fourteenth Amendment, and reaffirmed the use of handguns "for the core lawful purpose of self-defense." Lastly, a concurrence opinion in *Caetano v. Massachusetts*, 577 U.S. 411, 416 (2016) (Alito, J., concurring), held that the right to bear arms includes the right to bear any weapon commonly used for self-defense. Plaintiffs argue that these decisions prevent any infringement of keeping and bearing handguns for self-defense. (Mem. at 14.)

However, Plaintiffs fail to fully acknowledge the limitations set by the Supreme Court in the same cases they cite to support their position. In *Heller*, the Court emphasized the "right secured by the Second Amendment is not unlimited" and is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." 554 U.S. at 626. The Court in *McDonald* reaffirmed the *Heller* Court's holding and stated that "incorporation does not imperil every law regulating firearms." 561 U.S. at 786. Further, the Second Circuit has interpreted these decisions as holding "Second Amendment guarantees are at their zenith *within the home*." *Kachalsky*, 701 F.3d at 89 (emphasis added).

Using *Heller* and *McDonald* as guidance, the Second Circuit developed a two-step approach to analyze alleged violations of the Second Amendment:

> First, we consider whether the restriction burdens conduct protected by the Second Amendment. If the challenged restriction does not implicate conduct within the scope of the Second Amendment, our analysis ends and the legislation stands. Otherwise, we move to the second step of our inquiry, in which we must determine and apply the appropriate level of scrutiny.

*New York State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 254 (2d Cir. 2015). For the first step, the Court analyzes "whether the challenged legislation impinges upon conduct protected by the Second Amendment," or weapons "in common use" and "typically possessed by law-abiding citizens for lawful purposes." *Id*. at 254–55 (citing *Heller*, 554 U.S. at 625; 627). For the second step, the Court utilizes two factors to determine the appropriate level of scrutiny: "(1) how close the law comes to the core of the Second Amendment right and (2) the severity of the law's burden on the right." *Id*. at 258 (citing *Ezell v. City of Chicago*, 651 F.3d 684, 703 (7th Cir. 2011)). If the challenged legislation does not implicate the core or substantially burden the right, then heightened scrutiny does not apply. *Id*. Using this approach, the Second Circuit has upheld New York's

proper cause requirement for concealed carry permits, *Kachalsky*, 701 F.3d at 89, and prohibition of certain semiautomatic assault weapons, *New York State Rifle & Pistol Ass'n,* 804 F.3d at 254.

While Plaintiffs aver that they are not challenging New York's licensing scheme[3], and try to distance their case from the *Kachalsky* holding by stating that no open carry challenge has ever been brought,[4] a close look at the core of their arguments betrays such assertions. In fact, Plaintiffs' arguments are similar to the arguments made by the plaintiffs in *Kachalsky*. Plaintiffs aver that banning the open carry of handguns is a *per se* violation of the Second Amendment because carrying a weapon for self-defense is "a guaranteed and fundamental right", and therefore it must be struck down without applying either level of scrutiny. (Mem. at 11; Superintendent Reply at 5.) Similarly, in *Kachalsky* the plaintiffs contended that "history and tradition demonstrate that there is a 'fundamental right' to carry handguns in public, and though a state may regulate open or concealed carrying of handguns, it cannot ban **both**." 701 F.3d at 89 (emphasis in original). In addressing the plaintiffs' challenge, the Second Circuit therefore evaluated New York's licensing scheme as a whole, including the inability to obtain a permit for open carry. *Id*. at 98 ("Restricting handgun possession in public to those who have a reason to possess the weapon for a lawful purpose is substantially related to New York's interests in public safety and crime prevention.").

Notably, the Second Circuit was not convinced by the plaintiffs' argument that their "desire for self-defense . . . is all the 'proper cause' required" to carry. *Id*. at 99. The Court discussed how the "extensive state regulation of handguns has never been considered incompatible with the

---

[3] "Plaintiffs are not challenging the State's licensing scheme. Plaintiffs are challenging the assured enforcement of criminal penalties against them if they exercise their guaranteed right to possess and carry weapons for self-defense." (Plaintiffs' Reply to Defendants New York City and Dermot Shea in Further Support of Motion for Preliminary Injunction ("City Defendants Reply") ECF No. 27 at 1.)

[4] City Defendants Reply at 3.

14

Second Amendment or, for that matter, the common-law right to self-defense. This includes significant restrictions on how handguns are carried, complete prohibitions on carrying the weapon in public, and even in some instances, prohibitions on purchasing handguns." *Id*. at 100. Consistent with the state's "considerable authority—enshrined within the Second Amendment— to regulate firearm possession in public," the court held that requiring proper cause, or a special need for self-protection, before granting a concealed carry license was "entirely consistent with the right to bear arms." *Id*. Here, Plaintiffs' request is in direct dispute with the *Kachalsky* holding, as it would effectively render most of the regulatory scheme in Section 400.00 redundant and inconsequential, including the proper cause requirement needed for unrestricted concealed carry upheld in *Kachalsky*.

Plaintiffs also aver this Court is bound to the *Heller* Court's refusal to adopt an "interest-balancing inquiry," and therefore no tier of scrutiny applies. (Superintendent Reply at 5; City Defendants Reply at 4-5.) However, as the Second Circuit has stated, "[t]here was no need in *Heller* to further define the scope of the Second Amendment or the standard of review for laws that burden Second Amendment rights" as "the [D.C.] handgun ban would be unconstitutional under any of the standards of scrutiny." *Kachalsky*, 701 F.3d at 88 (internal alterations omitted). Instead, "*Heller* was never meant 'to clarify the entire field' of Second Amendment jurisprudence" and therefore the Second Circuit found that it could adopt its two-step analysis to determine other Second Amendment challenges. *Id*. at 89 (citing *Heller*, 554 U.S. at 635). While Plaintiffs argue the Second Circuit's test has been "rejected by the Supreme Court" (Superintendent Reply at 7), this is incorrect. While the dissenting opinion in *Rogers v. Grewal*, described the *Kachalsky* test as the kind rejected by *Heller*, 140 S. Ct. 1865, 1866–67 (2020) (Thomas, J., dissenting), the

majority denied the petition of certiorari. As *Kachalsky* is still good law, and Second Circuit decisions are binding on this Court, the Plaintiffs' arguments fail.[5]

Plaintiffs heavily cite to *Wrenn v. District of Columbia*, 864 F.3d 650, 665 (D.D.C. 2017), to support their arguments. In *Wrenn*, the D.C. Circuit enjoined enforcement of the D.C. law that confined carrying a handgun in public to those who could show "good reason to fear injury to [their] person or property" or "any other proper reason for carrying a pistol." *Id*. at 655. The court held that under *Heller* "'complete prohibition[s]' of Second Amendment rights are always invalid" and "[i]t's appropriate to strike down such 'total ban[s]' without bothering to apply tiers of scrutiny because no such analysis could ever sanction obliterations of an enumerated constitutional right." *Id*. (citing *Heller*, 554 U.S. at 629). As the D.C. good-reason requirement consisted of a "total ban on most D.C. residents' right to carry a gun in the face of ordinary self-defense needs", the law was considered a complete prohibition and struck down. *Id*. at 666.

However, the Second Circuit has made clear that while the D.C. Circuit disagreed with its holding in *Kachalsky* and instead found that the *Heller* Court "favorably treated cases allowing bans on concealed carry only so long as open carry was allowed", *id. at* 662, it would affirm its prior holding. *New York State Rifle & Pistol Ass'n v. City of New York,* 883 F.3d 45, 56 n.5 (2d Cir. 2018) *vacated and remanded on other grounds,* 140 S. Ct. 1525, 206 L. Ed. 2d 798 (2020) ("We are aware that a divided panel of the Seventh Circuit and a divided panel of the District of Columbia Circuit have disagreed with *Kachalsky* . . . After giving careful and respectful attention to the reasoning of those opinions, we reaffirm our prior holding[.]); *see also New York State Rifle & Pistol Ass'n v. Beach,* 354 F. Supp. 3d 143, 148–49 (N.D.N.Y. 2018) (dismissing challenge to

---

[5] The Court's conclusions apply with equal force to Plaintiffs' challenge to New York City's firearms laws. *See Corbett v. City of N.Y.*, No. 18 Civ. 7022 (KPF), 2019 WL 2502056, at *8 (S.D.N.Y. June 17, 2019) (upholding New York City's proper cause requirement pursuant to *Kachalsky*).

16

New York's proper cause requirement after *Wrenn* was decided as the plaintiffs did not dispute that *Kachalsky* was binding and did "not advance[] any other factual allegations suggesting legally plausible claims.").

Therefore, based on established Supreme Court and Second Circuit precedent, Plaintiffs do not have a high likelihood of success on the merits.

### b. Irreparable Harm

"A showing of irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction.'" *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (citing *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)). "[T]o satisfy the irreparable harm requirement, [p]laintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Id.* (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)). The "mere possibility of irreparable harm is insufficient to justify the drastic remedy of a preliminary injunction." *Borey v. Nat'l Union Fire Ins. Co.*, 934 F.2d 30, 34 (2d Cir. 1991).

Here, Plaintiffs allege that they will be prosecuted criminally for openly carrying their handguns in public through New York State or in a concealed manner in New York City in the absence of the requested injunction, and that a constitutional violation constitutes irreparable harm. (Mem. at 22-23.) In response, Defendants argue that a presumption of irreparable harm only arises where a plaintiff has shown a likelihood of success on the merits of the constitutional claim. (Superintendent Opp. at 35; City Defendants Opp. at 24.)

"In the Second Circuit . . . [the] presumption of irreparable harm arising from a constitutional deprivation is not automatic." *Joglo Realties, Inc. v. Seggos*, 16-CV-1666

17

(ARR)(CLP), 2016 WL 4491409, at *16 (E.D.N.Y. Aug. 24, 2016). Instead, "[b]ecause the violation of a constitutional right is the irreparable harm asserted [], the two prongs of the preliminary injunction threshold merge into one" and "in order to show irreparable injury, plaintiff must show a likelihood of success on the merits." *Turley v. Giuliani*, 86 F. Supp. 2d 291, 295 (S.D.N.Y. 2000). As the Second Circuit has held that it is "more appropriate to determine irreparable injury by considering what adverse factual consequences the plaintiff apprehends if an injunction is not issued, and then considering whether the infliction of those consequences is likely to violate any of the plaintiff's rights," *Time Warner Cable v. Bloomberg L.P.*, 118 F.3d 917, 924 (2d Cir. 1997), the alleged violations of Plaintiffs' Second Amendment rights, by themselves, are not sufficient to show irreparable harm.

Further, as discussed above, Plaintiffs have failed to show a sufficient injury in fact for standing purposes. As this requirement is "akin conceptually to the showing of irreparable harm necessary for the issuance of an injunction", for the same reasons listed above, Plaintiffs have not shown an actual or imminent injury they will suffer if not granted the relief they seek. *Williams v. New York State Office of Mental Health*, No. 10-CV-1022 (SLT) (JO), 2011 WL 4529651, at *3 (E.D.N.Y. Sept. 28, 2011); *see also In re Navy Chaplaincy*, 534 F.3d 756, 766 (D.C. Cir. 2008) ("to show irreparable harm, 'a plaintiff must do more than merely allege . . . harm sufficient to establish standing.'") (quoting *Associated Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1410 (9th Cir. 1991)).

Accordingly, Plaintiffs have failed to demonstrate they will suffer irreparable harm without an injunction.

    c. *Balance of Hardships and Public Interest*

Lastly, Plaintiffs aver there is a public interest in preventing the violation of constitutional rights, and where a plaintiff establishes a likelihood that the challenged law violates the Constitution, he or she has also established that the public interest and balance of equities favor issuing an injunction.  (Mem. at 23.)  Defendants argue that Plaintiffs' purported injuries are substantially outweighed by New York's interest in protecting the public.  (City Defendants Opp. at 25; Superintendent Opp. at 38-39.)  New York's licensing requirements have existed since 1913 and have survived multiple challenges in New York and appellate courts.  *See, e.g., Kachalsky*, 701 F.3d at 85.  Upending this system and allowing New York residents to openly carry firearms without showing proper cause would be an extreme remedy which would require "a clear showing that the moving party is entitled to the relief requested" or that "extreme or very serious damage" would result."  *Tom Doherty Assocs.*, 60 F.3d at 34.  As Plaintiffs have failed to make this showing, the balance of hardships clearly tip in Defendants' favor.

Further, as the Second Circuit found in *Kachalsky*, "[t]here is a longstanding tradition of states regulating firearm possession and use in public because of the dangers posed to public safety."  701 F.3d at 94–95.  While Plaintiffs claim that they fear for their safety due to "the defunding of the New York Police Department" and "the rise of roving, armed gangs in New York City," (Compl. ¶¶ 115; 150; 181; 224), these conclusory claims fail to override the legislature's determination that providing access to additional firearms would pose an even greater danger.

Accordingly, both the balance of hardships and the public interest are securely in Defendants' favor.

**<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction is DENIED. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 20.

Dated: February 22, 2022                                                       SO ORDERED:
White Plains, New York

                                                                                         _____
                                                                                          NELSON S. ROMÁN
                                                                                United States District Judge