**MEMORANDUM ENDORSEMENT**

Frey et al. v. Bruen et al.,
7:21-cv-5334 (NSR)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/19/2022_____

The Court is in receipt of the attached Notice of Motion and Memorandum of Law in Support of Plaintiffs' Second Motion for a Preliminary Injunction, dated August 12, 2022.  The Court received two courtesy copies by mail on August 17, 2022.

Plaintiffs' Motion is DENIED without prejudice for failure to follow the Court's Individual Rules, which require parties to file a pre-motion letter setting forth the basis for their anticipated motion.  Plaintiffs are directed to file and serve their letter on or before August 23, 2022 and Defendants are directed to file and serve their response on or before August 27, 2022.

Dated: August 19, 2022
      White Plains, NY

SO ORDERED:

HON. NELSON S. ROMAN
UNITED STATES DISTRICT JUDGE



**BELLANTONI**
L A W   F I R M

August 15, 2022

Hon. Nelson S. Román
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601-4150

RECEIVED

AUG 1 7 2022

NELSON S. ROMÁN
U.S. DISTRICT JUDGE
S.D.N.Y.

      Re:    *Frey, et al. v. New York City, et al.*
             21 Civ. 05334 (NSR)

Your Honor,

      I represent the plaintiffs, Jason Frey, Brianna Frey, Jack Cheng, and William Sappe in the above-referenced matter.

      Enclosed please find a courtesy copy of Plaintiffs' Second Motion for a Preliminary Injunction.

Very truly yours,

Amy L. Bellantoni
Encl.

2 Overhill Road, Suite 400
Scarsdale, New York 10583

info@bellantoni-law.com
www.bellantoni-law.com

(914) 367-0090 (t)
(888) 763-9761 (f)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

JASON FREY, BRIANNA FREY,                                   Case No. 21 Civ. 5334 (NSR)
JACK CHENG, and WILLIAM SAPPE,

                                                Plaintiffs,

                  -against-                                 **NOTICE OF MOTION
                                                            FOR PRELIMINARY
KEVIN P. BRUEN, Acting Superintendent                       INJUNCTION**
of the New York State Police, in his official
capacity, NEW YORK CITY, New York,
and DERMOT SHEA, in his official capacity
as NYPD Police Commissioner,

                                                Defendants.
-----------------------------------------------------------------x

      **PLEASE TAKE NOTICE** that, upon the annexed Declaration of Amy L. Bellantoni

with annexed exhibits and accompanying Memorandum of Law, Plaintiffs Jason Frey, Brianna

Frey, Jack Cheng, and William Sappe, by the through their attorneys, The Bellantoni Law Firm,

PLLC, will move this Court at the United States District Court, Southern District of New York

located at 300 Quarropas Street, White Plains, New York on the 16th day of September, 2022 for

an order temporarily enjoining Defendants, their officers, agents, servants, and employees, all

other persons who are in active concert or participation with Defendants receiving actual notice of

such order by personal service or otherwise, from enforcing §§ 265.01(1), 265.01-b, 265.03(3),

and 400.00(15) against (i) Plaintiffs and those similarly situated individuals who possess a valid

NYS handgun license issued by a statutory licensing officer in New York State, who carry a

handgun, registered thereon, open and exposed on their person in New York State, including the

5 boroughs of New York City; and (ii) Plaintiffs and those similarly situated individuals who

possess a valid NYS handgun license issued by a statutory licensing officer in New York State,

who carry a handgun, registered thereon, concealed on their person throughout New York State,

1

including within the 5 boroughs of New York City; and such further and different relief as this Court deems just and proper.; and such further and different relief as this Court deems just and proper.

**PLEASE TAKE FURTHER NOTICE** that opposition papers submitted on behalf of the defendants shall be served on the undersigned via email at abell@bellantoni-law.com on or before September 9, 2022.

Dated: Scarsdale, New York
  August 12, 2022

         THE BELLANTONI LAW FIRM, PLLC
         *Attorneys for Plaintiffs*

    By:  _____/s/_____
        Amy L. Bellantoni (AB3061)
        2 Overhill Road, Suite 400
        Scarsdale, New York 10583
        (914) 367-0090 (t)
        (888) 763-9761 (f)
        abell@bellantoni-law.com

To:  Neil Shelvin
   Ian Ramage
   Office of the NYS Attorney General
   *Counsel for NY State Defendant*
   (VIA EMAIL 8/12/2022)

   Michelle Goldberg-Cahn
   New York Law Department
   *Counsel for NY City Defendants*
   (VIA EMAIL 8/12/2022)

2



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
JASON FREY, BRIANNA FREY,
JACK CHENG, and WILLIAM SAPPE,

                              Plaintiffs,

           -against-                         Case No. 21 Civ. 5334 (NSR)

KEVIN P. BRUEN, Acting Superintendent
of the New York State Police, in his official
capacity, NEW YORK CITY, New York,
and DERMOT SHEA, in his official capacity
as NYPD Police Commissioner,

                              Defendants.
-----------------------------------------------------------------x

# PLAINTIFFS' MEMORANDUM OF LAW
# IN SUPPORT OF SECOND MOTION FOR
# PRELIMINARY INJUNCTION

**THE BELLANTONI LAW FIRM, PLLC**
*Attorneys for Plaintiffs*
2 Overhill Road, Suite 400
Scarsdale, New York 10583
(914) 367-0090
abell@bellantoni-law.com

## TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ............................................................................................. i

PRELIMINARY STATEMENT ...................................................................................... 1

INTRODUCTION AND LEGAL FRAMEWORK ......................................................... 1

*Criminalization of a Guaranteed, Individual Right* ...................................................... 2

*Intrastate Geographical Restrictions on Concealed Carry* ........................................... 4

STATEMENT OF FACTS ............................................................................................... 4

*Concealed Carry in New York State* ............................................................................. 5

*Open Carry Throughout New York State and New York City* ...................................... 5

LEGAL ARGUMENT ..................................................................................................... 6

Preliminary Injunction Standard ..................................................................................... 6

I. PLAINTIFFS HAVE STANDING ............................................................................... 7

II. PLAINTIFFS HAVE A SUBSTANTIALLY HIGH LIKELIHOOD OF SUCCESS ............... 9

    A. The Statutes Cannot Pass the *Bruen* Test.......................................................... 9

    B. This Court Is Bound By the Supreme Court's Historical Analysis.............................. 13

    C. Banning Open Carry Presumptively Violates the Constitution ..................................... 13

III. PLAINTIFFS ARE SUFFERING AND WILL CONTINUE TO SUFFER
    IRREPARABLE HARM ........................................................................................ 14

IV. THE EQUITIES TIP IN PLAINTIFFS' FAVOR AND THE REQUESTED RELIEF
    SERVES THE PUBLIC INTEREST ...................................................................... 16

CONCLUSION.............................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arizona Dream Act Coalition,*
    757 F.3d 1053 (9th Cir. 2014) ................................................................................. 17

*Association of New Jersey Rifle and Pistol Clubs, Inc. v. Attorney General New Jersey,*
    910 F.3d 106 (3d Cir. 2018) ...................................................................................... 1

*Babbitt v. Farm Workers,*
    442 U.S. 289 (1979) ...................................................................................... 8, 14, 15

*Boss v. Kelly,*
    306 F. App'x 649 (2d Cir. 2009) ............................................................................ 12

*Carrillo v. Holder,*
    781 F.3d 1155 (9th Cir. 2015)781 F.3d 1155 (9th Cir. 2015) ................................. 10

*Cayuga Nation v. Tanner,*
    824 F.3d 321 (2d Cir. 2016) ........................................................................ 14, 15, 16

*Connecticut Dep't of Envtl. Prot. v. O.S.H.A.,*
    356 F.3d 226 (2d Cir. 2004) ................................................................................... 16

*Connecticut State Police Union v. Rovella,*
    494 F. Supp. 3d 210 (D. Conn. 2020) ..................................................................... 6, 7

*Corbett v. City of New York,*
    160 A.D.3d 415 (4th Dept. 2018) ............................................................................. 2

*District of Columbia v. Heller,*
    554 U.S. 570 (2008) .......................................................................... 2, 10, 14

*Drake v. Filko,*
    724 F.3d 426 (3d Cir. 2013) ..................................................................................... 2

*Duncan v. Becerra,*
    265 F. Supp. 3d 1106 (S.D. Cal. 2017) .................................................................... 17

*Faiveley Transp. Malmo AB v. Wabtec Corp.,*
    559 F.3d 110 (2d Cir.2009) .................................................................................... 14

*Gould v. Morgan,*
    907 F.3d 659 (5th Cir. 2018) ................................................................................... 2

i

# TABLE OF AUTHORITIES (con't)

**Page(s)**

**Cases**

*Harley v. Wilkinson,*
   988 F. 3d 766 (4th Cir. 2021) ............................................................................................. 1

*Hedges v. Obama,*
   724 F.3d 170 (2d Cir. 2013) ............................................................................................. 15

*Hobby Lobby Stores, Inc. v. Sebelius,*
   723 F.3d 1114 (10th Cir. 2013) ....................................................................................... 17

*Hutto v. Davis,*
   454 U.S. 370 (1984) ......................................................................................................... 13

*J.S.R. by & through J.S.G. v. Sessions,*
   330 F. Supp. 3d 731 (D. Conn. 2018) .............................................................................. 17

*Jolly v. Coughlin,*
   76 F.3d 468 (2d Cir. 1996) ............................................................................................... 16

*Kachalsky v. County of Westchester,*
   701 F.3d 81 (2d Cir. 2012) ................................................................................................. 2

*Kanter v. Barr,*
   919 F.3d 437 (7th Cir. 2019) .............................................................................................. 1

*Kelly v. Honeywell Int'l, Inc.,*
   933 F.3d 173 (2d Cir. 2019) ........................................................................................... 6, 7

*Kolbe v. Hogan,*
   849 F. 3d 114 (4th Cir.) ...................................................................................................... 1

*Libertarian Party of Erie County v. Cuomo,*
   970 F.3d 106 (2d Cir. 2020) ............................................................................................... 1

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) ............................................................................................................ 7

*MedImmune, Inc. v. Genentech, Inc.,*
   549 U.S. 118 (2007) ............................................................................................................ 8

*Ms. L. v. U.S Immigr. & Customs Enf't ("ICE,*
   310 F. Supp. 3d 1133 (S.D. Cal. 2018) ........................................................................... 17

ii

## TABLE OF AUTHORITIES (con't)

**Page(s)**

**Cases**

*National Rifle Ass'n of America, Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives,*
   700 F.3d 185 (5th Cir. 2012) ................................................................................................ 1

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
   142 S. Ct. 2111 (2022).............................................................................................*Passim*

*Oquendo v. City of New York,*
   492 F. Supp. 3d 20 (E.D.N.Y. 2020) .................................................................................. 12

*Payton v. New York,*
   445 U.S. 573 (1980) ........................................................................................................... 18

*People v. Parker,*
   52 N.Y.2d 935 (1981) ........................................................................................................... 8

*Peruta v. Cty. of San Diego,*
   742 F.3d 1144 (9th Cir. 2014), vacated, 781 F.3d 1155, 1156-63 (9th Cir. 2015).................. 10

*Peterson v. Martinez,*
   707 F.3d 1197 (10th Cir. 2013) ......................................................................................... 13

*Raines v. Byrd,*
   521 U.S. 811 (1997)............................................................................................................. 7

*Shuttlesworth v. City of Birmingham, Ala.,*
   394 U.S. 147 (1969) ........................................................................................................... 12

*Statharos v. New York City Taxi & Limousine Comm'n,*
   198 F.3d 317 (2d Cir. 1999) .............................................................................................. 16

*Staub v. City of Baxley,*
   355 U.S. 313 (1958) ........................................................................................................... 12

*Steffel v. Thompson,*
   415 U.S. 452 (1974) ............................................................................................................. 8

*Stormans, Inc. v. Selecky,*
   586 F.3d 1109 (9th Cir. 2009) ........................................................................................... 17

*Susan B. Anthony List v. Driehaus,*
   573 U.S. 149 (2014) ............................................................................................................. 8

# TABLE OF AUTHORITIES (con't)

**Page(s)**

**Cases**

*Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.,*
   460 U.S. 533 (1983) .................................................................................................. 13

*Trump v. Deutsche Bank AG,*
   943 F.3d 627 (2d Cir. 2019) .................................................................................. 6, 7

*U.S. S.E.C. v. Citigroup Global Mkts. Inc.,*
   673 F. 3d 158 (2d Cir. 2012) ................................................................................... 17

*U.S. v. Masciandaro,*
   638 F.3d 458 (4th Cir. 2011) ..................................................................................... 2

*Valenzuela Arias v. Decker,*
   2020 WL 1847986 (S.D.N.Y. Apr. 10, 2020) ........................................................ 16

*Worman v. Healey,*
   922 F.3d 26 (1st Cir. 2019) ........................................................................................ 1

*Wrenn v. D.C.,*
   864 F.3d 650, 665 (D.C. Cir. 2017) ................................................................... 10, 14

*Yang v. Kosinski,*
   960 F.3d 119 (2d Cir. 2020) ...................................................................................... 7

*Young v. Hawaii,*
   992 F.3d 765 (9th Cir. 2021) ...................................................................................... 2

*Younger v. Harris,*
   401 U.S. 37, 42 (1971) ............................................................................................. 15

**Statutes**

18 U.S.C. § 922(g) ......................................................................................................... 14

## PRELIMINARY STATEMENT

By this motion, Plaintiffs seek an order temporarily enjoining Defendants, their officers, agents, servants, and employees, all other persons who are in active concert or participation with Defendants receiving actual notice of such order by personal service or otherwise, from enforcing §§ 265.01(1), 265.01-b, 265.03(3), and 400.00(15) against (i) Plaintiffs and those similarly situated individuals who possess a valid NYS handgun license issued by a statutory licensing officer in New York State, who carry a handgun, registered thereon, open and exposed on their person in New York State, including the 5 boroughs of New York City; and (ii) Plaintiffs and those similarly situated individuals who possess a valid NYS handgun license issued by a statutory licensing officer in New York State, who carry a handgun, registered thereon, concealed on their person throughout New York State, including within the 5 boroughs of New York City; and such further and different relief as this Court deems just and proper.

## INTRODUCTION AND LEGAL FRAMEWORK

In *NYSRPA v. Bruen*, the Supreme Court reaffirmed that the right to carry firearms outside of the home is protected by the Second and Fourteenth Amendments. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).[1]

> "In this case, petitioners and respondents agree that ordinary, law-abiding citizens have a similar right to carry handguns publicly for their self-defense. We too agree, and now hold, consistent with *Heller* and *McDonald*, that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home."

*Bruen*, 142 S. Ct. at 2122.

---

[1] Abrogating *Harley v. Wilkinson*, 988 F. 3d 766, *Libertarian Party of Erie County v. Cuomo*, 970 F.3d 106, *Worman v. Healey*, 922 F.3d 26, *Kanter v. Barr*, 919 F.3d 437, *Association of New Jersey Rifle and Pistol Clubs, Inc. v. Attorney General New Jersey*, 910 F.3d 106, *Kolbe v. Hogan*, 849 F. 3d 114, *National Rifle Ass'n of America, Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 700 F.3d 185, and other cases.

1

***Criminalization of a Guaranteed, Individual Right***

Penal Law sections 265.01(1), 265.01-b, 265.03(2), 265.03(3) (the "265 Statutes") are a blanket ban on the possession of firearms.[2]

Only 2 types of licenses are authorized to be issued in New York: (1) on premises (home and business) or (2) *concealed* carry.[3][4] Penal Law § 400.00(2).

To the extent that a valid New York State pistol license provides a defense to the 265 Statutes, the only defense available would involve a fact pattern where the licensed defendant was carrying a handgun *concealed*. The existence of a distinction in the plain language of the statute authorizing concealed carry *only* and the blanket criminalization of firearm possession under the 265 statutes evinces the Legislature's intention to ban open carry. See also, *Corbett v. City of New York*, 160 A.D.3d 415, 415 (4th Dept. 2018) (recognizing New York State's "blanket ban on open carry" of handguns).

Similarly, where an individual who holds a valid *concealed* carry NYS license that is restricted by place / activity – i.e., target shooting, sportsman – and carries outside of their restriction, they face misdemeanor criminal penalties for violating the licensing statute[5] rather than a felony under the 265 Statutes.

On the other hand, open carry is banned in New York State. No defense is available to an individual charged under the 265 Statutes. New York's pistol licensing scheme solely authorizes

---

[2] In *Heller*, District of Columbia law banned handgun possession by making it a crime to carry an unregistered firearm and then prohibited the registration of handguns. *Heller*, 554 U.S. at 570. In New York, carrying a handgun without a license is a crime; and open carry is banned.

[3] Various sub-types of concealed carry licenses are set forth in § 400.00(2).

[4] New York's "proper cause" requirement for the issuance of a concealed carry license violates the Second and Fourteenth Amendments. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022) abrogating, *Young v. Hawaii*, 992 F.3d 765, *Gould v. Morgan*, 907 F.3d 659, *Drake v. Filko*, 724 F.3d 426, *Kachalsky v. County of Westchester*, 701 F.3d 81, *U.S. v. Masciandaro*, 638 F.3d 458.

[5] Any violation by any person of any provision of this section is a class A misdemeanor. § 400.00(15).

*concealed* carry; there is no open carry license available; and there is no defense/exclusion in Penal Law § 265.20[6] for individuals who carry *exposed* but have been issued a license to carry *concealed*.

The 265 Statutes are a blanket ban on the possession of firearms and, as such, are unconstitutional facially and as applied to Plaintiffs. Facially, because the challenged regulations criminalize the mere exercise of a guaranteed, pre-existing individual right. See, *Bruen*, supra. As applied, because even if the 265 Statutes have some application consistent with the Second Amendment, when applied to ordinary citizens with no prohibitors to the possession, purchase, transfer, or receipt of firearms, like Plaintiffs and most other New Yorkers, they prohibit the exercise of the rights protected by the Second and Fourteenth Amendments.

Alternatively, under Penal Law § 265.20, the "possession of a pistol or revolver by a person to whom a license has been issued under § 400.00" is an exemption to the 265 Statutes. In that instance, an individual holding a concealed carry license who carries a firearm open and exposed is still carrying outside of the restrictions of the *concealed carry* license, which is still a crime under § 400.00(15).

Under either scenario, the mere possession of firearms by ordinary citizens who have been issued a pistol license after being subject to, and passing, a background check, like Plaintiffs is a crime and subjects Plaintiffs, and other similarly situated people to arrest, prosecution, incarceration, fines, loss of property (firearms), and civil penalties, including the revocation of their pistol license.

New York's criminalization of conduct protected by the plain language of the Second Amendment violates the Second and Fourteenth Amendments to the U.S. Constitution and must be enjoined.

---

[6] An exemption to prosecution under chapter 265 includes, "Possession of a pistol or revolver by a person to whom a license therefor has been issued as provided under section 400.00."

***Intrastate Geographical Restrictions on Concealed Carry***

A concealed carry handgun license issued by a licensing officer outside of New York City is not valid within the 5 boroughs. Penal Law § 400.00(6) requires such licensees to obtain a *second* license from the NYPD Police Commissioner before exercising the right to carry a handgun in the 5 boroughs; possession of a firearm in New York City without the NYPD license is a violation of the licensing statute provisions and, therefore, a misdemeanor crime under § 400.00(15). Pistol licenses issued inside of New York City, however, are valid outside of New York City.

This geographical restriction on the intrastate carriage of handguns is arbitrary and bans individuals who have been subject to a background check and hold a valid New York State pistol license from carrying a weapon for self-defense when in New York City. Likewise, New York City's regulations, 38 RCNY 5, subjecting non-prohibited individuals who applied for and obtained a valid New York State pistol license outside of New York City, like Plaintiffs, to a *second* licensing process by the NYPD, also violates the Second and Fourteenth Amendments.

Without the requested relief, Plaintiffs will continue to suffer irreparable harm.

## STATEMENT OF FACTS

The relief sought herein[7] will affect the population of individuals who, like Plaintiffs, have submitted to New York State's statutory licensing scheme under Penal Law § 400.00, *et seq.*, passed the requisite background investigation, including a criminal and mental health background check, have been found fit to possess handguns, and hold a valid handgun license issued by a New York State statutory licensing officer[8].

---

[7] For purposes of the instant Preliminary Injunction motion, Plaintiffs are seeking only some of the relief sought in their Complaint.
[8] See, Penal Law § 265.00(10).

*Concealed Carry in New York State*

Plaintiffs Jason Frey, Brianna Frey, and Jack Cheng are New York residents who hold valid New York State pistol licenses restricted to either Sportsman (the Freys) or Target Shooting (Jack Cheng). The Freys aver that they presently carry a handgun concealed throughout the State of New York; Plaintiffs Cheng desires to but fears arrest criminal penalties under § 400.00(15), which makes it a misdemeanor to concealed carry outside of one's restriction.

*Concealed Carry in New York City*

The Freys and Mr. Cheng desire and intend to carry a handgun concealed when traveling to New York City (the "City") and are only deterred by fear of being prosecuted under § 400.00(15). Plaintiff William Sappe presently holds a valid full carry concealed handgun license issued by a statutory licensing officer in Orange County, New York; he desires and intends to carry his handgun concealed to and from the 5 boroughs of New York City where he works on a daily basis while armed with his handgun.

*Open Carry Throughout New York State and New York City*

Each Plaintiff has a present desire and intention to carry a firearm open and exposed for self-defense throughout New York State and New York City but does not out of fear of severe criminal penalties under 265.01(1), 265.01-b, 265.03(3), and 400.00(15) and related civil penalties.

All Plaintiffs seek to enjoin the enforcement of certain criminal statutes against them for the "mere possession" of their registered handguns in public, (i) carried open and holstered on their person; and (ii) carried concealed - throughout the State, including New York City. §§ 265.01(1), 265.01-b, 265.03(3), and 400.00(15). [See, Declarations of Jason Frey, Brianna Frey, Jack Cheng, and William Sappe submitted herewith].

No other pre-existing, individual right protected by the Constitution requires permission from the government before it can be exercised. Enforcing sections 265.01(1), 265.01-b, 265.03(3), and/or 400.00(15) against individuals who hold valid New York State pistol licenses for the "mere possession" of a firearm violates the Constitution.

Plaintiffs have standing, a substantial likelihood of succeeding on the merits of their claims and are suffering and will continue to suffer irreparable - and presumed - constitutional harm as a result of the challenged criminal statutes if the requested relief continues to be denied.

## LEGAL ARGUMENT

### Preliminary Injunction Standard

To obtain a preliminary injunction, a movant must show irreparable harm and meet either of two standards: (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of hardships tipping decidedly in the movant's favor." *Connecticut State Police Union v. Rovella*, 494 F. Supp. 3d 210, 218 (D. Conn. 2020) quoting, *Trump v. Deutsche Bank AG*, 943 F.3d 627, 635 (2d Cir. 2019), rev'd on other grounds, —— U.S. ——, 140 S.Ct. 2019, 207 L.Ed.2d 951 (2020); *Kelly v. Honeywell Int'l, Inc.*, 933 F.3d 173, 184 (2d Cir. 2019).

Generally, where a party seeks to enjoin "government action" taken pursuant to a statutory or regulatory scheme, an injunction should be granted only if the movant demonstrates a likelihood of success on the merits. *Ibid.* citing, *Deutsche Bank AG*, 943 F.3d at 635. This "exception" to the use of the serious-questions standard "reflects the idea that governmental policies implemented through legislation ... are entitled to a higher degree of deference and should not be enjoined lightly." *Id.* at 219. Rather, the likelihood-of-success standard is appropriate in a case "where the full play of the democratic process involving both the legislative and executive branches has

6

produced a policy in the name of the public interest embodied in a statute and implementing regulations." *Ibid.*

In addition to demonstrating a likelihood of success on the merits, the movant must show that enjoining government action would serve the public interest and that the balance of equities tips in the movant's favor. *Ibid.* citing, *Yang v. Kosinski*, 960 F.3d 119, 127 (2d Cir. 2020).

## I. PLAINTIFFS HAVE STANDING

Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy. The doctrine developed in our case law to ensure that federal courts do not exceed their authority as it has been traditionally understood. See id., at 820, 117 S.Ct. 2312. The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong.

The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted). An allegation of future injury may suffice if the threatened injury is "certainly impending," or there is a "substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citation omitted).

An actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging a law. *Id.* citing, *Steffel v. Thompson*, 415 U.S. 452, 459 (1974) ("[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights"); see also *MedImmune, Inc. v.*

*Genentech, Inc.*, 549 U.S. 118, 128–129 (2007) ("[W]here threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat").

Pre-enforcement challenges are appropriate under circumstances that render the threatened enforcement sufficiently imminent. A plaintiff satisfies the injury-in-fact requirement where he alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony*, 573 U.S. at 158–59 quoting, *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979).

Plaintiffs Jason and Brianna Frey aver that they are now risking arrest (and more) by carrying their handguns concealed throughout New York even though their pistol licenses remain restricted to sportsman. As such, they face the threat of arrest, prosecution, and other criminal and civil penalties under § 400.00(15). C.f., *People v. Parker*, 52 N.Y.2d 935 (1981).

Mr. Sappe holds an unrestricted full carry license and travels to New York City everyday where he transports large sums of money and diamonds; his intention and desire to carry a handgun open and to carry concealed is sincere and imminent. He simply does not want to be arrested, put in jail, and suffer all of the consequential criminal and civil penalties associated with exercising his pre-existing right to self-defense in New York City.

All Plaintiffs have a present desire and intend to open carry but fear being arrested, put in jail, losing their firearms, and having their pistol licenses revoked. Unlike an individual who is willing to continue handing out flyers in violation of a statute abridging the First Amendment, the consequences Plaintiffs face for going out and violating New York's gun laws are severe, will lead to the revocation of their discretionary pistol license, and the permanent confiscation of whatever

firearm they possessed at the time as "evidence of a crime", which they will not get back. It is nonsensical to posit that an individual who carries a handgun open and exposed on their person does not face a credible threat of arrest, incarceration, and other criminal and civil penalties. Unlike the guy on the corner handing out political literature, law enforcement would not simply issue a 'warning' or a 'ticket' to Plaintiffs for exercising their Second Amendment rights.

## II. PLAINTIFFS HAVE A SUBSTANTIALLY HIGH LIKELIHOOD OF SUCCESS

### A. The Statutes Cannot Pass the *Bruen* Test

Flatly rejecting the test applied in the Second Circuit, the Supreme Court laid out a clear path to determine the constitutionality of government regulations affecting the Second Amendment: "We reiterate that the standard for applying the Second Amendment is as follows:

> "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.
>
> The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'"

*Bruen*, at 2126. ("In sum, the Courts of Appeals' second step is inconsistent with *Heller*'s historical approach and its rejection of means-end scrutiny.") (citation omitted).

The Constitution presumptively protects Plaintiffs' conduct - carrying a handgun for self-defense.

Defendants now have an affirmative obligation to prove that the challenged statutes are "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, at 2126. "Only then may this Court conclude that Plaintiffs' conduct falls outside the Second Amendment's 'unqualified command.'" *Bruen*, at 2126-2127.

Defendants cannot meet their burden. There is no American historical tradition of imposing criminal sanctions for the open carriage of handgun, nor is there any tradition of requiring permission from the government, such as a license, *prior* to exercising the right to open carry. Historically, it was *concealed* carry, not open carry, that was subject to bans by the states.

The historical evidence from antebellum America demonstrates that the manner of public carry was subject to reasonable regulation, but none of these limitations on the right to bear arms operated to prevent law-abiding citizens with ordinary self-defense needs from carrying arms in public for that purpose. *Bruen*, 142 S. Ct. at 2120.

None of the challenged statues existed in Antebellum America, nor was the tradition at the time consistent therewith. The 265 Statutes were not enacted until the 20th Century and 38 RCNY 5 was enacted as recently as 2010. The Supreme Court's extensive historical analysis in *Heller*, *McDonald*, and *Bruen* reveals that "late-19th-century evidence cannot provide much insight into the meaning of the Second Amendment when it contradicts earlier evidence." *Bruen*, 142 S. Ct. at 2120 quoting, *Heller*, 554 U.S. at 614.[9]

"[Where] later history contradicts what the text says, the text controls. *Bruen*, 142 S. Ct. at 2137. Public carry restrictions, which did not arise until after the ratification of the Second Amendment, can be categorized into (i) Common-Law Offenses, which forbade "affray" or going armed "to the terror of the people" but did not impair the right of the general population to peaceable public carry; (ii) Statutory Prohibitions proscribed the *concealed* carry of pistols and other small weapons; and (iii) Surety Statutes, which required individuals to post a bond before

---

[9] "Indeed, the few nineteenth-century cases that upheld onerous limits on carrying against challenges under the Second Amendment or close analogues are sapped of authority by *Heller I* because each of them assumed that the Amendment was only about militias and not personal self-defense. So *Heller I* rejects their crucial premise. "And with these cases off the table, the remaining cases speak with one voice" on the Amendment's coverage of carrying as well as keeping arms. *Peruta*, 742 F.3d at 1174. Under *Heller I*'s treatment of these and earlier cases and commentaries, history matters, and here it favors the plaintiffs." *Wrenn*, 864 F.3d at 658, citing, *Peruta v. Cty. of San Diego*, 742 F.3d 1144, 1174 (9th Cir. 2014), vacated, 781 F.3d 1155, 1156-63 (9th Cir. 2015).

carrying weapons in public, but only if another person specifically show "reasonable cause to fear

an injury, or breach of the peace"; even then, if the accused proved a special need the fee could be

avoided. *Bruen*, 142 S. Ct. at 2120. "[N]one of these limitations on the right to bear arms operated

to prevent law-abiding citizens with ordinary self-defense needs from carrying arms in public for

that purpose." *Id.*

The constitutional right to bear arms in public for self-defense is not "a second-class right,

561 U.S. at 780 (plurality opinion). The exercise of other constitutional rights does not require

individuals to demonstrate to government officers some special need. The Second Amendment

right to carry arms in public for self-defense is no different. *Bruen*, 142 S.Ct. 2121.

In the first instance, there is no historical tradition of requiring a license – permission from

the government under a discretionary licensing scheme – before an individual was free to exercise

the right to keep and bear arms.

Second, together with the subjective and discretionary licensing scheme[10], the 265 Statutes

and § 400.00(15) constitute a prior restraint on the free exercise of rights protected by the plain

language of the Second Amendment. See, *Oquendo v. City of New York*, 492 F. Supp. 3d 20

(E.D.N.Y. 2020) ("Under New York law, it is well settled that the possession of a handgun license

is a privilege, not a right, which is subject to the broad discretion of the New York City Police

Commissioner.") quoting, *Boss v. Kelly*, 306 F. App'x 649, 650 (2d Cir. 2009) (citation omitted).

> "It is settled by a long line of recent decisions of this Court that an ordinance
> which, like this one, makes the peaceful enjoyment of freedoms which the
> Constitution guarantees contingent upon the uncontrolled will of an official—as
> by requiring a permit or license which may be granted or withheld in the
> discretion of such official—is an unconstitutional censorship or prior restraint
> upon the enjoyment of those freedoms. *Staub v. City of Baxley*, 355 U.S. 313,
> 322, 78 S.Ct. 277, 282, 2 L.Ed.2d 302. And our decisions have made clear that

---

[10] The discretionary and subjective factors of New York's licensing scheme to relating to eligibility, suspension, and revocation can be found in Penal Law § 400.00(b), (n); 400.00(11).

> a person faced with such an unconstitutional licensing law may ignore it and engage with impunity in the exercise of the right of free expression for which the law purports to require a license. The Constitution can hardly be thought to deny to one subjected to the restraints of such an ordinance the right to attack its constitutionality, because he has not yielded to its demands."

*Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147, 151 (1969) (quotation marks and footnote omitted). See also, *People of the State of California v. Diaz*, Sacramento Superior Court (July 27, 2022) (attached), sustaining the demurrer of a felony indictment for firearm possession because the state's criminal statutes, like New York's, are a blanket ban on firearm possession and the path to firearm licensure was – because of its discretionary licensing scheme (like New York's) – unconstitutional. ("According to *Shuttlesworth*, faced with an unconstitutional restriction, on his constitutional right, defendant was free to engage 'with impunity in the exercise of the right. ..'").

That said, Plaintiffs have subjected themselves to the State's licensing scheme, passed a criminal and mental health background check, were issued and continue to hold valid pistol licenses, and have held such licenses without incident since their issuance.

There is no historical support for subjecting ordinary citizens to criminal penalties for the mere possession of a handgun – particularly for open carry – and Defendants will be unable to point to any such longstanding tradition.

The same goes for arbitrarily restricting firearm possession within New York State based on population density or requiring 'permission' to travel armed from state to another – let alone within the same state as New York does, irrespective of any means-end, public safety arguments. Only history and tradition – not public safety, means-end, or interest-balancing – can establish the constitutionality of a government regulation. See, *Bruen*, 142 S.Ct. at 2133-2134.

**B. This Court Is Bound By the Supreme Court's Historical Analysis**

Federal district courts and circuit courts are bound to adhere to the controlling decisions of the Supreme Court. Justice Rehnquist emphasized the importance of precedent when he observed that "unless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be." *Hutto v. Davis*, 454 U.S. 370, 375 (1984); *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533 (1983) (the Supreme Court, in a per curiam decision, stated: "Needless to say, only this Court may overrule one of its precedents.").

To the extent that the argument is made that the extensive historical analysis conducted by the Supreme Court's in *Bruen*, *Heller*, *McDonald*, and *Caetano* is mere 'dicta,' the inferior federal courts "are bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements." *Peterson v. Martinez*, 707 F.3d 1197, 1210 (10th Cir. 2013).

**C. Banning Open Carry Presumptively Violates the Constitution**

"Under *Heller I*, "complete prohibition[s]" of Second Amendment rights are always invalid. It's appropriate to strike down such "total ban[s]" without bothering to apply tiers of scrutiny because no such analysis could ever sanction obliterations of an enumerated constitutional right. With this categorical approach to such bans, *Heller I* ensured that judicial tests for implementing gun rights would not be misused to swallow those rights whole. *Wrenn v. D.C.*, 864 F.3d 650, 665 (D.C. Cir. 2017) citing, *Heller*, 554 U.S. at 629.

The *Wrenn* court prophetically posited: "*Heller* reveals this much at least: the Second Amendment erects some absolute barriers that no gun law may breach. This lesson will prove

crucial as we consider the challenges presented in these cases to the District of Columbia's limits on carrying guns in public." *Wrenn*, 864 F.3d at 655.

There is no Founding Era support for criminalizing the possession or carrying firearms for self-defense. Even federal statutes enumerate the events and conditions that constitute disqualifiers to the unlawful possession, purchase, receipt, and transfer of firearms. See, e.g., 18 U.S.C. § 922(g).

## III. PLAINTIFFS ARE SUFFERING AND WILL CONTINUE TO SUFFER IRREPARABLE HARM

Irreparable harm is the single most important prerequisite to the Court's issuance of preliminary injunctive relief. *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir.2009).

The Second Circuit has held that when a plaintiff alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016). The standard established in *Babbitt*[11] "sets a low threshold and is quite forgiving to plaintiffs seeking such preenforcement review," as courts are generally "willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund." *Cayuga Nation*, 824 F.3d at 331.

"Persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs...When plaintiffs 'do not claim that they have ever been threatened with prosecution, that a prosecution is likely, **or** even that a

---

[11] *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298, 99 S. Ct. 2301, 2309, 60 L. Ed. 2d 895 (1979).

prosecution is remotely possible, they do not allege a dispute susceptible to resolution by a federal court'." *Babbitt*, 442 U.S. 289, 298-99 quoting, *Younger v. Harris*, 401 U.S. 37, 42 (1971).

Under *Babbitt*, actually being threatened with prosecution is not a requirement. It is sufficient for a plaintiff to allege "that prosecution is likely." The complaint contains alleges that Plaintiffs are subject to the criminal and civil penalties and their Declarations submitted herewith aver risk of imminent arrest, prosecution, incarceration and other criminal and civil penalties for exercising their rights. See. *Babbitt*, 442 U.S. at 302 (responding to Appellant's argument that the criminal penalty provision has not yet been applied and may never be applied, "when fear of criminal prosecution under an allegedly unconstitutional statute is not imaginary or wholly speculative a plaintiff need not first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute.").[12]

"In the Second Circuit, it is well-settled that an alleged constitutional violation constitutes irreparable harm." *Valenzuela Arias v. Decker*, No. 20 CIV. 2802 (AT), 2020 WL 1847986, at *5 (S.D.N.Y. Apr. 10, 2020) citing, *Connecticut Dep't of Envtl. Prot. v. O.S.H.A.*, 356 F.3d 226, 231 (2d Cir. 2004); *Statharos v. New York City Taxi & Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999) (no separate showing of irreparable harm is necessary); *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996) ("[I]t is the alleged violation of a constitutional right that triggers a finding of irreparable harm.") (emphasis supplied).

---

[12] In numerous preenforcement cases where the Supreme Court has found standing on a showing that a statute indisputably proscribed the conduct at issue, it did not place the burden on the plaintiff to show an intent by the government to enforce the law against it. Rather, it presumed such intent in the absence of a disavowal by the government or another reason to conclude that no such intent existed. *Hedges v. Obama*, 724 F.3d 170, 197 (2d Cir. 2013). In *Vermont Right to Life and Pacific Capital Bank*, the Second Circuit suggested "that a plaintiff has standing when it may legitimately fear that it will face enforcement under its reasonable interpretation of the statute and (2) the Supreme Court's recognition that a preenforcement challenge is justiciable when enforcement is a realistic danger when there is a "credible threat of prosecution," or when a plaintiff has an "actual and well-founded fear" of such enforcement....neither this Court nor the Supreme Court has required much to establish this final step in challenges to ordinary criminal or civil punitive statutes. Rather, we have presumed that the government will enforce the law. *Id.* at 199–200.

Plaintiffs have alleged an intention to engage in a course of conduct implicating a constitutional right but proscribed by a criminal statute and there exists a credible threat of prosecution thereunder. Plaintiffs should not be required to await and undergo a criminal prosecution as the sole means of seeking relief. See, *Cayuga Nation*, supra.

Plaintiffs' sworn Declarations submitted in support of this motion aver that they intend to carry a handgun in a concealed manner outside of the restrictions of their pistol license throughout New York State and in New York City. Plaintiffs' Declarations further aver that they intend to open carry throughout the state, including the City. Even if Plaintiffs are not arrested or charged under the 265 Statutes for carrying concealed, they risk criminal arrest, incarceration, and other criminal and civil penalties under § 400.00(15), which is a misdemeanor crime.

Similarly, there is no license available for open carry, exposing Plaintiffs to arrest and prosecution under the 265 Statutes for carrying open and exposed throughout New York, including the City. Nevertheless, Plaintiffs are still exposed to arrest, incarceration, and other criminal and civil penalties under §400.00(15) – a misdemeanor offense.

The constitutional violations in question are causing non-compensable damages – a complete bar to the exercise of the right to carry a weapon for self-defense. The threat of criminal and civil penalties imposed on Plaintiffs – arrest, incarceration, permanent loss of property, fines, loss of Second Amendment rights – for the mere exercise of that right constitutes irreparable harm.

## IV. THE EQUITIES TIP IN PLAINTIFFS' FAVOR AND THE REQUESTED RELIEF SERVES THE PUBLIC INTEREST

"The public interest favors the exercise of Second Amendment rights by law-abiding responsible citizens. And it is always in the public interest to prevent the violation of a person's constitutional rights. *Duncan v. Becerra*, 265 F. Supp. 3d 1106, 1136 (S.D. Cal. 2017), aff'd, 742 F. App'x 218 (9th Cir. 2018) (granting preliminary injunction of California's magazine ban statute)

citing, *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013), *aff'd sub nom.*, *Burwell v. Hobby Lobby Stores, Inc.*, —— U.S. ——, 134 S.Ct. 2751, 189 L.Ed.2d 675 (2014).

When the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009) (internal quotations omitted).

A preliminary injunction is "in the public interest" if the preliminary injunction would not "cause harm to the public interest." *U.S. S.E.C. v. Citigroup Global Mkts. Inc.*, 673 F. 3d 158, 163 n.1 (2d Cir. 2012). "As with irreparable injury, when a plaintiff establishes 'a likelihood that Defendants' policy violates the U.S. Constitution, Plaintiffs have also established that both the public interest and the balance of the equities favor a preliminary injunction.'" *J.S.R. by & through J.S.G. v. Sessions*, 330 F. Supp. 3d 731, 743 (D. Conn. 2018) citing, *Ms. L. v. U.S Immigr. & Customs Enf't* ("ICE"), 310 F. Supp. 3d 1133, 1146 (S.D. Cal. 2018), modified, 330 F.R.D. 284 (S.D. Cal. 2019), and enforcement granted in part, denied in part *sub nom. Ms. L. v. U.S. Immigr. & Customs Enf't*, 415 F. Supp. 3d 980 (S.D. Cal. 2020) quoting, *Arizona Dream Act Coalition*, 757 F.3d 1053, 1069 (9th Cir. 2014) (balance of equities favors preventing the violation of a party's constitutional rights).

> "A longstanding, widespread practice is not immune from constitutional scrutiny."

*Payton v. New York*, 445 U.S. 573, 600 (1980).

This is particularly true for restrictions, like New York's open carry ban, which eviscerate the plain meaning of the Second Amendment. New York's ban on the free exercise of the right to open carry a handgun must be enjoined.

There is strong public interest in enjoining the state's open carry ban because New York's licensing scheme is still discretionary[13] fails to recognize or allow *any right* to bear arms in public for self-defense. Granting the requested relief will serve the public interest because the general population of non-prohibited New York residents have a vested interest in the free exercise of their civil rights. The right to open carry is a longstanding practice, supported by American history and the plain language of the Second Amendment. Enjoining New York's enforcement of criminal statutes against licensed handgun owners who merely exercise a protected constitutional right greatly serves the public interest - the Bill of Rights is for the protection of that very public - "the People."

## CONCLUSION

Based on the foregoing, along with the Declarations and Exhibits submitted herewith, Plaintiffs seek an order temporarily enjoining Defendants, their officers, agents, servants, and employees, all other persons who are in active concert or participation with Defendants receiving actual notice of such order by personal service or otherwise, from enforcing Penal Law sections 265.01(1), 265.01-b, 265.03(3), and 400.00(15) against (i) Plaintiffs and those similarly situated individuals who possess a valid NYS handgun license issued by a statutory licensing officer in New York State, who carry a handgun, registered thereon, open and exposed on their person in New York State, including the 5 boroughs of New York City; and (ii) Plaintiffs and those similarly situated individuals who possess a valid NYS handgun license issued by a statutory licensing officer in New York State, who carry a handgun, registered thereon, concealed on their person throughout New York State, including within the 5 boroughs of New York City; and such

---

[13] See, § 400.00(11), which allows for the revocation of a pistol license for any reason that would prevent the issuance of a license in the first instance under § 400.00(1) - § 400.00(1)(b) ["moral character"] and (n) ["any good reason"] are purely subjective and discretionary factors.

18

further and different relief as this Court deems just, equitable, and proper.

Dated: August 12, 2022
      Scarsdale, New York

                        THE BELLANTONI LAW FIRM, PLLC
                        *Attorneys for Plaintiffs*

By:     *Amy L. Bellantoni*
                        Amy L. Bellantoni (AB3061)
                        2 Overhill Road, Suite 400
                        Scarsdale, New York 10583
                        (914) 367-0090 (t)
                        (888) 763-9761 (f)
                        abell@bellantoni-law.com

19