UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
JASON FREY, BRIANNA FREY,                           Case No. 21 Civ. 05334 (NSR)
JACK CHENG, and WILLIAM SAPPE,

                            Plaintiffs,

       -against-

NEW YORK CITY, New York, STEVEN NIGRELLI,
in his Official Capacity, KEECHANT SEWELL,
in her Official Capacity,
                            Defendants.
----------------------------------------------------------------x

# PLAINTIFFS' MEMORANDUM OF LAW
# PURSUANT TO Fed. R. App. P. 8(A)
# FOR AN INJUNCTION PENDING APPEAL

**THE BELLANTONI LAW FIRM, PLLC**
*Attorneys for Plaintiffs*
**2 Overhill Road, Suite 400
Scarsdale, New York 10583
(914) 367-0090
abell@bellantoni-law.com**

## TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ...................................................................................................i

PRELIMINARY STATEMENT ........................................................................................... 1

LEGAL STANDARD............................................................................................................ 1

MATERIAL FACTS ............................................................................................................. 2

LEGAL ARGUMENT ........................................................................................................... 5

I. PLAINTIFFS HAVE STANDING ................................................................................... 5

II.  PLAINTIFFS HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCCESS............................ 8

III.  PLAINTIFFS ARE SUFFERING IRREPARABLE HARM ................................................ 11

IV. THE EQUITIES TIP IN PLAINTIFFS' FAVOR AND THE REQUESTED RELIEF SERVES THE PUBLIC INTEREST................................................................................. 13

IV. CONCLUSION............................................................................................................. 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adam v. Barr*,
  792 F. App'x 20 (2d Cir. 2019) .................................................................................................. 6

*Agudath Israel of Am. v. Cuomo*,
  979 F.3d 177 (2d Cir. 2020) ....................................................................................................... 1

*Arizona Dream Act Coalition*,
  757 F.3d 1053 (9th Cir. 2014) .................................................................................................. 14

*Babbitt v. Farm Workers*,
  442 U.S. 289 (1979) ............................................................................................................. 5, 11

*Cayuga Nation v. Tanner*,
  824 F.3d 321 (2d Cir. 2016) ........................................................................................... 6, 11, 13

*Connecticut Dep't of Envtl. Prot. v. O.S.H.A.*,
  356 F.3d 226 (2d Cir. 2004) ..................................................................................................... 12

*Connecticut State Police Union v. Rovella*,
  494 F. Supp. 3d 210 (D. Conn. 2020) ..................................................................................... 2, 5

*Crawford v. Washington*,
  541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) .............................................................. 8

*Davis v. Federal Election Comm'n*,
  554 U.S. 724 (2008) ................................................................................................................ 2, 5

*D.C. v. Heller*,
  554 U.S. 570 (2008) ................................................................................................................. 13

*Duncan v. Bonta*,
  265 F Supp 3d 1106 ..................................................................................................... 12, 14, 15

*Ezell v City of Chicago*,
  651 F3d 684 (7th Cir 2011) ...................................................................................................... 13

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
  559 F.3d 110 (2d Cir.2009) ...................................................................................................... 11

*Grace v. District of Columbia*,
  187 F. Supp. 3d 124 (DDC 2016) ............................................................................................ 12

*Hedges v. Obama*,
  724 F.3d 170 (2d Cir. 2013) ...................................................................................................... 12

*Hobby Lobby Stores, Inc. v. Sebelius*,
  723 F.3d 1114 (10th Cir. 2013) ................................................................................................. 15

*J.S.R. by & through J.S.G. v. Sessions*,
  330 F. Supp. 3d 731 (D. Conn. 2018)......................................................................................... 13

*Jolly v. Coughlin*,
  76 F.3d 468 (2d Cir. 1996) ........................................................................................................ 12

*Kelly v. Honeywell Int'l, Inc.*,
  933 F.3d 173 (2d Cir. 2019) ................................................................................................... 2, 5

*McDonald v. City of Chicago, Ill.*,
  561 U.S. 742 (2010) ........................................................................................................... 10, 14

*Ms. L. v. U.S Immigr. & Customs Enf't ("ICE")*,
  310 F. Supp. 3d 1133 (S.D. Cal. 2018) ..................................................................................... 13

*Nat'l Org. for Marriage, Inc. v. Walsh*,
  714 F.3d 682 (2d Cir. 2013) ........................................................................................................ 6

*Nevada Comm'n on Ethics v. Carrigan*,
  564 U.S. 117, 131 S.Ct. 2343, 180 L.Ed.2d 150 (2011).............................................................. 9

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
  142 S. Ct. 2111 (2022)........................................................................................................... 2, 11

*Payton v. New York*,
  445 U.S. 573 (1980) .................................................................................................................. 14

*Picard v. Magliano*,
  42 F.4th 89 (2d Cir. 2022) ....................................................................................................... 6, 7

*Statharos v. New York City Taxi & Limousine Comm'n*,
  198 F.3d 317 (2d Cir. 1999) ...................................................................................................... 12

*Susan B. Anthony List v. Dreihaus*,
  573 U.S. 149 (2014). ................................................................................................................... 5

*Trump v. Deutsche Bank AG*,
  943 F.3d 627 (2d Cir. 2019) ................................................................................................... 2, 5

*U.S. S.E.C. v. Citigroup Global Mkts. Inc.*,
  673 F. 3d 158 (2d Cir. 2012) ............................................................................................... 13

*Valenzuela Arias v. Decker*,
  2020 WL 1847986 (S.D.N.Y. Apr. 10, 2020) ..................................................................... 12

*Virginia v. Moore*,
  553 U.S. 164 (2008) ............................................................................................................. 9

### Rules

Federal Rule of Appellate Procedure 8(A) ................................................................................ 15
Federal Rule of Appellate Procedure 8(A)(1) ............................................................................. 1

### Other Authorities

NYC Admin. Code 10-315 .......................................................................................................... 1

**PRELIMINARY STATEMENT**

Plaintiffs Jason Frey, Brianna Frey, and William Sappe move this Court, as required by Federal Rule of Appellate Procedure 8(A)(1), for an Order granting the requested injunctive relief during the pendency of the interlocutory appeal of this Court's Opinion and Order dated March 13, 2023 denying Plaintiff's motion for a Preliminary Injunction [ECF No. 80] in the Second Circuit Court of Appeals.

By this motion, Plaintiffs seek to enjoin Defendants from enforcing Penal Law sections 400.00(6), 400.00(15), 265.01, 265.01-b, 265.01-d, 265.01-e, 265.03(3), and NYC Admin. Code 10-315 and the NYPD Rules promulgated thereunder against: (1) individuals who hold a valid handgun license issued by a New York State licensing officer and carry a handgun open and exposed (holstered) on their person; (2) individuals who hold a valid handgun license issued by a New York State licensing officer[1] and carry a handgun concealed; and for such further and different relief as this Court deems just and proper.

**LEGAL STANDARD**

Federal Rule of Appellate Practice 8(a)(1) requires that a party seeking an injunction pending appeal first move in the district court for an order granting an injunction while an appeal is pending.

On March 16, 2023, Plaintiffs filed a Notice of Appeal of this Court's Opinion and Order dated March 13, 2023, which denied Plaintiff's motion for a Preliminary Injunction [ECF No. 80]. Because Plaintiffs will be seeking an injunction from the Second Circuit pending the interlocutory appeal, this motion is required to satisfy FRAP (8)(a)(1), unless the application to this Court would be impracticable or futile. *Agudath Israel of Am. v. Cuomo*, 979 F.3d 177, 179 (2d Cir. 2020).

---

[1] As defined in Penal Law § 265.00(10).

1

To obtain a preliminary injunction, a movant must show irreparable harm and meet either of two standards: (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of hardships tipping decidedly in the movant's favor." *Connecticut State Police Union v. Rovella*, 494 F. Supp. 3d 210, 218 (D. Conn. 2020) quoting, *Trump v. Deutsche Bank AG*, 943 F.3d 627, 635 (2d Cir. 2019), rev'd on other grounds, —— U.S. ——, 140 S.Ct. 2019 (2020); *Kelly v. Honeywell Int'l, Inc.*, 933 F.3d 173, 184 (2d Cir. 2019).

Only one plaintiff need have standing to seek each form of relief requested in the complaint. *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008).

## MATERIAL FACTS

Each Plaintiff holds a New York State concealed carry handgun license issued by a judicial licensing officer outside of New York City. Having been deemed by New York State to be fit and eligible to possess handguns, Plaintiffs seek to enjoin the enforcement of criminal penalties for merely engaging in conduct presumptively protected by the plain text of the Second Amendment – "carrying handguns publicly for self-defense." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2134 (2022).

Jason Frey "regularly carr[ies] a handgun concealed on [his] person in public" [Dec. J. Frey at ¶14] and he intends to continue carrying his licensed handgun outside of his 'sportsman' carry restriction, during his everyday life for self-protection [¶14], including locations that are 'sensitive' and 'restricted' in violation of the CCIA. Mr. Frey carries while "shopping at the Jefferson Valley Mall and Acme in Yorktown and to Shop Rite and Walmart in the Cortlandt Town Center", at restaurants "that are also subject to the alcohol beverage control laws, including Primavera Restaurant in Croton Falls, BLT Steakhouse in White Plains, Antonella's on Route 9 in Fishkill,

2

La Famiglia in Carmel and other restaurants", businesses that do not "have 'conspicuous signage' granting [him] permission to exercise [his] right to be armed for self-defense" [¶14], when he goes to the "Regal Cinemas in the Cortlandt Town Center." [¶15]. Mr. Frey will not "seek permission" or refrain from carrying because there is no 'conspicuous signage' granting permission to carry. [¶16]. The NYSP have a barracks in the Cortlandt Town Center and it is "very likely" that a trooper could observe a bulge from Mr. Frey's firearm while he is shopping at the Cortlandt Town Center or walking to his car and arrest him because there is no 'conspicuous signage' granting 'permission' for people to carry firearms. [¶17]. Mr. Frey also carries when "getting gas" at "BP on Route 6 and 7-11 in Jefferson Valley" which also "lack 'conspicuous signage' but he intends to continue getting gas "at these and other locations." [¶19]. Mr. Frey carries at "various parks" in Westchester County like "Sunnyside Park" and "Legacy Field", noting that "[b]ear and coyote sightings are not uncommon." [¶18]. These locations are outside of Mr. Frey's CCW 'sportsman' restriction and are 'sensitive' and 'restricted' locations. Mr. Frey also carries concealed in the City, on "the Metro North Train into Grand Central" on "the number 4 train" and to "Times Square to get goodies at Junior's" and "Murray's Bagels on 8th Avenue" [¶27], when visiting "friends in Williamsburg", on the "L train", and he "intend[s] to continue" carrying in New York City. [¶27]. Mr. Frey also has a specific intent to carry open and holstered ("open carry") at the above locations when he is not carrying a handgun concealed [¶¶21, 28, 31], but does not intend to carry a handgun at those places the Supreme Court has indicated are 'sensitive locations' such as polling places and courthouses. [¶33].

Brianna Frey is a wife and mother; she holds a valid NYS handgun license restricted to 'sportsman.' [Dec. B. Frey at ¶3]. Mrs. Frey intends to carry a handgun outside of her 'sportsman' concealed carry restriction for her protection and her family's at places that she regularly visits

3

because she "does not want to be in a situation where either [her] life or the lives of [her] husband and children are at stake and [she] was unarmed and unable to protect [herself] or them." [¶11]. Mrs. Frey intends to carry at the "Jefferson Valley Mall, Acme in Yorktown and the Shop Rite and Walmart in the Cortlandt Town Center", which she does "on a regular basis" [¶12]; she also intends to carry at various restaurants she visits with her family, like "Primavera Restaurant in Croton Falls, BLT Steakhouse in White Plains, Antonella's on Route 9 in Fishkill, La Famiglia in Carmel and other restaurants" that are subject to the alcohol and beverage laws [¶13], and at "Regal Cinema" at the "Cortlandt Town Center." [¶14].

Mr. Sappe holds a valid full carry concealed handgun license issued by a judicial licensing officer outside of New York City [Dec. of W. Sappe at ¶¶ 2, 3], which is not valid in New York City. Mr. Sappe intends to carry concealed in New York City for self-defense "on a daily basis." [¶10]. Based on his work "in the Diamond District where [he] com[es] in and out of high-end jewelry stores", "transport[ing] substantial amounts of cash, diamonds, and jewelry for high-end jewelers…between the Diamond District and various locations in the 5 boroughs of New York City, throughout New York State, and to other states, including California and Nevada" Mr. Sappe is a "high-level target for a violent attack" and "will be carrying a concealed handgun for self-protection on a regular basis from now on." [¶¶7, 10].

Mr. Sappe "travel[s] through the area designated as the "Times Square" gun-free zone and is "going to carry [his] handgun in the Times Square area for self-protection even though such constitutionally-protected activity had been made unlawful by New York State and New York City", notwithstanding that his "daily commute will now subject [him] to being arrested and charged with a felony" among other civil and criminal penalties. [¶13]. Mr. Sappe also intends to carry "open and exposed" when he is not carrying a handgun concealed, both "inside New York

4

City and throughout the state." [¶19]. Mr. Sappe does not intend to carry a handgun at places the Supreme Court indicated are 'sensitive locations' such as polling places and courthouses. [¶24].

Having a handgun license is not an exception or defense to arrest and incarceration under the CCIA for carrying a handgun in a 'sensitive place' or 'restricted location.' See, Penal Law § 265.20.

## LEGAL ARGUMENT

To obtain a preliminary injunction, a movant must show irreparable harm and meet either of two standards: (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of hardships tipping decidedly in the movant's favor." *Connecticut State Police Union v. Rovella*, 494 F. Supp. 3d 210, 218 (D. Conn. 2020) quoting, *Trump v. Deutsche Bank AG*, 943 F.3d 627, 635 (2d Cir. 2019), rev'd on other grounds, ⸺ U.S. ⸺, 140 S.Ct. 2019, 207 L.Ed.2d 951 (2020); *Kelly v. Honeywell Int'l, Inc.*, 933 F.3d 173, 184 (2d Cir. 2019).

## I. PLAINTIFFS HAVE STANDING

Only one plaintiff need have standing to seek each form of relief requested in the complaint. *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008). The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.

A plaintiff satisfies the injury-in-fact requirement where he alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony*, 573 U.S. at 158– 59 quoting, *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979). The Second Circuit's "low threshold" showing of a credible threat of enforcement is a "forgiving" standard, and "courts are

5

generally willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund." *Picard v. Magliano*, 42 F.4th 89, 98 (2d Cir. 2022). Although a credible threat is not established by 'imaginary or speculative' fears of prosecution[2] the Second Circuit has found a credible threat when the government has announced its intention to enforce the challenged regulation. See, *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016).

Plaintiffs have established their respective standing by declaring their intentions to engage in a course of conduct protected by the constitution but proscribed by statute; there exists a credible threat of prosecution thereunder, and Plaintiffs should not be required to await and undergo a criminal prosecution as the sole means of seeking relief. See, *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 689-90 (2d Cir. 2013).

NYSP Acting Superintendent Steven Nigrelli vowed publicly to enforce the State's anti-gun laws against everyone who violates them:

> "Governor, it's an easy message. I don't have to spell it out more than this. We'll have **zero tolerance**. ***If you violate this law, you will be arrested***. Simple as that. Because the New York State Troopers are **standing ready to do our job to ensure** ... **all laws are enforced**."[3] (emphasis added).

In September 2022, Jason Frey was told by a NYPD officer that if he carries a handgun in New York City he'll be arrested because his Westchester permit is no good in the City, and that he will also be arrested for open carrying because "there's no open carry in New York City…it's illegal." [Dec. J. Frey at ¶¶28-29]. An August 2022 legal bulletin instructs NYPD officers that "Anyone carrying a firearm is presumed to be carrying unlawfully until proven otherwise", a view in marked conflict with the fact that the Second Amendment "presumptively protects" possessing

---

[2] *Adam v. Barr*, 792 F. App'x 20, 22 (2d Cir. 2019).
[3] https://www.youtube.com/watch?v=gC1L2rrztQs

6

and carrying a handgun for self-protection. [Bellantoni Dec. at Ex. 1]. The bulletin instructs, "[o]fficers may stop an individual when the officer has reasonable suspicion that an individual is carrying a firearm [ ] and may frisk that individual since the officer has reasonable suspicion that the individual is armed and dangerous, meaning that an individual simply engaging in Second Amendment-protected conduct now gives the NYPD reasonable suspicion to believe an individual is '*dangerous*.' [Dec. Sappe ¶¶ 14-15]. NYPD officers who think that an individual might be armed have a basis to stop and frisk, which will ensure Plaintiffs' arrest and incarceration if they carry in New York City because they do not have a NYC handgun license and their NYS license is invalid in the City. § 400.00(6); (15).

Regarding open carry, the NYSP Pistol Permit Bureau confirmed on September 6, 2022 that open carry by a handgun licensee is illegal in New York State, whether as a misdemeanor under § 400.00(15) or a felony under § 265. [Dec. J. Frey at ¶23; Bellantoni Dec. at Ex. 2]. Because Nigrelli's troopers will enforce "all laws", any trooper observing Plaintiffs carrying open and exposed will arrest, jail, and charge Plaintiffs with a crime.

Jason Frey faces a credible and imminent risk of arrest and incarceration, handgun license revocation, loss of property, and other criminal and civil penalties, for carrying a handgun in New York State and New York City, which is heightened because he has announced through this lawsuit that he is presently exercising his Second Amendment rights in violation of the law.

Brianna Frey and William Sappe face a credible threat of enforcement of the challenged regulations by the NYSP and NYPD, as set forth herein, as this lawsuit has brought to the attention of the NYSP and NYPD that they intend to engage in constitutionally protected conduct that also violates the law. Courts are generally "willing to presume that the government will enforce the law" [*Picard v. Magliano*, 42 F.4th 89, 98 (2d Cir. 2022)] and Defendants' statements and conduct

7

show that enforcing the statutes to effectually ban public carry is at the forefront of their agendas and no Defendant has disavowed enforcement of the challenged regulations. See, *Silva,* at 19-20.

Plaintiffs have standing to challenge Penal Law 400.00(15) for carrying outside of their restriction. Section 400.00(15) is a criminal statute, not an administrative licensing regulation. A violation of 400.00(15) is a Class A Misdemeanor with penalties up to 1 year in jail, $1000 fine, 3 years of probation, and other criminal and civil penalties.[4]

The NYPD and NYSP have vowed to enforce **all** firearm related laws, as detailed above, which includes 400.00(15).

The NYPD informed Mr. Frey that he **will be arrested** if he comes into New York City with a handgun because a Westchester license is "no good" in the City. Enjoining the NYPD and NYSP from enforcing 400.00(6) and 400.00(15) will provide the relief sought.

Open carry and 400.00(15)

## II. PLAINTIFFS HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCCESS

The challenged regulations cannot pass the *Bruen* test. Plaintiffs' conduct – carrying handguns for self-defense in public – is presumptively protected by the plain text of the Second Amendment. But the government cannot meet its burden of demonstrating that its regulations are consistent with the Nation's historical tradition of firearm regulation. See, *Bruen*, at 2126.

Because "not all history is created equal," the *Bruen* Court noted that the Supreme Court has "generally assumed that the scope of the protection applicable to the Federal Government and States is pegged to the public understanding of the right when the Bill of Rights was adopted in 1791." *Bruen*, at 2137 citing, *Crawford v. Washington*, 541 U.S. 36, 42–50, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) (Sixth Amendment); *Virginia v. Moore*, 553 U.S. 164, 168–169, 128 S.Ct.

---

[4] To be clear, Plaintiffs Jason and Brianna Frey are not challenging their license restrictions. They are challenging the enforcement of criminal penalties against them for carrying outside of such restrictions.

1598, 170 L.Ed.2d 559 (2008) (Fourth Amendment); *Nevada Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 122–125, 131 S.Ct. 2343, 180 L.Ed.2d 150 (2011) (First Amendment).

"Post-ratification adoption or acceptance of laws that are inconsistent with the original meaning of the constitutional text obviously cannot overcome or alter that text." *Bruen*, at 2137.

While the Supreme Court acknowledged a 'scholarly debate', **no Supreme Court** cases have looked to 1868 as the principal period for defining the scope or meaning of any provision of the Bill of Rights.

And the Supreme Court made clear that where "later history contradicts what the text says, the text controls." *Bruen,* at 2137.

### *400.00(6)*

Penal Law 400.00(6) has no historical analogue in the Founding Era and is inconsistent with the plain text of the Second Amendment, which "shall not be infringed."

### *400.00(15)*

Penal Law 400.00(15) has no historical analogue in the Founding Era and is inconsistent with the plain text of the Second Amendment, which "shall not be infringed." No discretionary licenses were required to be sought or obtained from the government in 1791 and, therefore, no penalties existed for simply engaging in protected conduct – carrying weapons for self-defense in public – simply because one traveled to a separate part of one's own state, or into another state for that matter. And, in 1791 open carry was the means of carrying weapons – swords and firearms alike.

### *265.01-e(2)(n) and (t)*

Penal Law 265.01-e(2)(n) and (t) have no historical analogue in the Founding Era and are inconsistent with the plain text of the Second Amendment, which "shall not be infringed."

"Only after the ratification of the Second Amendment in 1791 did public-carry restrictions proliferate." *Bruen*, 2120. The Antebellum restrictions mentioned in *Bruen* were not sanctioned by the Court, but discussed to demonstrate that even those regulations did not impose a substantial burden on public carry analogous to that imposed by New York's restrictive licensing regime. *Bruen*, at 2120.

No penalties existed for simply engaging in protected conduct – carrying weapons for self-defense in public – whether in the public square or on public transportation.

Times Square is nothing more than an aggregate of *public* streets and the railways and subways are *public* transportation. Banning the exercise of conduct protected under the Second Amendment is no more constitutional than banning conduct protected under the First Amendment from these same locations. The constitutional right to bear arms in public for self-defense is not "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." Bruen, at 2156 quoting, *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 780 (2010) (plurality opinion). Post-ratification regulations banning protected conduct on public streets and public transportation is inconsistent with this Nation's history and tradition.

Regulations banning firearms in "congested areas" where (somehow) the mere presence of firearms (possessed by law-abiding individuals) may (spontaneously) render a location "vulnerable to firearm violence" are birthed from the same public safety, interest balancing banter rejected by the Supreme Court multiple times. Section 265.01-e(2)(n) and (t) are unconstitutional and will be declared as such. The historical evidence from Antebellum America demonstrates that the manner of public carry was subject to reasonable regulation, but none of these limitations on the right to bear arms operated to prevent law-abiding citizens with ordinary self-defense needs from carrying arms in public for that purpose. *Bruen*, 142 S. Ct. at 2120.

**III.  PLAINTIFFS ARE SUFFERING IRREPARABLE HARM**

Irreparable harm is the single most important prerequisite to the Court's issuance of preliminary injunctive relief. *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir.2009).

The Second Circuit has held that when a plaintiff alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016). The standard established in *Babbitt*[5] "sets a low threshold and is quite forgiving to plaintiffs seeking such preenforcement review," as courts are generally "willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund." *Cayuga Nation*, 824 F.3d at 331.

Under *Babbitt*, actually being threatened with prosecution is not a requirement. It is sufficient for a plaintiff to allege that enforcement is likely.

Jason Frey is engaging in conduct, and Mrs. Frey and William Sappe announced their concrete plans to engage in conduct protected by the Second Amendment, which violates Penal Law sections 265.01, 265.01-b, 265.01-d, 265.01-e, 400.00(6), and 400.00(15), and subjects them to **guaranteed enforcement** – arrest and incarceration - by the NYSP and NYPD, and other criminal and civil penalties for exercising their rights. See. *Babbitt*, 442 U.S. at 302 (responding to Appellant's argument that the criminal penalty provision has not yet been applied and may never be applied, "when fear of criminal prosecution under an allegedly unconstitutional statute is not

---

[5] *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298, 99 S. Ct. 2301, 2309, 60 L. Ed. 2d 895 (1979).

imaginary or wholly speculative a plaintiff need not first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute.").[6]

In the Second Circuit, it is well-settled that an alleged constitutional violation constitutes irreparable harm. *Valenzuela Arias v. Decker*, No. 20 CIV. 2802 (AT), 2020 WL 1847986, at *5 (S.D.N.Y. Apr. 10, 2020) citing, *Connecticut Dep't of Envtl. Prot. v. O.S.H.A.*, 356 F.3d 226, 231 (2d Cir. 2004); *Statharos v. New York City Taxi & Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999) (no separate showing of irreparable harm is necessary); *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996) ("[I]t is the alleged violation of a constitutional right that triggers a finding of irreparable harm.") (emphasis supplied).

"The right to keep and bear arms protects tangible and intangible interests which cannot be compensated by damages…The right to bear arms enables one to possess not only the means to defend oneself but also the self-confidence — and psychic comfort — that comes with knowing one could protect oneself if necessary…Loss of that peace of mind, the physical magazines, and the enjoyment of Second Amendment rights constitutes irreparable injury." *Duncan v. Bonta*, 265 F Supp 3d 1106, 1135 citing, *Grace v. District of Columbia*, 187 F. Supp. 3d 124, 150 (DDC 2016); see also *Ezell v City of Chicago*, 651 F3d 684, 699 (7th Cir 2011) ("Infringements of this right cannot be compensated by damages.")

---

[6] In numerous preenforcement cases where the Supreme Court has found standing on a showing that a statute indisputably proscribed the conduct at issue, it did not place the burden on the plaintiff to show an intent by the government to enforce the law against it. Rather, it presumed such intent in the absence of a disavowal by the government or another reason to conclude that no such intent existed. *Hedges v. Obama*, 724 F.3d 170, 197 (2d Cir. 2013). In *Vermont Right to Life and Pacific Capital Bank*, the Second Circuit suggested "that a plaintiff has standing when it may legitimately fear that it will face enforcement under its reasonable interpretation of the statute and (2) the Supreme Court's recognition that a preenforcement challenge is justiciable when enforcement is a realistic danger when there is a "credible threat of prosecution," or when a plaintiff has an "actual and well-founded fear" of such enforcement….neither this Court nor the Supreme Court has required much to establish this final step in challenges to ordinary criminal or civil punitive statutes. Rather, we have presumed that the government will enforce the law. *Id.* at 199–200.

Plaintiffs' Second and Fourteenth Amendment rights are being violated by the threatened enforcement of the challenged statutes and regulations. Plaintiffs detailed their intention to engage in and/or are actually engaging in, a course of conduct implicating a constitutional right but proscribed by a criminal statute and there exists a credible threat of enforcement thereunder.

Plaintiffs should not be required to await arrest and enforcement against them as the sole means of seeking relief. See, *Cayuga Nation*, supra.

## IV. THE EQUITIES TIP IN PLAINTIFFS' FAVOR AND THE REQUESTED RELIEF SERVES THE PUBLIC INTEREST

*Bruen*, *Heller* and *McDonald*, flatly rejected 'balancing' the government's interests against the individual rights guaranteed by the Second and Fourteenth Amendments. The Right to defensively carry a handgun is the "very product of an interest balancing by the people" and "surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense." *Heller*, 554 U.S. at 635.

Nevertheless, the equities decidedly tip in Plaintiffs' favor.

A preliminary injunction is "in the public interest" if the preliminary injunction would not "cause harm to the public interest." *U.S. S.E.C. v. Citigroup Global Mkts. Inc.*, 673 F. 3d 158, 163 n.1 (2d Cir. 2012). "As with irreparable injury, when a plaintiff establishes 'a likelihood that Defendants' policy violates the U.S. Constitution, Plaintiffs have also established that both the public interest and the balance of the equities favor a preliminary injunction.'" *J.S.R. by & through J.S.G. v. Sessions*, 330 F. Supp. 3d 731, 743 (D. Conn. 2018) citing, *Ms. L. v. U.S Immigr. & Customs Enf't ("ICE")*, 310 F. Supp. 3d 1133, 1146 (S.D. Cal. 2018), modified, 330 F.R.D. 284 (S.D. Cal. 2019), and enforcement granted in part, denied in part sub nom. *Ms. L. v. U.S. Immigr. & Customs Enf't*, 415 F. Supp. 3d 980 (S.D. Cal. 2020) quoting, *Arizona Dream Act Coalition*,

13

757 F.3d 1053, 1069 (9th Cir. 2014) (balance of equities favors preventing the violation of a party's constitutional rights).

The public are "the People" for whom the Second Amendment was codified. Punishing the public for exercising their constitutional rights does not, under any view, serve the public's interest. The government interest – purportedly keeping everyone 'safe' by restricting the exercise of constitutional rights – has been flatly rejected by the Supreme Court. "As Members of the Supreme Court have already explained, [t]he right to keep and bear arms ... is not the only constitutional right that has controversial public safety implications." *Bruen*, at 2126, n. 3 quoting, *McDonald v. Chicago*, 561 U.S. 742, 783, 130 S.Ct. plurality opinion).

Defendant's enforcement of criminal penalties against average citizens for the mere exercise of a protected right sharply tips the balance of equities in favor of Plaintiffs because statutes disarming law-abiding responsible citizen gun owners "reflect an opinion on gun policy" and "as *Heller* explains, the Second Amendment takes certain policy choices and removes them beyond the realm of debate." *Duncan v Bonta*, 265 F Supp 3d 1106, 1128, 1135-1136 (SD Cal 2017) ), aff'd *Duncan v Bonta*, 742 F App'x 218, 222 (9th Cir 2018).

Disarming licensed New Yorkers is "not a constitutionally-permissible policy choice." *Id.* Even New York's highest court has recognized that a "longstanding, widespread practice is not immune from constitutional scrutiny." *Payton v. New York*, 445 U.S. 573, 600 (1980).

This is particularly true for New York's open carry ban, which eviscerates the plain meaning of the Second Amendment. There is strong public interest in enjoining the enforcement of criminal penalties against licensees who open carry because New York's licensing scheme for

concealed carry remains discretionary[7] and fails to recognize or allow any Right to bear arms in public for self-defense.

"The public interest favors the exercise of Second Amendment rights by law-abiding responsible citizens. And it is always in the public interest to prevent the violation of a person's constitutional rights. *Duncan*, at 1136 (S.D. Cal. 2017), aff'd, 742 F. App'x 218 (9th Cir. 2018) (granting preliminary injunction of California's magazine ban statute) citing, *Hobby Lobby Stores, Inc. v. Sebelius,* 723 F.3d 1114, 1145 (10th Cir. 2013), aff'd sub nom., *Burwell v. Hobby Lobby Stores, Inc.*, ––– U.S. –––, 134 S.Ct. 2751, 189 L.Ed.2d 675 (2014).

## CONCLUSION

Based on the foregoing, Plaintiffs' motion pursuant to Federal Rule of Appellate Procedure 8(A) should be granted.

Dated: March 16, 2023
      Scarsdale, New York

THE BELLANTONI LAW FIRM, PLLC
*Attorneys for Plaintiffs*

By: *Amy L. Bellantoni*
Amy L. Bellantoni (AB3061)
2 Overhill Road, Suite 400
Scarsdale, New York 10583
(914) 367-0090 (t)
(888) 763-9761 (f)
abell@bellantoni-law.com

---

[7] See, § 400.00(11), which allows for the revocation of a pistol license for any reason that would prevent the issuance of a license in the first instance under § 400.00(1) - § 400.00(1)(b) ["moral character"] and (n) ["any good reason"] are purely subjective and discretionary factors.

15