UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
JASON FREY and WILLIAM SAPPE,

                            Plaintiffs,          7:21-cv-05334-NSR

        -against-                  **THIRD AMENDED
COMPLAINT**

NEW YORK CITY, New York, STEVEN G. JAMES,
in his Official Capacity, JESSICA TISCH, in her
Official Capacity,

                            Defendants.
----------------------------------------------------------------x

Plaintiffs, by and through their attorneys, as and for their Third Amended Complaint state as follows:

## NATURE OF THE ACTION

1. This is an action for declaratory and injunctive relief, compensatory damages to include presumed monetary damages in at least a nominal amount against Defendant New York City, costs, disbursements, and reasonable statutory attorney's fees pursuant to 42 U.S.C. § 1988 and any other applicable statute, for continuing harm to plaintiffs and all similarly situated individuals proximately caused by Defendants' enforcement of certain provisions of New York State Penal Law § 265.00, *et seq.*, Penal Law § 400.00, *et seq*.

2. Plaintiffs are part of "the People" covered by the plain text of the Second Amendment; they seek to engage in conduct covered and protected by the plain language of the Second Amendment; the weapons in questions are, in fact, "arms" protected thereunder; and there is no historical analogue for the challenged regulations.

3. In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, the Supreme Court declared, "In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an

1

individual's conduct, the Constitution presumptively protects that conduct." 142 S. Ct. 2111, 2126 (2022).

4.      Plaintiffs' conduct – possessing and carrying Arms - is protected by the plain text of the Second Amendment to the U.S. Constitution.

5.      The *Bruen* Court continued, "To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command." *Id.* citing, *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n. 10 (1961).

6.      Firearms have been part of this Nation's history since the colonists arrived. The colonists would not have been able to defeat the English military in the Revolutionary War had they not possessed and had unrestricted access to firearms and ammunition – they had no 'military' and, as *Heller* confirmed, the right to keep and bear arms is an individual right, not a collective right of belonging to some group - militia or otherwise. *D.C. v. Heller*, 554 U.S. 570, 591 (2008) ("…even if 'keep and bear Arms' were a unitary phrase, we find no evidence that it bore a military meaning...Putting all of these textual elements together, we find that they guarantee the individual right to possess and carry weapons in case of confrontation.").

7.      To be sure, "when the able-bodied men of a nation are trained in arms and organized, they are better able to resist tyranny." *Heller*, 554 U.S. at 598.

8.      Handguns are weapons in common use for lawful purposes and are therefore covered by the plain text of the Second Amendment.  *Caetano v. Massachusetts,* 577 U.S. (2016) (holding that the Second Amendment protects all weapons in common use); *Heller*, 554 U.S. at

629 ("It is enough to note, as we have observed, that the American people have considered the handgun to be the quintessential self-defense weapon.").

9.    No permission from the government was required (or even imagined) as a prerequisite to the People's exercise of the God-bestowed, preexisting right to be armed for self-defense later codified in the Second Amendment.

10.    The very purpose of codifying the right to keep and bear arms and declaring that it "shall not be infringed" was to prevent *any encroachment* of that right by the government.

JURISDICTION AND VENUE

11.    Jurisdiction in this court is proper pursuant to 28 U.S.C. § 1331 in that this action arises under the Constitution and laws of the United States, and under 28 U.S.C. § 1343(a)(3) in that this action seeks to redress the deprivation, under of color of the laws, statutes, ordinances, regulations, customs, and usages of the State of New York, of rights, privileges or immunities secured by the United States Constitution. This action seeks relief pursuant to 28 U.S.C. §§ 2201, 2202, and 42 U.S.C. § 1983. Venue in this district is proper pursuant to 28 U.S.C. § 1391.

THE PARTIES

12.    Plaintiff JASON FREY ("Mr. Frey") is a United States citizen and a resident of the State of Arkansas.

13.    Mr. Frey is applying for a New York City concealed carry handgun license.

14.    Mr. Frey is eligible to possess, purchase, receive and transfer firearms under state and federal law.

15.    Plaintiff WILLIAM SAPPE ("Mr. Sappe" or "Sappe") is a United States citizen and a resident of Orange County, New York.

16.     Mr. Sappe holds a valid New York State concealed carry pistol license issued by a licensing officer outside of New York City.

17.     Mr. Sappe is eligible to possess, purchase, receive and transfer firearms under state and federal law.

18.     Defendant STEVEN G. JAMES ("James") is the Superintendent of the New York State Police whose principal place of business is in Albany (Albany County), New York. James is sued in his official capacity only.

19.     James and his troopers are enforcing the laws challenged herein and will continue to enforce such regulations, even against Plaintiffs.

20.     James has not renounced his intention to enforce the challenged statutes.

21.     Defendant NEW YORK CITY, New York ("the City") is a governmental subdivision of New York State.

22.     Defendant JESSICA TISCH ("Commissioner  Tisch" or "Tisch") is the Police Commissioner for the New York City Police Department ("NYPD") and a statutory handgun licensing officer[1] for five boroughs of New York City, to wit, New York County (Manhattan), Kings County (Brooklyn), Queens County, Richmond County (Staten Island), and Bronx County. Tish is sued in her official capacity only.

23.     As the NYPD Police Commissioner, Tisch is the chief law enforcement officer in New York City. Tisch and her officers have the authority to enforce the Penal Laws and New York City regulations, make arrests, and file charges to prosecute violations of the criminal and non-criminal statutes and regulations taking place in the 5 boroughs.

---

[1] Penal Law 265.00(10).

24. Tisch and the NYPD law enforcement officers are enforcing the laws challenged herein and will continue to enforce such regulations, even against Plaintiffs. Tisch has not renounced her intention to enforce the challenged statutes.

## STATEMENT OF FACTS

*Plaintiff Jason Frey*

25. Jason Frey has no disqualifiers to the possession, transfer, purchase, receipt, or carriage of firearms under state or federal law.

26. Mr. Frey lawfully possesses firearms (handguns and long guns) for self-defense.

27. Mr. Frey holds a valid unrestricted New York State concealed carry pistol license issued by a judicial licensing officer in Westchester County, New York..

28. Mr. Frey's NYS concealed carry license ("CCW") does not authorize him to carry a handgun open and exposed (open carry) on his person for self-defense.

29. Mr. Frey also holds valid carry handgun licenses issued by the following states: Florida, Utah, Virginia, Pennsylvania, and Ohio.

30. Mr. Frey carries his handgun concealed on his person on a daily basis for self-defense.

31. Mr. Frey carries a handgun for self-defense concealed on some days and open/holstered on other days.

32. Mr. Frey is in the process of applying for a New York City CCW.

33. Like the NYS CCW, a New York City CCW does not authorize the open carriage of handguns in public.

34. Open carry is banned throughout New York State.

35. There is no process for obtaining an open carry license in New York.

36. If a process existed to obtain an open carry license and/or if one was required, such regulation would violate the Second Amendment because there is no historical analogue for licensing the open carriage of arms.

37.    Mr. Frey regularly travels to New York to visit family and friends, including travel to New York City.

38.    Mr. Frey intends to carry a handgun for self-defense when he is in New York.

39.    Mr. Frey intends to carry a handgun open and exposed on his person for self-defense when in New York State.

40.    Mr. Frey travels to New York City.

41.    When he travels to New York City, Mr. Frey frequents the area designated as the Times Square Gun Free Zone ("Times Square").

42.    Mr. Frey uses public transportation, including the MTA to travel between New York City and Westchester County, and/or other areas of New York State.

43.    Mr. Frey intends to be armed with a handgun for self-protection while visiting Times Square.

44.    Mr. Frey intends to be armed with a handgun for self-protection while taking public transportation in New York.

45.    The only reason Mr. Frey does not carry a handgun in New York City, Times Square, and/or on public transportation in New York is the threat of criminal and civil penalties.

46.    Mr. Frey intends to comply with the law solely to avoid criminal and civil penalties.

47.    NYSP troopers will immediately arrest Mr. Frey if they observe him carrying a handgun in New York City because he does not have a New York City CCW.

48.    NYSP troopers will immediately arrest Mr. Frey if they observe him carrying a handgun open and exposed – anywhere in New York.

49.    NYSP troopers will immediately arrest Mr. Frey if they observe him carrying a handgun in Times Square.

50.    NYSP troopers will immediately arrest Mr. Frey if they observe him carrying a handgun on public transportation.

51.     NYPD officers will immediately arrest Mr. Frey if they observe him carrying a handgun in New York City because he does not have a New York City CCW.

52.     NYPD officers will immediately arrest Mr. Frey if they observe him carrying his handgun open and exposed.

53.     NYPD officers will immediately arrest Mr. Frey if they observe him carrying a handgun in Times Square.

54.     NYPD officers will immediately arrest Mr. Frey if they observe him carrying a handgun on public transportation.

55.     If Mr. Frey engages in conduct described above, he is subject to arrest, incarceration, fines, he will forfeit his property (firearms) and, if convicted, he will lose his right to possess firearms for self-defense. Penal Law § 400.00(15), (17); § 265.01-e(2)(n), (t).

56.     Mr. Frey should not have to risk arrest, incarceration, and other criminal and civil penalties to exercise a protected right.

### Plaintiff William Sappe

57.     William Sappe has no disqualifiers to the possession, transfer, purchase, receipt, or carriage of firearms under state or federal law.

58.     Mr. Sappe lawfully possesses firearms (handguns and long guns) for self-defense.

59.     Mr. Sappe holds a valid New York State CCW that was issued by a judicial licensing officer in Orange County, New York.

60.     Mr. Sappe is also licensed to carry handguns by the States of Connecticut, California, and Arizona.

61.     Mr. Sappe's New York State license does not authorize him to carry a handgun open and exposed (open carry) on his person for self-defense.

62.     Mr. Sappe's license to carry concealed is unrestricted (full carry).

63.     Mr. Sappe regularly carries a handgun concealed on his person when he is not traveling to New York City.

64.     Mr. Sappe would carry a handgun with him every day into New York City if he were not under threat of criminal and civil penalties.

65.     Mr. Sappe's NYS license is not valid in New York City. Penal Law § 400.00(6).

66.     After Mr. Sappe was issued his NYS CCW, he submitted an application to the NYPD License Division for a New York City "special carry" license[2].

67.     Mr. Sappe satisfied all of the necessary requirements for the issuance of a New York City "special carry" license.

68.     Mr. Sappe's application for a New York City "special carry" license was denied by the NYPD License Division.

69.     t violates the Second Amendment to require Mr. Sappe to obtain a second CCW license within the same state.

70.     Mr. Sappe should not have to obtain a separate license to carry a handgun for self-defense in New York City.

71.     Mr. Sappe's right to be armed for self-defense is violated every day in which he travels to work in New York City.

72.     As a direct result of the defendants' enforcement of Penal Law § 400.00(6), Mr. Sappe is disarmed on every work day.

73.     Mr. Sappe travels to New York City for work every day during the week, unless he is traveling out of state for work.

74.     Mr. Sappe works in the Diamond District and carries thousands of dollars in cash, precious gems, jewelry, and diamonds on a regular basis as part of his employment.

75.     Mr. Sappe is required to travel through and in the geographical area designated and defined by New York City, NYPD, and the Office of the Deputy Commissioner as "Times Square" on a daily and/or regular basis in connection with his employment.

---

[2] The NYPD License Division refers to concealed carry handgun licenses that are issued to individuals who already hold concealed carry handgun licenses issued by a New York State licensing officer outside of the five boroughs of New York City as "special carry" licenses.

76.    The area defined and designated as the Times Square Gun Free Zone encompasses areas between 6th Avenue through 9th Avenue and West 53rd Street through West 40th Street.

77.    The parameters of the Times Square Gun Free Zone were created by New York City, NYPD, and the Office of the Deputy Commissioner.

78.    Mr. Sappe's employer is located on 47th Street, within the Times Square "Gun Free Zone."

79.    Mr. Sappe does not always drive into New York City to get to work.

80.    Mr. Sappe also takes the MTA MetroNorth train and the subway system.

81.    Mr. Sappe intends to carry his handgun concealed on his person on a daily basis for self-defense into New York City.

82.    Mr. Sappe intends to carry a handgun for self-defense in the area identified as the Times Square Gun Free Zone.

83.    Mr. Sappe intends to carry a handgun for self-defense on the MTA MetroNorth train and on the subway.

84.    Mr. Sappe has an objectively reasonable fear that he will be arrested, incarcerated, and subject to other criminal and civil penalties for carrying his handgun into New York City, when traveling on public transportation, and when inside of the Times Square Gun Free Zone.

85.    Mr. Sappe risks arrest, incarceration, fines, loss of property, revocation of his license and his right to own firearms for self-defense for (i) carrying concealed outside of his restriction [Penal Law § 400.00(6), (15), (17)] and (ii) possessing a firearm in a sensitive location, i.e., Times Square and public transportation [Penal Law §§ 265.01-e(2)(n), 265.01-e(2)(t)].

86.    NYSP troopers will immediately arrest Mr. Sappe if they observe him carrying his handgun in the Times Square Gun Free Zone and/or on public transportation.

87.    NYPD Officers will immediately arrest Mr. Sappe if they observe him carrying his handgun in the Times Square Gun Free Zone and/or on public transportation.

88.    NYPD officers will immediately arrest Mr. Sappe if they observe him carrying his handgun concealed in New York City because he does not have a separate license to possess/carry

a handgun in New York City, as required by Penal Law 400.00(6).

89.    NYSP troopers will immediately arrest Mr. Sappe if they observe him carrying his handgun concealed in New York City because he does not have a separate license to possess/carry a handgun in New York City, as required by Penal Law § 400.00(6).

90.    Mr. Sappe's concealed carry license does not authorize him to carry his handguns open and exposed on his person ("holstered" or "open carry").

91.    Open carry is banned throughout New York, including New York City.

92.    There is no process for obtaining an open carry license.

93.    Even if a license were available and/or required to engage in open carry, such regulation would violate the Second Amendment because there is no historical analogue.

94.    Mr. Sappe intends to carry his handgun open and exposed on his person for self-defense throughout New York State, including New York City.

95.    Mr. Sappe does not open carry because he fears being arrested, incarcerated, and charged with a crime for the open carriage of a handgun.

96.    NYSP troopers will immediately arrest Mr. Sappe if his handgun is open and exposed.

97.    NYPD officers will immediately arrest Mr. Sappe if his handgun is open and exposed.

98.    Carrying his handgun open and exposed will result in Mr. Sappe's arrest and incarceration; he will forfeit his property (firearms), suffer the revocation of his handgun license, and lose his right to possess handguns for self-defense in New York.

99.    As a direct result of Defendants' enforcement of the challenged statutes, Mr. Sappe is disarmed every work day.

100.    Mr. Sappe should not have to risk arrest, incarceration, and other criminal and civil penalties to exercise a presumptively protected right.

101.    In 2025, the NYPD began accepting applications from, and issuing licenses to, non-residents of New York State to allow the concealed carriage of handguns.

102.    A New York City CCW is valid throughout New York State.

103.    Non-residents with a New York City CCW are legally authorized to carry a handgun concealed in New York City and throughout New York State.

104.    But a CCW issued to a New York resident, like Mr. Sappe, outside of New York City is not valid in New York City. Penal Law § 400.00(6).

105.    New York State licensees are not legally authorized to carry a handgun in New York City. Penal Law § 400.00(6).

106.    Mr. Sappe may lawfully carry a handgun concealed throughout New York State, but not in the five (5) boroughs of New York City.

107.    If Mr. Sappe carries his handgun in New York City, he is subject to arrest, incarceration, and other criminal and civil penalties.

108.    Penal Law § 400.00(6) requires NYS licensees to seek and obtain a separate carry license to legally carry a handgun in New York City.

109.    New York City's concealed carry licensing scheme is discretionary.

110.    Mr. Sappe's application for a New York City handgun license was denied based on the discretion of the License Division.

111.    A "special carry" license is not automatically issued by the NYPD License Division to licensed upstate New Yorkers.

112.    A "special carry" license is not simply an "endorsement" of a NYS CCW license.

113.    Obtaining a "special carry" license requires a NYS licensee to endure a lengthy application and licensing process, as if they had no license to begin with.

114.    On its face, Penal Law § 400.00(6) violates the Equal Protection Clause of the Fourteenth Amendment.

115.    As applied to Mr. Sappe, Penal Law § 400.00(6) violates the Equal Protection Clause of the Fourteenth Amendment.

### *Defendants James and Tisch Are Proper Parties to this Action*

116.    As the Superintendent of the New York State Police (NYSP), James and his law enforcement officers have a duty to enforce and uphold the laws of the State of New York, including those enumerated in the New York State Penal Law, and the authority to file charges to prosecute criminal and/or non-criminal offenses taking place throughout New York State.

117.    James and his troopers are currently enforcing and will continue to enforce New York's firearm regulations against any violator, including Plaintiffs.

118.    James acts at the direction of Governor Hochul with regard to the enforcement of New York State's firearm regulations.

119.    James's policies regarding the enforcement of firearm regulations implement Governor Hochul's goal of defying the Supreme Court precedent in *Bruen* as set forth in her enactment of the Concealed Carry Improvement Act ("CCIA") on September 1, 2022.

120.    James publishes advisory memoranda advising New York's county and local law enforcement agencies of the State's position on various firearm-related issues, including statutory interpretation and enforcement, and enforces prior memoranda published by former Superintendents Kevin Bruen and Steven Nigrelli.

121.    Local and county law enforcement agencies rely on, abide by and enforce James', Bruen, and Nigrelli's  interpretations and policies, including the New York City Police Department.

122.    The NYSP website publishes New York's firearm laws, changes to the State's firearm laws, James' interpretation of NY firearms laws, how NYSP will enforce those laws, including laws regarding the licensing of handguns.[3]

123.    As the head of the agency that advises this State's county and local law enforcement agencies of the interpretation of the firearm regulations and how they are to be enforced, James' policies and procedures directly affect all residents statewide, including Plaintiffs.

124.    The NYSP (through James and his predecessors), and NYPD (through Tisch and her predecessors) worked and/or are working in concert with, Governor Hochul, Everytown for Gun Safety, the Gifford Law Center – well-funded anti-gun special interest groups – and other 'partners' as Governor Hochul and the NYSP consider them, with the goal and specific intention of violating the Supreme Court's precedent, analysis, and holdings in Second Amendment jurisprudence, including *Bruen*.[5]

125.    Gov. Hochul and the NYPD are working together to knowingly enforce laws and regulations that violate the Second and Fourteenth Amendments[6], as borne out below.

126.    Gov. Hochul's August 31, 2022 press conference on the CCIA (which went into effect the following day) was attended and supported by New York City Mayor Adams and then-NYPD Police Commissioner Sewell, whose attendance evidenced their collaboration and compliance with Gov. Hochul's agenda to violate the Second and Fourteenth Amendments and the Supreme Court's mandate in *Heller, McDonald*, *Caetano,* and *Bruen*. The statements of Gov. Hochul (and Nigrelli) made therein, and then-NYPD Commissioner Keechant Sewell's silent acceptance, are incorporated fully herein by reference.

---

[3] https://troopers.ny.gov/Firearms/
[5] https://www.youtube.com/watch?v=gC1L2rrztQs
[6] https://www.youtube.com/watch?v=gC1L2rrztQs

127.    Gov. Hochul acknowledged that the CCIA was created by her administration in partnership with NYC Mayor Adams' administration (2:27); she emphasized the importance of the "partnership" with New York City, then-NYPD Police Commissioner, Keechant Sewell and "advocates" like the Gifford Law Center and Senior Counsel for "Everytown for Gun Safety" with whom she has "been joined at the hip" who were "helpful in the whole process of writing legislation (the CCIA) that we believe is responsive to the Supreme Court decision [in *Bruen*]". Had the Supreme Court not decided *Bruen*, Gov. Hochul confessed, "we would not be having this conversation." (2:41).

128.    In response to the Supreme Court's ruling, which Hochul proudly stated she had been working since last year and "was ready for it"; when *Bruen* was published, she called the already-recessed Legislature back for a special session to enact laws that are intended to be, and are, in direct contravention to the Supreme Court's holding, analysis, and historical account of this Nation's traditions as set forth in *Bruen*, *Heller*, *McDonald*, and *Caetano*. Gov. Hochul "fought back" against a ruling on the U.S. Constitution from our Nation's highest Court -  using the same 'public interest', 'means-end', 'collective rights' arguments (7:00) that have been resoundingly rejected by the Supreme Court since its decision in *Heller* in 2008 and thereafter. See, *McDonald*, and *Bruen*.

129.    Nigrelli, who at the time of the press conference held the position of First Deputy Superintendent of the NYSP, spoke in Bruen's place.

130.    Nigrelli vociferously thanked Governor Hochul as "someone [he] looks up to" for her "leadership on this topic…laser-like focus on **eradicating guns**, illegal guns, and gun crimes...**we appreciate that at the State Police**." (36:10).

131.    Like Governor Hochul, Nigrelli emphasized the importance of "partnerships", proclaiming that, to be successful in enforcing their anti-gun laws, they "found the greatest partner in the world – the NYPD. Commissioner Sewell thank you for what you and your organization does." (36:53).

132.    Nigrelli and the NYSP will enforce the State's anti-gun laws against everyone who violates them. Staring at Hochul with veneration, Nigrelli vowed

> "Governor, it's an easy message. I don't have to spell it out more than this. We'll have zero tolerance. <u>If you violate this law, you will be arrested. Simple as that</u>. Because the <u>New York State Troopers are standing ready to do our job to ensure .. all laws are enforced</u>." *Id.*

133.    Neither James nor Tisch have altered their respective agencies' adherence to Gov. Hochul's agenda.

134.    The NYSP Pistol Permit Bureau of the New York State Police in Albany, New York provides guidance and advisory information to the public upon inquiry regarding New York's firearms regulations.[9]

135.    On September 6, 2022, the NYSP Pistol Permit Bureau responded to an inquiry as to whether "open carry" by an individual holding a valid NY handgun license was an arrestable offense.

136.    The NYSP Pistol Permit Bureau informed that Penal Law 400.00(2)(f) is to "have and carry [a handgun] concealed" and that "the arrestable offense to open carry could be [either] the lesser class A misdemeanor in PL 400.00(15) for violating the terms of the pistol permit…[or

---

[9] https://troopers.ny.gov/contact-us

alternatively,] [a]n argument could be made that the individual carried outside of the pistol permit and therefore was in criminal possession of a weapon" under Penal Law § 265."

137.    In either event, open carry is a criminal offense in New York subjecting the licensee to imminent arrest by law enforcement.

138.    In August 2022, after *Bruen* and the passage of the CCIA (but before it went into effect), the NYPD Office of the Deputy Commissioner published a memorandum of policies and procedures for NYPD officers (the "Memorandum"), which was published to the NYPD police force. NYPD officers are presumed to have knowledge of the policies outlined in the Memorandum.

139.    In part, the Memorandum provides, "Anyone carrying a firearm is presumed to be carrying unlawfully until proven otherwise."

140.    NYPD's policies and procedures are in direct conflict with the Second Amendment, which "presumptively protects" the possession and carriage of firearms for self-defense. See, *Bruen*, 597 U.S. at 24.

141.    Under the Memorandum, NYPD Officers may frisk anyone they reasonably believe is carrying a firearm.

142.    The Memorandum listed all of the "sensitive locations" under Penal Law § 265.01-e(2) where no firearms may be possessed – "for example, since a bar that is licensed by the NYS Liquor Authority is a 'sensitive' location under …§ 265.01-e, the owner may not give customers permission to bring licensed firearms onto the premises…"

143.    The Memorandum further instructs, "**People who are carrying firearms in New York are presumed to be doing so unlawfully, until proven otherwise.**" (emphasis supplied).

144.    This NYPD policy and theses regulations have no historical analogue and are presumptively unconstitutional and violate the Second Amendment.

145.    Upon information and belief, the NYPD Memorandum has not been rescinded.

146.    On September 2, 2022, Mr. Frey was personally informed by an NYPD police officer that if Mr. Frey were to "open carry" a handgun in New York City, he would be arrested.

147.    The NYPD officer stated, "there's no open carry in New York City" because it is "illegal."

148.    With regard to concealed carry, the same NYPD police officer informed Mr. Frey that he "can't come into New York City because [his] permit is only for Westchester County", his NYS permit "is invalid to cross the county", that he "can't have [a handgun] at all in New York City" and carrying a concealed handgun in New York City with a Westchester handgun license is illegal.

149.    The NYPD officer's affirmation of NYPD's current and intended future enforcement of the Penal Law statutes concerning firearms confirms it application to Mr. Frey and Mr. Sappe.

150.    On October 11, 2022, New York City Mayor Eric Adams announced the enactment of NYC Admin. Code 10-315, a New York City regulation turning Times Square into a "Gun Free Zone" for lawful gun owners.

151.    Criminals, by definition, have no regard for the law and will continue to commit armed violent acts in Times Square and throughout New York City.

152.    The unlicensed possession/carriage of a handgun in New York was already a felony.

153.    The only individuals who were newly affected by criminal penalties through the enactment of § 265.01-e(2) are *licensed* handgun owners.

154.    The above-described conduct exemplifies the unified collaboration between New York City, NYPD, NYSP and the Governor's Office to violate the Right of "the People" to peacefully carry firearms for self-defense in public.

155.    Plaintiffs have Article III standing. *Frey v. City of New York*, 157 F.4th 118, 137 (2d Cir. 2025) (finding Mr. Frey and Mr. Sappe have Article III standing, an injury-in-fact, and redressability).

156.    In New York State, the possession of a handgun – even in one's home – is a crime, subjecting ordinary people to arrest, incarceration, prosecution, fines, and other criminal and civil penalties, including permanent loss of Second Amendment rights and loss of property (firearms).

157.    Even after *Bruen*, New York State's licensing scheme to possess and/or carry handguns continues to be "may issue" and affords licensing officers with discretionary authority. See, Penal Law § 400.00(1)(b).

158.    New York City discretionary handgun licensing regulations virtually mirror the State's. See, 38 RCNY 5; NYC Admin. Code Title 10, Chapter 3.

<u>Penal Law § 400.00(2)</u>

159.    New York State's licensing scheme only authorizes two types of licenses: (i) possession on premises; or (ii) carry <u>concealed</u>. § 400.00(2).

160.    No provision of New York State law authorizes open carry.

<u>Penal Law § 400.00(15), (17)</u>

161.    Under Penal Law § 400.00(15), (17) a violation of any provision the state's firearms licensing scheme (§ 400.00, *et seq.*) is a Class A Misdemeanor, punishable by 1 year incarceration, a fine of $1,000, revocation of the right to possess and/or purchase handguns, revocation of the right to purchase, receive and/or transfer semi-automatic rifles, permanent loss of property (handguns).

162.    Carrying a registered handgun outside of one's concealed carry restriction is a crime.  Penal Law § 400.00(15), (17).

<u>Penal Law § 400.00(6)</u>

163.    Under Penal Law § 400.00(6), a license to carry or possess a pistol or revolver, or to purchase or take possession of a semiautomatic rifle, not otherwise limited as to place or time of possession, shall be effective throughout the state, except that the same shall not be valid within the city of New York unless a special permit granting validity is issued by the police commissioner of that city. An individual licensed to carry a handgun concealed on their person outside of New York City who possesses a handgun in NYC without having obtained a separate NYC carry license is a crime punishable under section 400.00(15), (17).

164.    The NYPD License Division has no separate standard for determining and/or considering an application for an endorsement of a NYS handgun license to carry in New York City; the NYPD has long had a policy and practice of subjecting NYS licensees to standardless consideration of applications for an endorsement of a NYS handgun license. At least one court in New York City has already found this NYPD policy and practice to be arbitrary and capricious and not based on any existing rules establishing criteria for validation of a NYS license under § 400.00(6).[12]

---

[12] See, *Matter of Vicari v. Shea*, Index No. 161001/2020 (N.Y. Sup.Ct.), Rackower, J.

165.    A person is guilty of criminal possession of a firearm, rifle or shotgun in a sensitive location when such person possesses a firearm, rifle or shotgun in or upon a sensitive location, and such person knows or reasonably should know such location is a sensitive location.

166.    A "sensitive location" shall mean (n) any place, conveyance, or vehicle used for public transportation or public transit, subway cars, train cars, buses, ferries, railroad, omnibus, marine or aviation transportation; or any facility used for or in connection with service in the transportation of passengers, airports, train stations, subway and rail stations, and bus terminals. Penal Law § 265.01-e(2)(n).

167.    A "sensitive location" shall mean (t) the area commonly known as Times Square, as such area is determined and identified by the city of New York; provided such area shall be clearly and conspicuously identified with signage. Penal Law § 265.01-e(2)(t).

168.    New York City published its definition of the area commonly known as "Times Square", for purposes of Penal Law § 265.01-e to be: Times Square means and includes the following two tracts: (i) the tract in Manhattan including and bounded on the west by west side of Eighth Avenue, on the south by the south side of West Fortieth Street, on the east by the east side of Sixth Avenue, and on the north by the north side of West Fifty-third Street; and (ii) the tract in Manhattan including and bounded on the west by the west side of Ninth Avenue on the south by the south side of West Fortieth Street, on the east by the east side of Eighth Avenue, and on the north by the north side of West Forty-eighth Street." [Exhibit 1].

169.    Criminal possession of a firearm, rifle or shotgun in a sensitive location is a class E felony.

170.    A New York State and/or New York City gun license is not a defense or exemption to § 265.01-e.

171.    Penal Law § 265.01-e was implemented to prohibit fully vetted, law-abiding, licensed individuals (the unlicensed public was already banned from handgun possession everywhere in New York) from possessing handguns in areas now deemed "sensitive areas."

172.    The excuse being that police and other members of the public do not know who is carrying a handgun – because they are concealed – which places a great burden on police and causes a public safety hazard; people will not know who is armed and dangerous due to the *concealed* nature of the firearm. [14]

173.    Yet, open carry is banned throughout New York State.

<u>New York City Administrative Code 10-315
and the NYPD Rules Promulgated Thereunder</u>

174.    On October 11, 2022, Mayor Adams announced the enactment of NYC Admin. Code 10-315, which provides: (a) For the purposes of paragraph (t) of subdivision 2 of section 265.01-e of the penal law, the area commonly known as Times Square means and includes the following tract in Manhattan, bounded and described as follows: (i) BEGINNING at the point of intersection of the north side of West Forty-eighth Street and the west side of Ninth Avenue; (ii) thence southerly along the west side of Ninth Avenue to the point of intersection where the west side of Ninth Avenue meets the south side of West Fortieth Street; (iii) thence easterly along the south side of West Fortieth Street to the point of intersection where the south side of West Fortieth Street meets the east side of Sixth Avenue; (iv) thence northerly along the east side of Sixth Avenue to the point of intersection where the east side of Sixth Avenue meets the north side of West Fifty-third Street; (v) thence westerly along the northern side of West Fifty-third Street to the point of intersection where the north side of West Fifty-third Street meets the west side of Eighth Avenue; (vi) thence southerly along the west side of Eighth Avenue to the point of intersection where the

---

[14] https://www.youtube.com/watch?v=gC1L2rrztQs

west side of Eighth Avenue meets the north side of West Forty-eighth Street; and (vii) thence westerly along the north side of West Forty-eighth Street until the point of intersection where the north side of West Forty-eighth Street meets the west side of Ninth Avenue (the point of beginning). Where the area described in this subdivision is bounded and described by a side of a street or avenue, it shall be deemed to include the sidewalk of such side. For the purposes of paragraph (t) of subdivision 2 of section 265.01-e of the penal law, the area commonly known as Times Square does not include the interior of any building or other enclosed structure; provided, however, that such a building or structure may otherwise constitute a restricted or sensitive location pursuant to section 265.01-d or 265.01-e of the penal law.

175.    NYC Admin. Code 10-315 subsection (b) mandates, "The police department shall promulgate such rules as may be necessary to implement subdivision a of this section in accordance with applicable law, including rules applicable, as appropriate, to persons with a firearms license who live or work in the area commonly known as Times Square as described in such subdivision.

176.    Local Law NYC Admin. Code 10-315 took place "immediately."

### *Open Carriage of a Handgun*

177.    Going back to the point in time that people first inhabited the geographical region now known as New York State, the mere carriage of weapons for self-protection was an entirely lawful, normal occurrence.

178.    Possession of handguns was banned by New York State with the passage of the Sullivan Law in the early 1900s.

179.    Immediately prior to the passage of the Sullivan Law, open carry and concealed carry were lawful, as was possessing a handgun in your home or place of business for self-protection. There was no licensing requirement to possess or carry a handgun. Only a criminal ***act*** was punished.

180.    The Sullivan Law banned open carry outright; no provision of the licensing statute or any other law exempts open carry from criminal and civil penalties and sanctions.

181.    Since 1911, the only lawful means to possess a handgun in public for self-defense is to apply for and obtain a license to carry <u>concealed</u>.

182.    There is no exemption from arrest, incarceration and/or prosecution for an individual carrying a handgun open and exposed in a holster on one's person (open carry). Penal Law § 265.20.

183.    Open carry continues to be banned throughout New York State and, for the plaintiffs, is punishable as a crime for carrying outside of one's restrictions. Penal Law § 400.00(15), (17).

184.    For unlicensed individuals, open carry is a felony.

***Declaratory and Injunctive Relief Allegations***

185.    There is a present and existing controversy between the parties.

186.    Plaintiffs' conduct – possessing and carrying arms for self-defense – is protected by the plain text of the Second Amendment.

187.    The challenged regulations are inconsistent with this Nation's historical tradition of firearm regulation and violates the Second Amendment.

188.    Plaintiffs seek a judicial declaration that New York's ban on the open carriage of handguns violates the Second Amendment.

189.    Plaintiffs seek a judicial declaration that the following regulations violate the Second Amendment: (i) § 400.00(6); (ii) § 265.01-e(2)(n); (iii) § 265.01-e(2)(n); and § 400.00(15), (17) as applied to individuals who carry a handgun in New York City without a separate NYC license.

190.    Mr. Sappe seeks a declaration that Penal Law § 400.00(6) violates the right to Equal Protection under the Fourteenth Amendment, facially and/or as applied to him.

191.    Plaintiffs seek a judicial declaration that creation, definition, distinction and/or parameters of the geographical area identified as the "Times Square sensitive location zone" are unconstitutional, arbitrary, and capricious in violation of the Second and Fourteenth Amendments.

192.    Plaintiffs seek the permanent injunction of New York's open carry ban.

193.    Plaintiffs seek the permanent injunction of Penal Law § 265.01-e(2)(n).

194.    Plaintiffs seek the permanent injunction of Penal Law § 265.01-e(2)(t).

195.    Plaintiffs seek the permanent injunction of Penal Law § 400.00(6).

196.    Plaintiffs seek the permanent injunction of Penal Law § 400.00(15), (17) as applied to licensees who possess and/or carry a firearm in New York City without a separate NYC license.

_____ordinary people from possessing/carrying arms for self-defense in public.

198.    The creation, definition, and parameters of the geographical area identified as the "Times Square sensitive location zone" are unconstitutional, arbitrary, and capricious in violation of the Fourteenth Amendment.

199.    Licensed handgun owners are not exempted from arrest and/or prosecution for violating the challenged regulations.

200.    The challenged regulations were enacted for "public safety."[18]

201.    Public safety justifications for disarming "the People" as a whole has been consistently rejected by the Supreme Court's Second Amendment jurisprudence. See, *Heller*, *McDonald*, and *Bruen*.

202.    Defendants - who alone bear the burden of justifying the constitutionality of the challenged regulations - cannot demonstrate that they are consistent with our Nation's historical traditions of firearm regulation.

203.    Plaintiffs have suffered and will continue to suffer the violation of their constitutional rights, among other things, the inability to protect themselves and their families, lack of peace of mind, stress, fear of arrest and incarceration, risk of arrest, incarceration, property loss, and other criminal and civil penalties.

204.    Plaintiffs will continue to suffer such harm in the absence of the relief sought herein.

205.    New York City is liable to Plaintiffs for presumed monetary damages in at least a nominal amount for its enforcement of the regulations complained of herein.

---

[18] https://www.youtube.com/watch?v=gC1L2rrztQs

**COUNT I**
**U.S. CONST., AMEND. II, 42 U.S.C. § 1983**
**[Penal Law § 265.01-e(2)(n) - Public Transportation]**

206.    Plaintiffs repeat and reallege paragraphs 1 to 205 as if set forth fully herein.

207.    The conduct regulated by § 265.01-e(2)(n), possessing and carrying arms, is protected by the plain text of the Second Amendment.

208.    Penal Law § 265.01-e(2)(n) is inconsistent with this Nations' historical traditions of firearm regulation and has no historical analogue.

209.    Plaintiffs are entitled to permanent declaratory and injunctive relief from the enforcement of Penal Law § 265.01-e(2)(n) as the regulation violates the Second Amendment.

**COUNT II**
**U.S. CONST., AMEND. II and XIV, 42 U.S.C. § 1983**
**[Penal Law § 265.01-e(2)(t) – Times Square]**

210.    Plaintiffs repeat and reallege paragraphs 1 to 209 as if set forth fully herein.

211.    The conduct regulated by § 265.01-e(2)(t), possessing and carrying arms, is protected by the plain text of the Second Amendment.

212.    Penal Law § 265.01-e(2)(t) is inconsistent with this Nations' historical traditions of firearm regulation and has no historical analogue.

213.    Plaintiffs are entitled to permanent declaratory and injunctive relief from the enforcement of Penal Law § 265.01-e(2)(n) as the regulation violates the Second Amendment.

214.    Plaintiffs are entitled to a judicial declaration that the creation, definition, distinction and/or parameters of the geographical area identified as the "Times Square sensitive location zone" are unconstitutional, arbitrary, and capricious in violation of the Fourteenth Amendment.

## COUNT III
## U.S. CONST., AMEND. II , 42 U.S.C. § 1983
## [Penal Law § 400.00(6)]

215.    Plaintiffs repeat and reallege paragraphs 1 to 214 as if set forth fully herein.

216.    The conduct regulated by § 400.00(6) – carrying arms for self-defense - is protected by the plain text of the Second Amendment.

217.    Penal Law § 400.00(6) is inconsistent with this Nations' historical traditions of firearm regulation and has no historical analogue.

218.    Plaintiffs are entitled to permanent declaratory and injunctive relief from the enforcement of Penal Law § 400.00(6) as the regulation violates the Second Amendment.

## COUNT III
## U.S. CONST., AMEND. XIV, 42 U.S.C. § 1983
## [Equal Protection Claim, Penal Law § 400.00(6)]

219.    Plaintiffs repeat and reallege paragraphs 1 to  218 as if set forth fully herein.

220.    Penal Law § 400.00(6) is facially unconstitutional in violation of the right to Equal Protection under the Fourteenth Amendment.

221.    Penal Law § 400.00(6) is unconstitutional in violation of the right to Equal Protection under the Fourteenth Amendment, as applied to Mr. Sappe.

222.    Mr. Sappe is entitled to permanent declaratory and injunctive relief from the enforcement of Penal Law § 400.00(6).

**COUNT IV**
**U.S. CONST., AMEND. II, 42 U.S.C. § 1983**
**[Open Carry]**

223.    Plaintiffs repeat and reallege paragraphs 1 to 222 as if set forth fully herein.

224.    New York State's ban on the open carriage of Arms violates the Second Amendment.

225.    Banning the right to openly carry Arms is inconsistent with this Nations' historical traditions of firearm regulation and has no historical analogue.

226.    Plaintiffs are entitled to declaratory and permanent injunctive relief enjoining New York State's open carry ban.

**COUNT V**
**[*Monell* Liability Against New York City, New York]**

227.    Plaintiffs repeat and reallege paragraphs 1 to 226 as if set forth fully herein.

228.    New York City is liable to Plaintiffs under *Monell* for violations of their Second and Fourteenth Amendment rights for implementation of its policies and procedures related to the enforcement of § 400.00(6) and 265.01-e(2)(t).

229.    New York City is liable to Plaintiffs under *Monell* for the conduct detailed herein.

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against Defendants as follows:

- A judicial declaration that the New York State open carry ban violates the Second Amendment;

- A judicial declaration that Penal Law §§ 265.01-e(2)(n), 265-01-e(2)(t) violate the Second Amendment;

- A judicial declaration that Penal Law § 400.00(6) violated the Second and Fourteenth Amendments;

- A judicial declaration that enforcement of Penal Law § 400.00(15), (17) against licensed New York State handgun owners who possess and/or carry handguns for self-defense within New York City without having obtained a "special carry" license from the NYPD License Division violates the Second Amendment;

- A judicial declaration that Penal Law § 400.00(6) is unconstitutional under the Equal Protection Clause of the Fourteenth Amendment, facially and as applied to William Sappe;

- An Order permanently enjoining Defendants, their officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with Defendants who receive actual notice thereof from implementing and enforcing Penal Law §§ 265.01-e(2)(n), 265-01-e(2)(t), and 400.00(6);

- An Order permanently enjoining Defendants, their officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with Defendants who receive actual notice thereof from implementing and enforcing § 400.00(15), (17) against licensed New York State handgun owners who possess and/or carry handguns for self-defense within New York City without having obtained a "special carry" license from the NYPD License Division;

- Presumed monetary damages against New York City for the constitutional violations alleged herein in at least a nominal amount;

- Reasonable statutory attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable statute; and

Such other further and different relief as to this Court seems just, proper, and equitable.

Dated: November 21, 2025
         Scarsdale, New York

                              THE BELLANTONI LAW FIRM, PLLC
                              *Attorneys for Plaintiffs*

                    By:    _____/s_____
                              Amy L. Bellantoni (AB3061)
                              2 Overhill Road, Suite 400
                              Scarsdale, New York 10583
                              abell@bellantoni-law.com