

**Office of the New York State
Attorney General**

**Letitia James
Attorney General**

June 3, 2026

<u>**VIA ECF**</u>
Honorable Andrew E. Krause
United States Magistrate Judge
Southern District of New York
300 Quarropas St.
White Plains, NY 10601-4150

RE:    <u>*Frey, et al. v. New York City, et al.*</u>, 21 Civ. 5334 (NSR)(AEK)

Dear Judge Krause:

This Office represents Defendant Steven G. James ("Superintendent") in the above-referenced action. Pursuant to Local Civil Rule ("LR") 37.2 and this Court's Individual Practices, I write to respectfully request a pre-motion discovery conference seeking to compel complete responses from Plaintiffs Jason Frey and William Sappe's ("Plaintiffs") to the State's First Set of Interrogatories and Responses to State Demands for Documents.

## I.    Plaintiffs' Action Challenges New York's Licensing Regime

This action arises from Plaintiffs' allegation that the Superintendent's enforcement of certain provisions of New York Penal Law §§ 265.01-d, 265.01-e, and 400.00 violate the Second Amendment to the United States Constitution. (Dkt. No. 104, ¶ 1). Specifically, Plaintiffs challenge the constitutionality of restrictions on the open carriage of handguns, restrictions on the possession of firearms, rifles and shotguns on New York City subways and in Times Square, and New York City's license requirement separate from that of New York State.

Mr. Frey alleges that he holds a New York State concealed carry pistol license and is in the process of applying for a New York City concealed carry license. Mr. Frey alleges that he regularly travels to New York City, during which he uses the subway system and frequents Times Square. Mr. Sappe claims he is licensed to carry handguns in several states, including New York, but his application for a special carry license in New York City was denied. Based on documentation provided by Mr. Sappe, the denial was due to previous arrests evincing a lack of "good moral character." Mr. Sappe further claims he travels to New York City's Diamond District every day for work and regularly travels on the New York City subway and through Times Square. Both Plaintiffs assert their intention to carry a handgun during their travels throughout New York City, and the threat of arrest and prosecution is the only thing stopping them from doing so.

## II.    Plaintiffs Failed to Substantively Respond to Defendants' Discovery Requests

This Office served the Superintendent's First Set of Interrogatories and First Set of Document Demands on Plaintiffs on March 27, 2026.[1] Plaintiffs served their responses on May 6,

---

[1] Copies of the Superintendent's First Set of Interrogatories and Document Requests are attached hereto as Exhibit A.

2026, which were overwhelmingly non-responsive, relying on repeated boilerplate objections with no explanation such as "Plaintiff objects to this interrogatory as improper and otherwise precluded by S.D.N.Y. Local Civil Rule 33.3." On May 26, 2026, this Office notified Plaintiffs' counsel that it was drafting a deficiency letter that it would serve by the end of the week and asked to schedule a conferral with all parties. The parties were unable to finalize a meeting. On May 29, 2026, this Office notified Plaintiffs' counsel that it would be serving the Superintendent's deficiency letter later that day, and summarized the broader issues for which it would seek judicial intervention. This Office asked Plaintiffs' counsel for a time this week to discuss the impending deficiency letter. Plaintiffs' counsel responded and informed the parties that she would be in the Ninth Circuit for oral arguments Monday and Tuesday. Later that day, this Office served the Superintendent's deficiency letter on Plaintiffs' counsel and asked for a time to confer.[2] Having not received a response from Plaintiffs' counsel, on June 1, 2026, this Office again requested to meet and confer. As of the filing of this letter, this Office has not received a response and, therefore, has not been able to confer with Plaintiffs' counsel on the Superintendent's deficiency letter.

For the reasons discussed below, the Superintendent respectfully requests that the Court overrule Plaintiffs' objections to the demands listed herein and direct Plaintiffs to produce responsive discovery within fourteen days.

### III.    Plaintiffs' Interrogatory Response Deficiencies

In response to the Superintendent's Interrogatory Requests, Plaintiffs broadly object and refused to respond based on Local Rule 33.3(a) which provides that,

> Unless otherwise ordered by the Court, at the commencement of discovery, interrogatories will be restricted to those seeking names of witnesses with knowledge of information relevant to the subject matter of the action, the computation of each category of damage alleged, and the existence, custodian, location and general description of relevant documents, including pertinent insurance agreements, and other physical evidence, or information of a similar nature.

LR 33.3(a). However, in objecting to interrogatories, "[t]he grounds for objecting…must be stated with specificity." Fed. R. Civ. P. 33(b)(4). Moreover, "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." *Id*. "[B]oilerplate objections that include unsubstantiated claims of undue burden, overbreadth and lack of relevancy," while producing "no documents and answer[ing] no interrogatories ... are a paradigm of discovery abuse." *Jacoby v. Hartford Life & Accident Ins. Co.,* 254 F.R.D. 477, 478 (S.D.N.Y. 2009). "A party resisting discovery has the burden of showing specifically how, despite the broad and liberal construction afforded the federal discovery rules, each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive, ... by submitting affidavits or offering evidence revealing the nature of the burden." *Pegoraro v. Marrero*, 281 F.R.D. 122, 128-29 (S.D.N.Y. 2012) (quoting *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42 (S.D.N.Y. 1984)) (internal quotations omitted).

Plaintiffs refused to provide responsive information to all but two interrogatories. Moreover, despite serving separate interrogatories for each Plaintiff with their own unique

---

[2] A copy of Defendants' Deficiency Letter is attached hereto as Exhibit B.

Hon. Andrew E. Krause                                                                                      Page 3 of 6
June 3, 2026

requests, Plaintiffs responded to Mr. Frey's interrogatories, copying the exact same demands and responses for Mr. Sappe. In doing so, Mr. Sappe failed to respond to several interrogatories.

The Superintendent's interrogatories, on the other hand, complied with LR 33.3 by seeking, *inter alia*, the identities of witnesses, lists of Plaintiffs' injuries, details related to arrests, convictions, mental health, domestic violence incidents, and military service, details related to Plaintiffs' history of firearm possession, and licensing. These interrogatories were narrowly tailored to obtain information related to witness identities, computation of damages, and/or information reasonably related to the discovery of relevant documents. Plaintiffs put each of these areas at issue by asserting them as bases for liability and damages in the Third Amended Complaint. As such, Plaintiffs' decision to not only withhold responsive information, but to do so under the cover of boilerplate objections, blatantly violates their discovery obligations.

### IV.    Plaintiffs' Document Request Response Deficiencies

The Superintendent requested four separate authorizations under Request Nos. 27, 31, 32, and 33. Request 27 asked for executed authorizations to access each Plaintiff's records that may be sealed pursuant to New York Criminal Procedure Law §§ 160.50 and 160.55. Request 31 asked for an executed authorization for Mr. Sappe's employment records regarding his employment as alleged in the TAC. Request 32 asked for executed authorizations for each Plaintiff's medical records within the past ten years as it relates to use of any controlled substance as defined by federal law under 21 U.S.C. § 802. Request 33 asked for executed authorizations for each Plaintiff's medical records as they concern any occasions on which Plaintiff has been involuntarily committed to a facility under the jurisdiction of New York's Department of Mental Hygiene, or has been civilly confined in a secure treatment facility pursuant to New York law.

Plaintiffs stated the same objection to each of these demands: "This request is overly broad, unduly burdensome, undefined, immaterial, intended to harass, otherwise improper, and not reasonably calculated to lead to the discovery of admissible evidence." Notwithstanding these objections, Plaintiffs proffered limited non-responsive information in reply to the Superintendent's requests. For Request Nos. 27, 32, and 33, Plaintiffs stated that "neither Plaintiff is disqualified from possessing firearms," while Mr. Sappe's response to Request No. 31 stated that he would only provide the already-produced sparce records from Plaintiffs' 26(a) Disclosure.

Plaintiffs' boilerplate objections and insufficient responses are without merit. Both Plaintiffs allege that New York City's licensing laws and the ban on firearms, rifles, and shotguns in Times Square and on public transportation has caused them continuing harm. The Superintendent is entitled to documentary discovery concerning the cause and extent of that harm.

License approval requires the applicant to be of "good moral character, and not in a condition – mental or physical – that would make it unsafe" to possess a firearm. NYPD License Division: New Application Instructions, http://licensing.nypdonline.org/new-app-instruction/. Numerous factors are considered in this determination, such as the applicant's history of arrests, domestic violence, and mental illness. *Id*. As Plaintiffs are challenging the constitutionality of New York's licensing laws and carry restrictions, Plaintiffs' fitness and eligibility to carry at all is squarely at issue. Therefore, to the extent either Plaintiff has been arrested, convicted, issued a domestic violence restraining order, had a firearms license or drivers' license revoked, or been committed to a mental health facility, the Superintendent requires records and signed authorizations to access those records.

Hon. Andrew E. Krause                                                                                   Page 4 of 6
June 3, 2026

### V.      The Superintendent Is Entitled to the Information and Documents Sought

The Superintendent's Requests seek only information relevant to Plaintiffs' standing to bring each claim asserted, and to test the factual allegations within the operative complaint, as put at issue by Plaintiffs. The broader issues, *inter alia*, can be summarized as follows:

A.      <u>Limited Mental Health Records and Information</u>: The Superintendent has agreed to withdraw the documentary requests regarding mental health records if Plaintiffs affirm under oath that they have never received inpatient mental health treatment or received treatment for a controlled substance. Commitment to a mental health facility and drug addiction history are relevant to their claims regarding licensing and their standing to challenge the statute.

18 U.S.C. § 922(g) proscribes certain individuals from "ship[ing] or transport[ing] in interstate or foreign commerce, or possess[ing] in or affecting commerce, any firearm or ammunition; or [receiving] any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." Two such classes of individuals encompassed by this statute are those "who [are] unlawful user[s] of or addicted to any controlled substance…" and those "who [have] been adjudicated as a mental defective or who [have] been committed to a mental institution." 18 U.S.C. § 922(g)(3) & (4); *see also Heller v. Bedford Cent. Sch. Dist.*, 665 F. App'x 49, 54 (2d Cir. 2016) ("[T]he restriction on gun purchases by individuals committed to a mental institution is presumptively lawful"). This is a threshold issue as it directly impacts Plaintiffs' right to possess a firearm in the first place. Any bar to carry under this federal statute would render Plaintiffs' challenge to the state statutes moot, thus eliminating any standing to bring the instant action. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (Federal court standing requires a plaintiff to show (1) injury in fact, which is a "concrete and particularized" harm to a "legally protected interest"; (2) causation in the form of a "fairly traceable" connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) redressability, or a non-speculative likelihood that the injury can be remedied by the requested relief.).

This federal statute notwithstanding, an applicant's eligibility for a New York City carry license is still subject to several considerations, including, any history of mental illness. NYPD License Division: New Application Instructions, http://licensing.nypdonline.org/new-app-instruction/. As Plaintiffs are challenging the statute giving rise to this application process, their eligibility is directly related to their claims and the factual allegations upon which they are based.

B.      <u>Arrest and Conviction Records</u>: As to Mr. Frey, the Superintendent agreed to withdraw documentary requests for arrest records and unsealing releases if he affirms under oath that he has never been arrested. As to Mr. Sappe, Plaintiffs already produced records indicating multiple arrests in the past, and that these arrests were the basis for denying Mr. Sappe a license on at least one occasion. Along with mental health and substance abuse, conviction of "a crime punishable by imprisonment for a term exceeding one year" renders an individual ineligible to possess a firearm under 18 U.S.C. § 922(g); *see also United States v. Rivera*, No. 24-CR-200, 2025 WL 2051197, *9 (S.D.N.Y. July 22, 2025) ("Section 922(g)(1), which categorically disarms felons based on a legislative judgment as to safety, is thus consistent with the principles that underpin [the nation's] regulatory tradition.") (internal quotations omitted). Further, the applications that Plaintiffs have to complete to seek licenses are premised on truthfully providing information regarding past arrests and convictions. The Superintendent is entitled to probe the veracity of these statements. Moreover, good moral character, and history of violence is relevant to Plaintiffs' claims regarding licensing and their standing to challenge the statute.

The Superintendent also seeks records regarding any history of domestic violence, specifically the issuance of domestic violence restraining orders, which is a factor that would impact Plaintiffs' ability to obtain a license, and impact their standing. The Supreme Court held in *United States v. Rahimi* that 18 U.S.C. § 922(g)(8)'s ban on gun possession for individuals subject to a domestic violence restraining order was facially constitutional under the Second Amendment. 602 U.S. 680, 700 (2024). The Supreme Court reasoned that its "tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." *Id*. Plaintiffs' history on this issue is, therefore, plainly relevant.

      C.      <u>Military Records</u>: If Plaintiffs have ever served in the military, the circumstances regarding their discharge are relevant to their ability to carry a firearm. Moreover, those who have "been discharged from the Armed Forces under dishonorable conditions" are ineligible to possess a firearm under 18 U.S.C. § 922(g)(6). Their military discharge status, if any, is therefore also relevant to whether Plaintiffs have standing to bring the instant action.

      D.      <u>License Revocations</u>: Whether Plaintiffs have ever had a firearm license revoked in any of the many states in which they claim to hold licenses is relevant to their standing to obtain or maintain a handgun license in New York State.

      E.      <u>Firearms Training Courses and Insurance</u>: Upon information and belief, Mr. Sappe holds a New York State armed guard license, which requires him to carry insurance and to attend regular training. Therefore, interrogatories and document requests regarding these topics are directly relevant to his ability to carry armed in NYS.

      F.      <u>Visits to Times Square and NYC</u>: This case has been pending for five years, and involves specific claims of non-NYC resident Plaintiffs and their visits to New York City, Times Square, and their use of public transit. As a result, records regarding each Plaintiff's actual visits to those areas are relevant to their standing and alleged injuries, especially now that Mr. Frey no longer lives in New York State. *See Lujan*, 504 U.S. at 561 (1992) (standing requires that it be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.") (internal quotations omitted).

      G.      <u>Employment Records</u>: Mr. Sappe alleges that his job requires him to carry "thousands of dollars in cash, precious gems, jewelry, and diamonds on a regular basis." (Dkt. No. 104, ¶ 74). He further claims that he intends to carry a handgun for self-defense in New York City, including Times Square and on public transportation, and that his inability to do so is causing ongoing harm. Mr. Sappe has thus put his employment at issue and the Superintendent is, therefore, entitled to his employment records to assess the validity of his claims and extent of the harm caused, including by identifying which clients are within the Times Square area.

**VI.    Conclusion**

Plaintiffs failed to articulate specific reasons for noncompliance with their broad discovery obligations. The Superintendent's Requests are tailored to the allegations in the operative complaint and are, therefore, relevant to building a defense. Therefore, the Superintendent respectfully requests that the Court schedule a pre-motion discovery conference to address the deficiencies in Plaintiffs' Responses, overrule Plaintiffs' objections, and direct Plaintiffs to provide responsive discovery within fourteen days.

I thank the Court for its consideration of the application herein.

Hon. Andrew E. Krause
June 3, 2026

Respectfully,
*/s/ Daniel Luedtke*
Daniel Luedtke
Assistant Attorney General
(212) 416-8213
daniel.luedtke@ag.ny.gov

cc:     All Counsel of Record (via ECF)